Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

Attorneys for Plaintiff BMA LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC,<br><br>Plaintiff,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>Defendants. | Case No.  3:20-cv-3345-WHO<br><br>**PLAINTIFF'S EX PARTE APPLICATION FOR THIRD PARTY EVIDENCE PRESERVATION ORDER** |

## NOTICE OF EX PARTE APPLICATION

Please take notice that as soon as the matter may be heard ex parte before the Federal District Court for the Northern District of California, Plaintiff BMA LLC will move the Court to issue an evidence preservation order to third parties Twilio Inc., its subsidiary SendGrid Inc. and Intercom Inc.  This application is based on this notice, the Memorandum of Points and

Authorities, the Request for Judicial Notice, the Declaration of Pavel Pogodin, Esq., the Exhibits, the Amended Complaint and such other matters as may be submitted to the Court in briefing or at the hearing.

Plaintiff seeks an order of the Court directing two third parties to preserve a snapshot of data associated with defendants' account(s), including a database of user email addresses.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Statement Of The Issues To Be Decided

Whether plaintiff is entitled to the issuance of a preservation order directed at three third parties Twilio Inc., its subsidiary SendGrid Inc. as well as Intercom Inc., to preserve a snapshot of information, including specific user email address data, which is evidence of defendants' contacts with the forum and evidence of defendants operating an unlicensed money transmission business in the United States in violation of 18 U.S.C. § 1960(a).

### Statement Of The Relevant Facts

Defendants own and operate one of the largest cryptocurrency trading platforms in the world BitMEX. Am. Compl., at ¶¶1-2. Recently, BitMEX has become a lightning rod for widespread user grievances, including complaints of rampant price manipulation, deliberate platform freezes as well as operating its own for-profit trading desk which uses inside information to trade against BitMEX's own customers, Ex. 1. Since its very inception, BitMEX used a shell company, defendant HDR Global Trading Limited, which is incorporated in Seychelles, to dodge United States regulators and even its own United States investors using the same argument that it does not do any business in the United States and therefore is not subject to the personal jurisdiction of the United States and California courts, Ex. 2, Ex. 6, at ¶147. This argument is false as, in reality, BitMEX generated nearly 15 percent of its 2019 trading volume - or about $138 billion worth - from the United States - based traders, Am. Compl., at ¶2.

The evidence capable of dispelling this fallacy is located right here in the Northern District of California and is in possession of three Bay Area companies Twilio Inc., its subsidiary SendGrid Inc. and Intercom Inc., Ex. 3, at p.3, Pogodin Decl., at ¶5. These three companies store

email address database containing email addresses of all BitMEX users (the "User Email Address Database"), which can be used to determine, with high degree of accuracy, the true number of United States persons who trade on the BitMEX platform. Pogodin Decl., at ¶6. If the truth about the real number of United States customers of BitMEX ever came out, this would have clearly negative consequences for the defendants and their business, as they would be forced to litigate multiple civil lawsuits filed against them in the United States on the merits. Therefore, Defendants are determined to delete or sanitize the User Email Address Database in possession of Twilio Inc., its subsidiary SendGrid Inc. and Intercom Inc. in order to extricate themselves from the personal jurisdiction of this Court and to continue their practice of civil claim avoidance, effectively preventing Plaintiff from ever using this information to prove its case.

**Legal Standard For Issuing Preservation Orders In Northern District**

In the Northern District of California, courts have inherent authority to issue preservation orders to third parties, and have done so based on *ex parte* application.[1] See, e.g., *Bright Sols. for Dyslexia, Inc. v. Doe 1*, No. 15-CV-01618-JSC, 2015 WL 5159125, at *2 (N.D. Cal. Sept. 2, 2015); *Cabiness v. Educational Financial Solutions, LLC*, No. 3: 16-cv-01109-LB (N.D. Cal. May 2, 2016). Although courts must exercise restraint using such authority, it may be warranted where there is "significant concern that potentially relevant evidence will be destroyed causing harm to the opposing party." *Id*. Courts usually consider three factors in determining whether to issue such a preservation order to a defendant:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved.

*Id*. But this Court has also used these same three factors to evaluate whether to issue a

---

[1] In addition, Civ.L.R. 65-1 authorizes issuance of temporary restraining orders on *ex parte* applications. This application is in a nature of a motion for a temporary restraining order.

preservation order to a third party. *Id*. at 3. Indeed, the Court has noted that "the need for such [an] order is all the more pressing" when directed at third parties because they are "not parties and thus have no duty to preserve absent a court order." *Id*.

