Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:   +1.415.626.3939
Facsimile:    +1.415.875.5700

Attorneys for Defendants
HDR GLOBAL TRADING LIMITED, ABS GLOBAL
TRADING LIMITED, ARTHUR HAYES, BEN
DELO, and SAMUEL REED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin and Vitaly Dubinin,<br><br>  Plaintiffs,<br><br>  v.<br><br>HDR Global Trading Limited (a.k.a. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>  Defendants. | Case No. 3:20-cv-03345-WHO<br><br>**JOINT CASE MANAGEMENT AND FEDERAL RULE OF CIVIL PROCEDURE 26(f) CONFERENCE STATEMENT**<br><br>Date:  August 18, 2020<br>Time:  2:00 p.m.<br>Ctrm:  2 – 17th Floor<br>Judge:  Honorable William H. Orrick |

Pursuant to Federal Rules of Civil Procedure ("FRCP") 16 and 26, as well as Local Civil Rule 16-9, Plaintiffs BMA LLC, Yaroslav Kolchin, and Vitaly Dubinin (together "Plaintiffs") and Defendants HDR Global Trading Limited ("HDR"), ABS Global Trading Limited ("ABS"), Arthur Hayes, Ben Delo, and Samuel Reed (together "Defendants") have met and conferred and hereby submit this Joint Case Management and Federal Rule of Civil Procedure 26(f) Conference Statement.

**I.     JURISDICTION AND SERVICE**

Plaintiffs assert claims under (1) the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. Sections 1962(c) and (d); (2) the Commodity Exchange Act ("CEA"), 7 U.S.C. Section 9(1) and (3), 7 U.S.C. Section 13(a)(2), 7 U.S.C. Section 2(a)(1)(B), and 7 U.S.C. Section 25(a)(1); (3) Negligence under California law; (4) Fraud under California law; (5) Civil Conspiracy; (6) Unfair Business Practices, California Business and Professions Code Section 17200, *et seq.*; (7) Unjust Enrichment; (8) Constructive Trust; and (9) Accounting.  This Court purportedly has subject-matter jurisdiction over this action pursuant to 18 U.S.C. Section 1964 and 28 U.S.C. Section 1331.  Defendants plan to contest Plaintiffs' Article III standing.

All Defendants, except for ABS, plan to contest this Court's personal jurisdiction over them through a Motion to Dismiss under FRCP 12(b)(2).  HDR is a foreign entity incorporated in the Republic of Seychelles.  Arthur Hayes and Ben Delo are individuals residing outside the U.S.  Samuel Reed is an individual residing outside of California.  Plaintiffs will oppose Defendants' standing and jurisdictional challenges.  No issues exist regarding venue, and no other parties remain to be served.

**II.    FACTS**

PLAINTIFFS' STATEMENT:

<u>Anonymity and Absolute Lack of Controls</u>

Despite the fact that the Second Amended Complaint ("SAC") is 125 pages long, the key facts of this case are simple and easy to understand.  In 2014, Defendants launched a bitcoin derivative trading platform called BitMEX, which enables traders to place bets on direction of cryptocurrency prices.  In designing their platform, Defendants decided to sidestep any financial

controls mandated by the traditional banking system by transacting only in bitcoin and refused to implement any know your customer (KYC) or anti-money laundering (AML) checks what so ever, Ex. 1[1], SAC ¶215.   In other words, Defendants would open account and accept unlimited funds from anyone, without a single question asked. SAC ¶¶211-213.

In fact, one can open an account, deposit unlimited funds and start trading without furnishing a single document, all is required is a user name and email address, which are not verified by BitMEX in any way.  SAC ¶¶211-213.  The entire account registration and funding process takes about 10 minutes and no documents are even looked at.  Understandably, because of total lack of controls of any kind, hackers, tax evaders, money launderers, smugglers, drug dealers all flocked to BitMEX flooding the platform with hot money, Ex. 1.  A recent and very telling example is the infamous Twitter hacker, who turned out to be a BitMEX trader, Ex. 2.

