# EXHIBIT 13

Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Attorneys for Specially Appearing Defendant
HDR GLOBAL TRADING LIMITED

Peter I. Altman (State Bar No. 285292)
paltman@akingump.com
Shelly Kim (State Bar No. 322231)
shelly.kim@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067
Telephone: +1.310.229.1000
Facsimile: +1.310.229.1001

Attorneys for Specially Appearing Defendant
ARTHUR HAYES

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**06/16/2020**
**Clerk of the Court**
BY: SANDRA SCHIRO
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| FRANK AMATO, RGB COIN LTD., and ELFIO GUIDO CAPONE on behalf of the G AND M CAPONE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; ABS GLOBAL TRADING LIMITED; and DOES 1-10,<br><br>Defendants. | Case No: CGC-19-581267<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS' MOTION TO QUASH SERVICE OF SUMMONS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: July 16, 2020<br>Time: 9:30 a.m.<br>Judge: Honorable Ethan P. Schulman<br>Department: 302<br><br>Complaint filed: December 4, 2019<br>First Am. Compl. filed: April 27, 2020 |

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 6

II.    BACKGROUND ................................................................................................... 7

    A.    The Parties ................................................................................................ 7

    B.    The Complaint ......................................................................................... 8

III.    ARGUMENT ...................................................................................................... 10

    A.    There Is No General Jurisdiction Over Hayes or HDR in California ................. 10

    B.    There Is No Specific Jurisdiction Over Hayes or HDR in California.................. 15

        1.    Hayes and HDR Lack Case-Specific Minimum Contacts with the State.............................................................................................. 15

               (a)    No Conduct Related to the SAFEs Occurred in California .......... 16

               (b)    The SAFEs' Choice-of-Law Clause Alone Is Insufficient .......... 17

               (c)    Plaintiffs' Peripheral California Allegations Are Irrelevant ........ 18

               (d)    The BitMEX Website Does Not Confer Jurisdiction.................... 19

        2.    Exercising Personal Jurisdiction Would Be Unreasonable ....................... 19

IV.    CONCLUSION ................................................................................................... 20

**MPA ISO MOTION TO QUASH**

CASES

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004)............................................................18

*Asahi Metal Indus. Co. v. Super. Ct.*,
    480 U.S. 102 (1987) ...........................................................................15, 20

*BBA Aviation PLC v. Super. Ct.*,
    190 Cal. App. 4th 421 (2010)............................................................12

*Belmont Indus., Inc. v. Super. Ct.*,
    31 Cal. App. 3d 281 (1973)...............................................................17

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ......................................................................10, 15

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    137 S. Ct. 1773 (2017) ...................................................................... passim

*Bucur v. Ahmad*,
    244 Cal. App. 4th 175 (2016)............................................................8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...........................................................................17

*Cornelison v. Chaney*,
    16 Cal. 3d 143 (1976) ........................................................................11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...........................................................................passim

*DVI, Inc. v. Super. Ct.*,
    104 Cal. App. 4th 1080 (2002)..........................................................11, 12

*Elkman v. Nat'l States Ins. Co.*,
    173 Cal. App. 4th 1305 (2009)..........................................................10

*Fastpath, Inc. v. Arbela Techs. Corp.*,
    760 F.3d 816 (8th Cir. 2014)..............................................................17

*Fisher Governor Co. v. Super. Ct.*,
 53 Cal. 2d 222 (1959) .........................................................................................................20

*Ford Motor Co. v. Bandemer*,
 No. 19-369, 2020 WL 254152 (Jan. 17, 2020) ...................................................................18

*Ford Motor Co. v. MT Eighth Dist. Ct.*,
 No. 19-368, 2020 WL 254155 (Jan. 17, 2020) ...................................................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ............................................................................................................10

*Grossman v. Schell & Kampeter, Inc.*,
 No. 2:18-cv-02344-JAM-AC, 2019 WL 1298997 (E.D. Cal. Mar. 21, 2019).........................19

*Hunt v. Super. Ct.*,
 81 Cal. App. 4th 901 (2000) ...............................................................................................17

*Integral Dev. Corp. v. Weissenbach*,
 99 Cal. App. 4th 576 (2002)................................................................................................20

*J. McIntyre Mach., Ltd. v. Nicastro*,
 564 U.S. 873 (2011) ............................................................................................................10

*Jewish Def. Org., Inc. v. Super. Ct.*,
 72 Cal. App. 4th 1045 (1999)..............................................................................................19

*Lazar v. Charles Schwab & Co., Inc.*,
 No. CV 12–02141–BRO, 2014 WL 12680663 (C.D. Cal. July 3, 2014) ...............................17

*Malone v. Equitas Reinsurance Ltd.*,
 84 Cal. App. 4th 1430 (2000)..............................................................................................18

*Pavlovich v. Super. Ct.*,
 29 Cal. 4th 262 (2002) ........................................................................................................19

*Picot v. Weston*,
 780 F.3d 1206 (9th Cir. 2015).............................................................................................18

*Planet Bingo, LLC v. Wild Bill's Bingo, Inc.*,
 No. CV 09–7078 PA, 2010 WL 11515460 (C.D. Cal. Jan. 11, 2010)....................................17

*Postal Instant Press, Inc. v. Kaswa Corp.*,
 162 Cal. App. 4th 1510 (2008)............................................................................................14

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ........................................................................................18

*Snowney v. Harrah's Ent't, Inc.*,
    35 Cal. 4th 1054 (2005) ...............................................................................................19

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal. App. 4th 523 (2000) ....................................................................................12, 13

*Strasner v. Touchstone Wireless Repair & Logistics, LP*,
    5 Cal. App. 5th 215 (2016) ......................................................................................11, 16

*Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*,
    364 F. Supp. 3d 1061 (N.D. Cal. 2019) ........................................................................13

*Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*,
    No. 2:16-CV-01001-CAS, 2016 WL 9024808 (C.D. Cal. May 23, 2016) .............................12

*Thomson v. Anderson*,
    113 Cal. App. 4th 258 (2003) .......................................................................................11

*Union Pac. R.R. Co. v. Equitas Ltd.*,
    987 P.2d 954 (Colo. Ct. App. 1999) .............................................................................18

*ViewSonic Corp. v. Sampo Tech. Corp.*,
    No. CV 08-3244 PSG, 2011 WL 13213557 (C.D. Cal. Feb. 10, 2011) ...............................12

*Vons Cos., Inc. v. Seabest Foods, Inc.*,
    14 Cal. 4th 434 (1996) .................................................................................................17

*Walden v. Fiore*,
    571 U.S. 277 (2014) .....................................................................................................10

*Williams v. Yamaha Motor Co.*,
    No. CV-1305066 (BRO), 2014 WL 12597039 (C.D. Cal. Aug. 19, 2014), *aff'd*,
    851 F.3d 1015 (9th Cir. 2017) ......................................................................................14

*Young v. Daimler AG*,
    228 Cal. App. 4th 855 (2014) .......................................................................................14

**STATUTES**

Cal. Civ. Proc. Code § 418.10(a)(1) ................................................................................10

Cal. Code Civ. Proc. § 410.10 .........................................................................................10

5

# I. INTRODUCTION

This lawsuit between non-California entities and individuals concerns a dispute centered in Asia that has no material connection to California. Under U.S. Supreme Court and California precedent, neither HDR Global Trading Limited ("HDR") nor Arthur Hayes (together, "Defendants") is subject to general or specific jurisdiction in California. The Court should thus grant Defendants' motion to quash service of the summons for lack of personal jurisdiction.

Arthur Hayes and his two co-founders incorporated HDR in the Republic of Seychelles while the three individuals were residing in Hong Kong. HDR is a holding company that ultimately owns the BitMEX-branded trading platform that allows the trading of digital assets (such as cryptocurrency derivatives) by certain non-U.S. persons. HDR's only office is in Seychelles. While HDR's sole U.S. affiliate, a Delaware company incorporated in 2017 (years after the events at issue), has a San Francisco office, it is not HDR, but rather one of many HDR affiliates, most of which are in Asia. And Hayes, HDR's CEO, remains a U.S. expatriate, domiciled in Asia, as he has been at all times relevant to this dispute. Given these facts, California courts do not have general jurisdiction over HDR or Hayes.

California courts likewise have no specific jurisdiction over this dispute. Hayes met Plaintiff Frank Amato when Hayes lived in Hong Kong and Amato, then a trader at JPMorgan, lived in Singapore. During this same period, Hayes met Plaintiff Elfio Guido Capone, who lives in Australia. All lived in those places at the times they (Hayes on HDR's behalf) entered the 2015 contracts at the center of this dispute. While the contracts are governed by California law, there is no forum selection clause, and the contracts do not call for performance in California. Moreover, other events that Plaintiffs claim affected their rights under the contracts occurred outside of California with non-California entities. In fact, the only individuals and entities that have ever invested in HDR—apart from Amato, an Ohio resident—made those investments from outside of the U.S. altogether. And neither Capone, Amato, nor Amato's co-plaintiff by alleged assignment, RGB Coin Limited, claims to have any connections to California that bear on this dispute, apart from the contracts' choice-of-law clause, which binding precedent holds is insufficient for the exercise of jurisdiction over a foreign defendant.

## II. BACKGROUND

### A. The Parties

Plaintiff Frank Amato, a self-described "investment professional" and "angel investor with experience in FinTech platforms," resides in Ohio. First Am. Compl. ("FAC") ¶¶ 6, 54. At the time Amato entered the contract in dispute, however, he worked in JP Morgan's Singapore office. Hayes Decl. ¶¶ 12, 13. Plaintiff RGB Coin Ltd. is an Ohio LLC whose sole identified members are Amato and an unnamed Portuguese national. FAC ¶ 7. Plaintiff Elfio Guido Capone is an Australian citizen residing in Adelaide, South Australia, who purports to bring this action on behalf of the G and M Capone Trust. FAC ¶ 8.

Defendant HDR is a holding company incorporated in the Republic of Seychelles. Hayes Decl. ¶ 5. HDR is the sole owner of a digital asset trading platform that is operated under the registered service mark "BitMEX." Hayes Decl. ¶ 4; *see also* BitMEX, https://www.bitmex.com/ (last visited June. 15, 2020). U.S. persons are expressly prohibited from accessing and trading on the BitMEX platform. Hayes Decl. ¶ 4; *see also* BitMEX, Terms of Service, *available at* https://www.bitmex.com/app/terms (last visited June 15, 2020).

