# EXHIBIT 15

1  Stephen D. Hibbard (State Bar No. 177865)
   sdhibbard@jonesday.com
2  Matthew J. Silveira (State Bar No. 264250)
   msilveira@jonesday.com
3  Dennis F. Murphy, Jr. (State Bar No. 301008)
   dennismurphy@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA 94104
   Telephone:  +1.415.626.3939
6  Facsimile:  +1.415.875.5700

7  Attorneys for Specially Appearing Defendant
   HDR GLOBAL TRADING LIMITED
8
   Peter I. Altman (State Bar No. 285292)
9  paltman@akingump.com
   Shelly Kim (State Bar No. 322231)
10 shelly.kim@akingump.com
   AKIN GUMP STRAUSS HAUER & FELD LLP
11 1999 Avenue of the Stars
   Suite 600
12 Los Angeles, CA  90067
   Telephone:    +1.310.229.1000
13 Facsimile:    +1.310.229.1001

14 Attorneys for Specially Appearing Defendant
   ARTHUR HAYES
15

ELECTRONICALLY

F I L E D
Superior Court of California,
County of San Francisco

02/27/2020
Clerk of the Court
BY: SANDRA SCHIRO
Deputy Clerk

16            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17                    **COUNTY OF SAN FRANCISCO**

18
   FRANK AMATO and RGB COIN LTD.,
19
                    Plaintiffs,
20
            v.
21
   HDR GLOBAL TRADING LIMITED, d/b/a
22 BITMEX; ARTHUR HAYES; and
   DOES 1-10,
23
                    Defendants.
24

25

26

27

28

Case No: CGC-19-581267

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
SPECIALLY APPEARING DEFENDANTS'
MOTION TO QUASH SERVICE OF
SUMMONS FOR LACK OF PERSONAL
JURISDICTION**

Reservation Number:  02240504-12
Date:  May 4, 2020
Time:  9:30 a.m.
Judge:  Honorable Ethan P. Schulman
Department:  302

Complaint filed:  December 4, 2019

**CASE NO. CGC-19-581267**

**MPA ISO MOTION TO QUASH**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 7

II.     BACKGROUND ......................................................................................................... 8

    A.    The Parties............................................................................................................ 8

    B.    The Complaint...................................................................................................... 9

III.    ARGUMENT ............................................................................................................ 10

    A.    There Is No General Jurisdiction Over Hayes or HDR in California ................. 11

    B.    There Is No Specific Jurisdiction Over Hayes or HDR in California................. 15

        1.    Hayes and HDR Lack Case-Specific Minimum Contacts with the State........................................................................................................ 16

        2.    Exercising Personal Jurisdiction Would Be Unreasonable ...................... 20

IV.     CONCLUSION ......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

Page

CASES

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004)................................................................................................18

*Asahi Metal Indus. Co. v. Super. Ct.*,
  480 U.S. 102 (1987).................................................................................................................15, 21

*BBA Aviation PLC v. Super. Ct.*,
  190 Cal. App. 4th 421 (2010)................................................................................................13

*Belmont Indus., Inc. v. Super. Ct.*,
  31 Cal. App. 3d 281 (1973)..................................................................................................17

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)...........................................................................................................11, 15

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  137 S. Ct. 1773 (2017)........................................................................................................... passim

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)................................................................................................................17

*Cornelison v. Chaney*,
  16 Cal. 3d 143 (1976) ............................................................................................................12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................................... passim

*DVI, Inc. v. Super. Ct.*,
  104 Cal. App. 4th 1080 (2002)..............................................................................................11, 13

*Elkman v. Nat'l States Ins. Co.*,
  173 Cal. App. 4th 1305 (2009)..............................................................................................11

*Fastpath, Inc. v. Arbela Techs. Corp.*,
  760 F.3d 816 (8th Cir. 2014).................................................................................................18

*Fisher Governor Co. v. Super. Ct.*,
  53 Cal. 2d 222 (1959) ............................................................................................................20, 21

**MPA ISO MOTION TO QUASH**

*Ford Motor Co. v. Bandemer*,
    No. 19-369, 2020 WL 254152 (Jan. 17, 2020) ........................................................................18

*Ford Motor Co. v. MT Eighth Dist. Ct.*,
    No. 19-368, 2020 WL 254155 (Jan. 17, 2020) ........................................................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ...............................................................................................................11

*Grossman v. Schell & Kampeter, Inc.*,
    No. 2:18-cv-02344-JAM-AC, 2019 WL 1298997 (E.D. Cal. Mar. 21, 2019).........................19

*Hunt v. Super. Ct.*,
    81 Cal. App. 4th 901 (2000)...................................................................................................18

*Integral Dev. Corp. v. Weissenbach*,
    99 Cal. App. 4th 576 (2002)...................................................................................................20

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ...............................................................................................................11

*Jewish Def. Org., Inc. v. Super. Ct.*,
    72 Cal. App. 4th 1045 (1999).................................................................................................19

*Lazar v. Charles Schwab & Co., Inc.*,
    No. CV 12–02141–BRO, 2014 WL 12680663 (C.D. Cal. July 3, 2014) .................................18

*Long v. Nationwide Legal File & Serve, Inc.*,
    No. 12-CV-03578-LHK, 2013 WL 5219053 (N.D. Cal. Sept. 17, 2013)................................14

*Malone v. Equitas Reinsurance Ltd.*,
    84 Cal. App. 4th 1430 (2000).................................................................................................19

*Meadows v. Emett & Chandler*,
    99 Cal. App. 2d 496 (1950)....................................................................................................14

*Pavlovich v. Super. Ct.*,
    29 Cal. 4th 262 (2002) ...........................................................................................................20

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015).................................................................................................19

*Planet Bingo, LLC v. Wild Bill's Bingo, Inc.*,
    No. CV 09–7078 PA, 2010 WL 11515460 (C.D. Cal. Jan. 11, 2010).....................................18

