# EXHIBIT 16

Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Attorneys for Specially Appearing Defendant
HDR GLOBAL TRADING LIMITED

Peter I. Altman (State Bar No. 285292)
paltman@akingump.com
Shelly Kim (State Bar No. 322231)
shelly.kim@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone: +1.310.229.1000
Facsimile: +1.310.229.1001

Attorneys for Specially Appearing Defendant
ARTHUR HAYES

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**06/23/2020**
**Clerk of the Court**
BY: RONNIE OTERO
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| FRANK AMATO, RGB COIN LTD., and ELFIO GUIDO CAPONE on behalf of the G AND M CAPONE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; ABS GLOBAL TRADING LIMITED; and DOES 1-10,<br><br>Defendants. | Case No: CGC-19-581267<br><br>**SPECIALLY APPEARING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL TO PRODUCE DOCUMENTS, PROVIDE FURTHER RESPONSES TO SPECIAL INTERROGATORIES AND REQUESTS FOR ADMISSION, AND FOR SANCTIONS**<br><br>**DISCOVERY**<br><br>Date: July 7, 2020<br>Time: 9:00 a.m.<br>Judge: Honorable Ethan P. Schulman<br>Department: 302<br><br>Complaint filed: December 4, 2019<br>First Am. Compl. filed: April 27, 2020 |

**CASE NO. CGC-19-581267**

I.      INTRODUCTION ............................................................................................................. 5

II.     BACKGROUND ............................................................................................................... 6

        A.      The Parties ........................................................................................................... 6

        B.      Plaintiffs' Allegations ......................................................................................... 7

        C.      Procedural History .............................................................................................. 8

        D.      The Discovery at Issue in Plaintiffs' Motion to Compel ................................... 10

                1.      Meet and Confer Discussions ................................................................. 10

                2.      Defendants' Document Productions and Substantive Responses ............. 11

III.    ARGUMENT ................................................................................................................... 12

        A.      Plaintiffs Have Not Demonstrated Their Discovery Requests Are Related
                to the Jurisdictional Issues Presented by the Motion to Quash ........................... 12

                1.      Plaintiffs May Only Obtain Relevant Jurisdictional Discovery ............... 12

                2.      Plaintiffs Fail to Address Defendants' Relevance, Overbreadth, and
                        Burden Objections .................................................................................. 13

        B.      Plaintiffs' Arguments Do Not Support the Discovery They Seek ....................... 15

                1.      The Issue of Possession, Custody, and Control Is a Red Herring ............. 16

                2.      Plaintiffs' Alter Ego Theory Fails as a Matter of Law ............................. 16

        C.      Plaintiffs' Meet and Confer Efforts Were Inadequate ......................................... 18

        D.      Plaintiffs' Sanctions Request Must Be Denied .................................................... 19

IV.     CONCLUSION ................................................................................................................ 19

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

**CASES**

*Am. Wave Machs., Inc. v. Surf Lagoons, Inc.*,
No. 13-cv-3204-CAB, 2014 WL 10475281 (S.D. Cal. Nov. 12, 2014) ...................................15

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017) ..........................................................................................................12

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017) .....................................................................................................12, 14

*Burdick v. Super. Ct.*,
233 Cal. App. 4th 8 (2015) .......................................................................................................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..........................................................................................................12, 14

*Deyo v. Kilbourne*,
84 Cal. App. 3d 771 (1978) ......................................................................................................16

*Doe v. U.S. Swimming, Inc.*,
200 Cal. App. 4th 1424 (2011)..................................................................................................19

*eMag Sols., LLC v. Toda Kogyo Corp.*,
No. C 02-1611-PJH, 2006 WL 3783548 (N.D. Cal. Dec. 21, 2006) ........................................13

*Goehring v. Super. Ct.*,
62 Cal. App. 4th 894 (1998)......................................................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .................................................................................................................12

*In re Auto. Antitrust Cases I & II*,
135 Cal. App. 4th 100 (2005)....................................................................................................13

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
753 F.3d 521 (5th Cir. 2014).....................................................................................................17

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ............................................................................................................12, 15

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
213 F.3d 841 (5th Cir. 2000)............................................................................15

*PMC, Inc. v. Kadisha*,
78 Cal. App. 4th 1368 (2000)............................................................................16

*Postal Instant Press, Inc. v. Kaswa Corp.*,
162 Cal. App. 4th 1510 (2008)............................................................................17

*Sandler v. Sanchez*,
206 Cal. App. 4th 1431 (2012)............................................................................16

*Sinaiko Healthcare Consulting, Inc. v. Pac. Healthcare Consultants*,
148 Cal. App. 4th 390 (2007)............................................................................13

*Sonora Diamond Corp. v. Super. Ct.*,
83 Cal. App. 4th 523 (2000)............................................................................17, 18

*Strasner v. Touchstone Wireless Repair & Logistics, LP*,
5 Cal. App. 5th 215, 226 (2016) ............................................................................14

*Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*,
364 F. Supp. 3d 1061 (N.D. Cal. 2019) ............................................................................18

*Townsend v. Super. Ct.*,
61 Cal. App. 4th 1431 (1998)............................................................................18, 19

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................................12

*Weinstein v. Blumberg*,
25 Cal. App. 5th 316, 321 (2018) ............................................................................19

*West v. Johnson & Johnson Prod., Inc.*,
174 Cal. App. 3d 831 (1985)............................................................................16

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

# I.    INTRODUCTION

This action involves claims for breach and misrepresentation related to contracts Plaintiffs entered with Specially Appearing Defendants HDR Global Trading Limited ("HDR") and Arthur Hayes ("Hayes," together "Defendants").  But Plaintiffs' Motion to Compel further jurisdictional discovery responses from those Defendants is most notable for its omissions.

