# EXHIBIT 17

Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
Justin C. Beck (State Bar No. 313757)
jbeck@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Attorneys for Specially Appearing Defendant
HDR GLOBAL TRADING LIMITED

Peter I. Altman (State Bar No. 285292)
paltman@akingump.com
Shelly Kim (State Bar No. 322231)
shelly.kim@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone: +1.310.229.1000
Facsimile: +1.310.229.1001

Attorneys for Specially Appearing Defendant
ARTHUR HAYES

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**06/25/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| FRANK AMATO, RGB COIN LTD., and ELFIO GUIDO CAPONE on behalf of the G AND M CAPONE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; ABS GLOBAL TRADING LIMITED; and DOES 1-10,<br><br>Defendants. | Case No: CGC-19-581267<br><br>**SPECIALLY APPEARING DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AS TO PLAINTIFFS' NOTICES OF DEPOSITION OF HDR GLOBAL TRADING LIMITED'S PERSON OR PERSONS MOST QUALIFIED AND OF ARTHUR HAYES**<br><br>**DISCOVERY MOTION**<br><br>Date: July 20, 2020<br>Time: 9:00 a.m.<br>Judge: Honorable Ethan P. Schulman<br>Department: 302 |

CASE NO. CGC-19-581267

MPA ISO MOTION FOR PROTECTIVE ORDER

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 5

II. BACKGROUND ............................................................................................................... 6

    A. The Parties ............................................................................................................ 6

    B. Plaintiffs' Allegations .......................................................................................... 7

    C. Procedural History ............................................................................................... 9

III. ARGUMENT .................................................................................................................. 11

    A. Legal Standard ................................................................................................... 11

    B. The Court Should Issue A Protective Order Barring the Depositions ................. 11

    C. If Any Deposition Is Allowed, It Should Be Limited to Defined Jurisdictional Issues and Set During Business Hours in the Witness's Time Zone ..................................................................................................................... 15

IV. CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Wave Machs., Inc. v. Surf Lagoons, Inc.*,
   No. 13-cv-3204-CAB, 2014 WL 10475281 (S.D. Cal. Nov. 12, 2014) .................................13

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ...........................................................................................................16

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017) ...........................................................................................................16

*Burdick v. Super. Ct.*,
   233 Cal. App. 4th 8 (2015) .....................................................................................................12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...............................................................................................................16

*eMag Sols., LLC v. Toda Kogyo Corp.*,
   No. C 02-1611-PJH, 2006 WL 3783548 (N.D. Cal. Dec. 21, 2006) .......................................16

*Emerson Elec. Co. v. Superior Court*,
   16 Cal. 4th 1101 (1997) ...................................................................................................11, 15

*Goehring v. Super. Ct.*,
   62 Cal. App. 4th 894 (1998) ...................................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ...............................................................................................................16

*Greyhound Corp. v. Superior Court*,
   56 Cal. 2d 355 (1961) .............................................................................................................11

*In re Auto. Antitrust Cases I & II*,
   135 Cal. App. 4th 100 (2005) .................................................................................................16

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ...............................................................................................................16

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
   213 F.3d 841 (5th Cir. 2000) ..................................................................................................13

*Liberty Mut. Ins. Co. v. Super. Ct.*,
  10 Cal. App. 4th 1282 (1992) ................................................................................. 12, 14

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
  107 F.3d 1026 (3d Cir. 1997) ......................................................................................... 13

*Shuker v. Smith & Nephew, PLC*,
  885 F.3d 760 (3d Cir. 2018) ............................................................................................ 12

*Terracom v. Valley Nat'l Bank*,
  49 F.3d 555 (9th Cir. 1995) ............................................................................................ 15

*Toys 'R' Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ............................................................................................ 13

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................................................ 16

*Weisman v. Bower*,
  193 Cal. App. 3d 1231 (1987) ........................................................................................ 11

**STATUTES**

Civ. Proc. Code § 1989 ........................................................................................................ 15

Civ. Proc. Code § 2017.020(a) ....................................................................................... 11, 15

Civ. Proc. Code § 2025.230 ................................................................................................. 10

Civ. Proc. Code § 2025.420 ........................................................................................... 11, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 12

## I. INTRODUCTION

This lawsuit between non-California entities and individuals concerns a dispute centered in Asia that has no material connection to California. Nonetheless, Plaintiffs sued HDR Global Trading Limited and its CEO Arthur Hayes (collectively, "Defendants") in this Court and have waged an aggressive discovery campaign from the outset, progressively increasing the burden, notwithstanding Defendants' pending challenge to the Court's jurisdiction. Defendants now move for a protective order directed to recently served deposition notices.

