1  Stephen D. Hibbard (State Bar No. 177865)
   sdhibbard@jonesday.com
2  Matthew J. Silveira (State Bar No. 264250)
   msilveira@jonesday.com
3  Dennis F. Murphy, Jr. (State Bar No. 301008)
   dennismurphy@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA  94104
   Telephone:    +1.415.626.3939
6  Facsimile:    +1.415.875.5700

7  Attorneys for Defendants
   HDR GLOBAL TRADING LIMITED, ABS GLOBAL
8  TRADING LIMITED, ARTHUR HAYES, BEN
   DELO, and SAMUEL REED

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                 **SAN FRANCISCO DIVISION**

13

14  BMA LLC, Yaroslav Kolchin and Vitaly      Case No. 3:20-cv-03345-WHO
    Dubinin,
15                                            **DEFENDANTS' NOTICE OF**
              Plaintiffs,                     **MOTION AND MOTION TO**
16                                            **DISMISS PLAINTIFFS' SECOND**
                                              **AMENDED COMPLAINT;**
17        v.                                  **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT**
18  HDR Global Trading Limited (a.k.a.        **THEREOF**
    BitMEX), ABS Global Trading Limited,
19  Arthur Hayes, Ben Delo and Samuel Reed,   Date:  December 16, 2020
                                              Time:  2:00 p.m.
20            Defendants.                      Ctrm:  2 – 17th Floor
                                              Judge:  Honorable William H. Orrick
21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION

2    PLEASE TAKE NOTICE that at 2:00 p.m. on December 16, 2020, before the Honorable

3   William H. Orrick, in Courtroom 2, 17th Floor, San Francisco Courthouse, 450 Golden Gate

4   Avenue, San Francisco, California 94102, defendants HDR Global Trading Limited ("HDR"),

5   ABS Global Trading Limited ("ABS"), Arthur Hayes, Ben Delo, and Samuel Reed (together,

6   "Defendants"), will and hereby do move to dismiss the Second Amended Complaint (ECF 32)

7   pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds

8   stated below.

9    The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities

10  in support of this Motion, the Proposed Order filed concurrently herewith, the pleadings and

11  records on file in this action, and upon such other matters as may be presented to the Court at or

12  prior to the hearing on this Motion.

13

## RELIEF REQUESTED

14    The Second Amended Complaint should be dismissed pursuant to Federal Rules of Civil

15  Procedure 12(b)(1) and 12(b)(6).

16

17  DATED: September 14, 2020                    JONES DAY

18

19                                              */s/ Stephen D. Hibbard*
                                                Stephen D. Hibbard

20                                              Counsel for Defendants
                                                HDR GLOBAL TRADING LIMITED, ABS
21                                              GLOBAL TRADING LIMITED, ARTHUR
                                                HAYES, BEN DELO, and SAMUEL REED
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF THE ISSUES ................................................................... 2

III.  RELEVANT BACKGROUND ...................................................................... 2

    A.    Defendants and the BitMEX Platform ............................................... 2

    B.    Defendants' Alleged Conduct ............................................................ 3

    C.    Plaintiffs' Purported Damages (Or the Lack Thereof) ...................... 4

IV.   ARGUMENT ................................................................................................ 5

    A.    Plaintiffs Lack Constitutional and Statutory Standing. ..................... 6

        1.    Plaintiffs Do Not Plausibly Allege That They Suffered Any Article III "Injury in Fact" Resulting from Defendants' Purported Conduct. ........ 6

        2.    Plaintiffs Lack Statutory Standing to Pursue Their RICO Claims. ............ 9

        3.    Plaintiffs Also Lack Statutory Standing to Pursue Their CEA Claims. ................................................................................................... 11

    B.    Plaintiffs Do Not Allege Plausible Facts Establishing that US Law Reaches the Conduct Complained of Here. ....................................................... 15

        1.    The CEA, RICO, and California Law All Require a Connection between the Alleged Violation or Injury and the Forum. ........................ 16

        2.    Plaintiffs' Claims Are Impermissibly Extraterritorial. ............................. 17

    C.    Plaintiffs' Federal Law Claims Are Deficient in Multiple Additional Respects. ........................................................................................... 20

        1.    Plaintiffs' CEA Claims Fail Because They Do Not Adequately Allege Market Manipulation. .......................................................... 20

        2.    Plaintiffs' RICO Claims Must Be Dismissed for Failure to Allege Particular Facts Establishing that Any Defendant Violated RICO. .......... 21

    D.    Plaintiffs' State Law Claims Fail as a Matter of Law. ......................... 23

        1.    Plaintiffs' Negligence Claim Fails Because Defendants Did Not Owe Plaintiffs Any Duty. ................................................................... 23

        2.    Plaintiffs Do Not Allege A Prime Facie Claim for Fraud. ...................... 24

        3.    Plaintiffs' Remaining State Law Claims Are Meritless. .......................... 25

V.    CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...........................................................................5, 6, 10

*Astiana v. Hain Celestial Grp., Inc.,*
   783 F.3d 753 (9th Cir. 2015) ...........................................................................25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ...........................................................................13

*Bass v. Facebook, Inc.,*
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................................7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................5, 6, 21

*Berk v. Coinbase, Inc.,*
   No. 18-cv-01364-VC, 2018 WL 5292244 (N.D. Cal. Oct. 23, 2018)......................................12

*Berk v. Coinbase, Inc.,*
   No. 18-cv-01364-VC, 2019 WL 3561926 (N.D. Cal. Aug. 6, 2019) ........................................24

*Biakanja v. Irving,*
   49 Cal. 2d 647 (1958) ...........................................................................24

*Bihari v. Cross Roads of the West Gun Show,*
   No. SACV 16-0718 JVS, 2016 WL 11000618 (C.D. Cal. July 18, 2016) ..................................9

*BLK Enters., LLC v. Unix Packaging, Inc.,*
   No. 2:18-cv-02151-SVW-KS, 2018 WL 5993844 (C.D. Cal. June 14, 2018) ........................17

*Canyon County v. Syngenta Seeds, Inc.,*
   519 F.3d 969 (9th Cir. 2008) .........................................................................9, 10

*CFTC v. Monex Credit Co.,*
   No. SACV 17-1868 JVS (DFMx), 2020 WL 1625808 (C.D. Cal. Feb. 12,
   2020) ...........................................................................12, 15

*CFTC v. Zelener,*
   373 F.3d 861 (7th Cir. 2004)..........................................................................12

*City of Almaty v. Khrapunov,*
  956 F.3d 1129 (9th Cir. 2020)......................................................................17, 18

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010)..................................................................................2

*Diamond Multimedia Sys., Inc. v. Super. Ct.,*
  19 Cal. 4th 1036 (1999) ......................................................................................17

*Double Bogey, L.P. v. Enea,*
  794 F.3d 1047 (9th Cir. 2015)............................................................................19

*Edwards v. Marin Park, Inc.,*
  356 F.3d 1058 (9th Cir. 2004)............................................................................22

*Elsasser v. DV Trading, LLC,*
  444 F. Supp. 3d 916 (N.D. Ill. 2020) .................................................................14

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.,*
  122 F.3d 1211 (9th Cir. 1997).............................................................................25

*Fanaro v. County of Contra Costa,*
  No. 3:19-cv-03247-WHO, 2020 WL 95568 (N.D. Cal. Jan. 8, 2020)...................5, 6

*Gibson v. Credit Suisse AG,*
  787 F. Supp. 2d 1123 (D. Id. 2011) .....................................................................9

*Gladstone Realtors v. Village of Bellwood,*
  441 U.S. 91 (1979).................................................................................................9

*Harry v. Total Gas & Power N. Am., Inc.,*
  889 F.3d 104 (2d Cir. 2018).........................................................................14, 15

*Hemi Group, LLC v. City of New York,*
  559 U.S. 1 (2010).................................................................................................10

*In re Amaranth Nat. Gas Commodities Litig.,*
  587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd,* 730 F.3d 170 (2d Cir. 2013) .............11

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,*
  60 F. Supp. 3d 914 (N.D. Ill. 2014) ...................................................................12

*In re Facebook Internet Tracking Litig.,*
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ..................................................................9

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..................................................................................6

*In re GlenFed, Inc. Sec. Litig.*,
  60 F.3d 591 (9th Cir. 1995) ....................................................................................25

*In re Platinum & Palladium Antitrust Litig.*,
  449 F. Supp. 3d 290 (S.D.N.Y. 2020) .............................................................16, 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
  Prods. Liab. Litig.*,
  826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...............................................................6, 7

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ...............................................................22, 23

*Janis v. Cal. State Lottery Comm'n*,
  68 Cal. App. 4th 824 (1998) ..................................................................................25

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..................................................................................6

*Klein & Co. Futures, Inc. v. Bd. of Trade of New York*,
  464 F.3d 255 (2d Cir. 2006) ...............................................................11, 12, 13, 14

*Klein & Co. Futures, Inc. v. Bd. of Trade of New York*,
  No. 00Civ.5563GBD, 2005 WL 427713 (S.D.N.Y. Feb. 18, 2005) ..................11, 14