In *Bright Sols*, the court applied this reasoning to find that the plaintiffs were entitled to the issuance of a preservation order directed at third-parties eBay, PayPal, and Google, to preserve specific user data that was evidence of copyright and trademark infringement. *Id*. The court was swayed, as to the first factor, by Plaintiffs' allegation that companies such as these routinely destroy user data within a few months. *Id*. at 3. The court also endorsed, as to the second factor, Plaintiffs' argument that the sought-after user data was necessary both to identify the defendants and because the data was "likely necessary evidence of infringement, which will be crucial once ... the case proceeds on the merits." Id. Finally, the court found that plaintiffs had satisfied the third factor because the request for user data was narrowly targeted and because the request would cause minimal burden on the third parties. *Id*.

Similarly, in *Cabiness*, the court found that the plaintiffs were entitled to the issuance of a preservation order directed at third-parties MetroPCS and its corporate parent, T-Mobile USA, Inc. to preserve any and all records or documents as defined in Federal Rule of Civil Procedure 34(a)(1)(A), related to the specific MetroPCS user account, in order to preserve specific user data that was evidence of unsolicited phone calls. *Id.*

The facts supporting Plaintiff's request in the instant case are similar and are discussed in detail below.

**Concern for Continuing Existence and Maintenance of Integrity of Evidence**

Addressing the first factor – the likelihood that relevant evidence will be lost – according to a letter from Associate General Counsel of Twilio Inc., in response to Plaintiff's preservation letter: "Twilio has placed a temporary deletion hold on BitMEX's account(s) to give them an opportunity to evaluate your request. Twilio will maintain the temporary hold for 14 days from the date of this letter unless it receives instructions from the defendants to maintain the hold." Pogodin Decl., at ¶7.  This temporary hold expires on June 15, 2020 and defendants would be

free to delete the User Email Database or sanitize it to remove email addresses of United States based users. Pogodin Decl., at ¶7.

When asked to provide assurances of the continued preservation of the User Email Database in possession of Twilio Inc. and its subsidiary SendGrid Inc., defendants' counsel Stephen Hibbard refused to acknowledge defendants' duty to preserve the content of the User Email Database and responded evasively. Pogodin Decl., at ¶¶11-14. Defendants' counsel first suggested that simply sending a preservation letter to a third party would be sufficient to guarantee the integrity of the User Email Database:

> Defendants will not stipulate to a court order directing those companies to preserve certain data. We understand you have already sent data preservation letters to both companies. In light of those letters, there is no basis for the extraordinary relief you are suggesting, and we see no justification for imposing on the court to enter such an order.

Pogodin Decl., at ¶12.

After that, when pressed by Plaintiff's counsel, defendants' counsel Stephen Hibbard took a position that the User Email Address Database is not relevant to the present civil action, stating: "those email addresses do not bear on the claims in the filed complaint." Pogodin Decl. at ¶13. On the other hand, as has been demonstrated above, the User Email Address Database is critical to establishing defendants' contacts with the forum and proving the predicate offences of the RICO causes of action of the Amended Complaint.

The evasive refusal to acknowledge defendants' duty to preserve the User Email Address Database and then taking position that this database is not relevant to the present action all indicate that there is a strong likelihood that the User Email Address Database will be deleted or sanitized by defendants as soon as the deletion hold imposed by Twilio Inc. is lifted on June 15, 2020. Pogodin Decl., at ¶14. Accordingly, there is a legitimate concern for the existence and integrity of the evidence in question, absent a preservation order of this Court, and the first factor weighs in favor of the issuance of the preservation order.

**Likelihood of Irreparable Harm**

Addressing the second factor – whether Plaintiff will suffer irreparable harm from the loss of the evidence – Plaintiff needs this evidence to property establish personal jurisdiction of this Court over defendants. In all prior civil cases filed against them, defendants rigorously challenged the personal jurisdiction of United States and California courts and defendants' counsel Stephen Hibbard refused to concede the question of personal jurisdiction over defendants in the present action. Pogodin Decl., at ¶17. Without the email address records in question, Plaintiff will be unable to establish minimum contacts between defendants and the forum. As another example, Plaintiff will be unable to prove the predicate offense of conducting, controlling, managing, supervising, directing, or owning all or part of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), which requires defendants to have United States users of their money transmission business. Other causes of action, such as market manipulation in violation of the Commodity Exchange Act also require showing of connections between defendants and the United States. Therefore, Plaintiff clearly needs the User Email Database to properly prove personal jurisdiction over defendants as well as liability and damages in this case.