<u>Money Laundering Paradise</u>

But there is more.  Having a large pool of hot money at their disposal, Defendants designed the internal workings of their trading platform to enable, encourage and benefit from money laundering and market manipulation.  It all has to do with anonymity, lack of trading limits, high leverage and how the index price for bitcoin derivatives is calculated.   Defendants deliberately designed this index price to be based on bitcoin spot price on two or three illiquid bitcoin spot exchanges, SAC ¶214.  Illiquid in this context means that to precipitously move bitcoin price on those exchanges, relatively small market orders will suffice.  Therefore, a relatively small market order on a spot exchange results in a relatively large bitcoin index price move on the very liquid BitMEX, SAC ¶¶ 109, 214.

A money launderer would open two exchange accounts – a helper account on one or more exchanges used by BitMEX to calculate its index price (Coinbase, Kraken and BitStamp) and a

---

[1] Defendants do not believe it appropriate in submitting a Joint CMC Statement to burden the Court with a volume of exhibits that are not pertinent for a Case Management Conference, especially where some of them may involve personal identifying information of non-parties, and therefore have not consented to file Plaintiffs' exhibits.  Plaintiffs, on the other hand, believe that this case is clearly complex within the meaning of the STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA and, therefore, the additional relevant information contained in the Exhibits 1-17 is critical to understanding the pertinent issues in the case, and therefore will file their Exhibits 1-17 separately for the benefit of the Court.

JOINT CMC STATEMENT
3:20-cv-03345-WHO

1  winner account on BitMEX, SAC ¶110.  The money launderer would then enter into a large
2  leveraged derivatives position on BitMEX and immediately execute market orders from the
3  helper account with maximum slippage to move the index price in a favorable direction, Ex. 3, 4,
4  5, SAC ¶214.  Due to disparity in liquidity between BitMEX and the spot exchanges, the
5  aforesaid deliberate design of the index price by Defendants, and the cascading liquidations of
6  leveraged trader positions on BitMEX, the amount spent from the helper account is multiplied
7  greatly and translates into outsized profit in the winner account on BitMEX, Ex. 3, 4, 5, SAC
8  ¶214.  Because BitMEX accounts are by design anonymous, the laundered money cannot be
9  traced from the helper account to the winner account, SAC ¶215.  Thus, the money laundering
10 proceeds in the winner account on BitMEX appear as legitimate trading gains and the money
11 laundering scheme achieves its purpose, SAC ¶214.  The described money laundering acts are
12 well documented and take place on BitMEX almost daily, Ex. 3, 4, 5.  Moreover, to exacerbate
13 the described price manipulations, BitMEX intentionally locks users out of their accounts during
14 manipulation times, falsely telling the users that their "system is overloaded", SAC ¶185.

15     BitMEX directly participates in and financially benefits from this illegal activity through
16 its internal trading desk run by Ukrainian national Nick Andrianov and indirectly due to increased
17 trading volumes and also by liquidating users' accounts. In the described money laundering
18 scheme, the market manipulation gains realized by the launderer in the winner account and the
19 funds confiscated by BitMEX as the result of liquidations induced by the launderer are generated
20 at the expense of Plaintiffs and other cryptocurrency traders like Plaintiffs, SAC ¶214.  Notably,
21 BitMEX deposits proceeds from the user account liquidations into its so called "insurance fund,"
22 which has steadily grown over the years and now amounts to over $400 million dollars, all
23 misappropriated from traders, including Plaintiffs, SAC ¶¶145-149.

24     Awash with large amounts of easy cash and encouraged by perceived lack of any
25 accountability, Defendants grew so brazen that they do not even hesitate to publicly admit to
26 bribery and bank fraud, SAC ¶¶11, 13.

27     Despite the fact that the vast majority of Defendants' personnel and managers are located
28 in this District, to avoid being subject to U.S. laws, regulations and taxes, Defendants established

12 false shell companies, including Defendant ABS, with intent to create an appearance that Defendant HDR has no presence, operations or investors in regulated jurisdictions such as U.S., SAC ¶¶12, 24.