HDR has affiliates worldwide (collectively, the "HDR Group"), including in Hong Kong and Singapore, but HDR's only office is in Seychelles, where corporate records are maintained and where the board of directors met shortly before this action was filed. Hayes Decl. ¶¶ 5–6. HDR's sole affiliate in the U.S. is ABS Global Trading Limited ("ABS"), which was incorporated in Delaware in April 2017 and currently has an office in San Francisco. *Id.* ¶ 7.[1] ABS provides contract-based software development, software engineering, and digital security services to HDR, including developing the front-end of the BitMEX trading platform. Hayes Decl. ¶ 7. The HDR Group's only other presence in the U.S. is through a business unit that uses the trade name BitMEX Ventures. That unit was created in 2018 to invest in other companies. *Id.* ¶ 9. BitMEX Ventures has no role in outside investments in HDR. *Id.*

Defendant Arthur Hayes is a co-founder and the CEO of HDR. Hayes Decl. ¶ 1. Hayes is

---

[1] Plaintiffs named ABS as a defendant in their FAC. ABS does not contest jurisdiction, but has demurred to the complaint. All references to Defendants in this motion refer solely to the defendants challenging jurisdiction—HDR and Hayes.

a legal permanent resident of Hong Kong, where he moved in 2008. *Id.* ¶ 2. Hayes has not

resided in the U.S. since moving to Asia in 2008, and has never resided in California. *Id.*

**B.     The Complaint**[2]

Plaintiffs allege that after months of correspondence about potential equity investments in

HDR, Amato and HDR entered a Simple Agreement for Future Equity ("SAFE") in June 2015,

and Capone (on behalf of a trust) and HDR entered a SAFE in July 2015. FAC ¶¶ 1–2, 69-77,

88-93. Under the SAFEs, Amato invested $30,000 and Capone invested $25,000 for a right to

receive shares in HDR subject to certain conditions precedent set forth in the contract, including

completion of an "Equity Financing," defined as "a bona fide transaction or series of transactions

with the principal purpose of raising capital, pursuant to which the Company issues and sells

Preferred Shares at a fixed pre-money valuation." FAC ¶ 99; *accord* Compl. Ex. 1; Hayes Decl.

Exs. A, B. In an email, Hayes told Amato the shares would convert at the "next financing round,"

which HDR anticipated raising "shortly after completion" of a start-up accelerator program

known as Chinaccelerator, "which ends in November" 2015 FAC ¶ 75. Tellingly, the complaint

is silent as to where Amato met Hayes, where the contract was entered, or where those

individuals resided at the time of contracting. The only places either complaint mentions Hayes

and Amato meeting are Singapore (FAC ¶ 9) and New York (Compl. ¶ 74).

Plaintiffs allege that in late 2015, HDR obtained financing from other sources, including

"SOSV [a venture capital firm] and its Chinaccelerator program," that constituted Equity

Financings under the SAFE. FAC ¶ 113; *see generally id.* ¶¶ 3, 110-126. The complaint does not

allege where the SOSV financing occurred. Plaintiffs also allege that, when asked in 2018 and

2019, Hayes made inconsistent representations to Amato and Capone about whether the financing

required for a conversion had occurred. FAC ¶¶ 3,127-144. Based on these allegations, Plaintiffs

---

[2] Plaintiffs Amato and RGB Coin initiated this action with a complaint filed in December 2019. They amended the complaint, adding Capone as a plaintiff and ABS as a defendant, in April 2020 after the deadline for their opposition to Defendants' original motion to quash was taken off calendar due to the COVID-19 pandemic. Because the FAC omits certain admissions that are binding on Amato and RGB Coin, *see Bucur v. Ahmad*, 244 Cal. App. 4th 175, 187 (2016), Defendants refer to both the original complaint ( "Compl.") and the operative FAC in this motion. For example, while Plaintiffs attached a copy of the Amato SAFE to their original complaint, they have omitted it from the FAC. *See* Compl. Ex. 1. Defendants have submitted both the Amato SAFE and the Capone SAFE with this filing. Hayes Decl. Exs. A & B.

assert claims for breach of contract and the implied covenant of good faith and fair dealing (Counts 2 and 3), fraudulent and negligent misrepresentation related to the contract (Counts 1 and 5), and various equitable theories stemming from the contract (Counts 4 and 6).

Plaintiffs offer nothing of substance, as they must, to connect their claims to California. While they allege that HDR does business as and operates in all jurisdictions including California under the trade name BitMEX, FAC ¶ 9, they do not allege that the SAFE was negotiated in California, called for performance in California, or that the parties had any dealings in California. And they acknowledge that "BitMEX" is a service mark registered in multiple international jurisdictions. Compl. ¶ 9. Rather than offer any specific averments as to HDR—the Seychelles entity with which they contracted—Plaintiffs assign all manner of allegations to "BitMEX" without acknowledging that BitMEX is not an entity. In any event, these broad, unfocused allegations have nothing to do with their claims.

For example, Plaintiffs focus on the San Francisco offices of HDR affiliate ABS that provide engineering services, but again do not allege any connection between those ABS offices and their claims related to investments in HDR or to the alleged conversion of their rights under the SAFES through an Equity Financing in HDR. FAC ¶¶ 9-10, 23. Likewise as to Plaintiffs' allegations regarding BitMEX Ventures; in fact, Plaintiffs acknowledge that BitMEX Ventures "*makes* equity investments *into other startup businesses*." *Id.* ¶ 32 (emphasis added). In a similar vein, Plaintiffs allege that ABS hosted a global off-site meeting, that ABS employees and recruiting efforts use the BitMEX trade name, that BitMEX uses service providers in California, and that U.S. persons trade on the BitMEX platform despite being prohibited from doing so. *Id.* ¶¶ 29-31, 34, 36-37, 45-50. Regardless of the truth of these allegations—most of which are false or otherwise misleading—none of them has any connection to Plaintiffs' claims regarding their 2015 investments that allegedly should have converted into equity interests that same year.