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990)........................................................................................19

*Snowney v. Harrah's Entm't, Inc.*,
    35 Cal. 4th 1054 (2005) .............................................................................................20

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal. App. 4th 523 (2000)....................................................................................13, 14

*Strasner v. Touchstone Wireless Repair & Logistics, LP*,
    5 Cal. App. 5th 215 (2016)......................................................................................11, 17

*Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*,
    No. 2:16-CV-01001-CAS, 2016 WL 9024808 (C.D. Cal. May 23, 2016) ..............................13

*Thomson v. Anderson*,
    113 Cal. App. 4th 258 (2003)...................................................................................12, 19

*Tri-W. Ins. Servs., Inc. v. Seguros Monterrey Aetna, S.A.*,
    78 Cal. App. 4th 672 (2000) ......................................................................................19

*Union Pac. R.R. Co. v. Equitas Ltd.*,
    987 P.2d 954 (Colo. Ct. App. 1999) .............................................................................19

*ViewSonic Corp. v. Sampo Tech. Corp.*,
    No. CV 08-3244 PSG, 2011 WL 13213557 (C.D. Cal. Feb. 10, 2011).................................13

*Vons Cos., Inc. v. Seabest Foods, Inc.*,
    14 Cal. 4th 434 (1996) ...............................................................................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................................................11

*Williams v. Yamaha Motor Co.*,
    No. CV-1305066 (BRO), 2014 WL 12597039 (C.D. Cal. Aug. 19, 2014), *aff'd*,
    851 F.3d 1015 (9th Cir. 2017)....................................................................................15

*Young v. Daimler AG*,
    228 Cal. App. 4th 855 (2014).....................................................................................14

**STATUTES**

Cal. Civ. Proc. Code § 418.10(a)(1) ................................................................................11

Cal. Code Civ. Proc. § 410.10..........................................................................................10

**MPA ISO MOTION TO QUASH**

**OTHER AUTHORITIES**

ABS Global Trading Limited, https://www.absglobaltrading.com/ (last visited Feb.
    27, 2020) ..............................................................................................................8, 13

BitMEX, https://www.bitmex.com/ (last visited Feb. 18, 2020) .....................................8

BitMEX, Terms of Service, *available at* https://www.bitmex.com/app/terms (last
    visited Feb. 27, 2020)..............................................................................................8

TEAM – Grasshopper Capital, https://www.grasshopper.capital/about-us (last
    visited Feb. 27, 2020)..............................................................................................8

1    **I.    INTRODUCTION**

2            This lawsuit relates to a dispute between non-California entities and individuals.  It has no

3    material connection to California.  Under both U.S. Supreme Court and California precedent,

4    neither HDR Global Trading Limited ("HDR") nor Arthur Hayes (together, "Defendants") is

5    subject to general or specific jurisdiction in California.  The Court should thus grant Defendants'

6    motion to quash service of the summons for lack of personal jurisdiction.

7            Arthur Hayes and his two co-founders incorporated HDR in the Republic of Seychelles

8    while the three individuals were residing in Hong Kong.  HDR is a holding company that through

9    its affiliates owns the BitMEX-branded trading platform that allows the trading of digital assets

10   (such as cryptocurrency derivatives) by certain non-U.S. persons.  HDR's only office is in

11   Seychelles.  HDR's sole U.S. affiliate, a Delaware company incorporated in 2017 (years after the

12   events at issue), has a San Francisco office, but it contracts with HDR to develop the front-end

13   interface of the BitMEX platform; it is not HDR, but rather one of many HDR affiliates, most of

14   which are in Asia.  And Hayes, HDR's CEO, remains a U.S. expatriate, domiciled in Asia, as he

15   has been at all times relevant to this dispute.  Given these facts, California courts do not have

16   general jurisdiction over HDR or Hayes in California.

17           California courts likewise have no specific jurisdiction over this dispute.  Hayes met

18   Plaintiff Frank Amato when Hayes lived in Hong Kong and Amato, then a trader at JP Morgan,

19   lived in Singapore.  Both lived in those cities at the time they (Hayes on HDR's behalf) entered

20   the 2015 contract at the center of this dispute.  While that contract is governed by California law,

21   there is no forum selection clause, and the contract does not call for performance in California.

22   Moreover, other events that Amato claims affected his rights under the contract occurred outside

23   of California with non-California entities.  In fact, the only individuals and entities that have ever

24   invested in HDR—with the exception of Amato, who now lives in Ohio—made those

25   investments from outside of the U.S. altogether.  Notably, not even Amato or his co-plaintiff by

26   alleged assignment, RGB Coin Limited, claims to have any connections to California that bear on

27   this dispute, apart from the contract's choice-of-law law clause, which binding precedent holds is

28   insufficient for the exercise of jurisdiction over a foreign defendant.

## II.    BACKGROUND

### A.    The Parties

Plaintiff Frank Amato, a self-described "investment professional" and "angel investor with experience in FinTech platforms," resides in Akron, Ohio.  Compl. ¶¶ 7, 20.  At the time Amato entered the SAFE, however, he worked in JP Morgan's Singapore office.  Hayes Decl. ¶¶ 9, 10; *see also* TEAM – Grasshopper Capital, https://www.grasshopper.capital/about-us (last visited Feb. 27, 2020) ("Frank spent 17 years in JP Morgan's commodity trading group.  He successfully built JPM's Platinum Group Metals business in London and then served as a Senior Metals derivatives trader for Asia based in Singapore.").  Plaintiff RGB Coin Ltd. is an Ohio LLC whose sole identified members are Amato and an unnamed Portuguese national.  Compl. ¶ 8.