Factually, Plaintiffs' Motion fails to account for (1) when the contracts were negotiated, entered, and allegedly breached—2014 and 2015; (2) where the parties were located at the time of contracting and the alleged breach and misrepresentations—the Republic of Seychelles, Hong Kong, Singapore, and Australia; (3) when HDR affiliate and co-defendant ABS Global Trading Limited ("ABS"), the linchpin of Plaintiffs' jurisdictional theory, was formed—2017; and (4) what role ABS plays in the HDR Group—front-end user interface engineering, not soliciting outside investments or building the engine that drives the BitMEX trading platform.

Legally, Plaintiffs ignore that due process concerns and the prevailing tests for general and specific personal jurisdiction impose limits on jurisdictional discovery.  Plaintiffs also ignore that the alter ego doctrine applies only in extreme cases where there would be an inequitable result because a controlling party would escape liability for alleged wrongdoing conducted through a corporation, not simply because a plaintiff wishes to litigate in a forum unrelated to the alleged conduct and a foreign defendant holds shares in a corporation operating in that forum.

And procedurally, Plaintiffs' Motion obscures the sheer volume of discovery requests at issue, the number of substantive responses Defendants have already provided, the materiality of the documents that Defendants produced, and the key objections on which Defendants stand.

When these omissions are accounted for, the scale of the fishing expedition Plaintiffs have embarked upon comes into view.  California courts were not created to right all perceived wrongs regardless of where they took place or to unduly burden non-residents.  Having entered into contracts to invest a combined $55,000 in a Seychelles company while living in Singapore and Australia five years ago, Plaintiffs now seek to impose massive expenses on foreign defendants to try to sue in a forum having nothing to do with the facts underlying their claims.  The Court should reject Plaintiffs' effort to forum shop by denying the Motion to Compel in its entirety.

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

## II.    BACKGROUND

### A.    The Parties

Plaintiff Frank Amato, a self-described "investment professional" and "angel investor with experience in FinTech platforms," resides in Ohio.  First Am. Compl. ("FAC") ¶¶ 6, 54.  At the time Amato entered the contract in dispute, however, he worked in JPMorgan's Singapore office.  *See* Declaration of Arthur Hayes in Support of Specially Appearing Defendants' Motion to Quash Service of Summons for Lack of Personal Jurisdiction ("Hayes Decl.") ¶¶ 12, 13 (filed June 16, 2020).[1]  Plaintiff RGB Coin Ltd., to which Amato claims to have assigned his rights, is an Ohio LLC whose sole identified members are Amato and an unnamed Portuguese national.  FAC ¶ 7.  Plaintiff Elfio Guido Capone is an Australian citizen residing in Adelaide, South Australia, who purports to bring this action on behalf of the G and M Capone Trust.  FAC ¶ 8.

Defendant HDR is a holding company incorporated in the Republic of Seychelles and founded in Hong Kong.  Hayes Decl. ¶¶ 3, 5.  HDR owns a digital asset trading platform operated under the registered service mark "BitMEX."  Hayes Decl. ¶ 4; *see also* BitMEX, https://www.bitmex.com/ (last visited June 23, 2020).  U.S. persons are expressly prohibited from accessing and trading on the BitMEX platform.  Hayes Decl. ¶ 4; *see also* BitMEX, Terms of Service, *available at* https://www.bitmex.com/app/terms (last visited June 23, 2020).

HDR has affiliates worldwide (collectively, the "HDR Group"), including in Hong Kong and Singapore, but HDR's only office is in Seychelles.  Hayes Decl. ¶¶ 5–6.  HDR's sole affiliate in the U.S. is ABS, which was incorporated in Delaware in April 2017 and currently has an office in San Francisco.  *Id.* ¶ 7.[2]  Since mid-2017, ABS has provided contract-based software development, software engineering, and digital security services to HDR, including developing the front-end of the BitMEX trading platform.  Hayes Decl. ¶ 7.

Defendant Arthur Hayes is a co-founder and the CEO of HDR.  Hayes Decl. ¶ 1.  Hayes is

---

[1] For the Court's ease of reference, a copy of the filed Hayes Declaration is attached as Exhibit A to the concurrently-filed Declaration of Stephen D. Hibbard ("Hibbard Decl.").

[2] Plaintiffs named ABS as a defendant in their First Amended Complaint ("FAC").  ABS demurred to the FAC.  *See* Demurrer (filed June 16, 2020).  All references to Defendants in this motion refer solely to the defendants subject to plaintiffs' Motion to Compel—HDR and Hayes.

a legal permanent resident of Hong Kong, where he moved in 2008. *Id.* ¶ 2. Hayes has not

resided in the U.S. since moving to Asia in 2008, and has never resided in California. *Id.*

### B. Plaintiffs' Allegations

Plaintiffs allege that after months of correspondence about potential equity investments in

HDR, Amato and HDR entered a Simple Agreement for Future Equity ("SAFE") in June 2015,

and Capone (on behalf of a trust) and HDR entered a SAFE in July 2015. FAC ¶¶ 1–2, 69-77,

88-93. Under the SAFEs, Amato invested $30,000 and Capone invested $25,000 for a right to

receive shares in HDR subject to certain conditions precedent set forth in the contract, including

completion of an "Equity Financing," defined as "a bona fide transaction or series of transactions

with the principal purpose of raising capital, pursuant to which the Company issues and sells

Preferred Shares at a fixed pre-money valuation." FAC ¶ 99; *accord* Compl. Ex. 1; Hayes Decl.