Plaintiffs served extensive written discovery in this case before they had even properly served Defendants with the complaint and summons. After Defendants informed Plaintiffs that they intended to challenge the Court's personal jurisdiction, but before Defendants had even filed their Motion to Quash, Plaintiffs launched another round of far-reaching discovery requests purportedly related to jurisdiction. Defendants produced documents and answered dozens of the discovery requests, but Plaintiffs remained dissatisfied, claiming they are entitled to piles of documents from HDR and more than a dozen affiliates regarding any contacts with not just California, but the United States as a whole. A week before they moved to compel further responses to more than 100 written discovery requests from Defendants, Plaintiffs noticed the depositions of HDR's person most qualified ("PMQ") and Hayes.

The PMQ notice to HDR shows that the depositions would be unduly burdensome and oppressive to Defendants, in part because Plaintiffs seek irrelevant information that is largely duplicative of discovery already taken. Forcing foreign Defendants to prepare and attend depositions at the direction of a California court, the jurisdiction of which they contest, is inherently burdensome, especially during the current COVID-19 pandemic. And it is particularly burdensome where, as here, Plaintiffs have already sought and obtained substantial discovery related to the jurisdictional issues and the Court has before it a pending motion directed to the proper scope of Plaintiffs' jurisdictional discovery efforts. At base, Plaintiffs' discovery strategy amounts to one of harassment and oppression, not efficient and proportionate fact-finding. The Court should direct that the depositions not be taken at all. But to the extent the Court orders the depositions to take place, which Defendants do not believe would be justified under the law, it

should, at a minimum, limit any deposition's scope to specifically-defined jurisdictional issues after ruling on Plaintiffs' pending Motion to Compel.

## II.     BACKGROUND

### A.     The Parties

Plaintiff Frank Amato, a self-described "investment professional" and "angel investor with experience in FinTech platforms," resides in Ohio. First Am. Compl. ("FAC") ¶¶ 6, 54. At the time Amato entered the contract in dispute, however, he worked in JPMorgan's Singapore office. *See* Declaration of Arthur Hayes in Support of Specially Appearing Defendants' Motion to Quash Service of Summons for Lack of Personal Jurisdiction ("Hayes Decl.") ¶¶ 12, 13 (filed June 16, 2020).[1] Plaintiff RGB Coin Ltd., to which Amato claims to have assigned his rights, is an Ohio LLC whose sole identified members are Amato and an unnamed Portuguese national. FAC ¶ 7. Plaintiff Elfio Guido Capone is an Australian citizen residing in Adelaide, South Australia, who purports to bring this action on behalf of the G and M Capone Trust. FAC ¶ 8.

Defendant HDR is a holding company incorporated in the Republic of Seychelles. Hayes Decl. ¶ 5. HDR owns a digital asset trading platform that is operated under the registered service mark "BitMEX." Hayes Decl. ¶ 4; *see also* BitMEX, https://www.bitmex.com/ (last visited June. 15, 2020). U.S. persons are expressly prohibited from accessing and trading on the BitMEX platform. Hayes Decl. ¶ 4; *see also* BitMEX, Terms of Service, *available at* https://www.bitmex.com/app/terms (last visited June 15, 2020).

HDR has affiliates worldwide (collectively, the "HDR Group"), including in Hong Kong and Singapore, but HDR's only office is in Seychelles. Hayes Decl. ¶¶ 5–6. HDR's sole affiliate in the U.S. is ABS, which was incorporated in Delaware in April 2017 and currently has an office in San Francisco. *Id.* ¶ 7.[2] Since mid-2017, ABS has provided contract-based software development, software engineering, and digital security services to HDR, including developing

---

[1] For the Court's ease of reference, a copy of the Hayes Declaration is attached as Exhibit H to the concurrently-filed Declaration of Matthew J. Silveira ("Silveira Decl.").

[2] Plaintiffs named ABS as a defendant in their First Amended Complaint ("FAC"). ABS demurred to the FAC. *See* Demurrer (filed June 16, 2020). All references to Defendants in this motion refer solely to HDR and Hayes.

the front-end of the BitMEX trading platform. Hayes Decl. ¶ 7.