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12 Civ. 3419 (GBD), 2020 WL 5077186 (S.D.N.Y. Aug. 27, 2020) ..............16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................6, 7, 8

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ..................................................................................7

*Mellow v. Josephine County*,
  No. 1:19-cv-01230-AA, 2019 WL 3769950 (D. Or. Aug. 9, 2012) .........................9

*Mesler v. Bragg Mgmt. Co.*,
  39 Cal. 3d 290 (1985) ............................................................................................19

*Miller v. 4Internet, LLC*,
  433 F. Supp. 3d 1188 (D. Nev. 2020) .......................................................................7

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) .................................................................................................25

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989).........................................................................................23

*Mostowfi v. i2 Telecom Int'l, Inc.*,
   269 F. App'x 621 (9th Cir. 2008) ..................................................................................22

*Myers v. BMW of N. Am., LLC*,
   No. 16-cv-00412-WHO, 2016 WL 5897740 (N.D. Cal. Oct. 11, 2016).........................6

*Myun-Uk Choi v. Tower Research Capital LLC*,
   No. 14-CV-9912 (KMW), 2020 WL 1503446 (S.D.N.Y. Mar. 30, 2020) ......................21

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012)...........................................................................................7

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
   150 Cal. App. 4th 384 (Cal. Ct. App. 2007) .................................................................25

*Petersen v. Roundpoint Mortg. Serv. Corp.*,
   No. EDCV 11-01201-VAP, 2012 WL 13076612 (C.D. Cal. May 7, 2012) ....................25

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
   937 F.3d 94 (2d Cir. 2019).............................................................................16, 18, 20

*Quelimane Co. v. Stewart Title Guar. Co.*,
   19 Cal. 4th 26 (1998) ....................................................................................................23

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S. Ct. 2090 (2016)...............................................................................16, 17, 20

*Russo v. APL Marine Servs., Ltd.*,
   135 F. Supp. 3d 1089 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017).............17, 20

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015).........................................................................13

*Smith v. Wilt*,
   No. 12-cv-05451-WHO, 2013 WL 5675897 (N.D. Cal. Oct. 17, 2013)..........................6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ....................................................................................................8

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ........................................................................23

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) ........................................................10

*Trend Micro Inc. v. RPost Holdings, Inc.*,
   No. 13-CV-05227-WHO, 2014 WL 1365491 (N.D. Cal. Apr. 7, 2014) ...................5

*Vess v. Ciba-Geigy Corp., USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................. passim

*Warth v. Seldin*,
   422 U.S. 490 (1975) .......................................................................................8

*Wash. Envtl. Council v. Belton*,
   732 F.3d 1131 (9th Cir. 2013) ....................................................................7, 8

**STATUTES**

7 U.S.C. § 9 ........................................................................................... passim

7 U.S.C. § 25 ......................................................................................... passim

18 U.S.C. § 1962(a), (b), and (c) .....................................................................17

18 U.S.C. § 1964(c) .....................................................................................9, 17

Cal. Bus. & Prof. Code § 17200 .......................................................................25

Cal. Bus. & Prof. Code § 17200 et seq. .............................................................23

Cal. Bus. & Prof. Code § 17204 .......................................................................25

**OTHER AUTHORITIES**

17 C.F.R. § 180.1(a) ......................................................................................21

17 C.F.R. § 180.2 ..........................................................................................21

Fed. R. Civ. P. 8 ......................................................................................10, 13

Fed. R. Civ. P. 9(b) ................................................................................. passim

Fed. R. Civ. P. 12(b) .......................................................................................5

I.    **INTRODUCTION**

Plaintiffs' sprawling, 125-page operative complaint (ECF 32)—already in its third iteration (*see also* ECF 1 and 6)—requires effort to follow.  But at its core, it seeks tens of millions of dollars in compensatory and punitive damages from Defendants with whom Plaintiffs allege no relationship whatsoever for purported conduct that took place entirely outside the United States and which Plaintiffs do not allege caused them any direct harm.

The three Plaintiffs are an entity created by Plaintiffs' counsel and two Russian nationals who purport to have traded—"directly or indirectly"—bitcoin or bitcoin derivatives.  Defendants are the corporate owner of the BitMEX trading platform, a subsidiary, and the corporation's founders.  Plaintiffs do not allege that they traded, let alone sustained losses, on BitMEX.  Instead, they claim that unidentified trades made on unidentified exchanges were affected by other unidentified trades made on BitMEX and other exchanges by unidentified third parties.

Plaintiffs' claims are meritless and—notwithstanding Plaintiffs' overheated rhetoric—should be dismissed in their entirety.

First, Plaintiffs lack both constitutional and statutory standing because they fail to allege a causal connection between their alleged injuries and Defendants' alleged conduct.  Plaintiffs do not allege what they traded, where they traded, or how Defendants plausibly affected the price of any such trades.  That basis alone warrants dismissal of all of Plaintiffs' claims.

Second, the Commodity Exchange Act ("CEA"), the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and the California laws Plaintiffs invoke all require a nexus between the forum and the alleged violation or injury.  Apart from implausible, conclusory allegations about BitMEX system outages purportedly directed from California, Plaintiffs do not allege that any of the allegedly illegal conduct took place in the United States.  And they cannot rely on vague allegations of "domestic losses" suffered on unidentified "domestic United States based cryptocurrency exchanges" to justify the prohibited extraterritorial application of US laws underlying their claims.  Plaintiffs' claims should also be dismissed on this independent basis.

Finally, the allegations underlying the substance of Plaintiffs' claims are also sorely lacking.  Plaintiffs' failure to allege any details regarding their claimed losses or to connect

specific conduct by Defendants to such losses dooms their CEA market manipulation claims.
Plaintiffs' RICO claims likewise fail at the threshold because Plaintiffs do not allege with the
requisite particularity the facts underlying those claims; instead, they rely exclusively on
collective pleading, which the Ninth Circuit prohibits.  Plaintiffs' state-law claims are similarly
deficient—to the extent they even identify cognizable causes of action, and several of them do
not.  The Court should dismiss the Second Amended Complaint in its entirety.

## II.    STATEMENT OF THE ISSUES

**1.** Do Plaintiffs lack constitutional and statutory standing when they allege only that they
made unspecified trades "directly or indirectly" on unspecified exchanges other than BitMEX?

**2.** Can Plaintiffs bring claims under federal and California law when they do not allege
adequately that Defendants engaged in any US conduct or that Plaintiffs were harmed in the US?

**3.** Do Plaintiffs state viable CEA, RICO, or California common law claims when they fail
to allege any plausible facts establishing that the Defendants violated any of those laws?

## III.    RELEVANT BACKGROUND

### A.    Defendants and the BitMEX Platform

Plaintiffs bring a variety of CEA, RICO, and state law claims against five Defendants:
HDR, HDR's "organize[rs]" and "co-founders" Hayes, Delo, and Reed, and HDR's "California-
based wholly owned subsidiary," ABS.  Second Amended Complaint ("SAC") ¶¶ 11, 15, 19.  All
of those claims center on Defendants' alleged ownership and operation of the "popular
cryptocurrency derivatives exchange platform BitMEX."  SAC ¶ 1.

According to BitMEX's website, "Bitmex is a Peer-to-Peer Trading Platform that offers
leveraged contracts that are bought and sold in Bitcoin."  *See* BitMEX, Trading on BitMEX,
https://www.bitmex.com/app/tradingOverview (last visited Sept. 14, 2020).[1]  All "profit and loss"
accrued on BitMEX is reflected in bitcoin (as opposed to a government-backed currency, such as
the U.S. Dollar), regardless of whether a trader is "buying and selling" contracts related to other

---

[1] BitMEX's website is cited throughout the complaint and therefore incorporated by
reference, and is otherwise subject to judicial notice as a publicly available document.  *See
Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

cryptocurrencies.  *Id.*  Bitcoin itself is not purchased, sold, or traded on BitMEX.  SAC ¶ 140.
Rather, BitMEX offers for trading a variety of contracts whose value is determined with reference
to the price of bitcoin.  *Id.*

As Plaintiffs acknowledge, BitMEX's Terms of Service expressly prohibit United States
citizens and United States residents from trading on the platform.  SAC ¶ 61 ("Specifically,
BitMEX's Terms of Service provide: '[y]ou are not allowed to access or use the Services or the
Trading Platform if you are located, incorporated or otherwise established in, or a citizen or a
resident of:  (i) the United States of America.").  Plaintiffs likewise allege that HDR is not located
in the United States.  Rather, HDR is a holding company that is incorporated and maintains a
registered office in the Republic of Seychelles.  SAC ¶ 11.

In fact, Plaintiffs do not allege that HDR engaged in any conduct in the United States at
all.  Instead, Plaintiffs attempt to tie their claims against the Defendants to this country by
alleging that they operated through HDR's "California-based wholly owned subsidiary and alter
ego, co-Defendant ABS."  SAC ¶ 19.  Plaintiffs' complaint, however, is devoid of facts linking
ABS to the alleged misconduct underlying all of Plaintiffs' claims, as Defendants next explain.