On the other hand, through their actions, defendants have established a clear pattern of brazen greed-motivated illegal conduct that makes the irreparable harm to Plaintiff in the absence of the preservation order extremely likely.

For example, when asked about the reasons for incorporating defendant HDR in the Republic of Seychelles, defendant HDR's Chief Executive Officer (CEO) defendant Hayes has publicly claimed, on or about July 9, 2019, that the government of Seychelles was cheaper to bribe than the government of the United States and when asked how much he had to pay Seychelles to bribe them, defendant Hayes answered "a coconut". Ex. 4.

In addition to publicly admitting to bribery of foreign government officials, defendant Hayes has publicly admitted to perpetrating bank fraud by falsifying his residence address on bank account application documents with the purpose of opening a bank account in China, to which he, as a resident of Hong Kong, was not entitled. The Chinese bank account was

admittedly opened by defendant Hayes using a fake Chinese residence address, which he personally falsified, in order to enrich himself on 40% premium in the price of bitcoin in China compared to the rest of the world.  In perpetrating the admitted bank fraud, defendant Hayes was motivated by personal greed.  Ex. 5.

Moreover, when, in July of 2019, an early investor in BitMEX Elfio Guido Capone asked defendants Hayes, Delo and Reed about a status of his investment in the BitMEX platform,



defendant Delo responded with a meme image reading "incorporated in Seychelles, come at me bro" and a face of a smiling defendant Hayes, cynically implying that defendants could dodge their legal obligations to their own investors simply by using a shell company incorporated in the Seychelles to evade personal jurisdiction of the United States courts.  Ex. 6, at ¶147.

In view of this well-established pattern of brazen lawlessness on part of all defendants, including admitted falsifying of a bank account application, it is clear that Defendants will not think twice about sanitizing the user email database in their possession or control to remove the email addresses of United States users in order to extricate their business from the personal jurisdiction of this Court and avoid Plaintiff's claims.  This will clearly result in a grave and

irreparable harm to Plaintiff. Accordingly, the second factor also weighs in favor of the Court order for preservation of a snapshot of defendants' data in possession of Twilio Inc., its subsidiary SendGrid Inc. and Intercom Inc.

### Capability of Third Parties to Maintain Evidence

Finally, regarding the third factor – how capable the third party will be to comply with the order – the two companies in question Twilio Inc., its subsidiary SendGrid Inc. and Intercom Inc. are cloud-based data companies having all necessary engineering expertise to create a snapshot of the User Email Database and the cost of storing the snapshot of the User Email Database will be *de minimis* for them. According to Plaintiff's estimate, the User Email Database only contains about 30,000 email records. If each email record is 1 Kbyte long (the average email address is only 21.9 bytes long**)**, the total amount of storage necessary to store the entire User Email Database is about 30 megabytes. Taking into account current cost of $0.004 per month for each gigabyte of online data storage, storing a snapshot of the entire User Email Database will cost Twilio Inc., its subsidiary SendGrid Inc. and Intercom Inc. $0.00012 or 0.012 cents per month. Therefore, the third parties in question are perfectly capable and well positioned to preserve evidence in compliance with the court order and the cost of such preservation will be *de minimis*. Accordingly, this last factor also weighs in favor of the issuance of the preservation order.

### Preservation Order Should Issue

Accordingly, all three factors weigh in favor of issuing an order for User Email Address Database preservation and plaintiff respectfully requests the Court to issue the corresponding preservation order directing Twilio Inc., its subsidiary SendGrid Inc. and Intercom Inc. to create and preserve a snapshot of data in defendants' account(s), including the User Email Address Database. *Bright Sols. for Dyslexia, Inc. v. Doe* 1, No. 15-CV-01618-JSC, 2015 WL 5159125, at *2 (N.D. Cal. Sept. 2, 2015).

| | |
|---|---|
| Dated: June 9, 2020 | Respectfully submitted,<br><br>By: ___/s/ Pavel I. Pogodin___<br>        Pavel I. Pogodin<br><br>CONSENSUS LAW<br>Pavel I. Pogodin, Ph.D., Esq.<br>5245 Ave Isla Verde<br>Suite 302<br>Carolina, PR 00979<br>United States of America<br>Telephone: (650) 469-3750<br>Facsimile: (650) 472-8961<br>Email: pp@consensuslaw.io<br>Attorneys for Plaintiff BMA LLC |