<u>U.S. Traders on BitMEX Platform</u>

While Defendants and their counsel are busy disingenuously swearing to Courts that "U.S. persons are expressly prohibited from trading on BitMEX platform," Defendants' own public Leaderboard posted on Defendants' website (https://www.bitmex.com/app/leaderboard) reveals that just four U.S.-based traders who decided to reveal their real names (evidently in an effort to assist with fundraising): Roger Xu of Leotank Capital Inc. (Ex. 9, 10 and 11) and Bryce Gilleland, Wen Hou and Sunil Shah of Coincident Capital (Ex. 6, 7 and 8) generated almost

### Leaderboard

The following shows some of the most profitable traders on BitMEX. These lists are anonymous. Each name always represents the same user, but is not personally identifiable.

### Top 25 Traders by Notional

| Rank | Name | Profit | Is Real Name |
|---|---|---|---|
| 1 | Mercury-Wood-Sprite | 8,161.2198 XBT | ✗ |
| 2 | Quick-Grove-Mind | 8,047.8158 XBT | ✗ |
| 3 | Heavy-Autumn-Wolf | 7,574.4154 XBT | ✗ |
| 4 | Alameda Research | 5,244.5830 XBT | ✓ |
| 5 | Hot-Relic-Fancier | 4,216.5159 XBT | ✗ |
| 6 | coincidentcapitalltd | 2,610.2783 XBT | ✓ |
| 7 | Skitter-Peridot-Raven | 2,329.1721 XBT | ✗ |
| 8 | Honeysuckle-South-Rib | 2,111.6555 XBT | ✗ |
| 9 | CSW is a fraud | 2,086.7229 XBT | ✓ |
| 10 | Tree-Surf-Dragon | 2,053.2285 XBT | ✗ |
| 11 | Roger-LeotankCapital | 1,764.5478 XBT | ✓ |
| 12 | alamedaresearchltd@gmail.com | 1,696.7039 XBT | ✓ |
| 13 | Jade-Platinum-Legs | 1,675.8174 XBT | ✗ |
| 14 | Circle_Trade | 1,619.6382 XBT | ✓ |
| 15 | Winter-Pink-Fang | 1,542.1702 XBT | ✗ |
| 16 | daniel3 | 1,514.6067 XBT | ✓ |
| 17 | Cream-White-Ox | 1,476.3798 XBT | ✗ |
| 18 | xorq | 1,473.0086 XBT | ✓ |
| 19 | Disco-Solar-Fang | 1,452.1775 XBT | ✗ |
| 20 | Roger_LeotankCapital | 1,441.3349 XBT | ✓ |
| 21 | Ebony-Fair-Bat | 1,390.0500 XBT | ✗ |
| 22 | aoa | 1,386.5926 XBT | ✓ |
| 23 | Quill-Rift-Hoof | 1,363.3790 XBT | ✗ |
| 24 | Brown-Peat-Myth | 1,248.5080 XBT | ✗ |
| 25 | Denim-Sun-Speaker | 1,218.5577 XBT | ✗ |

Annotations:
- 1. Sunil Shah, 310 Lake St., Unit #310, Huntington Beach, CA 92648
- 2. Bryce Gilleland, 1400 Calle De Las Flores, San Dimas, CA 91773
- 3. Wen Hou, 2253 Martin St. Apt 113, Irvine, CA 92612
- $31,000,000 Exhibits: 6, 7, 8
- Roger Xu, 250 50th St. Apt 3d2 New York, NY 11220 — $21,000,000 Exhibits: 9, 10, 11
- Roger Xu, 250 50th St. Apt 3d2 New York, NY 11220 — $17,000,000 Exhibits: 9, 10, 11

$70,000,000 in trading profits on Defendants' BitMEX platform. As attached exhibits clearly show, Bryce Gilleland, Wen Hou and Sunil Shah reside in California, while Roger Xu resides in

1  New York, Ex. 7, 9, 10.  This fact as well as the fact that the vast majority of employees, SAC

2  ¶74, and almost all of the service providers to BitMEX are located in this District, SAC ¶57,

3  make Defendants' lack of personal jurisdiction arguments disingenuous and, in fact, extravagant.

4        Moreover, the above staggering amount of business was conducted by Defendants in the

5  U.S. without obtaining a money transmission license and without complying with the mandatory

6  FinCEN regulations, SAC ¶215.  Notably, all the above evidence was obtained from Defendants'

7  own public website without any benefit of discovery.  Plaintiffs are informed and believe that this

8  is a mere tip of the iceberg and that up to third of all traders on the BitMEX Leaderboard

9  generating half a billion dollars of profits are U.S. persons.