As for Hayes, Plaintiffs allege that he "manag[es] and direct[s] BitMEX's San Francisco Bay Area-based operations," has attended Bay Area events, namely, as a speaker at a conference in 2018, and gave an interview to CNBC from San Francisco. *Id.* ¶¶ 11, 41, 42. But Plaintiffs do not allege that Hayes has any connection to California related to the negotiation, execution, or

1  performance of the SAFE.  To the contrary, Plaintiffs allege only that, after Amato claimed for

2  the first time in 2018 that the SAFE should have converted following HDR's completion of

3  SOSV's Chinaccelerator program in 2015, Hayes scheduled a call with Amato to discuss an

4  "opinion from BitMEX's California attorney regarding the SAFE conversion." *Id.* ¶ 137.  And

5  while Plaintiffs note that "SOSV" has a San Francisco office, they do not allege that office has

6  anything to do with the Chinaccelerator program SOSV runs from its China offices in Shanghai

7  and Shenzhen, or the investment an SOSV entity made from Ireland. *Id.* ¶¶ 3, 112.  Finally,

8  Plaintiffs repeatedly reference the SAFE's California choice-of-law clause, *id.* ¶¶ 1, 43, 44, 102,

9  while ignoring that the SAFE does not have a California forum-selection clause.

10 **III.    ARGUMENT**

11         California courts may only exercise jurisdiction over a defendant on a "basis not

12 inconsistent with the Constitution of this state or of the United States."  Cal. Code Civ. Proc.

13 § 410.10.  Thus, the exercise of personal jurisdiction is ultimately governed by federal

14 constitutional law.  In a half-dozen decisions issued in the past decade, including two arising from

15 lawsuits filed in California, the Supreme Court has repeatedly emphasized the limits of personal

16 jurisdiction.[3]  Personal jurisdiction may only be exercised where the party is "essentially at

17 home" in a forum (general, or "all-purpose," jurisdiction), *Daimler*, 571 U.S. at 122 (quoting

18 *Goodyear*, 654 U.S. at 919), or where there is an "affiliation between the forum and the

19 underlying controversy, principally, [an] activity or an occurrence that takes place in the forum

20 State" (specific, or "case-linked," jurisdiction), *Bristol-Myers*, 137 S. Ct. at 1781 (quoting

21 *Goodyear*, 654 U.S. at 919).  Because the Court can exercise neither general nor specific

22 jurisdiction over Hayes or HDR, it should quash service of the summons to those Defendants.

23 *See Elkman v. Nat'l States Ins. Co.*, 173 Cal. App. 4th 1305, 1312 (2009); Cal. Civ. Proc. Code

24 § 418.10(a)(1).

25

26

27

28

---

[3] *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773 (2017); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017); *Walden v. Fiore*, 571 U.S. 277 (2014); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

**A.   There Is No General Jurisdiction Over Hayes or HDR in California.**

In *Daimler*, the Supreme Court reinforced that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  571 U.S. at 137.  For an individual such as Hayes, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile"; for a corporation like HDR, "the place of incorporation and principal place of business are 'paradig[m] … bases for general jurisdiction.'"  *Id.* (citations omitted).  As the Court explained, "[t]hose affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."  *Id.*[4]  In reversing a California court's exercise of general jurisdiction over Daimler AG based on the California operations of Daimler's U.S. subsidiary, the Supreme Court rejected "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" as "unacceptably grasping."  *Id.* at 138.  For the same reasons, general jurisdiction is not properly exercised over Hayes or HDR in California.

Echoing the test rejected by the Supreme Court in *Daimler*, Plaintiffs assert that Hayes "regularly and systematically conducts business in California," FAC ¶ 11, but they do not allege that Hayes is domiciled in California.  To be sure, he is not.  He is a legal permanent resident of Hong Kong, has been domiciled in Asia since 2008, and has never lived in California.  Hayes Decl. ¶ 2.  California is thus not the "paradigm forum for the exercise of general jurisdiction" over Hayes.  *Daimler*, 571 U.S. at 137.  And even accepting Plaintiffs' allegations that Hayes has visited California to attend a conference or give an interview and "directs" HDR-affiliate ABS's operations from Asia, FAC ¶ 11, that would not amount to exceptional circumstances supporting the exercise of general jurisdiction in a place other than his domicile.  *See Cornelison v. Chaney*, 16 Cal. 3d 143, 149 (1976) (holding that an individual's "activity in California consist[ing] of some 20 trips a year into the state over the past 7 years to deliver and obtain goods, an independent contractor relationship with a local broker, and a Public Utilities Commission

---

[4] Unlike specific jurisdiction, which is analyzed based only on "the nature and quality of a nonresident defendant's contacts with the forum … at the time the plaintiff's cause of action arose," *Strasner v. Touchstone Wireless Repair & Logistics, LP*, 5 Cal. App. 5th 215, 226 (2016), general jurisdiction is assessed through the "time the complaint was served," *DVI, Inc. v. Super. Ct.*, 104 Cal. App. 4th 1080, 1101 (2002).

license" was insufficient to exercise general jurisdiction); *Thomson v. Anderson*, 113 Cal. App. 4th 258, 270–71 (2003) (finding no general jurisdiction over nonresident board members despite occasional visits to the state). In any event, Hayes has no involvement in the development or maintenance of the BitMEX trading platform technology—either on the back end or the front end, which is ABS's role in the HDR Group—and Hayes has no duties or responsibilities in connection with ABS's day-to-day operations. Hayes Decl. ¶ 7.

Plaintiffs' case for general jurisdiction over HDR is equally flawed. General jurisdiction over a corporation is appropriate "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 122 (citation omitted). Plaintiffs rely on two sleights of hand in their effort to escape that HDR is a holding company incorporated and with its principal place of business in Seychelles under governing law, and therefore satisfies neither of the paradigm bases for general jurisdiction. First, they attempt to collapse HDR and all of its subsidiaries into a single enterprise, which they call "BitMEX" (which is a service mark, not an entity). Second, they allege that "BitMEX" has "systematic contacts with the Bay Area" so as to make the exercise of jurisdiction over that single enterprise proper. Neither tactic has merit.