Defendant HDR is a holding company incorporated in the Republic of Seychelles.  Hayes Decl. ¶ 5; *see also* Compl. ¶ 10 (acknowledging Seychelles incorporation).  HDR is the sole owner through its affiliates of a digital asset trading platform that is operated under the registered service mark "BitMEX."  Hayes Decl. ¶ 4; *see also* BitMEX, https://www.bitmex.com/ (last visited Feb. 27, 2020).  U.S. investors are expressly prohibited from accessing and trading on the BitMEX platform.  Hayes Decl. ¶ 4; *see also* BitMEX, Terms of Service, *available at* https://www.bitmex.com/app/terms (last visited Feb. 27, 2020).

HDR has nearly a dozen affiliates around the world, including in Hong Kong and Singapore (collectively, the "HDR Group"), but HDR's only office is in Seychelles, where corporate records are maintained and where the board of directors met shortly before the complaint was filed.  Hayes Decl. ¶¶ 5–6.  HDR's sole affiliate in the U.S. is ABS Global Trading Limited ("ABS"), which was incorporated in Delaware in 2017 and presently has an office in San Francisco.  *Id.* ¶ 7; *see also* ABS Global Trading Limited, https://www.absglobaltrading.com/ (last visited Feb. 27, 2020).  ABS provides contract-based software development, software engineering, and digital security services to HDR, including developing the front-end of the BitMEX trading platform.  Hayes Decl. ¶ 7.  The HDR Group's only other contact with the U.S. is through a business unit that uses the trade name BitMEX Ventures.  That unit was created in 2018 to invest in other companies.  Hayes Decl. ¶ 8.  BitMEX Ventures has no role in outside

1    investments in HDR.  *Id.*

2        Defendant Arthur Hayes is a co-founder and the CEO of HDR.  Hayes Decl. ¶ 1.  Hayes is

3    a legal permanent resident of Hong Kong, where he moved in 2008.  *Id.* ¶ 2.  Hayes has not

4    resided in the U.S. since moving to Asia in 2008, and has never resided in California.  *Id.*

5        **B.    The Complaint**

6        Plaintiffs allege that after nearly a year of correspondence about a potential equity

7    investment in HDR, Amato and HDR entered a Simple Agreement for Future Equity ("SAFE") in

8    June 2015.  Compl. ¶¶ 1–3, 35–41, 45 & Ex. 1.  Under the SAFE, Amato invested $30,000 for a

9    right to receive shares in HDR subject to certain antecedent conditions set forth in the contract,

10   including completion of an "Equity Financing," defined as "a bona fide transaction or series of

11   transactions with the principal purpose of raising capital, pursuant to which the Company issues

12   and sells Preferred Shares at a fixed pre-money valuation."  *Id.* Ex. 1 §§ 1, 2.  In an email, Hayes

13   told Amato the shares would convert at the "next financing round," which HDR anticipated

14   raising "shortly after completion" of a start-up accelerator program known as Chinaccelerator,

15   "which ends in November" 2015.  *Id.* ¶ 39.[1]  Tellingly, the complaint is silent as to where Amato

16   met Hayes, where the contract was entered, or where those individuals resided at the time of

17   contracting.  The only places it mentions Hayes and Amato meeting are Singapore (*id.* ¶ 25) and

18   New York (*id.* ¶ 74).

19       Plaintiffs allege that in late 2015, HDR obtained financing from other sources, including

20   "SOSV [a venture capital firm] and its Chinaaccelerator program," and an individual named

21   Guido Capone, that constituted Equity Financings under the SAFE.  Compl. ¶¶ 4, 55–73.  The

22   complaint does not allege where either financing was obtained.  Plaintiffs also allege that, when

23   asked in 2018 and 2019, Hayes informed Amato that the financing required for a conversion had

24   not yet occurred.  Compl. ¶¶ 4, 74–84.  Based on these allegations, Amato asserts claims for

25   breach of contract and the implied covenant of good faith and fair dealing (Counts 2 and 3),

26   _____
     [1] In contrast to the Complaint's description of Amato as an experienced investor, Plaintiffs
27   allege that HDR's CEO Hayes "had some experience in the financial industry, but scant track
     record of launching or running a fintech business and almost no experience heading his own firm.
28   Hayes also had no major institutional backers and was unable to raise funding from traditional
     sources." Compl. ¶ 18.

1   fraudulent and negligent misrepresentation related to the contract (Counts 1 and 5), and various

2   equitable theories stemming from the contract (Counts 4 and 6).

3          Plaintiffs offer nothing of substance, as they must, to connect their claims to California.

4   While they allege that HDR does business as and operates in all jurisdictions including California

5   under the trade name BitMEX, Compl. ¶ 9, they do not allege that the SAFE was negotiated in

6   California, called for performance in California, or that the parties had any dealings in California.

7   And they acknowledge that "BitMEX" is a service mark registered in multiple international

8   jurisdictions. *Id.* Plaintiffs refer to a "BitMEX" office in San Francisco that focuses on

9   engineering, but again do not allege any connection between that office and their claims related to

10  Amato's investment in HDR or to the alleged conversion of his rights under that agreement

11  through an Equity Financing in HDR. *Id.* ¶¶ 10, 14. Likewise as to Plaintiffs' allegations

12  regarding BitMEX Ventures; in fact, Plaintiffs acknowledge that BitMEX Ventures "makes

13  equity investments *in other startup businesses*." *Id.* ¶ 10.h (emphasis added).

14         As for Hayes, Plaintiffs allege that he "manag[es] and direct[s] BitMEX's San Francisco

15  Bay Area-based operations," and has attended Bay Area events, namely, as a speaker at a

16  conference in 2018, but Plaintiffs do not allege that Hayes has any connection to California

17  related to the negotiation, execution, or performance of the SAFE. *Id.* ¶¶ 11, 15. To the contrary,

18  Plaintiffs allege only that, after Amato claimed that the SAFE should have converted following

19  HDR's completion of SOSV's Chinaccelerator program, Hayes scheduled a call with Amato to

20  discuss an "opinion from BitMEX's California attorney regarding the SAFE conversion." *Id.* ¶

21  81. And while Plaintiffs note that SOSV has a San Francisco office, they do not allege that office

22  has anything to do with the Chinaccelerator program SOSV runs from its China offices in

23  Shanghai and Shenzhen, or the investment SOSV made from Ireland. *Id.* ¶¶ 4, 57. Finally,

24  Plaintiffs repeatedly reference the SAFE's California choice-of-law clause, *id.* ¶¶ 10.a, 11.b, 16,

25  48 & Ex. 1, while ignoring that the SAFE does not have a California forum-selection clause.