Exs. A, B. In an email, Hayes told Amato the shares would convert at the "next financing round,"

which HDR anticipated raising "shortly after completion" of a start-up accelerator program

known as Chinaccelerator, "which ends in November" 2015. FAC ¶ 75.

Plaintiffs allege that in late 2015, HDR obtained financing from other sources, including

"SOSV [a venture capital firm] and its Chinaaccelerator program," that constituted Equity

Financings under the SAFE. FAC ¶ 113; *see generally id.* ¶¶ 3, 110-126. The FAC does not

allege where the SOSV financing occurred. Plaintiffs also allege that, when asked in 2018 and

2019, Hayes made inconsistent representations to Amato and Capone about whether the financing

required for a conversion had occurred. FAC ¶¶ 3, 127-144. Based on these allegations,

Plaintiffs assert claims for breach, misrepresentation, and various equitable theories.

While Plaintiffs allege that HDR does business as BitMEX, and operates in all

jurisdictions, including California, under the trade name BitMEX, FAC ¶ 9, they do not allege

that the SAFEs were negotiated in California, that they called for performance in California, or

that the parties had any dealings in California. And they acknowledge that "BitMEX" is a service

mark registered in multiple international jurisdictions. Compl. ¶ 9. Rather than offer any specific

averments as to HDR—the Seychelles entity with which they contracted—Plaintiffs assign all

manner of allegations to "BitMEX" without acknowledging that BitMEX is not an entity. In any

event, these broad, unfocused allegations have nothing to do with their claims.

For example, Plaintiffs focus on the San Francisco offices of HDR affiliate ABS that provide engineering services, but again do not allege any connection between those ABS offices and their claims related to investments in HDR or to the alleged conversion of their rights under the SAFEs through an Equity Financing in HDR. FAC ¶¶ 9-10, 23. In a similar vein, Plaintiffs allege that ABS hosted a global off-site meeting for the HDR Group, that ABS employees and recruiting efforts use the BitMEX trade name, that BitMEX uses service providers in California, and that some U.S. persons trade on the BitMEX platform despite being prohibited from doing so. *Id.* ¶¶ 29-31, 34, 36-37, 45-50. Regardless of the truth of these allegations—most of which are false or otherwise misleading—none has any connection to Plaintiffs' claims regarding their 2015 investments that allegedly should have converted into equity interests that same year.

As for Hayes, Plaintiffs allege that he "manag[es] and direct[s] BitMEX's San Francisco Bay Area-based operations," and has attended Bay Area events. *Id.* ¶¶ 11, 41, 42. But Plaintiffs do not allege that Hayes has any connection to California related to the negotiation, execution, or performance of the SAFEs. To the contrary, Plaintiffs allege only that, after Amato claimed for the first time in 2018 that the SAFE should have converted following HDR's completion of SOSV's Chinaccelerator program in 2015, Hayes scheduled a call with Amato to discuss an "opinion from BitMEX's California attorney regarding the SAFE conversion." *Id.* ¶ 137. And while Plaintiffs note that "SOSV" has a San Francisco office, they do not allege that office has anything to do with the Chinaccelerator program SOSV runs from its China offices in Shanghai and Shenzhen, or the investment an SOSV entity made from Ireland. *Id.* ¶¶ 3, 112.

**C.    Procedural History**

After Defendants removed this action to federal court, the parties negotiated a stipulated remand to state court. *See* Hibbard Decl. ¶ 3. Plaintiffs obtained Defendants' agreement to "waive any challenge to defects in the manner of service of process of the Complaint and summons," which was a contested issue. *Id.* ¶ 4, Ex. B. Defendants expressly reserved all other rights, defenses, and arguments, including challenges to this Court's exercise of personal jurisdiction over Defendants. *Id.* Plaintiffs also obtained Defendants' agreement to "negotiate in

good faith as to a schedule for any jurisdictional discovery requested by Plaintiffs to ensure that Plaintiffs shall have opportunity to obtain any such discovery *approved by the Court or agreed by the parties*." *Id.* (emphasis added). But Plaintiffs did not negotiate the scope of jurisdictional discovery or even wait for Defendants to file their Motion to Quash before serving jurisdictional discovery requests. *See* Hibbard Decl. ¶ 5. Instead, on February 14, 2020, Plaintiffs served far-reaching jurisdictional discovery on both HDR and Hayes, including 24 Special Interrogatories ("SROGs"), 35 Requests for Production of Documents ("RFPs"), and 13 Requests for Admission ("RFAs") to HDR, and 23 SROGs, 38 RFPs, and 13 RFAs to Hayes. Nearly all of these requests were directed to contacts with the United States as a whole, not just California.