Defendant Arthur Hayes is a co-founder and the CEO of HDR. Hayes Decl. ¶ 1. Hayes is a legal permanent resident of Hong Kong, where he moved in 2008. *Id.* ¶ 2. Hayes has not resided in the U.S. since moving to Asia in 2008, and has never resided in California. *Id.*

### B.     Plaintiffs' Allegations

Plaintiffs allege that after months of correspondence about potential equity investments in HDR, Amato and HDR entered a Simple Agreement for Future Equity ("SAFE") in June 2015, and Capone (on behalf of a trust) and HDR entered a SAFE in July 2015. FAC ¶¶ 1–2, 69-77, 88-93. Under the SAFEs, Amato invested $30,000 and Capone invested $25,000 for a right to receive shares in HDR subject to certain conditions precedent set forth in the contract, including completion of an "Equity Financing," defined as "a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Preferred Shares at a fixed pre-money valuation." FAC ¶ 99; *accord* Compl. Ex. 1; Hayes Decl. Exs. A, B. In an email, Hayes told Amato the shares would convert at the "next financing round," which HDR anticipated raising "shortly after completion" of a start-up accelerator program known as Chinaccelerator, "which ends in November" 2015. FAC ¶ 75. Tellingly, the FAC is silent as to where Amato met Hayes, where the contract was entered, or where those individuals resided at the time of contracting. The only places either complaint mentions Hayes and Amato meeting are Singapore in 2015 (FAC ¶ 9) and New York in 2018 (Compl. ¶ 74).

Plaintiffs allege that in late 2015, HDR obtained financing from other sources, including "SOSV [a venture capital firm] and its Chinaaccelerator program," that constituted Equity Financings under the SAFE. FAC ¶ 113; *see generally id.* ¶¶ 3, 110-126. The FAC does not allege where the SOSV financing occurred. Plaintiffs also allege that, when asked in 2018 and 2019, Hayes made inconsistent representations to Amato and Capone about whether the financing required for a conversion had occurred. FAC ¶¶ 3, 127-144. Based on these allegations, Plaintiffs assert claims for breach, misrepresentation, and various equitable theories.

While Plaintiffs allege that HDR does business as BitMEX, and operates in all jurisdictions, including California, under the trade name BitMEX, FAC ¶ 9, they do not allege

that the SAFEs were negotiated in California, that they called for performance in California, or that the parties had any dealings in California. And they acknowledge that "BitMEX" is a service mark registered in multiple international jurisdictions. Compl. ¶ 9. Rather than offer any specific averments as to HDR—the Seychelles entity with which they contracted—Plaintiffs assign all manner of allegations to "BitMEX" without acknowledging that BitMEX is not an entity. In any event, these broad, unfocused allegations have nothing to do with their claims.

For example, Plaintiffs focus on the San Francisco offices of HDR affiliate ABS that provide engineering services, but again do not allege any connection between those ABS offices and their claims related to investments in HDR or to the alleged conversion of their rights under the SAFEs through an Equity Financing in HDR. FAC ¶¶ 9-10, 23. In a similar vein, Plaintiffs allege that ABS hosted a global off-site meeting for the HDR Group, that ABS employees and recruiting efforts use the BitMEX trade name, that BitMEX uses service providers in California, and that U.S. persons trade on the BitMEX platform despite being prohibited from doing so. *Id.* ¶¶ 29-31, 34, 36-37, 45-50. Regardless of the truth of these allegations—most of which are false or otherwise misleading—none of them has any connection to Plaintiffs' claims regarding their 2015 investments that allegedly should have converted into equity interests that same year.

As for Hayes, Plaintiffs allege that he "manag[es] and direct[s] BitMEX's San Francisco Bay Area-based operations," has attended Bay Area events, namely, as a speaker at a conference in 2018, and gave an interview to CNBC from San Francisco. *Id.* ¶¶ 11, 41, 42. But Plaintiffs do not allege that Hayes has any connection to California related to the negotiation, execution, or performance of the SAFEs. To the contrary, Plaintiffs allege only that, after Amato claimed for the first time in 2018 that the SAFE should have converted following HDR's completion of SOSV's Chinaccelerator program in 2015, Hayes scheduled a call with Amato to discuss an "opinion from BitMEX's California attorney regarding the SAFE conversion." *Id.* ¶ 137. And while Plaintiffs note that "SOSV" has a San Francisco office, they do not allege that office has anything to do with the Chinaccelerator program SOSV runs from its China offices in Shanghai and Shenzhen, or the investment an SOSV entity made from Ireland. *Id.* ¶¶ 3, 112.