## B.    Defendants' Alleged Conduct

Plaintiffs' claims are predicated on Plaintiffs' theory that Defendants profited from
manipulating the price of various cryptocurrencies across the globe.  The complaint alleges many
different ways that someone could supposedly manipulate the price of bitcoin, including through
"pumps-and-dumps, Barts, stop hunts, liquidation cascades, and spoofing."  SAC ¶ 115; *see also*
SAC ¶¶ 101–15 (detailing "bitcoin price manipulation techniques").  But Plaintiffs do not allege
how or when Defendants themselves purportedly engaged in any of those activities.  Rather,
Plaintiffs claim that these techniques are "enabled by BitMEX" because they are "made possible
by the fact that BitMEX deliberately designed its indexes based on price data for cryptocurrencies
from just three exchanges – BitStamp, Kraken and Coinbase Pro, all three of which have way
lower liquidity than BitMEX."  SAC ¶ 180.  In other words, Plaintiffs seek to hold Defendants
liable because *other* individuals or entities allegedly have used techniques to manipulate the price
of cryptocurrencies listed on *other* exchanges, which in turn impacts trading activity undertaken

by *other* individuals or entities on BitMEX.

In the few instances where Plaintiffs actually reference purported conduct by Defendants, they do not allege any plausible facts tying that conduct to the United States.  Plaintiffs allege that on March 13, 2020, BitMEX engineered a "fraudulent" outage that caused BitMEX's trading platform to go "offline for twenty-five minutes" and allowed BitMEX to "liqu[idate] $800 million of its customers' highly leveraged positions for its own profit."  SAC ¶ 123.  While Plaintiffs claim that such "fraudulent and deliberate server freezes are orchestrated from San Francisco offices of Defendant HDR," SAC ¶ 186, they provide no information whatsoever as to the who, what, where, or how of this supposed fraud.  Indeed, the only alleged link between the outages and HDR is that "BitMEX'[s] three Site Reliability Engineers are all located in this District," which—despite not alleging that the engineers had anything to do with the alleged conduct— Plaintiffs claim is proof that "the deliberated [*sic*] and fraudulent outage on March 13, 2020 was perpetrated from this District."  SAC ¶ 123; *see also* SAC ¶¶ 185–87.  Likewise, while Plaintiffs allege that Defendants "transferred … proceeds of the alleged illegal bitcoin futures contracts price manipulation from BitMEX cryptocurrency exchange to other cryptocurrency exchanges, including, without limitation, Coinbase, BitStamp, and Kraken," SAC ¶ 276, Plaintiffs provide no details as to the who, what, when, where, and how those transfers occurred.  Instead, Plaintiffs simply assert that unrelated third parties "Coinbase and Kraken are located in California," and that unrelated third party "BitStamp is located in New York City, New York."  *Id.*

## C.    Plaintiffs' Purported Damages (Or the Lack Thereof)

The first iteration of Plaintiffs' complaint named only one plaintiff:  BMA LLC, which the operative complaint alleges is a Puerto Rico company "that is co-owned by multiple individual cryptocurrency traders" and "holds the title to, and ownership in, any and all claims, causes of action and demands … that its owner traders had against" Defendants.  SAC ¶ 8.  The complaint does not identify BMA's purported "owner traders," but the Puerto Rico Registry of Corporations and Entities reveals that Plaintiff's counsel, Pavel Pogodin, formed BMA in March 2019— initially named TransPacific IP Group LLC and later Bitcoin Manipulation Abatement LLC—and

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO

1    is himself listed as its sole authorized person.[2]  BMA subsequently amended its complaint to add

2    two additional plaintiffs, Yaroslav Kolchin and Vitaly Dubinin.  Both Mr. Kolchin and Mr.

3    Dubinin are alleged to be citizens and residents of the Russian Federation.  SAC ¶¶ 9–10.

4          No Plaintiff is alleged to have traded on or ever used BitMEX, let alone suffered losses

5    while trading on that platform because of any manipulative conduct (whether allegedly

6    perpetrated by Defendants or otherwise).  In fact, Plaintiffs do not specifically allege that they

7    personally made any trades at all:  They claim only that they "traded (directly *or indirectly*) the

8    spot bitcoin and/or bitcoin derivatives" on some unidentified exchange "at the time the alleged

9    artificial price existed due to the wrongful conduct of" Defendants.  SAC ¶¶ 336, 359 (emphasis

10   added).  Plaintiffs further allege that they "sustained a domestic loss" of varying amounts of

11   bitcoin "on a domestic United States based cryptocurrency exchange" at various points in time,

12   SAC ¶¶ 295–300, 337–41, 360–64, but provide no details as to these purported losses.

13   **IV.    ARGUMENT**

14         Motions to dismiss are governed by the familiar standards of Federal Rule of Civil

15   Procedure 12(b).  On a Rule 12(b)(1) challenge, the plaintiff "bears the burden of establishing that

16   the court has the requisite subject matter jurisdiction to grant the relief requested." *Trend Micro*

17   *Inc. v. RPost Holdings, Inc.*, No. 13-CV-05227-WHO, 2014 WL 1365491, at *4 (N.D. Cal. Apr.

18   7, 2014).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege 'enough facts

19   to state a claim to relief that is plausible on its face.'" *Fanaro v. County of Contra Costa*, No.

20   3:19-cv-03247-WHO, 2020 WL 95568, at *1 (N.D. Cal. Jan. 8, 2020) (quoting *Bell Atl. Corp. v.*

21   *Twombly*, 550 U.S. 544, 556 (2007)).  "A claim is facially plausible when the plaintiff pleads

22   facts that 'allow the court to draw the reasonable inference that the defendant is liable for the

23   misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This

24   "plausibility" standard requires "more than a sheer possibility that a defendant has acted

25

26         [2] *See* Corporations Search, Registry of Corporations and Entities, Department of State of
Puerto Rico, https://prcorpfiling.f1hst.com/CorporationSearch.aspx (register number 424234).
27   TransPacific Law Group is still identified in Plaintiffs' counsel's mailing and email addresses on
the California State Bar website.  *See* California Attorney Licensee Profile, The State Bar of
28   California, http://members.calbar.ca.gov/fal/Licensee/Detail/206441.

1  unlawfully." *Iqbal*, 556 U.S. at 678.  As both the Supreme Court and this Court have explained,

2  "a plaintiff must allege facts sufficient to 'raise a right to relief above the speculative level.'"

3  *Fanaro*, 2020 WL 95568, at *1 (quoting *Twombly*, 550 U.S. at 555).  "[A]llegations that are

4  merely conclusory, unwarranted deductions of fact, or unreasonable inferences" fall well short of

5  this standard.  *Id.* (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

6      Where, as here, "a complaint alleges fraud or mistake," "Federal Rule of Civil Procedure

7  9(b) imposes a heightened pleading standard."  *Myers v. BMW of N. Am., LLC*, No. 16-cv-00412-

8  WHO, 2016 WL 5897740, at *2 (N.D. Cal. Oct. 11, 2016).  "Under FRCP 9(b), to state a claim

9  for fraud, a party must plead with 'particularity the circumstances constituting the fraud,' and the

10  allegations must 'be specific enough to give defendants notice of the particular misconduct … so

11  that they can defend against the charge and not just deny that they have done anything wrong.'"

12  *Id.* (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  "Averments of

13  fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."

14  *Id.* (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

15      Applying those familiar standards here, Plaintiffs' complaint is facially deficient in

16  multiple, independent respects and should be dismissed in full.  And because Plaintiffs have

17  already had multiple opportunities "to state actionable claims and fix deficiencies in their

18  complaints" but have failed to do so, this Court should dismiss Plaintiffs' case with prejudice.

19  *Smith v. Wilt*, No. 12-cv-05451-WHO, 2013 WL 5675897, at *5 (N.D. Cal. Oct. 17, 2013).

20      **A.      Plaintiffs Lack Constitutional and Statutory Standing.**

21          **1.      Plaintiffs Do Not Plausibly Allege That They Suffered Any Article III
                     "Injury in Fact" Resulting from Defendants' Purported Conduct.**

22  "[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v.

23  Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "Those three elements are:  (1) Plaintiffs must

24  suffer an 'injury in fact,' (2) Plaintiffs must allege a causal connection between the injury and the

25  conduct complained of, and (3) Plaintiffs must demonstrate redressability."  *In re Toyota Motor

26  Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 826 F. Supp. 2d

27  1180, 1187 (C.D. Cal. 2011).  Plaintiffs do not satisfy the first and second of those requirements.

28

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO

*First*, all of Plaintiffs' claims fail because they do not allege a "causal connection" between their purported injury—a purported "domestic loss of [varying amounts of] bitcoins" on an unidentified "domestic United States based cryptocurrency exchange"—and the alleged CEA, RICO, and state law violations.