10 <u>Attempts to Mislead Courts Regarding Material Jurisdictional Facts</u>

11       It is simply inconceivable that Defendants and their litigation counsel somehow did not

12  know that some of their top traders who generated almost $70,000,000 in profits on Defendants'

13  own platform were U.S. persons, Ex. 6-11.

14       Obviously, such high profile traders are universally known by name.  Yet, with full

15  knowledge that some of BitMEX's top trading accounts which generated almost $70,000,000 in

16  trading gains were in fact operated by U.S. persons, Defendant Hayes, with the assistance and

17  encouragement of Mr. Hibbard, nevertheless disingenuously swore under the penalty of perjury in

18  a California Superior Court proceeding, in a motion challenging Court's jurisdiction that "U.S.

19  persons are expressly prohibited from accessing or trading on the BitMEX platform," Ex. 12 p. 2.

20  Mr. Hibbard, not to be outdone, repeated this fallacy thirteen (!) more times throughout his

21  various motions and oppositions, Ex. 13, 15, 16, and 17.  Various representations of material

22  jurisdictional facts made by Defendant Hayes and his counsel Mr. Hibbard to Courts as well as

23  the true facts are summarized in the table below:

| Court Name, Case and Document | Date | Defendant Hayes' Representations and Exhibits | Mr. Hibbard's Representations and Exhibits | The True Facts and Exhibits |
|---|---|---|---|---|
| San Francisco County Superior Court, CGC19581267, MPA in Support of | 2/27/20 | "U.S. persons are expressly prohibited from accessing or trading on the BitMEX platform under the | | Some of BitMEX's most profitable trading accounts openly listed on BitMEX's public Leaderboard, which generated almost $70,000,000 in trading |

| | | | | |
|---|---|---|---|---|
| Motion to Quash | | terms of service." Ex. 14 p. 2. | | profits, were and continue to be operated by four U.S. persons Bryce Gilleland, Wen Hou, Sunil Shah and Roger Xu.<br><br>Bryce Gilleland resides at: 1400 Calle De Las Flores, San Dimas, CA 91773, Ex. 7.<br><br>Wen Hou resides at: 2253 Martin Ct. Apt. 113, Irvine, CA 92612, Ex. 7.<br><br>Sunil Shah resides at: 310 Lake St., Unit #310, Huntington Beach, CA 92648, Ex. 7.<br><br>Roger Xu resides at: 250W 50th Street, Apt. 3d2, New York, NY 10019, Ex. 9, 10.<br><br>Due to the enormous sizes of the trading gains involved and the high profile of the traders, it is absolutely inconceivable for Defendants and their counsel Mr. Hibbard not to have known this fact at the time Defendants and Mr. Hibbard made the material representations to the courts regarding jurisdictional facts. |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 2/27/20 | | "HDR is a holding company that ultimately owns the BitMEX-branded trading platform that allows the trading of digital assets (such as cryptocurrency derivatives) by certain non-U.S. persons." Ex. 15 p. 7. | |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 2/27/20 | | "Further, U.S. persons are prohibited from accessing and trading on the BitMEX platform." Ex. 15 p. 15. | |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 2/27/20 | | "U.S. persons are prohibited from trading on the BitMEX platform." Ex. 15 p. 19. | |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 6/16/20 | "U.S. persons are expressly prohibited from accessing or trading on the BitMEX platform under the terms of service." Ex. 12 p. 2. | | |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 6/16/20 | | "HDR is a holding company that ultimately owns the BitMEX-branded trading platform that allows the trading of digital assets (such as cryptocurrency derivatives) by certain non-U.S. persons." Ex. 13 p. 6. | |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 6/16/20 | | "U.S. persons are expressly prohibited from accessing and trading on the BitMEX platform." Ex. 13 p. 7. | |
| San Francisco | 6/16/20 | | "Plaintiffs allege that … | |