First, Plaintiffs acknowledge that the "BitMEX" office in San Francisco is operated by HDR's affiliate ABS. FAC ¶¶ 9-10; *see also* Affidavit of Service ¶ 5 (Dec. 17, 2019) ("I used the intercom system to call up a listing for Suite 200, called ABS Global Trading Limited."). Yet they simply ignore the distinction between the entities on the basis that the name "BitMEX" is used on LinkedIn and in connection with job listings for ABS positions in San Francisco. *See* FAC ¶¶ 28-31. But there is nothing improper or legally significant about using the same name to refer to affiliated companies. *See Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 550 (2000) ("[T]he use of 'we' or 'the Company' or 'Diamond' in the several reports in evidence did not prove that Diamond and Sonora Mining were, in actual practice, a single entity.").[5] And that

---

[5] *See also Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-CV-01001-CAS, 2016 WL 9024808, at *5 (C.D. Cal. May 23, 2016) ("[R]eferring to a parent and subsidiary collectively or as a common enterprise is insufficient to demonstrate an alter ego relationship."); *ViewSonic Corp. v. Sampo Tech. Corp.*, No. CV 08-3244 PSG, 2011 WL 13213557, at *5 (C.D. Cal. Feb. 10, 2011) (same); *cf. BBA Aviation PLC v. Super. Ct.*, 190 Cal. App. 4th 421, 435

is particularly true here given that BitMEX is not the name of either entity—or of any entity—but is only a registered service mark.  FAC ¶ 38; Compl. ¶ 9.

In an effort to disregard the separateness of these two entities, Plaintiffs rely on the alter ego doctrine, which requires both (1) that "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) that "there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond*, 83 Cal. App. 4th at 538.  While the FAC includes conclusory allegations related to the first "essential element" of the doctrine, Plaintiffs cannot possibly establish the second element, which requires "wrongdoing by either [the parent] or [subsidiary]" related to an abuse of the corporate form or "injustice flowing from the recognition of the [subsidiary]'s separate corporate identity." *Id.* at 539.

Here, Amato and Capone contracted with HDR in 2015 and allege their SAFEs converted that same year, years before ABS existed.  The "acts in question" relate solely to HDR.  Indeed, Plaintiffs do not allege that ABS or its San Francisco employees have anything to do with their claims, which involve contracts with HDR negotiated by Hayes in Hong Kong.  Moreover, Plaintiffs do not and cannot allege wrongdoing in connection with ABS's corporate form such that it would be inequitable to treat HDR's acts as HDR's acts alone.  ABS did not exist when HDR contracted with Plaintiffs and allegedly conducted an equity financing that triggered the conversion of Plaintiffs' equity interests in HDR.  Nor did HDR have operations in California at the time of contracting or the alleged equity financing that were transferred to ABS to avoid jurisdiction in California.  Because ABS and its incorporation have absolutely nothing do with the claims here, there would be no "inequitable result if the corporate veil were not pierced." *Cf. Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1082 (N.D. Cal. 2019) (finding second alter ego element met where UK company allegedly "direct[ed] a shell game" by "acquir[ing] a company that retained the alleged environmental liabilities" at issue in the case and engaging in a "post-acquisition restructuring of its liabilities").

---

(2010) (parent's "branding on [subsidiary's] property" does not support general jurisdiction over parent); *DVI*, 104 Cal. App. 4th at 1096 (same as to advertising in California).

Indeed, this case presents the opposite of a situation in which the "extreme remedy" of alter ego is warranted because there is no possible basis to invoke that remedy. *Sonora Diamond*, 83 Cal. App. 4th at 538–39. Defendants know of no case in which a California court has exercised jurisdiction over a foreign corporation alleged to have wronged an out-of-state plaintiff in connection with acts outside the country simply because several years later that foreign corporation created an affiliate doing business in California.[6] In fact, in seeking to use ABS's California presence to hold HDR to account here, Plaintiffs are essentially engaged in reverse veil-piercing, which California courts have soundly rejected in the corporate context. *See Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1524 (2008).

Second, even assuming that ABS's contacts could be imputed to HDR, that would not be a "basis to subject [HDR] to general jurisdiction in California," because its "contacts with the State hardly render it at home there." *Daimler*, 571 U.S. at 136; *see also Young v. Daimler AG*, 228 Cal. App. 4th 855, 865–67 (2014).[7] Given "the Supreme Court['s explanation] that courts must consider all of a defendant's contacts," a defendant is not at home in California where its "contacts with the rest of the world—apart from California—are very substantial," even if it has a subsidiary "incorporated and headquartered in California." *Williams v. Yamaha Motor Co.*, No. CV-1305066 (BRO), 2014 WL 12597039, at *7 (C.D. Cal. Aug. 19, 2014), *aff'd*, 851 F.3d 1015 (9th Cir. 2017). HDR has more than a dozen affiliates around the world, only one of them— Delaware-incorporated ABS—with employees in California. Hayes Decl. ¶¶ 6–7. And those ABS employees are contracted to work not on obtaining financing for HDR or on developing the BitMEX trading engine at the core of the HDR Group's business, but on developing the front-end

---

[6] Plaintiffs' suggestion that forcing them to sue in Seychelles would be inequitable because Hayes responded to a badgering interview question with a tongue-in-cheek reference to a "coconut" being the currency of Seychelles disregards the focus of the second alter ego prong. There is no nexus between the "acts in question" and the later incorporation of an affiliate in Delaware that has an office in California. Likewise as to the allegations that an HDR co-founder notified Capone that Seychelles is the proper forum for suit against a Seychelles company. The place of HDR's incorporation at the time Plaintiffs contracted with it is completely unrelated to the incorporation of ABS years after the events underlying Plaintiffs' claims.