26  **III.    ARGUMENT**

27         California courts are authorized to exercise jurisdiction over parties "on any basis not

28  inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc.

10                          **CASE NO. CGC-19-581267**

1    § 410.10.  Thus, the exercise of personal jurisdiction is ultimately governed by federal

2    constitutional law.  In more than a half-dozen decisions issued in the past decade, including two

3    arising from lawsuits filed in California, the Supreme Court has emphasized the limits of personal

4    jurisdiction.  *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773 (2017); *BNSF Ry. Co. v.*

5    *Tyrrell*, 137 S. Ct. 1549 (2017); *Walden v. Fiore*, 571 U.S. 277 (2014); *Daimler AG v. Bauman*,

6    571 U.S. 117 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Goodyear*

7    *Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).  Personal jurisdiction may only be

8    exercised where the party is "essentially at home" in a forum (general, or "all-purpose,"

9    jurisdiction), *Daimler*, 571 U.S. at 122 (quoting *Goodyear*, 654 U.S. at 919), or where there is an

10   "affiliation between the forum and the underlying controversy, principally, [an] activity or an

11   occurrence that takes place in the forum State" (specific, or "case-linked," jurisdiction), *Bristol-*

12   *Myers*, 137 S. Ct. at 1781 (quoting *Goodyear*, 654 U.S. at 919).  Because Plaintiffs cannot offer

13   facts justifying the exercise of either general or specific jurisdiction over Hayes or HDR, the

14   Court should quash service of the summons.  *See Elkman v. Nat'l States Ins. Co.*, 173 Cal. App.

15   4th 1305, 1312 (2009); Cal. Civ. Proc. Code § 418.10(a)(1).

16        **A.      There Is No General Jurisdiction Over Hayes or HDR in California.**

17        In *Daimler*, the Supreme Court reinforced that "only a limited set of affiliations with a

18   forum will render a defendant amenable to all-purpose jurisdiction there."  571 U.S. at 137.  For

19   an individual such as Hayes, "the paradigm forum for the exercise of general jurisdiction is the

20   individual's domicile"; for a corporation like HDR, "the place of incorporation and principal

21   place of business are 'paradig[m] … bases for general jurisdiction.'"  *Id.* (citations omitted).  As

22   the Court explained, "[t]hose affiliations have the virtue of being unique—that is, each ordinarily

23   indicates only one place—as well as easily ascertainable."  *Id.*[2]  In reversing a California court's

24   exercise of general jurisdiction over Daimler AG based on the California operations of Daimler's

25   U.S. subsidiary, the Supreme Court rejected "the exercise of general jurisdiction in every State in

26   _____
     [2] Unlike specific jurisdiction, which is analyzed based only on "the nature and quality of a
27   nonresident defendant's contacts with the forum … at the time the plaintiff's cause of action
     arose," *Strasner v. Touchstone Wireless Repair & Logistics, LP*, 5 Cal. App. 5th 215, 226 (2016),
28   general jurisdiction is assessed through the "time the complaint was served," *DVI, Inc. v. Super.
     Ct.*, 104 Cal. App. 4th 1080, 1101 (2002).

1  which a corporation 'engages in a substantial, continuous, and systematic course of business,'" as

2  "unacceptably grasping." *Id.* at 138.  For the same reasons, general jurisdiction is not properly

3  exercised over Hayes or HDR in California.

4        Echoing the test rejected by the Supreme Court in *Daimler*, Plaintiffs assert that Hayes

5  "regularly and systematically conducts business in California," Compl. ¶ 11, but they do not

6  allege that Hayes is domiciled in California.  To be sure, he is not.  He is a legal permanent

7  resident of Hong Kong, has been domiciled in Asia since 2008, and has never lived in California.

8  Hayes Decl. ¶ 2.  California is thus not the "paradigm forum for the exercise of general

9  jurisdiction" over Hayes.  *Daimler*, 571 U.S. at 137.  And even accepting Plaintiffs' allegations

10  that Hayes has visited California to attend a conference and, as HDR's CEO, "directs" subsidiary

11  ABS's operations from Asia, Compl. ¶ 11, that would not amount to exceptional circumstances

12  supporting the exercise of general jurisdiction in a place other than his domicile.  *See Cornelison*

13  *v. Chaney*, 16 Cal. 3d 143, 149 (1976) (holding that an individual's "activity in California

14  consist[ing] of some 20 trips a year into the state over the past 7 years to deliver and obtain

15  goods, an independent contractor relationship with a local broker, and a Public Utilities

16  Commission license" was insufficient to exercise general jurisdiction); *Thomson v. Anderson*, 113

17  Cal. App. 4th 258, 270–71 (2003) (finding no general jurisdiction over nonresident board

18  members despite occasional visits to the state).  In any event, Hayes has no involvement in the

19  development or maintenance of the BitMEX trading platform technology—either on the back end

20  or the front end, which is ABS's role in the HDR Group—and Hayes has no duties or

21  responsibilities in connection with ABS's day-to-day operations.  Hayes Decl. ¶ 7.