While Plaintiffs place great weight on a telephonic meet and confer before the stipulation was entered, Defendants never agreed to the extent and scope of jurisdictional discovery. Hibbard Decl. ¶ 6. Rather, Defendants agreed to negotiate a stipulation on the topic, which is precisely what the parties did, as discussed above. *Id.* And consistent with the "spirit" of the parties' Stipulation, Defendants have produced documents that are directly responsive to the jurisdictional analysis and have substantively answered dozens of discovery requests. *Id.* ¶ 7.

Further, Defendants notified Plaintiffs by the stipulated date of their intent to challenge personal jurisdiction before this Court. Hibbard Decl. ¶ 8. Counsel for HDR called Plaintiffs' counsel on February 12, 2020 and left a voicemail indicating that Defendants would challenge jurisdiction. *Id.* ¶ 9. Two days later, on February 14, 2020, after not receiving a return phone call, HDR's counsel confirmed in writing to Plaintiffs' counsel that a voicemail was left two days earlier and that Defendants would be challenging jurisdiction. *Id.* ¶ 10, Ex. C. Plaintiffs then served Defendants with voluminous purported jurisdictional-related discovery later that same day. *Id.* ¶ 11. Plaintiffs' assertion that Defendants violated the Stipulation is simply false.[3]

Defendants filed a Motion to Quash on February 27, 2020. After Defendants served responses to Plaintiffs' jurisdictional discovery, Plaintiffs amended the complaint, adding Capone as a plaintiff and ABS as a defendant. Defendants then timely renewed their Motion to Quash.

---

[3] Plaintiffs' false assertion that Defendants did not timely notify them of their intent to file a jurisdictional motion is ironic given that Plaintiffs did not serve their Motion to Compel until Saturday, June 13, 2020 – after the Friday, June 12 deadline. Hibbard Decl., ¶ 12, Ex. D.

### D. The Discovery at Issue in Plaintiffs' Motion to Compel

#### 1. Meet and Confer Discussions

Defendants timely responded to Plaintiffs' jurisdictional discovery on March 17, 2020, and produced documents on March 19, 2020. Declaration of Dennis Murphy ("Murphy Decl.") ¶ 2. On March 19, Plaintiffs' counsel asserted in a short email that Defendants' responses were inadequate and requested a meet and confer phone call, which the parties promptly convened the next day. Murphy Decl. ¶ 3, Ex. A. Defendants maintained their objections, among others, that Plaintiffs' requests were irrelevant, overbroad, and unduly burdensome, and emphasized that Plaintiffs had not provided any authority supporting their requests for Defendants' contacts with the United States as a whole and matters unrelated to the jurisdictional questions presented by the Motion to Quash. *Id.* ¶ 4. Following the discussion, Defendants understood that Plaintiffs would be following up soon thereafter with an email or letter detailing in writing Plaintiffs' position. *Id.* ¶ 5. Two months passed. Finally, following a telephonic meet and confer on May 18, 2020 related to the upcoming initial Case Management Conference, Plaintiffs provided their written position on Defendants' jurisdictional discovery responses on May 20, 2020. *Id.* ¶ 6, Ex. B.

Plaintiffs' May 20, 2020 letter outlined seven categories of information and corresponding RFPs purportedly related to each category for which plaintiffs sought further responses. Murphy Decl. ¶ 6, Ex. B. Without any supporting authority, Plaintiffs also stated in their letter that "Defendants' contacts with the U.S. generally are directly relevant to the personal-jurisdiction inquiry. If Defendants contend that California is not the proper forum to adjudicate the dispute, Plaintiffs are entitled to know where in the U.S. Defendants believe they can be found." *Id.* Thus, Plaintiffs confirmed that their jurisdictional discovery requests were a fishing expedition to determine where in the U.S. Defendants may be amenable to suit.

Other than identifying several document requests for supplementation from Defendants, Plaintiffs' May 20 letter only identified one SROG and no RFAs. Murphy Decl. ¶ 6, Ex. B. In subsequent correspondence from May 21 through June 1, 2020, Plaintiffs focused on seeking a supplemental document production from Defendants. *Id.* ¶ 7. Plaintiffs never attempted to meet and confer as to any RFAs or any SROGs beyond the one identified in the May 20 letter. *Id.* ¶ 9.

HDR supplemented its jurisdictional RFP and SROG responses and produced additional documents on June 8, 2020. *Id.* ¶ 10. Plaintiffs filed their Motion to Compel on June 12, 2020.

### 2. Defendants' Document Productions and Substantive Responses

Defendants have produced key documents and substantively responded to dozens of requests in connection with the jurisdictional issues in this case. In its first production, HDR produced a global organizational chart identifying ABS, a non-party at the time, as HDR's sole U.S. subsidiary. HDR produced ABS's Certificate of Incorporation in Delaware, which also identified that HDR owns the entire issued share capital of ABS and that ABS was not formed until April 27, 2017. Further, HDR produced the Service Agreement between HDR and ABS, identifying the scope of work between the two distinct legal entities, and ABS's current and prior leases for office space in San Francisco, California. Despite Plaintiffs' claim to the contrary, HDR *did* produce documents from its subsidiaries, as outlined above. In its second production, HDR produced its Seychelles incorporation document, its Terms of Service for using the trading platform, and two contracts between itself and entities based in California—both subject to and without waiving its objection that these contracts have no relevance to the suit.