### C. Procedural History

Following the Defendants' removal of this action to federal court, the parties negotiated a stipulated remand to state court. *See* Silveira Decl. ¶ 2 & Ex. A. Defendants agreed not to challenge "defects in the manner of service of process of the Complaint and summons," but reserved the right to challenge the Court's exercise of personal jurisdiction. *Id.* Ex. A ¶ 6. The parties also agreed to "negotiate in good faith as to a schedule for any jurisdictional discovery requested by Plaintiffs to ensure that Plaintiffs shall have opportunity to obtain any such discovery *approved by the Court or agreed by the parties*." *Id.* (emphasis added).

On February 14, 2020, without any negotiations at all, Plaintiffs served Defendants with voluminous purported jurisdictional-related discovery. In total, Plaintiffs served 24 Special Interrogatories ("SROGs"), 35 Requests for Production of Documents ("RFPs"), and 13 Requests for Admission ("RFAs") on HDR; and 23 SROGs, 38 RFPs, and 13 RFAs on Hayes. Silveira Decl. ¶ 3 & Exs. B–G. Nearly all of these written discovery requests were directed to contacts with the entire United States, not just California. *See generally id.* Exs. B–G.

On February 27, 2020, Defendants filed their Motion to Quash, challenging the Court's exercise of personal jurisdiction over HDR and Hayes. On March 17, 2020, Defendants timely responded to Plaintiffs' jurisdictional discovery and, a couple days later, produced documents. *See* Murphy Decl. in Support of Specially Appearing Defendants' Opposition to Motion to Compel ¶ 2 (June 23, 2020). When Plaintiffs claimed Defendants' discovery responses were insufficient, Defendants promptly met and conferred regarding Plaintiffs' assertions. *Id.* ¶¶ 3–4. Defendants maintained that, to the extent the requests sought materials unrelated to the personal jurisdiction inquiry, they were irrelevant and overbroad. *Id.* ¶ 4. After Plaintiffs reinitiated the meet-and-confer process two months later, HDR supplemented its discovery responses and produced more documents. *Id.* ¶¶ 5–10. To date, Defendants have substantively answered dozens of discovery requests and produced documents that are directly responsive to the jurisdictional analysis. *See generally* Specially Appearing Defs.' Separate Statement in Support of Opp. to Pls.' Mot. to Compel to Produce Further Documents, Provide Further Responses to Special Interrogatories and Requests for Admission, and for Sanctions (June 23, 2020).

Plaintiffs served Defendants with the FAC, adding Capone as a plaintiff and ABS as a defendant, on May 15, 2020.  Defendants timely renewed their Motion to Quash on June 16, 2020, but not before Plaintiffs continued their aggressive discovery strategy.

On June 5, 2020, Plaintiffs served Hayes and HDR with deposition notices, set for 9:00 a.m. on June 29 and 30, respectively, and the latter of which demands that HDR prepare a PMQ to testify regarding 29 different topics.  *See* Civ. Proc. Code § 2025.230.  Those 29 topics are extraordinarily broad.  For example, Plaintiffs define "YOU" and "YOUR" to include HDR "and any parent, subsidiary or corporate affiliate thereof, and any partners, employees, agents and representatives, consultants, attorneys or other persons acting under their control or behalf and includes, without limitation, any associated entity, including any predecessor, successor, affiliate, subsidiary or parent entity." Silveira Decl., Ex. I & J, Definitions, ¶ 2.  Many of the topics explicitly extend beyond California to the "United States" more generally, *id.*, Deposition Topic Nos. 1-13, 16, 23-24.  And others do not even include that limitation, going so far as to require HDR prepare a witness regarding "[w]here YOUR employees and executives perform their work, and the kind of work, they perform," and "YOUR *worldwide* operations, including the locations in which YOUR corporate activities are performed." *Id.*, Deposition Topic Nos. 21-22 (emphasis added).  And the deposition notice of Hayes in his personal capacity does not appear to be limited to jurisdictional issues.