For there to be a "causal connection between the injury and the conduct complained of," "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation, internal quotation marks, and alterations omitted). That causal connection "must be more than attenuated"; links within a "causal chain" cannot be "hypothetical or tenuous" and must "remain plausible." *Wash. Envtl. Council v. Belton*, 732 F.3d 1131, 1141–42 (9th Cir. 2013) (explaining that "where the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the causal chain is too weak to support standing") (quoting *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012)). And for a connection to be "plausible," a plaintiff must do more than "engage in ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).[3]

An "academic exercise in the conceivable" would be a charitable characterization of what Plaintiffs ask this Court to engage in here. Even taking all of Plaintiffs' allegations as true, the complaint is devoid of any facts linking Plaintiffs' purported loss of bitcoin to any of the claimed RICO, CEA, or state law violations allegedly committed by Defendants. Plaintiffs do not allege that they suffered any loss on BitMEX, alleging instead that they "sustained a domestic loss" of bitcoins on some other, unidentified "domestic United States based cryptocurrency exchange," with no allegation whatsoever as to any connection between Defendants and this unnamed

---

[3] *See, e.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) (dismissing data breach claims for lack of Article III standing where the facts pled "do not trace to the data breach at all or are so common the infinite possibilities forecloses plausibility"); *In re Toyota*, 826 F. Supp. 2d at 1191 (complaint's general allegations that "Toyota" caused their loss, unaccompanied by "specific factual allegations about either Defendant's involvement" failed to satisfy Article III); *Miller v. 4Internet, LLC*, 433 F. Supp. 3d 1188, 1199 (D. Nev. 2020) (dismissing where "the facts show at best that it is merely possible that [defendants'] use of [a web service], as opposed to a third party's use, is what took down [the plaintiff's] server").

"domestic" exchange.  Nor do Plaintiffs identify the trades that led to these losses, or even allege that they personally made any specific trades at all.  Rather, Plaintiffs vaguely claim to have "traded (directly *or indirectly*) the spot bitcoin and/or [unspecified] bitcoin derivatives at the time the alleged artificial price existed due to the wrongful conduct of" Defendants.  *E.g.*, SAC ¶ 336 (emphases added).  And even if Plaintiffs could allege that they (i) traded a product whose value could conceivably be impacted by trading activity on BitMEX and (ii) suffered a loss on that trade, Plaintiffs allege no facts establishing that the actions of any of the Defendants—as opposed to any other market factor—caused that diminution in value.  Indeed, Plaintiffs expressly allege that "[b]itcoin futures and especially spot markets" are "particularly susceptible to pumps-and-dumps, Barts, stop loss hunts, liquidation cascades, spoofing, as well as other forms of market manipulation," SAC ¶ 102, all of which Plaintiffs acknowledge are carried out by *other* unnamed individuals or entities.  SAC ¶¶ 101–15; *see also* SAC ¶¶ 176, 187, 226, 238, 250.

Simply put, it is impossible to determine from the complaint that any of the Defendants, as opposed to a third party, caused Plaintiffs' alleged bitcoin losses.  That is the precise scenario in which the Ninth Circuit has concluded that "the causal chain is too weak to support standing."  *Wash. Envtl. Council*, 732 F.3d at 1142 (rejecting as insufficient plaintiffs' "vague, conclusory statements" that defendants' conduct "contributes to greenhouse gas emissions, which in turn, contribute to climate-related changes that result in [plaintiffs'] purported injuries").

*Second*, Plaintiff BMA independently lacks standing here for the additional reason that it fails to allege plausible facts establishing that it suffered an "injury in fact."

To establish an "injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.*  This means "that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  "Nondescript and conclusory allegations of injury … are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete

1    and particularized." *Bihari v. Cross Roads of the West Gun Show*, No. SACV 16-0718 JVS, 2016

2    WL 11000618, at *2 (C.D. Cal. July 18, 2016) (citation and internal quotation marks omitted).[4]

3        As noted, BMA alleges here that it "traded (directly or indirectly)" and that it "sustained a

4    domestic loss of at least 10 bitcoins." *E.g.*, SAC ¶¶ 295–97, 336, 359.  It is not clear from the

5    complaint, however, whether BMA itself lost those bitcoins, or if it is attempting to bring suit on

6    behalf of its members (for instance, its sole named shareholder, Plaintiff's counsel in this

7    lawsuit).  Indeed, the complaint itself suggests that BMA is attempting to bring unidentified

8    claims on behalf of unnamed individuals based on unspecified facts:  "Plaintiff BMA is co-owned

9    by multiple individual cryptocurrency traders and it holds the title to, and ownership in, any and

10   all claims, causes of action and demands … that its owner traders had against Defendant HDR,

11   ABS, Hayes, Delo and Reed throughout the world."  SAC ¶ 8.  BMA's failure to specify whether

12   it is "seeking to vindicate [its] own rights" or the rights of its purported members (and, if so, what

13   rights) deprives BMA of Article III standing.  *Mellow*, 2019 WL 3769950, at *2.

14              **2.        Plaintiffs Lack Statutory Standing to Pursue Their RICO Claims.**

15       Even if Plaintiffs' allegations were somehow sufficient to establish causation for Article

16   III purposes—and they are not—Plaintiffs' allegations (or more appropriately, the lack thereof)

17   are insufficient to satisfy RICO's "more stringent proximate cause requirements." *Gibson v.*

18   *Credit Suisse AG*, 787 F. Supp. 2d 1123, 1133 (D. Id. 2011).

19       "To have standing under § 1964(c), a civil RICO plaintiff must show (1) that his alleged

20   harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the

21   RICO violation, which requires the plaintiff to establish proximate causation." *Canyon County v.*

22   *Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).  As to the first element, Plaintiffs must

23   "allege more than they were 'damaged' by the RICO conduct," with facts "show[ing] how and

24   ——————————————

25       [4] *See also, e.g.*, *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015) ("To satisfy the 'injury in fact' element, 'the plaintiff must show that he personally has

26   suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)); *Mellow*

27   *v. Josephine County*, No. 1:19-cv-01230-AA, 2019 WL 3769950, at *2 (D. Or. Aug. 9, 2012) (dismissing for lack of standing where "[t]he Complaint does not clearly allege an injury that is

28   concrete and particularized, nor is it clear that [the plaintiff] is seeking to vindicate his own rights by bringing this case").

1   why those assertions are plausible given the information currently available to" the claimant.

2   *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1079 (N.D. Cal. 2018).  And as

3   to the second element, Plaintiffs must allege facts establishing "a 'direct relation' between the

4   injury asserted and the conduct alleged," which "cannot be 'too remote,' 'purely contingent,' or

5   'indirect.'"  *Id.* at 1078 (quoting *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010)).

6        Plaintiffs' RICO claims fail both requirements.  First, Plaintiffs provide essentially no

7   information as to their injuries beyond conclusory allegations that they were "damaged" by

8   Defendants' alleged "wrongful" conduct.  Indeed all Plaintiffs allege is that they sustained bitcoin

9   losses from "trad[ing] (directly or *indirectly*) the spot bitcoin and/or [unspecified] bitcoin

10  derivatives."  SAC ¶¶ 295–300, 336, 359 (emphasis added).  Those allegations are so bereft of

11  information that it is impossible to determine whether Plaintiffs actually owned the bitcoin in

12  question such that their purported harm "qualifies as injury to [their] business or property."

13  *Canyon County*, 519 F.3d at 972.  That is particularly true as to BMA, as Defendants are left to

14  guess whether BMA is suing because of alleged losses it sustained directly or losses sustained by

15  its unspecified "owner traders."  SAC ¶ 8.  Because the complaint lacks "any factual allegation

16  sufficient to plausibly suggest" that Plaintiffs suffered an injury to their business or property, it

17  does "not meet the standard necessary to comply with Rule 8."  *Iqbal*, 556 U.S. at 683.

18        Second, Plaintiffs fail to allege any plausible facts establishing that their unspecified

19  bitcoin losses are directly related to RICO violations allegedly committed by any of the

20  Defendants.  As detailed *supra* in Part IV.A.1, the complaint not only lacks allegations tying

21  Plaintiffs' purported bitcoin losses to conduct by Defendants, it expressly asserts that "Bitcoin

22  futures and especially spot markets … [are] particularly susceptible" to manipulative actions,

23  SAC ¶ 102, and that *other* entities with no connection to BitMEX routinely carry out those

24  actions, *see* SAC ¶¶ 176, 187, 226, 238, 250.  Given that Plaintiffs have not sufficiently alleged a

25  connection between their purported bitcoin losses and Defendants generally, they also fail to

26  allege a plausible connection between those losses and any conduct by Defendants that allegedly

27  ran afoul of RICO.  For this reason, too, all of Plaintiffs' RICO claims must be dismissed.

28

### 3.      Plaintiffs Also Lack Statutory Standing to Pursue Their CEA Claims.

Section 22 of the CEA (7 U.S.C. § 25) "enumerates the only circumstances under which a private litigant may assert a private right of action for violations of the CEA." *Klein & Co. Futures, Inc. v. Bd. of Trade of New York*, 464 F.3d 255, 259 (2d Cir. 2006).  Specifically, section 22 "requires that a plaintiff stand in at least one of four possible relationships with defendant." *Klein & Co. Futures, Inc. v. Bd. of Trade of New York*, No. 00Civ.5563GBD, 2005 WL 427713, at *3 (S.D.N.Y. Feb. 18, 2005); *see also* 7 U.S.C. § 25(a)(1)(A)–(D).  All but one of those provisions require a direct relationship between the plaintiff and the defendant:  "Buyers and sellers of commodities can sue a trader who was not their counterparty *only* under Section 22(a)(1)(D)." *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 537 (S.D.N.Y. 2008) (emphasis added), *aff'd*, 730 F.3d 170 (2d Cir. 2013).