| | | | |
|---|---|---|---|
| County Superior Court, CGC19581267, MPA in Support of Motion to Quash | | | U.S. persons trade on the BitMEX platform despite being prohibited from doing so. Regardless of the truth of these allegations—most of which are false or otherwise misleading…" Ex. 13 p. 9. |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 6/16/20 | | "Further, U.S. persons are prohibited from trading on the BitMEX platform." Ex. 13 p. 15. |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion to Quash | 6/16/20 | | "U.S. persons are prohibited from trading on the BitMEX platform." Ex. 13 p. 19. |
| San Francisco County Superior Court, CGC19581267, Opposition to Motion to Compel | 6/23/20 | | "U.S. persons are expressly prohibited from accessing and trading on the BitMEX platform." Ex. 16 p. 6. |
| San Francisco County Superior Court, CGC19581267, Opposition to Motion to Compel | 6/23/20 | | "Plaintiffs allege that … some U.S. persons trade on the BitMEX platform despite being prohibited from doing so. Regardless of the truth of these allegations—most of which are false or otherwise misleading." Ex. 16 p. 8. |
| San Francisco County Superior Court, CGC19581267, MPA in Support of Motion for Protective Order | 6/25/20 | | "U.S. persons are expressly prohibited from accessing and trading on the BitMEX platform." Ex. 17 p. 6. |
| San Francisco County Superior Court, | 6/25/20 | | "Plaintiffs allege that … some U.S. persons trade on the BitMEX platform |

| | | | | |
|---|---|---|---|---|
| CGC19581267, MPA in Support of Motion for Protective Order | | | despite being prohibited from doing so. Regardless of the truth of these allegations—most of which are false or otherwise misleading." Ex. 17 p. 8. | |

While this may not be technically a perjury, a plain and clear attempt to mislead Courts as to very material facts critical for the jurisdictional inquiry is evident. This speaks volumes as to the "catch me if you can" strategy adopted by Defendants. Mr. Hibbard, on the other hand, who is an officer of the court and who is charged to act as a gatekeeper, seems to take special pride in perpetuating untruths concocted by his clients to try to wiggle their way out of facing justice for their misdeeds.

DEFENDANTS' STATEMENT: Plaintiffs abuse the Court's standing rules regarding the length of Case Management Statements and mistake this process for something akin to submitting an opposition to a motion to dismiss that has yet to be filed. Defendants trust the Court will disregard Plaintiffs' over-wrought and unprofessional statements, as Defendants have not misled this or any other Court.

Setting aside Plaintiffs' unduly lengthy description of the Complaint's allegations and without further characterization of the Complaint, the key factual issues in dispute include the following: whether Defendants manipulated the price of Bitcoin; whether Defendants' alleged manipulative actions affected the price of Bitcoin on BitMEX and other cryptocurrency exchanges; whether the price of Bitcoin on BitMEX is allegedly based on the prices of two or three other spot exchanges and should purportedly be based on additional and/or different exchanges; whether server freezes and system overloads are a result of normal, technological glitches and limitations or deliberate action; whether the BitMEX internal trading desk has access to special insights and privileges that it improperly used; whether Plaintiffs improperly traded on BitMEX in the U.S. in violation of the BitMEX Terms of Service; and whether BMA—an entity formed by counsel for Plaintiffs approximately one year before bringing suit, and initially the lone Plaintiff in this case—is a proper plaintiff to continue to hold title to and represent the claims

of "multiple individual cryptocurrency traders" (SAC ¶ 8).

## III. LEGAL ISSUES

PLAINTIFFS' STATEMENT:  SAC clearly alleges sufficient facts for the Court to exercise personal jurisdiction over all Defendants.  In a San Francisco County Superior Court case CGC19581267, Judge Schulman flatly rejected some of the same Defendants' fraudulent shell games and held that Defendants operated as a single enterprise for California law purposes.  The Court should adopt the same approach in this case, holding Defendant HDR as well its California alter ego Defendant ABS as a single enterprise with extensive California presence.  *See Systems Div., Inc. v. Teknek Elect., Ltd.* 253 F. App'x 31, 37 (Fed. Cir. 2007) ("The exercise of jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the same entity—thus, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the International Shoe due process analysis.").  Defendant ABS, which is an alter ego of Defendant HDR, has its headquarters and over 80 employees in California.  Attributing these contacts to Defendant HDR clearly subjects it to the personal jurisdiction of this Court.  Moreover, Defendants and their counsels' failed attempts to hide the fact that BitMEX's top traders generating almost $70,000,000 in trading profits are U.S. persons clearly supports holding Defendants accountable for their actions in a United States District Court.