[7] The Supreme Court has rejected agency tests "less rigorous" than alter ego for imputing a subsidiary's contacts to a foreign parent for general jurisdiction purposes. *Daimler*, 571 U.S. at 134–36. Thus, this Court need not conduct any further analysis after concluding that Plaintiffs' alter ego theory fails at the second prong.

interface of the trading platform.  *Id.* ¶ 7.  The HDR Group's remaining operations are conducted overseas, and nine of the twelve members of the HDR Group advisory committee are also located overseas, with a majority in Hong Kong.  Hayes Decl. ¶ 6.  Further, U.S. persons are prohibited from trading on the BitMEX platform.  *Id.* ¶ 4.[8]  Plaintiffs cannot meet their burden to establish general jurisdiction over HDR even if its affiliates' contacts could be imputed to it.  *See BNSF*, 137 S.Ct. at 1559 (existence of more than 2,000 in-state employees "does not suffice to permit the assertion of general jurisdiction over claims … unrelated to any activity occurring in" the State).

### B.      There Is No Specific Jurisdiction Over Hayes or HDR in California.

"In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"  *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127).  And even where this "minimum contacts" test is met, "[t]he strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over [a defendant] under circumstances that would offend traditional notions of fair play and substantial justice," i.e., where the exercise of jurisdiction would be unreasonable.  *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113 (1987) (citations and internal quotations omitted).  Plaintiffs cannot establish that Hayes or HDR have case-specific minimum contacts with California or that it would be reasonable to exercise jurisdiction over them even if they did.  Therefore, the Court cannot exercise specific jurisdiction over Defendants either.

### 1.      Hayes and HDR Lack Case-Specific Minimum Contacts with the State.

In *Bristol-Myers*, the Supreme Court reversed a California Supreme Court decision affirming the exercise of jurisdiction over pharmaceutical company BMS in a lawsuit by non-residents asserting state-law claims based on injuries allegedly caused by BMS's Plavix drug. 137 S. Ct. at 1777.  It did so even though BMS had 160 employees, 250 sales representatives, and a state-government advocacy office in California, and had taken in more than $900 million from the State on sales of 187 million Plavix pills over a six-year period.  *Id.* at 1778.  After rejecting

---

[8] While Plaintiffs summarily allege that a handful of U.S. entities have traded on the BitMEX platform despite the terms of service prohibiting such trading, FAC ¶¶ 45-50, that would not establish California's general jurisdiction over HDR even if true.  Plaintiffs do not and cannot allege in good faith that the platform itself or a majority of its users are based in California.

California's "sliding scale approach" to specific jurisdiction—"which resembles a loose and spurious form of general jurisdiction"—the Court explained why jurisdiction was improper:

> The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, … all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction.

*Id.* at 1781–82. The same is true here.

Plaintiffs assert six state-law claims, falling into three categories, all arising from and relating to the same conduct. Plaintiffs' contract claims are based on HDR's alleged breach of the "contractual obligations" under the SAFE, including its "structuring [of] subsequent rounds of capital financing in order to avoid triggering the SAFE," "failing to inform or notify Plaintiff that the conditions for the triggering of the SAFE have been met," and "construing the term 'Equity Financing' in the SAFE in bad faith." FAC ¶¶ 182, 188. They claim "misrepresentations regarding the nature of [Plaintiffs'] investments in BitMEX and Defendants' intent to raise Equity Financing" in 2015, *id.* ¶ 162, and misrepresentations or omissions in 2018 and 2019 "regarding the non-occurrence or occurrence of events that triggered Plaintiffs' equity conversion rights" in 2015, *id.* ¶¶ 167-169; *accord id.* ¶ 200 (negligent misrepresentation). And they allege equitable claims based on "Mr. Amato's $30,000 investment and Mr. Capone's $25,000 investment into BitMEX" in 2015. *Id.* ¶ 192; *accord id.* ¶ 208. Plaintiffs do not allege that any of this conduct occurred in California. Nor could they because none did.

### (a)  No Conduct Related to the SAFEs Occurred in California.

Plaintiffs' contract and equitable claims, as well as their core misrepresentation theories, arise from conduct occurring in 2014 and 2015. *See Strasner*, 5 Cal. App. 5th at 226 ("The relevant time period for measuring the nature and quality of a nonresident defendant's contacts with the forum for purposes of specific jurisdiction is at the time the plaintiff's cause of action arose."). That is when Hayes, on behalf of HDR, negotiated the SAFEs with Amato and Capone. And HDR also secured the only other outside investments it has ever obtained in 2015. Hayes Decl. ¶ 17. During that time period, not only was Hayes living and working in Asia (as he has since 2008), but so was Amato, while Capone was and is a resident citizen of Australia. *Id.* ¶¶ 2,

11, 12, 15.  Amato and Capone do not claim that they or Hayes have been California residents at any time, let alone in 2014 and 2015.  And HDR was incorporated in Seychelles while the trading engine was being developed in Asia, just as it always has been.  *Id.* ¶¶ 5–6.  HDR did not even have a U.S. subsidiary until 2017.  *Id.* ¶ 7.  Thus, the SAFEs were neither negotiated nor executed in California, entered into by California residents, and did not call for performance in California.  *Id.* ¶¶ 11-16; *see also* Hayes Decl. Exs. A, B; *cf. Belmont Indus., Inc. v. Super. Ct.*, 31 Cal. App. 3d 281, 288 (1973) (declining to exercise jurisdiction under similar circumstances despite plaintiff's California residency).[9]  And while Plaintiffs allege that HDR obtained financing in 2015 in connection with SOSV's Chinaccelerator program, FAC ¶¶ 112-126, SOSV did not invest from California, Hayes Decl. ¶ 17, and is not alleged to be a California resident.  In fact, HDR has secured all of its outside investment from outside California.  *Id.*[10]