22        Plaintiffs' case for general jurisdiction over HDR is equally flawed.  General jurisdiction

23  over a corporation is appropriate "only when the corporation's affiliations with the State in which

24  suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum

25  State.'"  *Daimler*, 571 U.S. at 122 (citation omitted).  Plaintiffs rely on two sleights of hand in

26  their effort to escape that HDR is a holding company incorporated and with its principal place of

27  business in Seychelles under governing law, and therefore satisfies neither of the paradigm bases

28  for general jurisdiction.  First, they attempt to collapse HDR and all of its subsidiaries into a

single enterprise, which they call "BitMEX" (which is a service mark, not an entity), without alleging any facts to support alter ego treatment.  Second, they allege that "BitMEX" has "systematic contacts with the Bay Area" so as to make the exercise of jurisdiction over that single enterprise proper.  But neither tactic has legal merit.  Moreover, even if one accepted Plaintiffs' single enterprise theory as true for purposes of this motion, general jurisdiction still would not lie.

First, Plaintiffs know that the "BitMEX" office in San Francisco is operated by HDR's affiliate ABS.  *See* Affidavit of Service ¶ 5 (Dec. 17, 2019) ("I used the intercom system to call up a listing for Suite 200, called ABS Global Trading Limited.").[3]  Yet they do not even allege that ABS is the alter ego of HDR, the established predicate for imputing a subsidiary's contacts to a foreign parent.  *See Daimler*, 571 U.S. at 134–36 (rejecting "less rigorous" agency test for imputing a subsidiary's contacts to a foreign parent for general jurisdiction purposes).  Instead, they simply ignore the distinction between the entities on the basis that the name "BitMEX" is used on LinkedIn and in connection with job listings for positions with ABS in San Francisco.  *See* Compl. ¶¶ 9–10.  But there is nothing improper or legally significant about using the same name to refer to a parent and a subsidiary.  *See Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 550 (2000) ("[T]he use of "we" or "the Company" or "Diamond" in the several reports in evidence did not prove that Diamond and Sonora Mining were, in actual practice, a single entity.").[4]  And that is particularly true here given that BitMEX is not the name of either entity— or of any entity—but is only a registered service mark.  Compl. ¶ 9.

---

[3] *See also* https://www.absglobaltrading.com/ ("ABS Global Trading Limited is a Delaware entity incorporated in 2017 and having registered company number C4061111.  It has employees operating out of its San Francisco office.  Its employees provide contract-based services to its parent company, HDR Global Trading Limited, a Republic of Seychelles entity incorporated in 2014 and having registered company number 148707.").

[4] *See also Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-CV-01001-CAS, 2016 WL 9024808, at *5 (C.D. Cal. May 23, 2016) ("[R]eferring to a parent and subsidiary collectively or as a common enterprise is insufficient to demonstrate an alter ego relationship."); *ViewSonic Corp. v. Sampo Tech. Corp.*, No. CV 08-3244 PSG, 2011 WL 13213557, at *5 (C.D. Cal. Feb. 10, 2011) (same); *cf. BBA Aviation PLC v. Super. Ct.*, 190 Cal. App. 4th 421, 435 (2010) (parent's "branding on [subsidiary's] property" does not support general jurisdiction over parent); *DVI*, 104 Cal. App. 4th at 1096 (same as to subsidiary's advertising in California under parent's name).  Plaintiffs also allege that a third-party website lists "Jobs at HDR Global Trading" in San Francisco, Compl. ¶ 10.g, but not that HDR Global Trading Limited posted any listings on that site.  The fact remains that HDR Global Trading Limited does not have, and never has had, any employees in California.  Hayes Decl. ¶ 5.

**CASE NO. CGC-19-581267**

Moreover, application of the alter ego doctrine requires both (1) that "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) that "there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond*, 83 Cal. App. 4th at 538. While Plaintiffs have not alleged any facts to support the first "essential element" of the alter ego doctrine, which is reason enough to reject it, they have not pleaded and cannot possibly establish the second condition, which requires "wrongdoing by either [the parent] or [subsidiary]" or "injustice flowing from the recognition of the [subsidiary]'s separate corporate identity." *Id.* at 539; *see also Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499 (1950) ("The rule is firmly settled that no reliance can be had on this theory in the absence of *pleading* that recognition of the corporate entity would sanction a fraud or promote injustice."). Amato contracted with HDR in 2015 and claims the SAFE converted that year, two years before ABS even existed. The "acts in question" and any "alleged "wrongdoing" relate solely to HDR; indeed, Plaintiffs do not allege that ABS or its San Francisco employees have anything to do with their claims, which involve a contract with HDR negotiated by Hayes in Hong Kong. Thus, there are no alleged acts by ABS in California that would lead to "injustice" or an "inequitable result" were they not imputed to HDR for purposes of establishing jurisdiction. Indeed, this case presents the opposite of a situation in which the "extreme remedy" of alter ego is warranted because there is no possible basis to invoke that remedy. *Sonora Diamond*, 83 Cal. App. 4th at 538–39; *see also Long v. Nationwide Legal File & Serve, Inc.*, No. 12-CV-03578-LHK, 2013 WL 5219053, at *7 (N.D. Cal. Sept. 17, 2013) (Apart from arguing corporate entities "should be considered one entity, Plaintiffs neither argue nor produce evidence suggesting that an injustice or fraud would result if Nationwide were not considered the same entity as NLFS.").

Second, even assuming that ABS's contacts could be imputed to HDR, that would not be a "basis to subject [HDR] to general jurisdiction in California," because its "contacts with the State hardly render it at home there." *Daimler*, 571 U.S. at 136; *see also Young v. Daimler AG*, 228 Cal. App. 4th 855, 865–67 (2014). Given "the Supreme Court['s explanation] that courts must consider all of a defendant's contacts," a defendant is not at home in California where its