Of the 31 RFPs for which Plaintiffs now seek supplemental responses, HDR responded substantively and/or produced documents in connection with 18 of them. Examples of the RFPs that Defendants objected to and Plaintiffs now move to compel include (1) documents sufficient to identify every "e-meeting" by any employee or executive of HDR with any person or entity located within the U.S. (No. 24), (2) communications with any regulator or similar governmental agency in the U.S. (No. 28), and (3) documents sufficient to show all wire payments made by HDR or any of its affiliates into the U.S. (No. 33) or made to HDR or any of its affiliates from the U.S. (No. 34). Similarly, of the 15 SROGs that Plaintiffs seek supplemental responses to, HDR responded substantively to 9 and properly objected to the rest.[4]

Further, Hayes has submitted detailed declarations in support of Defendants' Motions to

---

[4] In their Separate Statement, Plaintiffs failed to include HDR's supplemental responses to five RFPs (Nos. 5, 6, 11, 26, and 27) and two SROGs (Nos. 7 and 13), which HDR served four days *before* Plaintiffs filed their Motion to Compel. Defendants have included these responses in their Separate Statement. Hayes has incorporated all of HDR's responses by reference.

Quash Plaintiffs' Complaint and FAC for lack of jurisdiction.  *See generally* Hayes Decl. (filed Feb. 27, 2020 and June 16, 2020).  The sworn declarations address the following:  (1) the founding of HDR in Hong Kong, (2) outside equity investments in HDR and communications with Plaintiffs, (3) HDR's Seychelles office, location of corporate records, and board meetings; and (4) information about HDR's affiliates, including ABS.  Plaintiffs have offered nothing to support an inference that any of Hayes's statements would be contradicted by the over-reaching discovery they seek or to otherwise support their opposition to Defendants' Motion to Quash.

## III.    ARGUMENT

### A.    Plaintiffs Have Not Demonstrated Their Discovery Requests Are Related to the Jurisdictional Issues Presented by the Motion to Quash.

In a half-dozen decisions issued in the past decade, including two arising from lawsuits filed in California, the Supreme Court has repeatedly emphasized the limits of personal jurisdiction.[5]  Personal jurisdiction may only be exercised where the party is "essentially at home" in a forum (general, or "all-purpose," jurisdiction)—that is, a corporation's state of incorporation or principal place of business or an individual's domicile, absent exceptional circumstances—*Daimler*, 571 U.S. at 122 (quoting *Goodyear*, 654 U.S. at 919), or where there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" (specific, or "case-linked," jurisdiction), *Bristol-Myers*, 137 S. Ct. at 1781 (quoting *Goodyear*, 654 U.S. at 919).  Plaintiffs ignore these fundamental principles in seeking discovery unrelated to the jurisdictional issues presented by this case, involving contacts with the U.S. as a whole, and about certain entities with which Plaintiffs have no dispute.

### 1.    Plaintiffs May Only Obtain Relevant Jurisdictional Discovery.

Plaintiffs' Motion does not identify the extraordinary number or broad substantive scope of the discovery requests for which they seek further responses—nearly sixty (60) requests directed toward HDR alone, many of which have already been substantively answered and the

---

[5] *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773 (2017); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017); *Walden v. Fiore*, 571 U.S. 277 (2014); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

rest of which are facially irrelevant and overbroad. Plaintiffs simply ignore that any discovery

conducted prior to a jurisdictional ruling must be connected to the *jurisdictional* issues presented

by the motion to quash, and even then is subject to the court's discretion. *See Burdick v. Super.

Ct.*, 233 Cal. App. 4th 8, 30 (2015) ("Any discovery must be limited to the [specific issues] as

relevant to the jurisdictional analysis."); *Goehring v. Super. Ct.*, 62 Cal. App. 4th 894, 911 (1998)

(finding plaintiffs failed to sustain their jurisdictional burden but instructing trial court to take

"opportunity to exercise its discretion to determine whether jurisdictional discovery pertaining to

[the defendants] would be appropriate in this case").[6]

In short, the only reason Plaintiffs may serve any discovery on Defendants is because they

filed a lawsuit in this Court, the jurisdiction of which Defendants contest. But Plaintiffs do not

have an unencumbered right to discovery before the Court has considered the jurisdictional

issues. And Plaintiffs have consistently failed—both in meet-and-confer discussions and in their

Motion—to connect their purported jurisdictional requests to the facts alleged in the FAC and

addressed in the Motion to Quash, which was initially filed long before Plaintiffs' Motion to

Compel. *See In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 127 (2005) ("A plaintiff

attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to

conduct discovery of the jurisdictional facts *necessary to sustain its burden of proof*.") (emphasis

added). Plaintiffs simply have not met their burden in moving to compel. *See Sinaiko

Healthcare Consulting, Inc. v. Pac. Healthcare Consultants*, 148 Cal. App. 4th 390, 408 (2007).

**2.    Plaintiffs Fail to Address Defendants' Relevance, Overbreadth, and
Burden Objections.**

Plaintiffs purport to summarize Defendants' position in three main points (*see* Pltfs' Sep.