A week after filing these deposition notices, Plaintiffs moved to compel further written discovery responses from Defendants.  Rather than meaningfully narrow the broad written discovery requests they had served, Plaintiffs have asked the Court to order Defendants to supplement responses to more than 100 requests between them, including as to many requests on which they never even attempted to specifically meet and confer with Defendants.  *See* Specially Appearing Defs.' Separate Statement (June 23, 2020); Murphy Decl. ¶ 9 (June 23, 2020).  That motion is noticed to be heard on July 7.

Having unsuccessfully met and conferred with Plaintiffs on June 22 to seek withdrawal or postponement of the deposition notices, *see* Silveira Decl. ¶¶ 6–7 & Ex. K, Defendants now seek a protective order barring the depositions or requiring that they be limited to specifically-defined

jurisdictional topics after the Court has ruled on Plaintiffs' Motion to Compel.  Further, if the Court allows the depositions, they should be set for times convenient for the witnesses, who are all based in foreign countries many time zones away, not for Plaintiffs' California attorneys.

### III.     ARGUMENT

#### A.     Legal Standard

"[T]he trial court must consider the 'particular facts' of each case" in ruling on a motion for protective order. *Weisman v. Bower*, 193 Cal. App. 3d 1231, 1238 (1987) (quoting *Greyhound Corp. v. Superior Court*, 56 Cal. 2d 355, 382-83 (1961)).  In doing so, the court has wide discretion to grant the motion if it concludes that a protective order is necessary to "limit[] attempted discovery which, while it may come within the rules established by the other code sections, offends the sense of justice and reason." *Id.*  Thus, upon a showing of "good cause," this Court may issue a protective order to save a responding party "from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." Civ. Proc. Code § 2025.420. Generally, courts will issue a protective order where the moving party shows that "the burden, expense, or intrusiveness involved in the [discovery procedure] clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence." *Emerson Elec. Co. v. Superior Court*, 16 Cal. 4th 1101, 1110 (1997); *see* Civ. Proc. Code § 2017.020(a).

Where a party seeks protection from a deposition, a protective order may, among other things, direct "[t]hat the deposition not be taken at all," Civ. Proc. Code § 2025.420(b)(1), or that it be "taken at a different time" or place, *id.* § 2025.420(b)(2) & (4), or under "specified terms and conditions," *id.* § 2025.420(b)(1), or that its scope "be limited to certain matters," *id.* § 2025.420(b)(10).  Additionally, a court "may establish the sequence and timing of discovery for the convenience of parties and witnesses and in the interests of justice." *Id.* § 2019.020(b).

#### B.     The Court Should Issue A Protective Order Barring the Depositions.

When a defendant challenges the court's jurisdiction, any discovery conducted prior to a court ruling must be limited to the issues presented by the jurisdictional challenge and appropriate to the case. *See Goehring v. Super. Ct.*, 62 Cal. App. 4th 894, 911 (1998) (finding plaintiffs failed to sustain their jurisdictional burden but instructing trial court to take "opportunity to

exercise its discretion to determine whether jurisdictional discovery pertaining to [the defendants] would be appropriate in this case"); *Burdick v. Super. Ct.*, 233 Cal. App. 4th 8, 30 (2015) ("Any discovery must be limited to the [specific issues] as relevant to the jurisdictional analysis.").[3] By serving written jurisdictional discovery before Defendants had even filed their Motion to Quash and despite having obtained a stipulation by which Defendants agreed to negotiate a discovery schedule, Plaintiffs failed to tailor their discovery from the outset. And rather than narrowing their discovery after obtaining written discovery from Defendants and reviewing Defendants' initial Motion to Quash, Plaintiff have continued to press the same irrelevant issues and burdened Defendants by seeking duplication of efforts. The narrow issues presented by Defendants' Motion to Quash and the current status of jurisdictional discovery in this case militate against permitting depositions of either HDR or Hayes at this time.

To begin, neither Defendant has any material connection to the United States, let alone California. HDR is a Seychelles corporation that was founded in Hong Kong and currently has its only office in Seychelles. It has one U.S. affiliate (co-defendant ABS) that was incorporated in Delaware years after the SAFEs were executed and allegedly breached, and which provides contractual services to HDR from a San Francisco office focused on developing the front-end interface of the BitMEX platform. But HDR also has affiliates in Hong Kong, Singapore, and Bermuda, among other places, and it is those subsidiaries that develop and maintain the trading engine at the heart of the BitMEX platform and carry out the rest of HDR's operations, including business development and customer support functions. Hayes is a legal permanent resident of Hong Kong, who has never lived in California and has not resided in the U.S. in well over a decade. While Hayes is the titular head of ABS, he does not have an office in the U.S. and has no involvement in ABS's day-to-day operations.