Here, Plaintiffs do not allege that they have a direct relationship with any of the Defendants.  Indeed, they do not allege that they ever traded on BitMEX at all.  Thus, Plaintiffs could possess statutory standing to pursue their CEA claims only if they satisfy the requirements of Section 22(a)(1)(D), which solely permits suit by private litigants "who purchased or sold a contract referred to in subparagraph (B) hereof or swap if the violation constitutes … a manipulation of the price of any such contract or swap or the price of the commodity underlying such contract or swap." 7 U.S.C. § 25(a)(1)(D)(ii).  Plaintiffs fail to satisfy that section's requirements in at least three different respects:  (1) Plaintiffs do not allege that they transacted in any futures contract or swap; (2) Plaintiffs fail to allege that they themselves "purchased or sold" such an instrument; and (3) the conclusory allegations do not establish any *plausible* injury.

### (a)      Plaintiffs Do Not Allege That They Entered into a Futures Contract or Swap.

Under Section 22(a)(1)(D) of the CEA, private litigants may bring suit only if they "purchased or sold a contract referred to in subparagraph (B) hereof or swap…." 7 U.S.C. § 25(a)(1)(D).  Subparagraph (B), in turn, refers to two types of contracts:  "any contract of sale of any commodity for future delivery," and any "option on such contract or any commodity." 7 U.S.C. § 25(a)(1)(B).  Thus, to have standing to bring suit against Defendants for market

1    manipulation under the CEA, Plaintiffs must allege that they "purchased or sold" a "contract of

2    sale of any commodity for future delivery" (or an "option" on such a futures contract) or a swap.

3    *Id.*; *see Berk v. Coinbase, Inc.*, No. 18-cv-01364-VC, 2018 WL 5292244, at *2 (N.D. Cal. Oct.

4    23, 2018) (explaining that a plaintiff "has a private right of action under the CEA only if he used

5    [a cryptocurrency exchange] to make a contract of sale of a commodity for future delivery – in

6    other words, a futures contract." (citation, internal quotation marks, and alteration omitted)).

7          The complaint fails to meet this requirement.  As detailed above, Plaintiffs claim only that

8    they "traded (directly or indirectly) the spot bitcoin and/or bitcoin derivatives at the time the

9    alleged artificial price existed" due to Defendants' purported manipulation.  SAC ¶¶ 336, 359.

10   Setting aside for the moment Plaintiffs' failure to allege that they directly "purchased or sold" *any*

11   contract (discussed *infra* in Part IV.A.3(b)), those allegations do not establish that Plaintiffs

12   purchased or sold a *futures* contract or swap.

13         That is true for two reasons.  First, a "spot" transaction—like the "spot bitcoin" trades

14   alleged by Plaintiffs—"is not a 'future' within the meaning of the CEA."  *In re Dairy Farmers of*

15   *Am., Inc., Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 966 (N.D. Ill. 2014); *see also Berk*, 2018

16   WL 5292244, at *2.  A "futures contract involves the sale of a contract, not a commodity."  *Berk*,

17   2018 WL 5292244, at *2; *see also CFTC v. Zelener*, 373 F.3d 861, 864 (7th Cir. 2004) ("A

18   futures contract, roughly speaking, is a fungible promise to buy or sell a particular commodity at

19   a fixed date in the future." (citation omitted)); *In re Dairy Farmers*, 60 F. Supp. 3d at 966

20   (collecting cases holding the same).  Because Plaintiffs allege only the purchase of bitcoin (i.e., a

21   "spot bitcoin" trade), "rather than to make a contract to purchase [bitcoin] at a specific date in the

22   future, [they] cannot maintain a claim under the CEA."  *Berk*, 2018 WL 5292244, at *2.

23         Second, while a "bitcoin derivative" may, in some circumstances, be a futures contract or

24   swap, Plaintiffs do not provide sufficient information to determine the nature of the unspecified

25   "bitcoin derivative[s]" mentioned in the complaint under any pleading standard.  Where, as here,

26   a party brings suit "for fraud in violation of CEA § 6(c)(1) and Regulation 180.1(a)(1)–(3)," those

27   claims "are predicated on fraud" and therefore "must be alleged with the particularity required by

28   Rule 9(b)."  *CFTC v. Monex Credit Co.*, No. SACV 17-1868 JVS (DFMx), 2020 WL 1625808, at

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO

*5 (C.D. Cal. Feb. 12, 2020); *cf.* SAC ¶ 332 (alleging that Defendants committed "fraud … in violation of Section 6(c)(1) of the CEA and Regulation 180.1"); SAC ¶ 352 (alleging a "manipulative, fraudulent and deceptive scheme" in violation of the CEA).[5]

Plaintiffs' allegations here are so generalized that they fail to satisfy baseline pleading requirements under Rule 8, let alone the heightened standards imposed by Rule 9(b). Because Plaintiffs do not even identify the "bitcoin derivatives" they allege to have "purchased or sold" at a loss, it is impossible to ascertain whether those derivatives are indeed futures contracts or swaps within the meaning of Section 22(a)(1)(D) of the CEA, let alone whether the price of those derivatives was impacted by any conduct allegedly undertaken by Defendants. Plaintiffs therefore lack statutory standing to pursue their CEA claims.

> **(b)      Even If Plaintiffs Did Purchase or Sell a Futures Contract or Swap, They Do Not Allege That They Did So Directly.**

Plaintiffs' CEA claims also independently fail for lack of statutory standing because Plaintiffs do not allege that they themselves "purchased or sold" a futures contract or swap. Where, as here, a private litigant asserts CEA claims against a party who was not its counterparty, it can do so only pursuant to Section 22(a)(1)(D). Section 22(a)(1)(D), in turn, affords standing only to those "who *purchased or sold* a contract referred to in subparagraph (B) hereof or swap if the violation constitutes … a manipulation of the price of any such contract or the price of the commodity underlying such contract or swap." 7 U.S.C. § 25(a)(1)(D)(ii) (emphasis added).

This statutory language "limit[s] claims to those of a plaintiff who actually traded in the commodities market." *Klein*, 464 F.3d at 260. Thus, the Second Circuit in *Klein* dismissed a plaintiff's market manipulation CEA claims for lack of statutory standing when the plaintiff did

---

[5] In the context of manipulation claims under the securities laws (which in any event would not govern claims under the commodities laws), some courts have suggested that Rule 9(b)'s pleading standards should be "somewhat relaxed." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1239 (C.D. Cal. 2015). While the Ninth Circuit has not yet addressed this question, "even under a relaxed Rule 9(b) standard, '[g]eneral allegations not tied to the defendants or resting upon speculation are insufficient." *Id.* at 1240 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007)). Rather, even under this approach, it remains the plaintiff's burden to allege facts identifying "*what* [actions] were purportedly manipulative,… *why* they were manipulative, *how* the market was misled by them, and *what* effect the trades had on the market." *Id.* at 1240–41. Plaintiffs fail to meet this burden.

1    not itself "own the [] contracts at issue," but instead only "facilitated the trading and fulfilled

2    certain obligations of its customers," who themselves "traded" the contracts.  *Id.* at 257, 262.  The

3    court did so even though the plaintiff alleged that he "suffered damages because of its customer

4    First West's inability to cover its margin."  *Id.* at 262 (quoting *Klein*, 2005 WL 427713 at *4).  As

5    the court explained, plaintiff's "loss was a credit loss, not a trading loss," and therefore did not

6    fall within the statutory language of Section 22 of the CEA.  *Id.*  Likewise, in *Elsasser v. DV*

7    *Trading, LLC*, 444 F. Supp. 3d 916 (N.D. Ill. 2020), the district court dismissed a plaintiff's CEA

8    claims when the trades in question were made by plaintiffs' trading companies, rather than

9    plaintiffs themselves.  *Id.* at 921–22.  Even though the plaintiffs claimed to hold an "indirect stake

10   in the trades" because they were "employees and shareholders of their trading companies," the

11   court concluded that the fact that "the trading companies, but not the plaintiffs individually, were

12   directly injured by losses resulting from trades" deprived plaintiffs of standing.  *Id.* at 921, 924.

13       Here, no Plaintiff alleges that it directly "purchased or sold" a futures contract or swap.

14   Instead, Plaintiffs allege only that they "traded (directly *or indirectly*)" unspecified

15   cryptocurrencies or cryptocurrency derivatives.  *Klein*, *Elsasser*, and the plain text of Section

16   22(a)(1)(D) confirm that Plaintiffs' failure to allege that they directly made the trades at issue

17   precludes them from bringing claims under the CEA.