Defendants' other attacks on the SAC are equally groundless.  Complaint properly alleges Article III standing injury, see, for example, SAC ¶¶ 295-300, 318-323.  *See Sullivan v. Barclays PLC, 13-cv-2811* (PKC) (S.D.N.Y. Feb 21, 2017) ("Defendants argue that plaintiffs do not have standing to bring claims directed to LIFFE futures and interest rate swaps because the Complaint does not specifically link the dates of defendants' individual Euribor manipulations with the dates that plaintiffs' settled their positions. (Def. Mem. at 8-9.)  But the Complaint alleges a years-long conspiracy to secretly manipulate the Euribor, and asserts that defendants' misconduct occurred "on a daily basis . . . ." (Compl't ¶ 50.) True, the Complaint identifies certain specific dates where defendants allegedly communicated with one another about manipulating the Euribor, but those dates do not purport to be the universe of defendants' communications and misconduct. It ultimately is plaintiffs' burden to prove that any unlawful manipulation of the Euribor resulted in

1    injury. For the purpose of alleging a standing at the pleading stage, however, the plaintiffs have
2    adequately alleged a traceable injury resulting from the defendants' alleged manipulation of the
3    Euribor."). "Defendants argue that the U.S. Complaint fails to "allege facts that, if proven, would
4    establish ... actual harm in real trades in specific currencies on particular days." (emphases in
5    original). Defendants contend that the U.S. Complaint does not adequately allege an injury in
6    fact, a requisite for standing, because, absent such specifics, any allegation of harm is conclusory.
7    Defendants' argument is rejected." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F.
8    Supp. 3d 581, 595 (S.D.N.Y. 2015) (rejecting argument that a complaint need "allege facts that, if
9    proven, would establish . . . actual harm in real trades in specific currencies on particular days"
10   (emphasis omitted)). See also *Silver Fix*, 2016 WL 5794777, at *7 (rejecting argument that
11   "buyers and sellers who traded at various times" lacked Article III standing because "there is no
12   way to conclude that Plaintiffs sustained any loss as a result of Defendants'" manipulation);
13   *ISDAfix*, 175 F. Supp. 3d at 53 ("the mere fact 'that an injury may be outweighed by other
14   benefits, while often sufficient to defeat a claim for damages, does not negate standing'")
15   (quoting *Ross*, 524 F.3d at 222)."

16   SAC also adequately alleges Defendants' individual roles in RICO enterprise, see SAC ¶¶
17   195-196. Defendants' extraterritoriality arguments equally fail, see SAC ¶¶78-81, 203, which
18   clearly allege specific facts establishing that illegal acts including the violations of CEA and
19   RICO took place in this District and on U.S. based exchanges BitStamp, Kraken and Coinbase,
20   see SAC ¶203.

21   DEFENDANTS' STATEMENT: In addition to this Court's lack of personal jurisdiction
22   over all Defendants, except ABS, the SAC contains multiple threshold pleading deficiencies,
23   which warrant dismissal of the entire SAC. First, the SAC fails to allege plausible facts
24   establishing Article III standing. *See Bihari v. Cross Roads of West Gun Show*, 2016 WL
25   11000618 (C.D. Cal. July 18, 2016). In particular, Plaintiff BMA cannot circumvent the direct
26   injury requirement by claiming it is bringing suit on behalf of an organization or members.
27   Second, Plaintiffs lack statutory standing to assert each of their federal claims. Third, Plaintiffs'
28   federal claims independently fail because the purported violations occurred outside the U.S., and

1  neither the CEA nor RICO apply extraterritorially.  *See, e.g.*, *Prime International Trading, Ltd. v.*

2  *BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d

3  1056 (N.D. Cal. 2018).  Fourth, Plaintiffs' RICO claims fail because they make no effort to

4  specify the acts undertaken by each Defendant that allegedly run afoul of RICO.  *See In re*

5  *WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880 (C.D. Cal. 2012).  Fifth,

6  once the federal claims are dismissed, this Court should decline to exercise supplemental

7  jurisdiction over the state law claims.  Investigation in this matter is ongoing.