**(b)       The SAFEs' Choice-of-Law Clause Alone Is Insufficient.**

Absent any California conduct related to the SAFEs, Plaintiffs put great weight on the SAFEs' choice-of-law clause.  But the SAFEs do not have a California forum-selection clause and the Supreme Court has made clear that a choice-of-law "provision standing alone would be insufficient to confer jurisdiction."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (exercising jurisdiction over non-resident franchisee where Florida choice-of-law clause was "combined with the 20-year interdependent relationship [franchisee] established with Burger King's Miami headquarters").[11]  Plaintiffs' claims do not "arise out of or relate to" the SAFEs'

---

[9] For the first time in the FAC, Amato alleges that he assumed "BitMEX" would be opening offices in San Francisco, FAC ¶ 74, but a plaintiff's unexpressed assumptions that a defendant would eventually have contacts with a forum is irrelevant to the analysis.  The fact remains that HDR has never had employees in California and ABS did not exist until 2017.

[10] Plaintiffs allege that SOSV has an office in San Francisco.  FAC ¶¶ 3, 112.  But that is irrelevant given that SOSV did not invest from San Francisco, and Hayes has never even communicated with anyone from any such office, let alone visited it.  Hayes Decl. ¶ 17.

[11] *Accord Hunt v. Super. Ct.*, 81 Cal. App. 4th 901, 906–07 & n.3 (2000) (rejecting argument that choice-of-law provision "created sufficient minimum contacts" where it was defendant's only relevant contact with California and contract was not negotiated in California); *see also Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) ("The district court properly rejected the choice-of-law provision as a determinative factor in establishing jurisdiction."); *Lazar v. Charles Schwab & Co., Inc.*, No. CV 12–02141–BRO, 2014 WL 12680663, at *6 (C.D. Cal. July 3, 2014) (same); *Planet Bingo, LLC v. Wild Bill's Bingo, Inc.*, No. CV 09–7078 PA, 2010 WL 11515460, at *4 (C.D. Cal. Jan. 11, 2010) (same).

CASE NO. CGC-19-581267

choice-of-law clause, regardless of the test applied.[12]

Moreover, the choice-of-law clause only governs Plaintiffs' contract claims, *see* Hayes Decl. Exs. A & B ¶ 5(f) ("All rights and obligations *hereunder* will be governed by the laws of the State of California") (emphasis added), so it could not support jurisdiction in connection with Plaintiffs' misrepresentation or equitable claims in any event. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant."). Nor could it support jurisdiction over Hayes even for the contract claims, as Hayes negotiated and signed the SAFEs solely on HDR's behalf. *See* Hayes Decl. Exs. A & B, at 1 & signature page. He did not avail himself of California law.

### (c)    Plaintiffs' Peripheral California Allegations Are Irrelevant.

To the extent any of Plaintiffs' claims arise from communications in 2018 and 2019, those contacts do not constitute minimum contacts sufficient to exercise jurisdiction either. Plaintiffs do not even allege that Amato or Capone ever met or communicated with Hayes or any other HDR representative in California. *Cf.* FAC ¶ 9; Compl. ¶ 74 (alleging meetings with Hayes in Singapore and New York). In fact, while Plaintiffs allege that Hayes "regularly attends … cryptocurrency-related conferences and speaking events in California," they identify just two instances of Hayes speaking in San Francisco, FAC ¶¶ 41-42, and do not allege that any such appearances have any connection to, let alone caused, their claims. *See Picot v. Weston,* 780 F.3d 1206, 1215 (9th Cir. 2015) (no minimum contacts where defendant's two trips to California "grew incidentally out of broader efforts to develop and market the technology" at issue). Nor would Hayes' consultation of a California lawyer after Plaintiffs asserted that the SAFEs converted support jurisdiction.[13] Lastly, even if the contacts of ABS or BitMEX Ventures could

---

[12] While the California Supreme Court has applied a "substantial connection" test, *see Vons Cos., Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 452 (1996), aspects of that test were criticized in *Bristol-Myers*, and the U.S. Supreme Court has granted certiorari in its eighth personal jurisdiction case since 2011 to determine whether causation is required for claims to arise from or relate to forum contacts, *see Ford Motor Co. v. Bandemer*, No. 19-369, 2020 WL 254152 (Jan. 17, 2020); *Ford Motor Co. v. MT Eighth Dist. Ct.*, No. 19-368, 2020 WL 254155 (Jan. 17, 2020). Plaintiffs' claims are not substantially connected to any contacts Hayes or HDR have with California, let alone caused by any such contacts.

[13] *See Malone v. Equitas Reinsurance Ltd.*, 84 Cal. App. 4th 1430, 1441 (2000) (citing with approval Colorado court's holding that "[t]he fact that [a contract] makes it foreseeable that [defendant] would be hiring and directing lawyers in a Colorado lawsuit is insufficient.") (quoting

be imputed to HDR or Hayes, *see supra*, Plaintiffs' claims are unrelated to ABS's post-2017 development of the BitMEX website and BitMEX Ventures' post-2018 investment in other companies. *Cf. Grossman v. Schell & Kampeter, Inc.*, No. 2:18-cv-02344-JAM-AC, 2019 WL 1298997, at *3 (E.D. Cal. Mar. 21, 2019) (no personal jurisdiction despite defendant's maintenance of two of its four production facilities in California, given no alleged connection between plaintiff's suit and defendant's manufacturing presence in California).