"contacts with the rest of the world—apart from California—are very substantial," even if it has a subsidiary "incorporated and headquartered in California." *Williams v. Yamaha Motor Co.*, No. CV-1305066 (BRO), 2014 WL 12597039, at *7 (C.D. Cal. Aug. 19, 2014), *aff'd*, 851 F.3d 1015 (9th Cir. 2017). HDR has more than a dozen affiliates around the world, only one of them— Delaware-incorporated ABS—with employees in California. Hayes Decl. ¶¶ 6–7. And those ABS employees are contracted to work not on obtaining financing for HDR or on developing the BitMEX trading engine at the core of the HDR Group's business, but on developing the front-end interface of the trading platform. *Id.* ¶ 7; *see also* Compl. ¶ 10 (identifying job titles of various web engineers in San Francisco). The HDR Group's remaining operations are conducted overseas, and nine of the twelve members of the HDR Group advisory committee are also located overseas, with a majority in Hong Kong. Hayes Decl. ¶ 6. Further, U.S. persons are prohibited from accessing and trading on the BitMEX platform. *Id.* ¶ 4. Plaintiffs cannot meet their burden to establish general jurisdiction over HDR even if its affiliates' contacts could be imputed to it. *See BNSF*, 137 S.Ct. at 1559 (substantial in-state business, including more than 2,000 employees, "does not suffice to permit the assertion of general jurisdiction over claims … that are unrelated to any activity occurring in" the State).

    **B.    There Is No Specific Jurisdiction Over Hayes or HDR in California.**

"In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127). And even where this "minimum contacts" test is met, "[t]he strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over [a defendant] under circumstances that would offend traditional notions of fair play and substantial justice," i.e., where the exercise of jurisdiction would be unreasonable. *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113 (1987) (citations and internal quotations omitted). Plaintiffs cannot establish that Hayes or HDR have case-specific minimum contacts with California or that it would be reasonable to exercise jurisdiction over them even if they did. Therefore, the Court cannot exercise specific jurisdiction over Defendants either.

1    **1.    Hayes and HDR Lack Case-Specific Minimum Contacts with the State.**

2    In *Bristol-Myers*, the Supreme Court reversed a California Supreme Court decision

3    affirming the exercise of jurisdiction over pharmaceutical company BMS in a lawsuit by non-

4    residents asserting state-law claims based on injuries allegedly caused by BMS's Plavix drug.

5    137 S. Ct. at 1777.  It did so even though BMS had 160 employees, 250 sales representatives, and

6    a state-government advocacy office in California, and had taken in more than $900 million from

7    the State on sales of 187 million Plavix pills over a six-year period.  *Id.* at 1778.  After rejecting

8    California's "sliding scale approach" to specific jurisdiction—"which resembles a loose and

9    spurious form of general jurisdiction"—the Court explained why jurisdiction was improper:

10
11    > The relevant plaintiffs are not California residents and do not claim
> to have suffered harm in that State.  In addition, … all the conduct
> giving rise to the nonresidents' claims occurred elsewhere.  It
12    > follows that the California courts cannot claim specific jurisdiction.

13    *Id.* at 1781–82.  The same is true here.

14    Plaintiffs assert six state-law claims, falling into three categories, all arising from and

15    relating to the same conduct.  Plaintiffs' contract claims are based on HDR's alleged breach of the

16    "contractual obligations" under the SAFE, including its "structuring [of] subsequent rounds of

17    capital financing in order to avoid triggering the SAFE," "failing to inform or notify Plaintiff that

18    the conditions for the triggering of the SAFE have been met," and "construing the term 'Equity

19    Financing' in the SAFE in bad faith."  Compl. ¶¶ 101, 106.  They claim "misrepresentations

20    regarding the nature of Plaintiff's investment in BitMEX and Defendants' intent to raise Equity

21    Financing" in 2015, *id.* ¶ 89, and misrepresentations or omissions in 2018 and 2019 "regarding

22    the non-occurrence of events that triggered Plaintiff's equity conversation [sic] rights" in 2015,

23    *id.* ¶ 90; *accord id.* ¶ 118 ("Defendants negligently misrepresented to Plaintiff that the SAFE

24    stood unconverted.").  And they allege equitable claims based on "Plaintiff's $30,000 investment

25    into BitMEX" in 2015.  *Id.* ¶ 110; *accord id.* ¶ 126.  Plaintiffs do not allege that any of this

26    conduct occurred in California.  Nor could they because none did.

27    **(a)    No Conduct Related to the SAFE Occurred in California.**

28    Plaintiffs' contract and equitable claims, as well as their core misrepresentation theories,

arise from and relate to conduct occurring in 2014 and 2015. *See Strasner*, 5 Cal. App. 5th at 226

("The relevant time period for measuring the nature and quality of a nonresident defendant's

contacts with the forum for purposes of specific jurisdiction is at the time the plaintiff's cause of

action arose."). That is when Hayes, on behalf of HDR, negotiated the SAFE with Amato. And

HDR also secured the only other outside investments it has ever obtained in 2015. Hayes Decl.

¶¶ 10–12. During that time period, not only was Hayes living and working in Asia (as he has

since 2008), but so was Amato. *Id.* ¶¶ 2, 10. Amato does not claim that he or Hayes has been a

California resident at any time, let alone in 2014 and 2015. And HDR was incorporated in

Seychelles while the trading engine was being developed in Asia, just as it always has been. *Id.*

¶¶ 5–6. HDR did not even have a U.S. subsidiary until 2017. *Id.* ¶ 7. Thus, the SAFE was

neither negotiated nor executed in California, it was not entered into by California residents, and

it did not call for performance in California. *Id.* ¶¶ 10–11; *see also* Compl. Ex. 1; *cf. Belmont*

*Indus., Inc. v. Super. Ct.*, 31 Cal. App. 3d 281, 288 (1973) (declining to exercise jurisdiction

under similar circumstances despite plaintiff's California residency). And while Plaintiffs allege

that HDR obtained financing in 2015 in connection with SOSV's Chinaccelerator program and

from an individual named Guido Capone, Compl. ¶¶ 57–73, neither SOSV nor Capone invested

from California, Hayes Decl. ¶ 12, and neither is alleged to be a California resident. In fact, HDR

has secured all of its outside investment from outside California. *Id.*[5]

**(b)      The SAFE's Choice-of-Law Clause Alone Is Insufficient.**

Absent any California conduct related to the SAFE, Plaintiffs put great weight on the

SAFE's choice-of-law clause. But the SAFE does not have a California forum-selection clause

and the Supreme Court has made clear that a choice-of-law "provision standing alone would be

insufficient to confer jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)

(exercising jurisdiction over non-resident franchisee where Florida choice-of-law clause was

"combined with the 20-year interdependent relationship [franchisee] established with Burger

---

[5] Plaintiffs allege that SOSV has an office in San Francisco. Compl. ¶¶ 4, 57. But that is irrelevant given that SOSV is not a California company, did not invest from its San Francisco office, and Hayes has never even communicated with anyone from that office, let alone visited it. Hayes Decl. ¶ 12.