State., at 2), but they fail to account for the core of the objections Defendants specifically asserted

throughout their responses. Defendants objected to many of Plaintiffs' requests as neither

relevant nor reasonably calculated to lead to the discovery of admissible evidence bearing on

---

[6] *See also eMag Sols., LLC v. Toda Kogyo Corp.*, No. C 02-1611-PJH, 2006 WL
3783548, at *3 (N.D. Cal. Dec. 21, 2006) ("Jurisdictional discovery in this case shall be
*limited*. . . . This is not an authorization for discovery into the merits of the case, or for discovery
into the alleged conspiracy among the defendants.") (emphasis in original).

jurisdiction. Defendants further objected that many of Plaintiffs' requests were overbroad in that they sought information from HDR's affiliates that had no connection with the issues in the case or with California. Finally, Defendants objected that Plaintiffs' requests were overly broad, unduly burdensome, and oppressive as they were not limited in time or in scope to California and were not tailored to the jurisdictional issues presented by Defendants' Motion to Quash.

Plaintiffs have not addressed these issues in their Motion. Plaintiffs cannot justify, for example, why to establish jurisdiction in California they need documents identifying any bank account of HDR or of any of its affiliates worldwide with a corresponding branch in the U.S. (RFP No. 7), let alone in California. Nor do they explain how there is any jurisdictional connection between the claims at issue and any "e-meetings" of HDR with persons or entities located within the U.S. (RFP No. 24), given that Defendants never met with Plaintiffs in or obtained outside investment from California. Plaintiffs' failure to address Defendants' relevance, overbreadth, and burden objections is basis alone to deny the motion to compel in its entirety. The Court is not required to scour a 187-page separate statement to try to discern what Plaintiffs want and why they claim to be entitled to it when their brief fails to address those issues.

In fact, Defendants have good reason to assert the relevance, overbreadth, and burden objections that Plaintiffs ignore. Given that HDR is neither incorporated nor has its principal place of business in California, and Hayes is not and never has been domiciled in California, Plaintiffs cannot seek limitless jurisdictional discovery as to Defendants' contacts with the State under a general jurisdiction theory. General jurisdiction will not lie under *Daimler*.

Nor can Plaintiffs obtain jurisdictional discovery under a specific jurisdiction theory without alleging any underlying conduct in the suit occurring in California as required by *Bristol-Myers*. Plaintiffs' contract and equitable claims, as well as their core misrepresentation theories, arise from conduct occurring in 2014 and 2015.[7] That is when Hayes, on behalf of HDR, negotiated the SAFEs with Amato and Capone. And HDR also secured the only other outside investments it has ever obtained in 2015. Hayes Decl. ¶ 17; FAC ¶¶ 3, 110-126. During that time

_____

[7] *See Strasner v. Touchstone Wireless Repair & Logistics, LP*, 5 Cal. App. 5th 215, 226 (2016) ("The relevant time period for measuring . . . a nonresident defendant's contacts with the forum for purposes of specific jurisdiction is at the time the plaintiff's cause of action arose.").

period, not only was Hayes living and working in Asia (as he has since 2008), but so was Amato, while Capone was and is a resident citizen of Australia. Hayes Decl. ¶¶ 2, 11, 12, 15. Amato and Capone do not claim that they or Hayes have been California residents at any time, let alone in 2014 and 2015. And HDR was incorporated in Seychelles while the trading engine was being developed in Asia, just as it always has been. *Id.* ¶¶ 5–6. HDR did not even have a U.S. subsidiary until 2017. *Id.* ¶ 7. Thus, the SAFEs—the contracts at the heart of this dispute—were not negotiated or executed in California, or entered into by California residents, and did not call for performance in California. *Id.* ¶¶ 11-16; *see also* Hayes Decl. Exs. A, B.[8] And while Plaintiffs allege that HDR obtained financing in 2015 in connection with SOSV's Chinaccelerator program, FAC ¶¶ 112-126, SOSV did not invest from California, Hayes Decl. ¶ 17, and is not alleged to be a California resident.[9] Both the Hayes declarations and Defendants' substantive responses address all of these issues. *See* Sep. State., HDR's Responses to SROGs, Nos. 1-4, 6, 13-14. And Plaintiffs have not provided any basis to infer that further discovery would contradict Hayes's sworn declarations.[10] Plaintiffs simply ignore the substantive responses they do not like and move *en masse* for further discovery responses to obscure the irrelevance of their requests, while ignoring the overbreadth of those requests and their unduly burdensome nature.

## B. Plaintiffs' Arguments Do Not Support the Discovery They Seek.

Instead of addressing Defendants' core objections, Plaintiffs make two arguments that incorrectly assume they are entitled to any discovery they seek. First, Plaintiffs maintain Defendants must produce any documents within HDR's affiliates' possession, custody, and

---

[8] For the first time in the FAC, Amato alleges that he assumed "BitMEX" would be opening offices in San Francisco, FAC ¶ 74, but "expectations," particularly a plaintiff's unexpressed expectations as to what a defendant may do, are insufficient to "empower a State's courts to subject [a defendant] to judgment." *J. McIntyre Mach.*, 564 U.S. at 883. The fact remains that HDR has never had employees in California and ABS did not exist until 2017.

[9] Plaintiffs allege that SOSV has an office in San Francisco. FAC ¶¶ 3, 112. But that is irrelevant given that SOSV did not invest from San Francisco, and Hayes has never even communicated with anyone from any such office, let alone visited it. Hayes Decl. ¶ 17.