---

[3] Federal courts similarly scrutinize jurisdictional discovery, long applying a proportionality principle that now expressly applies to all discovery. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 (3d Cir. 2018) (the "principle" that jurisdictional discovery should be restricted to prevent fishing expeditions "is all the more true after the 2015 amendments to the Federal Rules of Civil Procedure, which added a discussion of proportionality to Rule 26(b)(1)"); Fed. R. Civ. P. 26(b)(1) (parties may obtain discovery only if it is "proportional to the needs of the case"). "Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions." *See Liberty Mut. Ins. Co. v. Super. Ct.*, 10 Cal. App. 4th 1282, 1288 (1992).

Defendants accordingly have exercised their rights to specially appear and challenge the Court's exercise of personal jurisdiction, with Hayes submitting sworn declarations in support of their challenges, which Plaintiffs have offered no basis to infer are false. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000) (affirming denial of discovery where plaintiffs "offer no basis whatsoever to support inference" that additional jurisdictional discovery "would contradict [defendants'] sworn declarations"); *Am. Wave Machs., Inc. v. Surf Lagoons, Inc.*, No. 13-cv-3204-CAB, 2014 WL 10475281, at *9 (S.D. Cal. Nov. 12, 2014) (same). But on top of the written discovery that Plaintiffs have already sought and obtained, and the additional written discovery they are currently moving to compel, Plaintiffs now seek to force Defendants to prepare and sit for remote depositions governed by California procedures. The extent and sequencing of Plaintiffs' jurisdictional discovery efforts are improper. *See, e.g., Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery."). Allowing the depositions would give parties license to embark on fishing expeditions against any foreign defendant they wish to investigate, merely by naming the defendant in a lawsuit and noticing a deposition before the court has had an opportunity to assess jurisdiction.

As with Plaintiffs' written discovery, which is largely duplicative of the topics in the HDR PMQ deposition notice, many of the subjects of inquiry are irrelevant to the jurisdictional inquiry and overbroad.[4] For example, Plaintiffs have asked HDR to prepare a PMQ on topics as far afield as communications with the Commodity Futures Trading Commission or "any regulator or

---

[4] Reinforcing the duplicative nature of Plaintiffs' discovery efforts, many of the topics in the HDR PMQ deposition are nearly identical to their written discovery requests. For example, Deposition Topic No. 2 ("operations in the United States generally and California in particular") mirrors Plaintiffs' Request for Production ("RFP") No. 1 to HDR and RFP No. 1 to Hayes. Deposition Topic No. 3 ("services that YOU provide or products you sell in or deliver into the United States generally and California in particular") mirrors Plaintiffs' RFP No. 5 to HDR and RFP No. 6 to Hayes. Deposition Topic No. 4 ("services that YOU receive from persons or entities located in the United States generally and California in particular") mirrors Plaintiffs' RFP No. 6 to HDR and RFP No. 7 to Hayes. Deposition Topic No. 7 ("YOUR job postings in and YOUR hiring and/or recruitment of persons or entities located in the United States generally and California in particular") mirrors Plaintiffs' RFP No. 19 to HDR and RFP No. 21 to Hayes. And the list goes on. Defendants provided written responses on each of these topics already.

1   other governmental agency located in the United States," "trademark registrations in the United
2   States," HDR's "worldwide operations," and "efforts to preserve, collect, and produce documents
3   in this case."  Silveira Decl. Ex. I (Deposition Topic Nos. 11, 12, 16, 21, 29).  Notably, just 3 of
4   the 29 topics Plaintiffs have identified are limited to California, *id.*, and all topics call for
5   information not simply as to HDR, but to all of its more than a dozen affiliates worldwide, *id.*
6   (Definitions, ¶ 2).  Defendants have raised similar objections in connection with Plaintiffs'
7   written discovery requests, which are now the subject of Plaintiffs' Motion to Compel.