18
             **(c)    Plaintiffs Also Lack Standing under the CEA Because They Do
                      Not Allege Plausible Facts Establishing That the Alleged
19                    Manipulation Caused Their Losses.**

20       Finally, all of Plaintiffs' CEA claims further fail for lack of statutory standing for many of

21   the same reasons Plaintiffs lack statutory standing under RICO.  Section 22 of the CEA provides

22   liability "'for *actual damages* resulting from' one of four types of violations, including, as

23   relevant here, market manipulation."  *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104,

24   111 (2d Cir. 2018) (quoting 7 U.S.C. § 25(a)(1)) (affirming dismissal of CEA claim for lack of

25   statutory standing).  While this "'actual injury' analysis looks very similar to the 'injury in fact'

26   analysis used to determine constitutional standing," because "it is an element of a substantive

27   cause of action," the "[i]njury must be *plausible*, not just colorable."  *Id.* at 111–12 (emphasis

28   added).  That is particularly true where, as here, Plaintiffs allege CEA claims predicated upon

1    fraud-based market manipulation, as such claims are subject to Rule 9(b)'s heightened pleading

2    requirements. *Monex Credit Co.*, 2020 WL 1625808, at \*5.

3        Regardless of which pleading standard applies, "if a plaintiff is to successfully plead that a

4    defendant's market manipulations have injured her under the CEA, she must plausibly allege (1)

5    that she transacted in at least one commodity contract at a price that was lower or higher than it

6    otherwise would have been absent the defendant's manipulations, and (2) that the manipulated

7    prices were to the plaintiff's detriment." *Harry*, 889 F.3d at 112 (citing 7 U.S.C. § 25(a)(1)(D)).

8    Absent "plausible" allegations "mak[ing] the connection between a defendant's manipulation and

9    a plaintiff's actual injury," the CEA claims must be dismissed. *Id.* at 113–14, 115 (dismissing

10    CEA claims for lack of standing when plaintiff failed to plead facts tying their loss in one type of

11    derivatives to the contracts that defendants allegedly manipulated).

12        Here again, Plaintiffs' allegations fall well short of what the CEA requires.  At the

13    threshold, Plaintiffs do not identify the actual "bitcoin derivatives" that they "directly or

14    indirectly" traded; it is therefore impossible to ascertain whether Plaintiffs "transacted in at least

15    one commodity contract at a price that was lower or higher than it otherwise would have been

16    absent the defendant's manipulation." *Id.* at 112.  Moreover, the complaint contains no facts

17    tying any decrease in value of those unspecified contracts to any contract or commodity that

18    Defendants allegedly manipulated.  Indeed, as detailed above, the complaint not only fails to tie

19    Plaintiffs' bitcoin losses to manipulative conduct by Defendants, it expressly acknowledges that

20    "Bitcoin futures and especially spot markets … [are] particularly susceptible" to manipulation by

21    many, SAC ¶ 102, and that *other* entities with no connection to BitMEX or Defendants routinely

22    carry out those actions, *see* SAC ¶¶ 176, 187, 226, 238, 250.  Under any pleading standard, let

23    alone the heightened scrutiny required by Rule 9(b), Plaintiffs fail to allege plausibly that they

24    suffered an "actual injury" because of any purported market manipulation by the Defendants.

25        **B.    Plaintiffs Do Not Allege Plausible Facts Establishing that US Law Reaches the
            Conduct Complained of Here.**

26

27    Plaintiffs' failure to allege plausible facts establishing their standing under both Article III

28    and the federal statutes they invoke requires dismissal of this lawsuit outright.  But Plaintiffs'

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO

claims also fail for another, independent reason: the complaint is devoid of plausible facts (let alone facts sufficient to satisfy Rule 9(b)) tying Plaintiffs' claims to the United States (or California) such that the US statutes or (California law) would govern this lawsuit at all.

### 1. The CEA, RICO, and California Law All Require a Connection between the Alleged Violation or Injury and the Forum.

All three bodies of law invoked by Plaintiffs require a sufficient nexus between either the conduct complained of or the injury allegedly suffered due to that conduct and the United States.

*CEA Claims*. The Second Circuit—the lone federal appellate court to consider the issue to date—has ruled that neither the CEA's private right of action (Section 22) nor its substantive prohibitions against market manipulation (Sections 6(c)(1) and 9(a)(2)) apply extraterritorially. *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 103–04 (2d Cir. 2019) (citation omitted). Thus, to proceed with a private right of action under Section 22 of the CEA, the suit "must be based on transactions occurring in the territory of the United States." *Id.* at 104. And when that CEA suit is predicated on a market manipulation theory, as Plaintiffs' CEA claims are here, the complaint also must make plausible "allegation[s] of manipulative conduct or statements made in the United States," "regardless of any other conduct that occurred in U.S. territory." *Id.* at 108 (citation omitted). In short, "to assess whether Plaintiffs have pleaded an appropriately domestic application of the CEA, the Court must assess whether Plaintiffs' CEA claims are predominantly foreign." *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 331 (S.D.N.Y. 2020). Where a defendant's "alleged wrongful conduct … is almost entirely foreign," it is "impermissibly extraterritorial." *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2020 WL 5077186, at *2 (S.D.N.Y. Aug. 27, 2020) (citing *Prime Int'l*, 937 F.3d at 107).

*RICO Claims*. RICO also requires that Plaintiffs establish a substantial connection between their claims and the United States in at least two respects. First, in light of RICO's requirement of "proof of an enterprise that is 'engaged in, or the activities of which affect, interstate or foreign commerce,'" "a RICO enterprise must engage in, or affect in *some significant way*, commerce directly involving the United States—*e.g.*, commerce between the United States and a foreign country." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2105 (2016)

1   (quoting 18 U.S.C. § 1962(a), (b), and (c) (emphasis added)).  "Enterprises whose activities lack

2   that anchor to U.S. commerce cannot sustain a RICO violation." *Id.*  Second, the Supreme Court

3   has observed that "RICO's private right of action," 18 U.S.C. § 1964(c), does not apply

4   extraterritorially.  *Id.* at 2106.  "A private RICO plaintiff therefore must allege and prove a

5   *domestic* injury to its business or property."  *Id.*  As the Ninth Circuit has recently explained, an

6   alleged injury that is "merely a consequential effect of [defendant's] admittedly foreign" conduct

7   does not suffice.  *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir. 2020) (affirming

8   dismissal of RICO claim for failure to establish cognizable injury).

9            *State Law Claims*.  California law, too, mandates that a plaintiff establish a nexus between

10  the conduct complained of and the State of California for the claims to be actionable.  While the

11  "presumption against extraterritoriality does not apply to common law claims," California courts

12  have recognized that "there are still limits on the extraterritorial application of California law."

13  *E.g.*, *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015), *aff'd*, 694

14  F. App'x 585 (9th Cir. 2017).  "Under California law, the relevant inquiry for whether state law

15  should be applied extraterritorially is not the location of employment or where the contract was

16  formed, but rather whether 'the conduct which gives rise to liability … occurs in California.'"  *Id.*

17  (quoting *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999)) (dismissing

18  discrimination claims under the California Constitution when "none of the conduct which gave

19  rise to the liability occurred in California"); *see also BLK Enters., LLC v. Unix Packaging, Inc.*,

20  No. 2:18-cv-02151-SVW-KS, 2018 WL 5993844, at *7 (C.D. Cal. June 14, 2018) (granting

21  judgment on the pleadings to defendant on California claims on extraterritorial grounds).

22            **2.    Plaintiffs' Claims Are Impermissibly Extraterritorial.**

23            Applying these principles here, Plaintiffs' allegations as to both the location of their

24  claimed injury and Defendants' purported conduct are so vague and conclusory that they provide

25  no basis to conclude that any of the claims are sufficiently tethered to the United States.

26            Although the complaint is muddled, Plaintiffs' core theory appears to be that Defendants

27  developed BitMEX in a way that others can exploit to manipulate the price of cryptocurrencies,

28  and that Defendants manipulated those prices themselves by engineering server "overloads" and

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO

"freezes" which Plaintiffs claim BitMEX uses to "exacerbate the artificial prices" to Defendants' benefit.  SAC ¶¶ 185–87.  As to the former theory, Plaintiffs do not allege any facts establishing that Defendants engaged in any conduct in the United States that is relevant to their claims. Instead, they resort to a laundry list of possible overlaps between some aspect of BitMEX and the United States.  Those scattershot allegations include assertions that:  users can circumvent BitMEX's prohibitions against US users, SAC ¶¶ 46, 61, 72; Defendants use a variety of US-based third parties to operate BitMEX, SAC ¶¶ 48–59; and a number of "present and former employees of Defendant HDR" reside in this district, SAC ¶ 74.

Even accepting all of those allegations as true at this stage, those alleged ties to the United States are irrelevant.  To prevail on their claims, Plaintiffs must establish that Defendants engaged in the purported manipulative and fraudulent conduct *in the United States*.  *See Prime Int'l*, 937 F.3d at 108; *City of Almaty*, 956 F.3d at 1132.  Here, *any* allegations supporting those theories hinge entirely on conduct alleged to have occurred outside the United States.  As Plaintiffs admit, BitMEX is owned and operated by HDR, a Seychelles company, and Plaintiffs do not allege that they have interacted with any of the Defendants in the United States in any capacity.