## IV. MOTIONS

PLAINTIFFS' STATEMENT:  Plaintiffs anticipate filing Motion(s) for Summary Judgment at a later stage of the proceeding.

DEFENDANTS' STATEMENT:  Plaintiffs filed an Ex Parte Application for Third-Party Evidence Preservation, which the Court denied on June 15, 2020.  Dkt. 29.  Defendants intend to file a Motion to Dismiss under FRCP 12(b)(1), (2), and (6) on September 14, 2020.  Plaintiffs' opposition is due October 29, 2020, and Defendants' reply is due November 30, 2020.  The hearing is scheduled for December 16, 2020.  Dkt. 31.  If this action proceeds beyond the pleading stage, Defendants intend to file a Motion for Summary Judgment.

## V. AMENDMENT OF PLEADINGS

Plaintiffs do not currently intend to further amend the SAC.  If the SAC survives Defendants' Motion to Dismiss, the parties propose a deadline to amend the pleadings of 60 days following the ruling on the Motion to Dismiss.

## VI. EVIDENCE PRESERVATION

The parties certify they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, they have met and conferred pursuant to FRCP 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action, and that such steps are being taken.

## VII. DISCLOSURES

The parties have agreed to serve FRCP 26(a) initial disclosures by September 1, 2020.

## VIII. DISCOVERY

The parties have agreed to conduct discovery in phases. Because Defendants (other than ABS) plan to challenge this Court's personal jurisdiction over them, Defendants propose to conduct only jurisdictional-related discovery prior to the deadline for Plaintiffs' opposition to Defendants' Motion to Dismiss.

Plaintiffs disagree with this proposal because of lack of serious probability that Defendants' jurisdictional challenge will succeed, in view of the fact that BitMEX's top traders generating almost $70,000,000 in trading profits are U.S. persons and further in view of Judge Schulman's holding that Defendants HDR and ABS operate as a single enterprise, making U.S. jurisdictional contacts of one to be the jurisdictional contacts of the other for purposes of the International Shoe due process analysis. *See Systems Div., Inc. v. Teknek Elect., Ltd.* 253 F. App'x 31, 37 (Fed. Cir. 2007). Defendant ABS has its headquarters and over 80 employees in California. Attributing these contacts to Defendant HDR clearly subjects it to the personal jurisdiction of this Court. Thus, the jurisdictional challenge by Defendant HDR will likely fail.

The parties plan to conduct written jurisdictional discovery first. Plaintiffs also would like to take remote depositions on jurisdictional issues. Defendants believe remote depositions will be unnecessary once written jurisdictional discovery is completed.

The parties are currently negotiating a stipulated protective order and a stipulation for the discovery of electronically stored information and expect to finalize both soon.

Defendants believe merits-related discovery should be stayed pending the Court's ruling on Defendants' Motion to Dismiss, particularly where this Court's personal jurisdiction will be contested as to every Defendant except for ABS. Plaintiffs do not agree to the stay of the merits-based discovery. Defendants do not believe a change regarding the limitations on discovery is necessary, including increasing the number of depositions or interrogatories. If the need arises, Defendants agree to meet and confer with Plaintiffs regarding any necessary alterations. Plaintiffs reserve the right to seek modification of limitations on discovery as the case progresses.

Plaintiffs plan to propound extensive non-party discovery, particularly on third-party cryptocurrency exchanges referenced in the SAC. The parties also believe expert discovery will

be extensive.

## IX. CLASS ACTIONS

This matter is not a class action.

## X. RELATED CASES

Plaintiffs' counsel, on behalf of three different plaintiffs, has filed a similar action against Defendants HDR and Arthur Hayes in California state court alleging only California causes of action. *See Aleksandr Kanyshev, et al. v. HDR Global Trading Limited, et al.*; No. CGC-20-584483; San Francisco Superior Court (filed May 19, 2020).