### (d) The BitMEX Website Does Not Confer Jurisdiction.

Finally, the BitMEX website itself cannot serve as a basis for jurisdiction over HDR, let alone Hayes. U.S. persons are prohibited from trading on the BitMEX platform. Hayes Decl. ¶ 4; *see Jewish Def. Org., Inc. v. Super. Ct.*, 72 Cal. App. 4th 1045, 1060 (1999) (defendant's "posting [of] passive Web sites on the Internet is not sufficient to subject them to jurisdiction in California."). In any event, Plaintiffs' claims have nothing to do with the website.[14] Plaintiffs cannot bootstrap jurisdiction based on a website available worldwide that not only fails to target California residents, but prohibits their interaction with the website's core functionality.

In short, Plaintiffs "are not California residents and do not claim to have suffered harm in that State. In addition, … all the conduct giving rise to [Plaintiffs'] claims occurred elsewhere." *Bristol-Myers*, 137 S. Ct. at 1782. As in *Bristol-Myers*, "[i]t follows that the California courts cannot claim specific jurisdiction" over Hayes or HDR. *Id.*

### 2. Exercising Personal Jurisdiction Would Be Unreasonable.

Plaintiffs' inability to establish minimum contacts precludes a finding of specific jurisdiction. But a California court's assertion of personal jurisdiction over HDR and Hayes would be unreasonable in any event. None of the factors traditionally assessed under the

---

*Union Pac. R.R. Co. v. Equitas Ltd.*, 987 P.2d 954, 957 (Colo. Ct. App. 1999)); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (no minimum contacts where attorney travelled to California three times to meet with plaintiffs regarding defendant law firm's representation of plaintiff, because trips were merely "discrete events arising out of a case centered entirely [out of state]").

[14] *See Pavlovich v. Super. Ct.*, 29 Cal. 4th 262, 276 (2002) (questioning whether effects of posting copyrighted information on website "are even relevant to our analysis, because [plaintiff] does not assert a cause of action premised on the illegal pirating of copyrighted motion pictures."); *cf. Snowney v. Harrah's Entm't, Inc.*, 35 Cal. 4th 1054, 1068 (2005) (finding exercise of jurisdiction proper where "[p]laintiff's causes of action … [were] premised on alleged omissions during defendants' consummation of [online] transactions with California residents").

1 constitutional analysis supports the exercise of jurisdiction.[15]

2    First, California has no interest "in providing a forum for its residents" in this dispute

3 because no Plaintiff is a California resident. *Fisher*, 53 Cal. 2d at 225. Nor does California have

4 an interest "in regulating the business involved," *id.*, an investment in a Seychelles company

5 where the investor "has been advised that [the] instrument and the underlying securities have not

6 been registered under the Securities Act, or any state securities laws." Compl. Ex. 1, ¶ 4(b).

7    Second, "the relative availability of evidence and the burden of defense and prosecution in

8 one place rather than another" also weighs against the exercise of jurisdiction, because there is no

9 evidence in California and none of the parties are California residents and therefore will have to

10 travel regardless of where the suit is brought. *Fisher*, 53 Cal. 2d at 225. Amato's decision to

11 relocate from Asia after investing in a Seychelles company run from Asia does not entitle him to

12 sue in a distant forum that might be more convenient for him.

13    Third, both Seychelles, where HDR is based, and Hong Kong, where Hayes is a legal

14 permanent resident and was living at the time of the relevant events, have well-developed legal

15 systems that provide "ease of access to an alternative forum." *Id.*

16    Fourth, this is the only suit arising from HDR's contracts with Plaintiffs—Plaintiffs chose

17 to file here rather than where Defendants are amenable to suit—and therefore proceeding in

18 California is not necessary to "avoid[] [a] multiplicity of suits and conflicting adjudications." *Id.*

19    Fifth, and finally, none of Plaintiffs' causes of action "arose out of defendant's local

20 activities." *Id.* at 226. Exercising jurisdiction over Hayes or HDR on any of Plaintiffs' claims

21 would "offend traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113.

22 **IV.    CONCLUSION**

23    For these reasons, the Court should quash the service of summons to HDR Global Trading

24 Limited and to Arthur Hayes on the basis that it lacks personal jurisdiction over each Defendant.

25 ───────────────
   [15] *Compare Fisher Governor Co. v. Super. Ct.*, 53 Cal. 2d 222, 225–26 (1959)
26 (identifying five considerations and finding none supported jurisdiction, particularly where "[t]he
   causes of action did not arise out of and are not related to Fisher's activities in this state, and none
   of the relevant events occurred here."), *with Integral Dev. Corp. v. Weissenbach*, 99 Cal. App. 4th
27 576, 591–93 (2002) (finding same considerations supported jurisdiction given Plaintiff's "strong
   showing of the requisite minimal contacts with California, the nexus between those contacts and
28 the claims raised in the lawsuit, and the allegations [of] torts causing effects in California").

Dated: June 16, 2020                    JONES DAY


                                        By: /s/ Stephen D. Hibbard
                                            Stephen D. Hibbard

                                        Attorneys for Specially Appearing Defendant
                                        HDR GLOBAL TRADING LIMITED


Dated: June 16, 2020                    AKIN GUMP STRAUSS HAUER & FELD LLP


                                        By: /s/ Peter I. Altman
                                            Peter I. Altman

                                        Attorneys for Specially Appearing Defendant
                                        ARTHUR HAYES