1   King's Miami headquarters").  California and federal courts alike remain bound by this precedent.

2   *See Hunt v. Super. Ct.*, 81 Cal. App. 4th 901, 906–07 & n.3 (2000) (rejecting argument that

3   choice-of-law provision "created sufficient minimum contacts" where it was defendant's only

4   relevant contact with California and contract was not negotiated in California).[6]  Plaintiffs' claims

5   do not "arise out of or relate to" the SAFE's choice-of-law clause, regardless of the test applied.[7]

6       Moreover, the choice-of-law clause only governs Plaintiffs' contract claims, *see* Compl.

7   Ex. 1, ¶ 5(f) ("All rights and obligations *hereunder* will be governed by the laws of the State of

8   California.") (emphasis added), so could not provide a basis for jurisdiction in connection with

9   Plaintiffs' misrepresentation or equitable claims in any event.  *See Action Embroidery Corp. v.*

10  *Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for

11  each claim asserted against a defendant.").  Nor could it provide a basis for jurisdiction over

12  Hayes even for the contract claims, as Hayes negotiated and signed the SAFE solely on HDR's

13  behalf.  *See* Compl. Ex. 1 at 1 & signature page.  He did not avail himself of California law.

14      **(c)     Plaintiffs' Peripheral California Allegations Are Irrelevant.**

15      To the extent any of Plaintiffs' claims arise from communications in 2018 and 2019, those

16  contacts do not constitute minimum contacts sufficient to exercise jurisdiction either.  Plaintiffs

17  do not even allege that Amato ever met or communicated with Hayes or any other HDR

18  representative in California.  *Cf.* Compl. ¶¶ 25, 74 (alleging meetings with Hayes in Singapore

19  and New York).  In fact, while Plaintiffs allege that Hayes "regularly attends … cryptocurrency-

20  related conferences and speaking events in California," Compl. ¶ 11.a, they identify just one

---

21  [6] *See also Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) ("The

22  district court properly rejected the choice-of-law provision as a determinative factor in
    establishing jurisdiction."); *Lazar v. Charles Schwab & Co., Inc.*, No. CV 12–02141–BRO, 2014

23  WL 12680663, at *6 (C.D. Cal. July 3, 2014) (same); *Planet Bingo, LLC v. Wild Bill's Bingo,
    Inc.*, No. CV 09–7078 PA, 2010 WL 11515460, at *4 (C.D. Cal. Jan. 11, 2010) (same).

24
    [7] While the California Supreme Court has applied a "substantial connection" test, *see*

25  *Vons Cos., Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 452 (1996), aspects of that test were
    criticized in *Bristol-Myers*, and the U.S. Supreme Court recently granted certiorari in its eighth

26  personal jurisdiction case since 2011 to determine whether causation is required for claims to
    arise from or relate to forum contacts, *see Ford Motor Co. v. Bandemer*, No. 19-369, 2020 WL

27  254152 (Jan. 17, 2020); *Ford Motor Co. v. MT Eighth Dist. Ct.*, No. 19-368, 2020 WL 254155
    (Jan. 17, 2020).  Plaintiffs' claims are not substantially connected to any contacts Hayes or HDR

28  have with California, let alone caused by any such contacts.

1   event and do not allege that any such attendance has any connection to, let alone caused, their

2   claims.  *See Picot v. Weston,* 780 F.3d 1206, 1215 (9th Cir. 2015) (no minimum contacts where

3   defendant's two trips to California to assist plaintiff with technology demonstrations were not

4   envisioned in parties' oral agreement to develop the technology, but instead "grew incidentally

5   out of broader efforts to develop and market the technology").  Nor would Hayes' consultation of

6   a California lawyer after Plaintiffs asserted that the SAFE converted support jurisdiction.  *See*

7   *Malone v. Equitas Reinsurance Ltd.*, 84 Cal. App. 4th 1430, 1441 (2000) (citing with approval

8   Colorado holding that "[t]he fact that [a contract] makes it foreseeable that [defendant] would be

9   hiring and directing lawyers in a Colorado lawsuit is insufficient.") (quoting *Union Pac. R.R. Co.*

10   *v. Equitas Ltd.*, 987 P.2d 954, 957 (Colo. Ct. App. 1999)); *Sher v. Johnson*, 911 F.2d 1357, 1362

11   (9th Cir. 1990) (no minimum contacts where attorney travelled to California on three occasions to

12   meet with plaintiffs in connection with defendant law firm's representation of plaintiff, given that

13   the trips were merely "discrete events arising out of a case centered entirely [out of state]").