[10] *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000) (affirming denial of discovery where plaintiffs "offer no basis whatsoever to support inference" that additional jurisdictional discovery "would contradict [defendants'] sworn declarations") (emphasis in original); *Am. Wave Machs., Inc. v. Surf Lagoons, Inc.*, No. 13-cv-3204-CAB, 2014 WL 10475281, at *9 (S.D. Cal. Nov. 12, 2014) (same).

control without even attempting to demonstrate that the affiliates have anything to do with this suit or addressing the overbroad and burdensome nature of such requests. Second, Plaintiffs claim that they have established ABS as HDR's alter ego, without connecting their alter ego theory to specific discovery requests, and while ignoring that their alter ego theory is flawed.

### 1.  The Issue of Possession, Custody, and Control Is a Red Herring.

Plaintiffs' insistence on the production of documents within the possession, custody, and control of HDR's affiliates is unavailing for two reasons. First, Plaintiffs invested with and communicated with HDR, not any other affiliate of HDR. Hayes Decl. ¶¶ 13, 15 & Exs. A & B. Information related to HDR's affiliates worldwide has nothing to do with the jurisdictional issues in this case. Moreover, the sole U.S. affiliate of HDR—ABS—was incorporated in Delaware in 2017, years after Plaintiffs entered into their SAFEs with HDR. Hayes Decl. ¶ 7. Plaintiffs have not alleged—nor can they—any communications with ABS regarding their investments.[11]

Second, HDR *did* produce documents and information from ABS despite this case having no connection to any HDR affiliates. As explained above, HDR produced ABS's office leases and ABS's Certificate of Incorporation.[12] Plaintiffs are not entitled to jurisdictional discovery as to all of HDR's affiliates merely because they allege one affiliate is HDR's alter ego.

### 2.  Plaintiffs' Alter Ego Theory Fails as a Matter of Law.

Plaintiffs seek to establish ABS as the alter ego of HDR without tying that theory to the specific discovery requests at issue. But even *if* Plaintiffs had done so, there is no basis for broad discovery on that topic because Plaintiffs' alter ego theory is legally deficient.

The alter ego doctrine requires both (1) that "there must be such a unity of interest and

---

[11] Plaintiffs cannot pursue discovery of ABS on the ground that Hayes was an ABS officer either. While officers are generally considered agents of the corporations for which they work, *see PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381 (2000), corporations are liable only "for the tortious acts of their agents committed *within the scope* of the agency or employment." *Sandler v. Sanchez*, 206 Cal. App. 4th 1431, 1442 (2012) (emphasis added). And there are no allegations—and no basis to allege—that Hayes took any relevant actions on ABS's behalf.

[12] Plaintiffs cite *Deyo v. Kilbourne*, 84 Cal. App. 3d 771, 782 (1978), for the proposition that a party responding to discovery requests must obtain information from "sources" under his control. But *Deyo* did not involve defendants challenging jurisdiction, a plaintiff seeking information about a subsidiary from the parent-defendant, or a request for information from a defendant sued in his individual capacity about a company of which he is allegedly an officer. The same is true of *West v. Johnson & Johnson Prod., Inc.*, 174 Cal. App. 3d 831 (1985).

16

ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," *and* (2) that "there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000). But Plaintiffs are seeking to pierce the veil of a corporation that has nothing to do with the alleged misconduct and could not have had any involvement given that it did not even exist during the relevant period.

As an initial matter, "[t]he alter ego doctrine traditionally is applied to pierce the corporate veil so that a shareholder may be held liable for the debts or conduct of the corporation." *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1518 (2008). By contrast, Plaintiffs here seek to pierce ABS's corporate veil to impose liability in California for conduct that ABS's shareholder HDR took outside of California. To do so would require the Court to apply "reverse veil piercing," a variant of the alter ego doctrine that California courts have soundly rejected in the context of corporations. *See id.* at 1518, 1519. As in *Postal Instant Press*, ABS's corporate form "is not being used to evade [HDR's] liability"—HDR is willing to defend this case in any forum where it is subject to jurisdiction, including Seychelles—and to the extent HDR were found liable for its own conduct, Plaintiffs "can enforce the judgment against [HDR's] assets." *Id.* There is no reason to use ABS—a party who, like the corporation in *Postal Instant Press*, was uninvolved in the contract underlying the asserted claims—to drag HDR and Hayes into California. Reverse piercing "is an unacceptable shortcut to pursue plaintiffs' remedies." *Id.*[13]

Moreover, because Plaintiffs cannot prevail on the second prong of the alter ego doctrine, there is no basis for the broad discovery they apparently seek as to the first prong. While the FAC includes conclusory allegations related to the first "essential element" of the doctrine—and that is the element to which certain of their discovery requests appear to be directed—Plaintiffs cannot possibly establish the second element, which requires "wrongdoing by either [the parent] or [subsidiary]" related to an abuse of the corporate form or "injustice flowing from the

---

[13] Plaintiffs' reliance on federal authority for alter ego principles is misplaced. *See* Pltfs.' Mot., at Section II.A. California law governs the inquiry. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 530, 546 (5th Cir. 2014) (applying state law to determine whether to impute subsidiary's contacts with specific forum to parent).