8          Defendants' positions on objectionable issues will not change merely because Plaintiffs
9   have switched to a different mode of discovery.  Issues that are irrelevant, overly broad, or
10  outside the scope of the jurisdictional inquiry will remain so at deposition.  And while Plaintiffs'
11  Motion to Compel has provided an opportunity to provide some guidance as to which topics, if
12  any, Plaintiffs may pursue further, Plaintiffs have refused to postpone their efforts to take the
13  depositions until after the Court has ruled on that motion.  Now, with their Motion to Compel still
14  pending, Plaintiffs seek to force Defendants to prepare and sit for costly and time-consuming
15  depositions that they would undoubtedly seek to reopen if the Court grants their Motion in any
16  part by ordering supplemental responses.  This Court should not permit it.  Plaintiffs' calculated
17  efforts to unnecessarily run up the cost of discovery should be rejected as an abuse of the
18  discovery process.

19         Moreover, in the case of HDR's deposition, the notice would require a corporate
20  representative to prepare extensively to testify on 29 different topics, all of which sweep far more
21  broadly than necessary to investigate personal jurisdiction.  *See, e.g.,* Silveira Decl. Ex., I
22  Deposition Topic Nos. 1-10 (asking about contacts, operations, services, etc., that are based not
23  only in California but also in "the United States generally").  As for Hayes, even in cases without
24  a pending jurisdictional challenge, California courts have granted protective orders requiring
25  plaintiffs to use "less-intrusive methods" to obtain necessary discovery before deposing high-
26  level corporate executives.  *Liberty Mut.*, 10 Cal. App. 4th at 1289.  That principle applies with
27  even greater force here, where Defendants have challenged the court's jurisdiction.
28         The fact that the depositions have been noticed to be taken by video instead of in person

due to the COVID-19 pandemic does not materially reduce Defendants' burden.[5] Although a remote deposition removes the need to travel, Plaintiffs would have been required to depose these foreign Defendants in their home countries in any event. *See* Civ. Proc. Code § 1989 (requiring the deponent to be a resident of California, if deposition is scheduled in California); *id.* § 2027.010 (providing for depositions in foreign nations). And even if there is some reduction in the burden imposed by travel, remote depositions carry other burdens. Video conferencing technology is an inadequate replacement for in-person preparation. In much the same way, the remote setting undermines in meaningful ways counsel's ability to defend a deposition. These are disadvantages that Defendants would typically be able to trade for the burden of traveling to a deposition, but they are disadvantages that Defendants and their counsel cannot currently eliminate without risking the health of all parties involved.

In short, the depositions would be unduly burdensome, duplicative, and oppressive to Defendants. Civ. Proc. Code § 2025.420. For these reasons, "the burden, expense, or intrusiveness involved … clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence." *Emerson*, 16 Cal. 4th at 1110; Civ. Proc. Code § 2017.020(a); *see also Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery…."). This Court should grant the motion for a protective order by directing that the depositions of HDR's PMQ and Hayes "not be taken at all." Civ. Proc. Code § 2025.420(b)(1).

### C. If Any Deposition Is Allowed, It Should Be Limited to Defined Jurisdictional Issues and Set During Business Hours in the Witness's Time Zone.

If the Court permits depositions of HDR's PMQ or Hayes at this early stage of the case, the topics should be limited to specifically-defined, relevant jurisdictional issues. *See* Civ. Proc.

---

[5] Nor do remote depositions negate Plaintiffs' burden to comply with applicable international laws or laws of foreign Defendants' home countries, such as the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). To Defendants' knowledge, Plaintiffs have not complied with the Hague Convention or other applicable laws.

Code § 2025.420(b)(9)-(10). While Plaintiffs purport to notice depositions of HDR's PMQ and Hayes as part of their efforts to obtain discovery relevant to resolving Defendant's Motion to Quash, they have not limited the scope of the deposition in their notice to Hayes, and the 29 topics listed in Plaintiffs' notice of deposition to HDR are overbroad, duplicative of their written discovery, and largely irrelevant to the issues presented in Defendants' Motion to Quash.

California law is clear that Plaintiffs do not have an unlimited right to discovery before the Court has considered the jurisdictional issues. Rather, Plaintiffs are only entitled to "an opportunity to conduct discovery of the jurisdictional facts *necessary to sustain its burden of proof.*" *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 127 (2005) (emphasis added); *see also eMag Sols., LLC v. Toda Kogyo Corp.*, No. C 02-1611-PJH, 2006 WL 3783548, at *3 (N.D. Cal. Dec. 21, 2006) ("Jurisdictional discovery in this case shall be limited. . . . This is not an authorization for discovery into the merits of the case, or for discovery into the alleged conspiracy among the defendants.") (emphasis in original). Thus, to the extent the depositions take place, they should be limited to issues necessary to resolve the Motion to Quash.