Indeed, the only attempts that Plaintiffs make to tie their claims of Defendants' purported market manipulation to the United States are found in Paragraphs 185 and 186, where Plaintiffs allege that "fraudulent 'system overloads'" or "fraudulent and deliberate server freezes" (1) "are orchestrated from San Francisco offices of Defendant HDR, where BitMEX's three Site Reliability Engineers are all located"; (2) involve servers and IT infrastructure "deployed on United States based Amazon EKS"; and (3) are "perpetrated" through the BitMEX website, "which is accessible and is extensively used … by users located in the United States and this District" through VPN software.  SAC ¶¶ 185–86.  Plaintiffs, however, plead no facts to support these bare allegations, and thus do not plausibly explain the "who, what, where, when, and how" of any alleged fraudulent activity in the US, as Rule 9(b) requires.  *Vess*, 317 F.3d at 1106.  And while Plaintiffs allege that Defendants profited from the purported manipulative conduct by "transferr[ing] … proceeds of the alleged illegal bitcoin futures contracts price manipulation from BitMEX cryptocurrency exchange to other cryptocurrency exchanges" that are based in the

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO

1   United States, SAC ¶ 276, they again provide no details as to where or how those transfers took

2   place.  Here again, without factual allegations as to the "who, what, when, where, and how" of

3   Defendants' purported misconduct, *Vess*, 317 F.3d at 1106, it is impossible to determine whether

4   such actions are related to Plaintiffs' claims at all, let alone whether they provide a basis for

5   proceeding with this lawsuit in the United States.

6          Plaintiffs' claim that ABS is the foreign Defendants' "alter ego" does not change this

7   analysis.  Plaintiffs' alter ego allegations as to ABS are woefully deficient and Defendants reserve

8   the right to challenge them at the appropriate juncture.[6]  But even assuming that ABS could ever

9   be considered the foreign Defendants' alter ego for *some* purposes, Plaintiffs "cannot use

10  California's alter ego doctrine to hold [the foreign Defendants] and [ABS] [as] one and the

11  same."  *Double Bogey, L.P. v. Enea*, 794 F.3d 1047, 1052 (9th Cir. 2015).  As both the Ninth

12  Circuit and California Supreme Court have explained, "[a]lthough California's alter ego doctrine

13  may allow for 'a hole [to] be drilled in the wall of limited liability erected by the corporate form'

14  …, 'for all purposes other than that for which the hole was drilled, the wall still stands.'  *Id.*

15  (quoting *Mesler*, 39 Cal. 3d at 301).  Plaintiffs' effort to treat the foreign Defendants and ABS as

16  interchangeable is thus contrary to binding precedent.

17         Finally, Plaintiffs' allegations about where they suffered their damages are equally vague.

18  Defendants have already shown that Plaintiffs' complaint fails to allege facts establishing who it

19  is they claimed suffered a cognizable injury, what that injury is, or how that injury occurred.

20  Plaintiffs also fail to allege any non-conclusory facts establishing *where* they suffered that injury.

21  The only information Plaintiffs provide as to their alleged damages is that they "traded (directly

22  or indirectly) the spot bitcoin and/or" unknown "bitcoin derivatives," and that they "sustained a

23  domestic loss of at least [3 to 10] bitcoins, on a domestic United States based cryptocurrency

24  exchange" at various intervals.  SAC ¶¶ 336–41.  From that barebones allegation, it is impossible

25  to tell (1) whether Plaintiffs' claims are "based on transactions occurring in the territory of the

26  _____

27      [6] For example, Plaintiffs do not allege that the individual Defendants have any direct
    interest in ABS so as to make it their alter ego, nor do Plaintiffs allege what "inequitable result"
    would follow from respecting the corporate form given the lack of detail regarding Defendants'
28  roles in the alleged fraud.  *See Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985).

United States" (as is required to pursue a CEA claim, *see Prime Int'l*, 937 F.3d at 104; *see also In re Platinum & Palladium*, 449 F. Supp. 3d at 331 (plaintiffs allegation that they "suffered losses in the United States … is not enough to salvage an otherwise extraterritorial claim")); [7] or (2) whether those trades are of the sort that could possibly have been impacted in some way by the alleged RICO enterprise's activities that "affect[ed] in some significant way, commerce directly involving the United States" or whether foreign citizens' cryptocurrency losses constitute a "domestic injury" (as is required under RICO, *see RJR Nabisco*, 136 S. Ct. at 2105); or (3) whether the alleged conduct that "gave rise to the liability occurred in California" (as required under California law, *see Russo*, 135 F. Supp. 3d at 1096).

Accordingly, Plaintiffs' failure to set forth specific factual allegations linking their claims to this forum provides yet another reason why Plaintiffs' entire complaint must be dismissed.

## C.    Plaintiffs' Federal Law Claims Are Deficient in Multiple Additional Respects.

The absence of plausible facts establishing Plaintiffs' standing to assert their federal claims or any nexus between those claims and the United States dooms Plaintiffs' complaint.  But even if Plaintiffs could clear those threshold hurdles, their complaint must still be dismissed because Plaintiffs fail to allege facts stating prima facie RICO and CEA claims.  Plaintiffs' allegations as to these claims are so conclusory that their attempts to satisfy nearly every single element are deficient under any pleading standard, particularly the heightened standard of Rule 9(b).  Most obvious among Plaintiffs' pleading deficiencies are that:  (1) Plaintiffs do not adequately allege any manipulation involving any transactions covered by the CEA; and (2) Plaintiffs' attempt to establish prima facie RICO claims through generalized and collective pleading is expressly barred by Ninth Circuit precedent.

### 1.    Plaintiffs' CEA Claims Fail Because They Do Not Adequately Allege Market Manipulation.

Section 6(c)(1) of the CEA, on which Plaintiffs purport to rely, provides that "[i]t shall be

---

[7] Moreover, to the extent that any Plaintiff traded on the BitMEX platform from within the United States, it would have violated the BitMEX Terms of Services and would therefore be precluded from asserting any damage claims.  *See* BitMEX, Terms of Service, https://www.bitmex.com/app/terms (last visited Sept. 14, 2020).

unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance." 7 U.S.C. § 9(1); *accord* 17 C.F.R. § 180.1(a). Section 6(c)(3) likewise prohibits the manipulation or attempted manipulation "of any swap, or of any commodity … on or subject to the rules of any registered entity." 7 U.S.C. § 9(3); *accord* 17 C.F.R. § 180.2. Plaintiffs fail to allege manipulation of any transactions covered by these provisions.

First, "the CEA's anti-manipulation provision applies to the trading of futures contracts that occurs only 'on or subject to the rules of any registered entity.'" *Myun-Uk Choi v. Tower Research Capital LLC*, No. 14-CV-9912 (KMW), 2020 WL 1503446, at *3 (S.D.N.Y. Mar. 30, 2020) (granting summary judgment where it was undisputed that the "future contracts at issue … were not traded *on* a registered entity"). Plaintiffs do not even attempt to satisfy that element. In fact, Plaintiffs admit that BitMEX is *not* a registered entity. SAC ¶ 132. And Plaintiffs do not even identify the trades underlying this lawsuit (*see supra* Part IV.A.3), much less allege that any contracts at issue in those trades are traded "on or subject to the rules of any registered entity."

Second, while Plaintiffs allege broadly that they "traded (directly or indirectly) the spot bitcoin and/or bitcoin derivatives at the time the alleged artificial price existed due to the wrongful conduct of" Defendants, SAC ¶¶ 336, 359, they fail to allege adequately any manipulation in connection with any such trades. Rather, Plaintiffs allege only that the price of trades was affected by a "liquidation cascade" triggered by Defendants' unspecified "market manipulation" or "use of manipulative or deceptive device or contrivance" in connection with other unidentified transactions. SAC ¶¶ 337, 360. Those allegations are not sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

### 2. Plaintiffs' RICO Claims Must Be Dismissed for Failure to Allege Particular Facts Establishing that Any Defendant Violated RICO.

Plaintiffs' RICO claims likewise fail at the threshold for two reasons.

*First*, Plaintiffs do not allege with the requisite particularity the facts underlying those claims. "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO

1    constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud

2    claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).  That is true even

3    if fraud is not itself an element of the claim.  When a plaintiff "allege[s] a unified course of

4    fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," that

5    claim is "grounded in fraud" or "sound[s] in fraud," and Rule 9(b) applies.  *Vess*, 317 F.3d at

6    1104; *see also Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) ("RICO

7    claim was 'grounded' in fraud because it alleged a uniform course of fraudulent conduct").