## XI. RELIEF

PLAINTIFFS' STATEMENT: Plaintiffs seek monetary damages from all Defendants jointly and severally, including enhanced damages pursuant to the RICO statute. Plaintiffs suffered damages in bitcoin and other cryptocurrencies, which substantially appreciated in value since the filing of the complaint and continue to so appreciate. Thus, Plaintiffs' damages in fiat currency are increasing. Plaintiffs additionally may seek injunctive relief, as well as award of costs and attorney fees, when so permitted by statute and such other relief as this Court deems appropriate.

DEFENDANTS' STATEMENT: Defendants dispute the relief sought by Plaintiffs and instead seek a judgment entered in Defendants' favor, an award of attorneys' fees and costs, and such other relief as this Court deems appropriate.

## XII. SETTLEMENT AND ADR

Prior to the filing of this action, counsel for all parties engaged in unsuccessful pre-suit discussions to resolve the dispute. The parties have not engaged in further discussions since the filing of the lawsuit. The parties agree it is too early at this time to engage in ADR and instead agree to revisit ADR options after Defendants' Motion to Dismiss is ruled upon. Defendants prefer to conduct a private mediation closer to the end of fact discovery, which Plaintiffs are willing to consider at a later stage in the case. Plaintiffs also suggest a settlement conference with a N.D. Cal. Magistrate Judge, which Defendants are willing to consider at a later stage in the case.

### XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Plaintiffs filed a declination to proceed before a Magistrate Judge for All Purposes on June 1, 2020.  Dkt. 11.

### XIV. OTHER REFERENCES

The parties agree this case is not suitable for other references.

### XV. NARROWING OF ISSUES

The parties agree there are no issues that can be narrowed at this time.  The parties will continue to meet and confer to consider issues that can be narrowed by agreement or by motion during the discovery process.

### XVI. EXPEDITED TRIAL PROCEDURE

The parties agree this case should not be handled under an expedited trial procedure.

### XVII. SCHEDULING

The parties propose a fact discovery cut-off in November 2021 and an expert discovery cut-off in March 2022.  The parties propose any motions for summary judgment be filed by May 2022.  The parties propose a pretrial conference in November 2022 and trial starting in December 2022.

### XVIII. TRIAL

Plaintiffs request the case to be tried to a jury.  The parties estimate 12 trial days total.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

PLAINTIFFS' STATEMENT:  Plaintiffs filed their Certification of Interested Entities or Persons on May 16, 2020, Dkt. 4.  Other than the named parties, Plaintiffs did not identify any such interest.  Plaintiffs filed their Corporate Disclosure Statement on the same day, Dkt. 3.

DEFENDANTS' STATEMENT:  Defendants will file their Certification of Interested Entities or Persons on August 11, 2020.  Other than the named parties, Defendants will not identify any such interest.

### XX. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI. OTHER MATTERS FACILITATING JUST, SPEEDY, AND INEXPENSIVE DISPOSITION

The parties are not aware of any other matters that would facilitate the just, speedy, and inexpensive disposition of this matter.

DATED: August 11, 2020         JONES DAY

                                  */s/ Stephen D. Hibbard*
                                  Stephen D. Hibbard

                               Counsel for Defendants HDR GLOBAL TRADING LIMITED, ABS GLOBAL TRADING LIMITED, ARTHUR HAYES, BEN DELO, and SAMUEL REED

DATED: August 11, 2020         CONSENSUS LAW

                                  */s/ Pavel I. Pogodin, Ph.D.*
                                  Pavel I. Pogodin, Ph.D. (SBN 206441)
                               5245 Av. Isla Verde
                               Suite 302
                               Carolina, PR, USA 00979
                               Telephone: +1.650.469.3750
                               Facsimile: +1.650.472.8961
                               Email: pp@consensuslaw.io

                               Counsel for Plaintiffs BMA LLC, Yaroslav Kolchin, and Vitaly Dubinin

I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file this Joint Case Management and Federal Rule of Civil Procedure 26(f) Conference Statement. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that counsel for Plaintiffs, Pavel I. Pogodin, Ph.D., concurs in this filing.

DATED: August 11, 2020

                                      */s/ Stephen D. Hibbard*
                                      STEPHEN D. HIBBARD

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 11, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice List.

*/s/ Stephen D. Hibbard*
STEPHEN D. HIBBARD
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700
E-mail: sdhibbard@jonesday.com