14      Lastly, even if the contacts of ABS or BitMEX Ventures could be imputed to HDR or

15   Hayes, *see supra*, Plaintiffs' claims are unrelated to ABS's post-2017 development of the

16   BitMEX website and BitMEX Ventures' post-2018 investment in other companies.  *Cf.*

17   *Grossman v. Schell & Kampeter, Inc.*, No. 2:18-cv-02344-JAM-AC, 2019 WL 1298997, at *3

18   (E.D. Cal. Mar. 21, 2019) (no personal jurisdiction despite fact that defendant corporation

19   maintained two of its four production facilities in California, given no alleged connection

20   between plaintiff's suit and defendant's manufacturing presence in California).[8]

21      **(d)**  **The BitMEX Website Does Not Confer Jurisdiction.**

22      Finally, the BitMEX website itself cannot serve as a basis for jurisdiction over HDR, let

23   alone Hayes.  U.S. persons are prohibited from trading on the BitMEX platform.  Hayes Decl. ¶

24   4; *see Jewish Def. Org., Inc. v. Super. Ct.*, 72 Cal. App. 4th 1045, 1060 (1999) (defendant's

---

25      [8] While HDR and Hayes agreed to waive any challenge to the method of service of
process after Plaintiffs purported to serve them at ABS's office (among other methods),

26   Defendants expressly reserved their right to challenge the basis for the Court's exercise of
personal jurisdiction.  *See* Stip. & Order to Remand Case to State Court ¶¶ 4-5 (Jan. 29, 2020).

27   Even if service had properly been effected, that would not suffice to establish personal
jurisdiction absent minimum contacts in California.  *See Thomson*, 113 Cal. App. 4th at 269; *Tri-*

28   *W. Ins. Servs., Inc. v. Seguros Monterrey Aetna, S.A.*, 78 Cal. App. 4th 672, 676 (2000).

"posting [of] passive Web sites on the Internet is not sufficient to subject them to jurisdiction in California."). In any event, Plaintiffs' claims have nothing to do with the website or any trading conducted via the website. *See Pavlovich v. Super. Ct.*, 29 Cal. 4th 262, 276 (2002) (questioning whether effects of posting copyrighted information on website "are even relevant to our analysis, because [plaintiff] does not assert a cause of action premised on the illegal pirating of copyrighted motion pictures."); *cf. Snowney v. Harrah's Entm't, Inc.*, 35 Cal. 4th 1054, 1068 (2005) (finding exercise of jurisdiction proper where "[p]laintiff's causes of action … [were] premised on alleged omissions during defendants' consummation of [online] transactions with California residents"). Plaintiffs cannot bootstrap jurisdiction based on a website available worldwide that not only fails to target California residents, but prohibits their interaction with the website.

In short, Plaintiffs "are not California residents and do not claim to have suffered harm in that State. In addition, … all the conduct giving rise to [Plaintiffs'] claims occurred elsewhere." *Bristol-Myers*, 137 S. Ct. at 1782. As in *Bristol-Myers*, "[i]t follows that the California courts cannot claim specific jurisdiction" over Hayes or HDR. *Id.*

### 2. Exercising Personal Jurisdiction Would Be Unreasonable.

Plaintiffs' inability to establish minimum contacts precludes a finding of specific jurisdiction. But a California court's assertion of personal jurisdiction over HDR and Hayes would be unreasonable in any event. None of the factors traditionally assessed under the constitutional analysis supports the exercise of jurisdiction. *Compare Fisher Governor Co. v. Super. Ct.*, 53 Cal. 2d 222, 225–26 (1959) (identifying five considerations and finding none of them supported jurisdiction, particularly where "[t]he causes of action did not arise out of and are not related to Fisher's activities in this state, and none of the relevant events occurred here."), *with Integral Dev. Corp. v. Weissenbach*, 99 Cal. App. 4th 576, 591–93 (2002) (finding same considerations supported jurisdiction given Plaintiff's "strong showing of the requisite minimal contacts with California, the nexus between those contacts and the claims raised in the lawsuit, and the allegations [of] torts causing effects in California").

First, California has no interest "in providing a forum for its residents" in this dispute because neither Amato nor RGB is a California resident. *Fisher*, 53 Cal. 2d at 225. Nor does

California have an interest "in regulating the business involved," *id.*, which is an investment in a Seychelles company where the investor "has been advised that [the] instrument and the underlying securities have not been registered under the Securities Act, or any state securities laws." Compl. Ex. 1, ¶ 4(b).

Second, "the relative availability of evidence and the burden of defense and prosecution in one place rather than another" also weighs against the exercise of jurisdiction, because there is no evidence in California and none of the parties are California residents and therefore will have to travel regardless of where the suit is brought. *Fisher*, 53 Cal. 2d at 225. Amato's decision to relocate from Asia after investing in a Seychelles company run from Asia does not entitle him to sue in a distant forum that might be more convenient for him.

Third, both Seychelles, where HDR is based, and Hong Kong, where Hayes is a legal permanent resident and was living at the time of the relevant events, have well-developed legal systems that provide "ease of access to an alternative forum." *Id.*

Fourth, this is the only suit, and the only realistically possible suit, arising from the contract between Amato and HDR, and therefore proceeding in California is not necessary to "avoid[] [a] multiplicity of suits and conflicting adjudications." *Id.*

Fifth, and finally, none of Plaintiffs' causes of action "arose out of defendant's local activities." *Id.* at 226. And were the Court to conclude that any particular cause of action did arise out of local activities, it would necessarily be to a limited "extent" given that the SAFE was negotiated, executed, and performed outside of California, and there was no communication between the parties in California at any time.

Exercising jurisdiction over Hayes or HDR on any of Plaintiffs' claims would "offend traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113.

## IV.    CONCLUSION

For these reasons, the Court should quash the service of summons to HDR Global Trading Limited and to Arthur Hayes on the basis that it lacks personal jurisdiction over each Defendant.

1    Dated: February 27, 2020                 JONES DAY

2

3                                     By: */s/ Stephen D. Hibbard*

4                                         Stephen D. Hibbard

                                    Attorneys for Specially Appearing Defendant

5                                     HDR GLOBAL TRADING LIMITED

6    Dated: February 27, 2020                 AKIN GUMP STRAUSS HAUER & FELD LLP

7

8                                     By: */s/ Peter I. Altman*

9                                         Peter I. Altman

10                                     Attorneys for Specially Appearing Defendant

11                                     ARTHUR HAYES

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MPA ISO MOTION TO QUASH**