recognition of the [subsidiary]'s separate corporate identity." *Sonora Diamond*, 83 Cal. App. 4th at 539. Amato and Capone contracted with HDR in 2015 and allege their SAFEs converted that same year, years before ABS existed. The "acts in question" here relate solely to HDR. Indeed, Plaintiffs do not allege that ABS or its San Francisco employees have anything to do with their claims, which involve contracts with HDR negotiated by Hayes in Hong Kong. Moreover, Plaintiffs do not and cannot allege wrongdoing in connection with ABS's corporate form such that it would be inequitable to treat HDR's acts as HDR's acts alone. ABS did not exist when HDR contracted with Plaintiffs and allegedly conducted an equity financing that triggered the conversion of Plaintiffs' equity interests in HDR. Nor did HDR have operations in California at the time of contracting or the alleged equity financing that were transferred to ABS to avoid jurisdiction in California. Because ABS has absolutely nothing do with the claims here, there would be no "inequitable result if the corporate veil were not pierced." *Cf. Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1082 (N.D. Cal. 2019) (finding second alter ego element met where UK company allegedly "direct[ed] a shell game" by "acquir[ing] a company that retained the alleged environmental liabilities" at issue in the case and engaging in a "post-acquisition restructuring of its liabilities").[14]

## C. Plaintiffs' Meet and Confer Efforts Were Inadequate.

Plaintiffs did not adequately meet and confer on many of the discovery requests identified in their Separate Statement. "The Discovery Act makes no exception based upon one's speculation that the prospect of informal resolution may be bleak." *Townsend v. Super. Ct.*, 61 Cal. App. 4th 1431, 1438 (1998). Plaintiffs' May 20, 2020 letter—the first time that Defendants received from Plaintiffs a detailed, written position on Defendants' March 17, 2020 responses— outlined seven categories of information with corresponding RFPs to which plaintiffs sought

---

[14] Plaintiffs' claim that forcing them to sue in Seychelles would be inequitable because Hayes responded to badgering interview questions, including with a tongue-in-cheek reference to a "coconut" as Seychelles currency, disregards the focus of the second alter ego prong. There is no nexus between the "acts in question" and the later incorporation of an affiliate in Delaware that has an office in California. Likewise as to the allegations that an HDR co-founder notified Capone that Seychelles is the proper forum for suit against a Seychelles company. The place of HDR's incorporation at the time Plaintiffs contracted with it is completely unrelated to the incorporation of ABS years after the events underlying Plaintiffs' claims.

1  further responses.  Murphy Decl. ¶ 6, Ex. B.  Other than identifying several RFPs, Plaintiffs' May

2  20 letter only identified one specific SROG and no RFAs.  *Id.*  During subsequent meet and

3  confer telephone discussions and email correspondence from May 21 through June 1, 2020,

4  Plaintiffs focused only on seeking a supplemental document production from Defendants.  *Id.* ¶ 7.

5  Plaintiffs cannot move to compel on requests as to which they did not meet and confer.  *See*

6  *Townsend*, 61 Cal. App. 4th at 1435 ("prior to the initiation of a motion to compel, the moving

7  party [must] declare that he or she has made a *serious attempt* to obtain an informal resolution of

8  *each issue*") (emphasis added) (internal quotation omitted).

9          **D.**      **Plaintiffs' Sanctions Request Must Be Denied.**

10        Defendants acted with "substantial justification" in objecting to Plaintiffs' jurisdictional

11  discovery requests.  *See* CCP § 2031.310(h); *Doe v. U.S. Swimming, Inc.*, 200 Cal. App. 4th

12  1424, 1434 (2011) ("'substantial justification' has been understood to mean that a justification is

13  clearly reasonable because it is well-grounded in both law and fact").  Here, Plaintiffs have not

14  demonstrated their discovery requests are related to the jurisdictional questions at issue.  *See,*

15  *supra*, Section III.A.  Further, Defendants were justified in rejecting Plaintiffs' attempt to impose

16  discovery obligations on HDR's affiliates that have no connection to the underlying claims in the

17  suit and in seeking discovery of nationwide contacts.  *See, supra*, Sections III.A.2 & B.1.

18  Plaintiffs' claim that Defendants violated a stipulation is also meritless.  *See, supra*, Section II.C.

19        Additionally, Plaintiffs failed to comply with the procedural requirements for a sanctions

20  request.  Where monetary sanctions are sought, the notice must be accompanied by "a declaration

21  setting forth facts supporting the amount" of the monetary sanction requested, CCP § 2023.040,

22  which provides a party essential "notice of its [potential] exposure[.]"  *Weinstein v. Blumberg*, 25

23  Cal. App. 5th 316, 321 (2018) (reversing order granting motion to compel and sanctions where,

24  among other reasons, "notice of motion and the declaration accompanying that notice of motion

25  states *no* amount, and states *no* facts supporting *any* amount of monetary sanction") (emphasis in

26  original).  Plaintiffs' sanctions request may be denied for this reason alone.

27  **IV.**    **CONCLUSION**

28        For these reasons, the Court should deny Plaintiffs' Motion to Compel in its entirety.

Dated: June 23, 2020                    JONES DAY


                                        By: */s/ Stephen D. Hibbard*
                                            Stephen D. Hibbard

                                        Attorneys for Specially Appearing Defendant
                                        HDR GLOBAL TRADING LIMITED


Dated: June 23, 2020                    AKIN GUMP STRAUSS HAUER & FELD LLP


                                        By: */s/ Peter I. Altman*
                                            Peter I. Altman

                                        Attorneys for Specially Appearing Defendant
                                        ARTHUR HAYES

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**