In particular, many of the topics in Plaintiffs' notice to HDR's PMQ seek information about the contacts of not only HDR, but also all of its subsidiaries and affiliates, with the United States generally. But the Supreme Court has repeatedly emphasized the limits of personal jurisdiction.[6] Personal jurisdiction may only be exercised where the party is "essentially at home" in a forum (general, or "all-purpose," jurisdiction)—that is, absent exceptional circumstances, a corporation's state of incorporation or principal place of business or an individual's domicile—*Daimler*, 571 U.S. at 122 (quoting *Goodyear*, 654 U.S. at 919), or where there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" (specific, or "case-linked," jurisdiction), *Bristol-Myers*, 137 S. Ct. at 1781 (quoting *Goodyear*, 654 U.S. at 919). Despite this binding precedent, Plaintiffs seek to depose HDR regarding contacts with the "U.S. generally,"

---

[6] *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773 (2017); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017); *Walden v. Fiore*, 571 U.S. 277 (2014); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

1   and about its affiliated entities and subsidiaries.  For example, Topics Nos. 1-10, 11-13, 16, and
2   23-24 seek information about HDR's activities, finances, property, and other potential contacts
3   with the U.S. generally.  Such topics are not relevant or necessary to resolving the jurisdictional
4   dispute.  Accordingly, Plaintiffs' noticed topics should be limited to Defendant HDR's contacts in
5   California only.

6        Not only should the deposition topics be limited to information about California, but they
7   should also be limited to the types of contacts with California that would affect the general or
8   specific personal jurisdiction analysis.  For example, Topic No. 16 of Plaintiffs' notice of
9   deposition to HDR seeks information regarding HDR's trademark registrations in the U.S.
10  However, registering a U.S. trademark is immaterial to determining whether a California state
11  court has jurisdiction over a foreign defendant in a case centered on a breach of a contract that is
12  unrelated to any trademark.  Plaintiffs also cannot justify, for example, why they need to depose
13  HDR regarding any of its bank accounts or the bank accounts of any of its affiliates worldwide
14  with a corresponding *branch* in the U.S. (Topic No. 23).  Additionally, topics regarding
15  information about HDR's subsidiaries and affiliates are not tailored to the jurisdictional issues in
16  dispute, because (1) HDR's sole U.S. affiliate—ABS—was incorporated in Delaware in 2017,
17  years after Plaintiffs entered into their SAFEs with HDR (*see* Hayes Decl. ¶ 7), and (2) Plaintiffs
18  have alleged no communications with ABS regarding their investments.

19       Thus, should the Court allow the depositions to go forward, the deposition topics should
20  be limited to issues that are *necessary* to resolving whether this Court has general or specific
21  jurisdiction over HDR and Hayes—namely, those Defendants' contacts with California between
22  2014 and 2015 that are related to Plaintiffs' contract and equitable claims, as well as their core
23  misrepresentation theories.  As written, even read in a light most charitable to Plaintiffs' theories,
24  the vast majority of the topics run far afield of permissible inquiry, and even Deposition Topic
25  Nos. 14 and 15—the only topics that actually reference the SAFEs that are the subject matter of
26  this action—would need to be limited to protect privilege.  The Court has before it Plaintiffs'
27  Motion to Compel that raises many of these same issues.  The Court's ruling on that motion
28  should therefore guide the scope of any deposition permitted of HDR's PMQ or Hayes.

Finally, the depositions are noticed to begin at 9:00 a.m. That means the anticipated witnesses, who are based in Asia, would have to *begin* the deposition at midnight local time. If any deposition goes forward, it should be set during business hours in the witness's time zone.

**IV.   CONCLUSION**

For these reasons, the Court should grant Defendants' Motion for Protective Order.

Dated: June 25, 2020    JONES DAY

By: */s/ Stephen D. Hibbard*
    Stephen D. Hibbard

Attorneys for Specially Appearing Defendant
HDR GLOBAL TRADING LIMITED

Dated: June 25, 2020    AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Peter I. Altman*
    Peter I. Altman

Attorneys for Specially Appearing Defendant
ARTHUR HAYES