8         There can be no serious dispute that all of Plaintiffs' RICO claims are "grounded" in

9    fraud.  Thus, "[t]o avoid dismissal for inadequacy under Rule 9(b), [Plaintiffs'] complaint would

10   need to state the time, place, and specific content of the false representations as well as the

11   identifies of the parties to the misrepresentation." *Edwards*, 356 F.3d at 1066 (citation and

12   internal quotation marks omitted).  But here, Plaintiffs do no more than repeat the word "fraud"

13   without ever explaining the actual misrepresentations and fraudulent conduct that allegedly

14   harmed them.  Plaintiffs claim that the "Defendants engaged in wire fraud," SAC ¶¶ 257–72, but

15   never actually identify the specific misleading information that they claim Defendants

16   "injected … into the market," SAC ¶ 262.  Likewise, while Plaintiffs claim that Defendants

17   "orchestrated" from San Francisco "fraudulent 'system overloads'" and "server freezes" to their

18   benefit, they do not allege how Defendants carried out that purported conduct or how it was

19   purportedly fraudulent.  SAC ¶¶ 185–86.  Indeed, those allegations hinge entirely on Plaintiffs'

20   assertion that "BitMEX's three Site Reliability Engineers" are located in the "San Francisco

21   offices of Defendant HDR." *Id.*  Such broadbrush, generalized claims fall well short of

22   explaining the "who, what, when, where, and how" of Defendants' purported civil RICO fraud

23   claims.  *Vess*, 317 F.3d at 1106.

24        *Second*, Plaintiffs fail to allege that each Defendant engaged in at least two predicate acts

25   prohibited by RICO.  "Where RICO is asserted against multiple defendants, a plaintiff must

26   allege at least two predicate acts by *each* defendant." *E.g.*, *In re WellPoint, Inc. Out-of-Network*

27   *"UCR" Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) (citation and internal quotation

28   marks omitted).  That requirement cannot be satisfied through collective pleading.  "In the

context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (alterations omitted) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).  Thus, in *Swartz*, when a complaint was "shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attributes specific misconduct only to" a few named defendants, the Ninth Circuit affirmed its dismissal at the pleading stage.  *Id.*; *see also In re WellPoint*, 903 F. Supp. 2d at 914 (dismissing RICO claims when plaintiffs referred to defendants "collectively" when attempting to allege predicate acts).

Collective pleading is all that Plaintiffs offer here.  At no point do Plaintiffs allege any facts establishing that each Defendant committed at least two predicate acts of racketeering activity.  Indeed, the section of the complaint entitled "Overt Acts in Furtherance of Raketeering [sic] Conspiracy" at no point differentiates among the five Defendants.  SAC ¶¶ 202–04.  Under Ninth Circuit precedent, Plaintiffs' effort to plead predicate acts collectively fails.

### D.   Plaintiffs' State Law Claims Fail as a Matter of Law.

Plaintiffs also assert a variety of California state law claims:  Negligence (Count VII), Fraud (Count VIII), Civil Conspiracy (Count IX), Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 et seq. (Count X), Unjust Enrichment (Restitution) (Count XI), Constructive Trust (Count XII), and Accounting (Count XIII).  Like their federal claims, Plaintiffs' state law claims are uniformly meritless and should be dismissed.

### 1.   Plaintiffs' Negligence Claim Fails Because Defendants Did Not Owe Plaintiffs Any Duty.

"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 57 (1998) (citations omitted).  With regard to the duties that a defendant owes to third parties in operating its business, the Supreme Court of California has generally "decline[d] to recognize a duty to avoid business decisions that may affect the financial interests of third parties, or to use due care in deciding whether to enter into contractual relations with another."  *Id.* at 58.  Indeed, to the extent a business *ever* owes "a

duty to protect against economic loss" to a third party, that is so only when there is at least *some* relationship between the plaintiff and the defendant company. *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

*Berk v. Coinbase, Inc.*, No. 18-cv-01364-VC, 2019 WL 3561926 (N.D. Cal. Aug. 6, 2019), bears out this principle. There, a plaintiff who attempted to purchase a cryptocurrency (Bitcoin Cash) directly on an exchange operated by the defendant (Coinbase) sued for negligence when the price represented to him by Coinbase differed from the actual market price. *See* Am. Compl. ¶¶ 23–25, ECF No. 33, No. 3:18-cv-01364-VC (N.D. Cal. July 20, 2018). The district court concluded that, based on the allegations in the complaint, the "exchange-trader relationship" identified in the complaint imposed a duty on Coinbase to "maintain a functional marketplace." *Berk*, 2019 WL 3561926, at *2. The district court reached that conclusion in light of plaintiffs' allegations that "Coinbase encouraged traders to enter the market following its launch of trading in Bitcoin Cash, so Coinbase's actions were aimed at the traders as a class"; "the negligent launch of a digital currency foreseeably impacts those who trade in the resulting dysfunctional market"; and plaintiffs' injury "is directly tied to the allegedly negligent launch." *Id.*

No such allegations are presented by the complaint. Unlike in *Berk*, Plaintiffs do not allege that they engaged with BitMEX whatsoever, let alone traded on BitMEX's platform with permission and to their detriment. To the contrary, Plaintiffs' theory of liability is predicated on actions that they allege occurred on a *different* exchange (which Plaintiffs do not claim to have traded on) which then had spillover effects on the marketplace as a whole. Nothing in California law imposes on Defendants any actionable duty owed to Plaintiffs in such circumstances.

### 2. Plaintiffs Do Not Allege A Prime Facie Claim for Fraud.

To prevail on a California common law fraud claim, a plaintiff must allege facts sufficient to satisfy Rule 9(b) establishing, among other elements, "a false representation, … justifiable reliance, and damages." *Vess*, 317 F.3d at 1105 (citation and internal quotation marks omitted). Defendants have already shown that the complaint fails to allege any plausible facts with regard to a "false representation" or "damages," particularly when Plaintiffs' allegations are held up against Rule 9(b)'s more stringent standards. Allegations regarding Plaintiffs' "justifiable

1    reliance" on a misrepresentation by Defendants, too, are absent from the complaint.  Indeed,

2    given the lack of any connection between Plaintiffs and Defendants, it appears that Plaintiffs are

3    attempting to proceed on a "fraud-on-the-market" theory of reliance.  The California Supreme

4    Court has explicitly rejected that theory in common law fraud claims like this one.  *In re*

5    *GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 592 (9th Cir. 1995) (noting that the California Supreme

6    Court rejected the "fraud on the market" theory in *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1108

7    (1993), requiring instead "actual reliance on the alleged misrepresentations and omissions").

8                    **3.    Plaintiffs' Remaining State Law Claims Are Meritless.**

9            Finally, Plaintiffs' remaining state law causes of action should be rejected out of hand.

10   - **Civil Conspiracy**.  "Under California law, there is no separate and distinct tort cause
          of action for civil conspiracy."  *Entm't Research Grp., Inc. v. Genesis Creative Grp.,*
11        *Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997).  Thus, where, as here, "no underlying tort
          exists," a civil conspiracy claim also necessarily fails.  *Id.*
12

13   - **Unfair Business Practices**.  Plaintiffs' unfair business practices claim is predicated
          upon their allegations that Defendants violated RICO (including the underlying
14        predicate acts alleged in the complaint) and the CEA.  SAC ¶¶ 420–24.  Because
          Plaintiffs have failed to state a claim as to each of those underlying offenses, their
15        unfair business practices claim under Cal. Bus. & Prof. Code § 17200 necessarily fails.
          Plaintiffs also lack standing under that statute for the reasons stated above.  *See id.*
16        § 17204 (requiring "injury in fact" and a loss "as a result of the unfair competition").

17   - **Unjust Enrichment**.  "[I]n California, there is not a standalone cause of action for
          'unjust enrichment,' which is synonymous with 'restitution.'"  *Astiana v. Hain*
18        *Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Plaintiffs' unjust enrichment
          claim thus necessarily fails with its other claims.
19

20   - **Constructive Trust.**  Similarly, a "constructive trust [] is an equitable *remedy*, not a
          substantive claim for relief."  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser,*
21        *Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 398 (Cal. Ct. App. 2007).

22
     - **Accounting.**  Like Plaintiffs' additional remaining claims, "a right to an accounting is
23        derivative; it must be based on other claims."  *Petersen v. Roundpoint Mortg. Serv.*
          *Corp.*, No. EDCV 11-01201-VAP, 2012 WL 13076612, at *5 n.6 (C.D. Cal. May 7,
24        2012) (quoting *Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 833 (1998)).

25   **V.    CONCLUSION**

26           For the foregoing reasons, this Court should dismiss with prejudice Plaintiffs' Second

27   Amended Complaint.

28

1    DATED:  September 14, 2020              JONES DAY

2

3                                              */s/ Stephen D. Hibbard*
                                              ────────────────────────
4                                              Stephen D. Hibbard

5                                          Counsel for Defendants
                                           HDR GLOBAL TRADING LIMITED, ABS
6                                          GLOBAL TRADING LIMITED, ARTHUR
                                           HAYES, BEN DELO, and SAMUEL REED

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify under penalty of perjury that on September 14, 2020, I authorized the

3  electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

4  send notification of such filing to the e-mail addresses on the Electronic Mail Notice List.

5

6                                                      */s/ Stephen D. Hibbard*
                                                     STEPHEN D. HIBBARD
7                                                     JONES DAY
                                                     555 California Street, 26th Floor
8                                                     San Francisco, CA  94104
                                                     Telephone:  +1.415.626.3939
9                                                     Facsimile:  +1.415.875.5700
                                                     E-mail: sdhibbard@jonesday.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. AND MOT. TO DISMISS
3:20-cv-03345-WHO