Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    +1.415.626.3939
Facsimile:    +1.415.875.5700

Attorneys for Defendants
HDR GLOBAL TRADING LIMITED, ABS GLOBAL
TRADING LIMITED, ARTHUR HAYES, BEN
DELO, and SAMUEL REED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin and Vitaly Dubinin,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (a.k.a. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>Defendants. | Case No. 3:20-cv-03345-WHO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  November 4, 2020<br>Time:  2:00 p.m.<br>Ctrm:  2 – 17th Floor<br>Judge:  Honorable William H. Orrick |

1

## NOTICE OF MOTION

2        PLEASE TAKE NOTICE that at 2:00 p.m. on November 4, 2020, before the Honorable

3  William H. Orrick, in Courtroom 2, 17th Floor, San Francisco Courthouse, 450 Golden Gate

4  Avenue, San Francisco, CA 94102, defendants HDR Global Trading Limited ("HDR"), ABS

5  Global Trading Limited ("ABS"), Arthur Hayes, Ben Delo, and Samuel Reed (together,

6  "Defendants"), will and hereby do move for a protective order to stay discovery pending the

7  resolution of Defendants' Motion to Dismiss (ECF 42) pursuant to Rule 26(c) of the Federal

8  Rules of Civil Procedure on the grounds stated below.

9        The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities

10  in support of this Motion, the Declaration of Stephen D. Hibbard and the Proposed Order filed

11  concurrently herewith, the pleadings and records on file in this action, and upon such other

12  matters as may be presented to the Court at or prior to the hearing on this Motion.

13

## RELIEF REQUESTED

14        Discovery should be stayed pending the resolution of Defendants' Motion to Dismiss

15  (ECF 42) pursuant to Federal Rule of Civil Procedure 26(c).

16

17    DATED:  September 28, 2020              JONES DAY

18

19                                                 */s/ Stephen D. Hibbard*
                                                  Stephen D. Hibbard

20                                        Counsel for Defendants
                                          HDR GLOBAL TRADING LIMITED, ABS
21                                        GLOBAL TRADING LIMITED, ARTHUR
                                          HAYES, BEN DELO, and SAMUEL REED
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III.  RELEVANT BACKGROUND ........................................................................... 2

  A.    Overview of the Allegations in Plaintiffs' Second Amended Complaint. ............ 2

  B.    Defendants' Pending Motion to Dismiss. ........................................................ 5

  C.    Plaintiffs' Amendments to Their Complaint, Their Unsuccessful Ex Parte
        Application, and the Parties' Joint Case Management Conference
        Statement. ..................................................................................................... 5

  D.    Plaintiffs' Hundreds of Discovery Requests and Multiple Non-Party
        Subpoenas. .................................................................................................... 7

  E.    Plaintiffs' Unprofessional Conduct and Baseless Accusations during Meet
        and Confer. .................................................................................................. 10

IV.   ARGUMENT ................................................................................................... 13

  A.    Defendants' Motion to Dismiss Is Dispositive of the Entire Case. ..................... 14

  B.    Discovery Is Not Necessary for the Resolution of Defendants' Motion to
        Dismiss. ....................................................................................................... 16

  C.    All Other Factors Warrant Granting a Stay Pending the Resolution of the
        Motion to Dismiss. ....................................................................................... 17

        1.    A Stay Furthers the Goal of Efficiency for the Court and the Parties. ...... 18

        2.    There Is No Need for Immediate Discovery. ........................................... 19

        3.    Discovery Should Be Stayed Because Plaintiffs' Voluminous
              Requests Are Not Proportionate to the Needs of the Case. ..................... 20

V.    CONCLUSION ............................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

CASES

4

*Al Otro Lado, Inc. v. Nielsen*,
  No. 3:17-cv-02366-BAS-KSC, 2018 WL 679483 (S.D. Cal. Jan. 31, 2018) ..............13, 15, 16

*Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*,
  5 F.3d 378 (9th Cir. 1993)......................................................................................................16

*Ameritel Inns v. Moffat Bros. Plastering, L.C.*,
  No. CV 06-359-S-EJL, 2007 WL 1792323 (D. Id. June 20, 2007) .........................................20

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................................14

*Canyon Cnty v. Syngenta Seeds, Inc.*,
  No. CV 05-306-S-EJL, 2005 WL 8165145 (D. Id. Oct. 28, 2005).........................15, 16, 17, 18

*Dao v. Liberty Life Assurance Co. of Boston*,
  No. 14-cv-04749-SI (EDL), 2016 WL 796095 (N.D. Cal. Feb. 23, 2016) ..............................20

*Gibbs v. Carson*,
  No. C-13-0860 THE (PR), 2014 WL 172187 (N.D. Cal. Jan. 15, 2014).................................16

*Gilead Sciences, Inc. v. Merck & Co, Inc.*,
  No. 5:13-cv-04057-BLF, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016) ...................................20

*In re Graphics Processing Units Antitrust Litig.* ("*GPU*"),
  No. C 06-07417 WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) .......................16, 17, 18

*In re Term Commodities Cotton Futures Litig.*,
  No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013).................19, 20

*Jarvis v. Regan*,
  833 F.2d 149 (9th Cir. 1987)..................................................................................................17

*Kramer v. JP Morgan Chase Bank, N.A.*,
  771 F. App'x 358 (9th Cir. 2019) ...........................................................................................17

*Little v. City of Seattle*,
  863 F.2d 681 (9th Cir. 1988)..................................................................................13, 17, 18

*Wagh v. Metris Direct, Inc.*,
   363 F.3d 821 (9th Cir. 2003)...................................................................................................17

*Wenger v. Monroe*,
   282 F.3d 1068 (9th Cir. 2002).................................................................................................13

*Yiren Huang v. Futurewei Techs., Inc.*,
   No. 18-cv-00534-BLF, 2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) .................13, 15, 16, 19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 ...................................................................................................................14, 18

Fed. R. Civ. P. 12(b) .......................................................................................................5, 13, 17

Fed. R. Civ. P. 26(b) .............................................................................................................1, 20

Fed. R. Civ. P. 26(c).............................................................................................................2, 13

Fed. R. Civ. P. 26(f) .............................................................................................................6, 7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    The Plaintiffs in this action—an entity created by Plaintiffs' counsel for purposes of

4    litigation, and two citizens and residents of Russia—have used the cover of filing a vague and

5    conclusory complaint to serve oppressive and harassing discovery requests.  They have served

6    these voluminous requests on Defendants and multiple non-parties while simultaneously the

7    complaint has been amended twice since May prior to any responsive pleading from Defendants.

8    The 338 outstanding discovery requests served to date on Defendants, 260 of which are extremely

9    broad and burdensome document requests, touch every aspect of Defendants' business whether or

10    not connected to Plaintiffs' implausible allegations and would require significant effort and

11    expense to respond to, particularly when Defendants have challenged Plaintiffs' standing and the

12    sufficiency of Plaintiffs' allegations in Defendants' pending Motion to Dismiss (ECF 42).

13    Plaintiffs have failed to proceed in an orderly fashion in the early stages of this case.  The

14    proportionality principles outlined by Rule 26(b) and relevant case law have escaped them.  Thus,

15    the Court's intervention is necessary.

16    Defendants seek a protective order staying discovery until after this Court rules on

17    Defendants' pending Motion to Dismiss.  The relevant factors considered by the courts in the

18    Ninth Circuit all weigh in favor of a stay.  First, Defendants' Motion to Dismiss is dispositive of

19    the entire case.  A "preliminary look" at the Motion to Dismiss shows, at the outset, that Plaintiffs

20    lack constitutional and statutory standing.  Plaintiffs' Second Amended Complaint ("SAC") is

21    also legally insufficient on several other grounds and dismissal of the SAC in its entirety is

22    warranted.  Second, because Defendants' Motion to Dismiss challenges the legal sufficiency of

23    Plaintiffs' SAC—and in particular, the inadequacy of allegations related to unspecified harm

24    Plaintiffs purport to have suffered at Defendants' hand—no discovery is necessary or appropriate

25    for resolution of the Motion to Dismiss.

26    Satisfying these two factors alone warrants a stay of discovery, but a stay is further

27    supported by several other factors courts consider.  Requiring Defendants to undergo costly

28    efforts to respond to well over 300 discovery requests would be a substantial waste of resources

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

when Defendants have put forth a strong challenge to the legal sufficiency of Plaintiffs' SAC, and is inimical to the goals of promoting efficiency for the Court and the parties.  Additionally, with no Scheduling Order yet issued in this case, no related discovery deadlines are approaching (or even exist) and there is no need for immediate discovery.  Finally, discovery should be stayed because Plaintiffs' sweeping requests are not proportionate to the needs of this case and instead constitute part of a campaign of harassment designed to drive up the cost of the litigation.

For these reasons, this Court should exercise its wide discretion pursuant to Rule 26(c) and issue a protective order staying discovery until the Court rules on Defendants' Motion to Dismiss.

## II.     STATEMENT OF ISSUES TO BE DECIDED

Whether a stay of discovery is warranted pending the resolution of Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 26(c).

## III.     RELEVANT BACKGROUND

### A.     Overview of the Allegations in Plaintiffs' Second Amended Complaint.

Defendants provide an overview of the allegations in Plaintiffs' Second Amended Complaint ("SAC"), and refer to their Motion to Dismiss for a more detailed summary.  *See* ECF 42.  Plaintiffs' sprawling, 125-page operative complaint (ECF 32)—already in its third iteration (*see also* ECF 1 and 6)—requires effort to follow.  But at its core, it seeks tens of millions of dollars in compensatory and punitive damages from Defendants with whom Plaintiffs have no relationship whatsoever for purported conduct that took place entirely outside the United States and which Plaintiffs do not allege caused them any direct harm.

Plaintiffs bring a variety of Commodity Exchange Act ("CEA"), Racketeer Influenced and Corrupt Organizations ("RICO") Act, and state law claims against five Defendants:  HDR, HDR's "organize[rs]" and "co-founders" Hayes, Delo, and Reed, and HDR's "California-based wholly owned subsidiary," ABS.  SAC ¶¶ 11, 15, 19.  All of those claims center on Defendants' alleged ownership and operation of the "popular cryptocurrency derivatives exchange platform BitMEX."  SAC ¶ 1.

BitMEX offers for trading a variety of contracts whose value is determined with reference

to the price of bitcoin.  SAC ¶ 140.  As Plaintiffs acknowledge, BitMEX's Terms of Service expressly prohibit United States citizens and residents from trading on the platform.  SAC ¶ 61 ("Specifically, BitMEX's Terms of Service provide: '[y]ou are not allowed to access or use the Services or the Trading Platform if you are located, incorporated or otherwise established in, or a citizen or a resident of: (i) the United States of America.").  Plaintiffs likewise allege that HDR is not located in the United States.  Rather, HDR is a holding company that is incorporated and maintains a registered office in the Republic of Seychelles.  SAC ¶ 11.

In fact, Plaintiffs do not allege that HDR engaged in any actionable conduct in the United States at all.  Instead, Plaintiffs attempt to tie their claims against Defendants to this country by alleging that they operated through HDR's "California-based wholly owned subsidiary and alter ego, co-Defendant ABS."  SAC ¶ 19.  Plaintiffs' complaint, however, is devoid of facts linking ABS to the alleged misconduct underlying Plaintiffs' claims.

Plaintiffs' claims are predicated on Plaintiffs' theory that Defendants profited from manipulation of the price of various cryptocurrencies across the globe.  The SAC alleges many different ways that someone could supposedly manipulate the price of bitcoin, including through "pumps-and-dumps, Barts, stop hunts, liquidation cascades, and spoofing."  SAC ¶ 115; *see also* SAC ¶¶ 101-15 (detailing "bitcoin price manipulation techniques").  But Plaintiffs do not allege how or when Defendants themselves purportedly engaged in any of those activities.  Rather, Plaintiffs claim that these techniques are "enabled by BitMEX" because they are "made possible by the fact that BitMEX deliberately designed its indexes based on price data for cryptocurrencies from just three exchanges – BitStamp, Kraken and Coinbase Pro, all three of which have way lower liquidity than BitMEX."  SAC ¶ 180.  In other words, Plaintiffs seek to hold Defendants liable because *other* individuals or entities allegedly have used techniques to manipulate the price of cryptocurrencies listed on *other* exchanges, which in turn impacts trading activity undertaken by *other* individuals or entities on BitMEX.

In the few instances where Plaintiffs actually reference purported conduct by Defendants, they do not allege any plausible facts tying that conduct to the United States.  Plaintiffs allege that on March 13, 2020, BitMEX engineered a "fraudulent" outage that caused BitMEX's trading

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

platform to go "offline for twenty-five minutes" and allowed BitMEX to "liqu[idate] $800 million of its customers' highly leveraged positions for its own profit." SAC ¶ 123. While Plaintiffs claim that such "fraudulent and deliberate server freezers are orchestrated from San Francisco offices of Defendant HDR," SAC ¶ 186, they provide no information whatsoever as to the who, what, where, or how of this supposed fraud. Indeed, the only alleged link between the outages and HDR is that "BitMEX'[s] three Site Reliability Engineers are all located in this District," which—despite not alleging that the engineers had anything to do with the alleged conduct— Plaintiffs claim is proof that "the deliberated [sic] and fraudulent outage on March 13, 2020 was perpetrated from this District." SAC ¶ 123; *see also* SAC ¶¶ 185-87. Likewise, while Plaintiffs allege that Defendants "transferred . . . proceeds of the alleged illegal bitcoin futures contracts price manipulation from BitMEX cryptocurrency exchange to other cryptocurrency exchanges, including, without limitation, Coinbase, BitStamp, and Kraken," SAC ¶ 276, Plaintiffs provide no details as to the who, what, when, where, and how those transfers occurred. Instead, Plaintiffs simply assert that unrelated third parties "Coinbase and Kraken are located in California," and that unrelated third party "BitStamp is located in New York City, New York." *Id.*

The original Plaintiff in this action is BMA, LLC, which the operative complaint alleges is a Puerto Rico corporation "that is co-owned by multiple individual cryptocurrency traders" and "holds the title to, and ownership in, any and all claims, causes of action and demands . . . that its owner traders had against" Defendants. SAC ¶ 8. The Puerto Rico Registry of Corporations and Entities reveals that BMA, LLC was formed by Plaintiffs' counsel, Pavel Pogodin, in March 2019—first as TransPacific IP Group LLC and later renamed Bitcoin Manipulation Abatement LLC—and lists Plaintiffs' counsel himself as its sole authorized person.[1] The SAC added Plaintiffs Yaroslav Kolchin and Vitaly Dubinin, both alleged to be citizens and residents of the Russian Federation. SAC ¶¶ 9-10. No Plaintiff is alleged to have traded on or ever used

---

[1] *See* Corporations Search, Registry of Corporations and Entities, Department of State of Puerto Rico, https://prcorpfiling.f1hst.com/CorporationSearch.aspx (register number 424234). TransPacific Law Group is still identified in Plaintiffs' counsel's mailing and email addresses on the California State Bar website. *See* California Attorney Licensee Profile, The State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/206441.

BitMEX, let alone suffered losses while trading on that platform because of any manipulative conduct (whether allegedly perpetrated by Defendants or otherwise).

**B.    Defendants' Pending Motion to Dismiss.**

On September 14, 2020, Defendants filed their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* ECF 42.  Plaintiffs' opposition is due October 29 with a hearing set for December 16.

Defendants assert several independent grounds for dismissing Plaintiffs' complaint in its entirety, including that (1) Plaintiffs lack constitutional standing under Article III; (2) Plaintiffs lack statutory standing to pursue their RICO or CEA claims; (3) Plaintiffs fail to allege plausible facts establishing that U.S. law reaches the conduct complained of in their complaint; (4) Plaintiffs' CEA claims fail because they do not allege that Defendants manipulated a contract within the CEA's scope; (5) Plaintiffs' RICO claims fail because their complaint lacks particular facts establishing a violation of RICO; and (6) Plaintiffs' various state law claims fail as a matter of law.

**C.    Plaintiffs' Amendments to Their Complaint, Their Unsuccessful *Ex Parte* Application, and the Parties' Joint Case Management Conference Statement.**

Plaintiff BMA LLC filed this action on May 16, 2020.  ECF 1.  Two days later, on May 18, 2020, Plaintiff BMA LLC filed a First Amended Complaint.  ECF 6.  On July 10, 2020, the parties filed a Joint Stipulation and Proposed Order where Defendants consented to Plaintiff's counsel filing a SAC, adding new allegations and two new plaintiffs.  ECF 30.  After the Court granted the Joint Stipulation on July 13, counsel for Plaintiffs filed the SAC on July 14, 2020.  ECF 31-32.

Prior to the filing of the SAC, and after only one Defendant—ABS—had been served, Plaintiff BMA LLC applied *ex parte* for a third party evidence preservation order on June 9, 2020.  ECF 17.  Plaintiff BMA LLC's improper application was based on misleading snippets of emails; it was filed without regard for Defendants' assurances that appropriate document preservation steps had been taken and without meeting and conferring with non-party Twilio.  ECF 26.  Plaintiff BMA LLC further refused to withdraw its application even though Twilio and

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

1  Defendants provided express assurances that appropriate steps had been taken to preserve the

2  documents in question.  *Id.*  The Court denied Plaintiff BMA LLC's application.  ECF 29.

3       Following their Rule 26(f) Conference on July 27, 2020, the parties filed a Joint Case

4  Management and Federal Rule of Civil Procedure 26(f) Conference Statement (the "Statement")

5  on August 11, 2020.  ECF 33.  Defendants' counsel sent Plaintiffs' counsel a draft of the

6  Statement that proposed language for the "joint" portions of each section, included Defendants'

7  sections, and left Plaintiffs about four pages of space for their own sections of the Statement.  *See*

8  Declaration of Stephen D. Hibbard ("Hibbard Decl."), ¶ 2.  Plaintiffs' counsel's response was to

9  more than double the length of the Statement and add about eight pages of content, nearly all of

10  which was for Plaintiffs' separate sections of the Statement and which included disparaging and

11  false comments about Defendants and Defendants' counsel.  *See* Hibbard Decl., ¶¶ 3-4.  For

12  example, Plaintiffs devoted three pages to falsely accusing Defendants' counsel of

13  "disingenuously" swearing under penalty of perjury a purported "fallacy" over a dozen times in

14  public filings in an unrelated California state court proceeding.  *See* ECF 33, at 6-9.  Plaintiffs

15  continued their baseless assertions from there:

16       While this may not be technically a perjury, a plain and clear attempt to mislead
        Courts as to very material facts critical for the jurisdictional inquiry is evident.
17       This speaks volumes as to the "catch me if you can" strategy adopted by
        Defendants.  Mr. Hibbard, on the other hand, who is an officer of the court and
18       who is charged to act as a gatekeeper, seems to take special pride in perpetuating
        untruths concocted by his clients to try to wiggle their way out of facing justice for
19       their misdeeds.

20

21  *Id.* at 9.

22       Defendants' counsel asked Plaintiffs' counsel to trim his sections, particularly his six-page

23  facts section, pointing him to the Standing Order for All Judges of the Northern District of

24  California, which states that the contents of joint case management statements, "except in

25  unusually complex cases, should not exceed ten pages."  *See* Hibbard Decl., ¶ 5.  Plaintiffs'

26  counsel refused and failed to remove his unprofessional statements.  *See* Hibbard Decl., ¶ 6.

27  Defendants were forced to file on behalf of all parties a nearly fifteen-page Statement.  ECF 33.

28  Following the filing of the Statement, Plaintiffs filed seventeen (17) exhibits.  ECF 39.

In the August 11 Statement, Defendants stated they believed "merits-related discovery should be stayed pending the Court's ruling on Defendants' Motion to Dismiss."  ECF 33, at 13.  Nothing since has changed Defendants' belief that a discovery stay is justified here.  Plaintiffs' counsel's conduct throughout this litigation, including his refusal to proceed in a civil manner, even when making joint representations to the Court, necessitates further judicial supervision and control over discovery while Defendants' Motion to Dismiss is pending.

**D.    Plaintiffs' Hundreds of Discovery Requests and Multiple Non-Party Subpoenas.**

Since the parties' Rule 26(f) conference in late July, Plaintiffs have abused the discovery process by serving a torrent of requests on Defendants.  Plaintiffs have served thirty-nine (39) Requests for Admission ("RFAs"), fifty-four (54) Interrogatories ("ROGs"), and three hundred and four (304) Requests for Production of Documents ("RFPs"), for a combined *397 discovery requests*—all before Defendants had even responded to Plaintiffs' SAC.  *See* Hibbard Decl., ¶ 7.

Further, Plaintiffs served three document subpoenas on non-party service providers Twilio, Intercom, and Proofpoint.  By way of example, one of the subpoenas seeks *all* emails from January 1, 2018 to present between a bitmex.com email account and *any* email addresses ending in thirty-four (34) different domain names.  *See* Hibbard Decl., ¶ 8.  Plaintiffs have no interest in tailoring their discovery requests to the needs of the case and have instead embarked on an extreme fishing expedition against Defendants and non-parties.

Moreover, Plaintiffs' eagerness to serve burdensome discovery requests without any perceived order or connection to their claims in this case is demonstrated by the number of sets of discovery requests received by Defendants that are then "corrected" that same day or a day or two later.  Here is a summary of Plaintiffs' discovery requests served to date:

- 8/15/2020 (Saturday):  Plaintiff Dubinin's first set of RFPs to HDR (since superseded by a "corrected" version below).  *See* Hibbard Decl., ¶ 9(a).

- 8/17/2020:  Plaintiff Dubinin's first set of RFPs to Samuel Reed.  *See* Hibbard Decl., ¶ 9(b) (36 RFPs).

- 8/18/2020:  Plaintiff Dubinin's first set of RFAs and ROGs to Samuel Reed.  A

corrected set of ROGs was served that same day.  *See* Hibbard Decl., ¶ 9(c) (25 RFAs and 11 ROGs).

- 8/19/2020:  Plaintiff Dubinin's first set of RFAs, ROGs, and RFPs to Arthur Hayes.  A corrected set of RFAs was served that same day.  *See* Hibbard Decl., ¶ 9(d) (11 RFAs, 7 ROGs, and 35 RFPs).

- 8/20/2020:  Plaintiff Dubinin's first set of RFAs, ROGs, and RFPs to Ben Delo.  *See* Hibbard Decl., ¶ 9(e) (3 RFAs, 7 ROGs, and 35 RFPs).

- 8/21/2020:  Plaintiff Dubinin's second set of ROGs and RFPs to Samuel Reed, served the same week as the first set.  *See* Hibbard Decl., ¶ 9(f) (14 ROGs and 28 RFPs).

- 8/22/2020 (Saturday):  Plaintiff Dubinin's first set of ROGs and corrected RFPs to HDR, replacing the set of RFPs served the prior Saturday.  *See* Hibbard Decl., ¶ 9(g), Ex. 1 (15 ROGs and 80 RFPs).

- 9/4/2020:  Plaintiff Kolchin's first set of RFPs to HDR.  A corrected set of RFPs was served that same day.  *See* Hibbard Decl., ¶ 9(h), Ex. 2 (90 RFPs).

- 9/4/2020:  Plaintiffs served two document subpoenas on non-parties Twilio Inc. and Intercom, Inc.  A corrected subpoena was served on Twilio, Inc. that same day.  *See* Hibbard Decl., ¶ 9(i).

- 9/6/2020 (Sunday):  Plaintiffs served a document subpoena on non-party Proofpoint, Inc.  *See* Hibbard Decl., ¶ 9(j).

Some of Plaintiffs' extraordinarily overbroad requests to HDR include the following:

- "Any and all DOCUMENTS RELATED TO each of the LEADERBOARD ACCOUNTS."[2]  *See* Hibbard Decl., Ex. 1 (Dubinin RFP No. 1).

- "List of all names, addresses and email addresses of all users of [the] BITMEX PLATFORM."  *See* Hibbard Decl., Ex. 2 (Kolchin RFP No. 2).

- "RECORDS of any and all trades RELATING TO each of the LEADERBOARD

---

[2] Plaintiffs define "LEADERBOARD ACCOUNTS" as forty (40) trader accounts on the BitMEX leaderboard web page.  *See* Hibbard Decl., Ex. 1 (Dubinin RFPs Definition #14).

1    ACCOUNTS." *See* Hibbard Decl., Ex. 1 (Dubinin RFP No. 6).

2    • "Any and all records of money transfers between DEFENDANT HDR and ABS

3    Global Trading Limited." *See* Hibbard Decl., Ex. 2 (Kolchin RFP No. 30).

4    • "Any and all DOCUMENTS RELATING TO all fully or partially executed[,

5    unexecuted, and cancelled] orders for XBTUSD and ETHUSD perpetual contracts

6    on BITMEX PLATFORM during MANIPULATION TIMES."[3] *See* Hibbard

7    Decl., Ex. 1 (Dubinin RFP Nos. 42-44).

8    • "Any and all time and sales records for XBTUSD and ETHUSD perpetual

9    contracts on BITMEX platform during MANIPULATION TIMES." *See* Hibbard

10    Decl., Ex. 1 (Dubinin RFP No. 45).

11    • "Any and all DOCUMENTS RELATING TO conversion of cryptocurrency to fiat

12    currency by HDR GROUP." *See* Hibbard Decl., Ex. 1 (Dubinin RFP No. 53).

13    • "Any and all DOCUMENTS RELATING TO market event[s] on [May 17, 2019,

14    June 26, 2019, July 15, 2019, and March 13, 2020]." *See* Hibbard Decl., Ex. 2

15    (Kolchin RFP Nos. 59-62).

16    • "Any and all DOCUMENTS RELATING TO orders placed by BITMEX

17    PLATFORM'S internal trading desk during MANIPULATION TIMES." *See*

18    Hibbard Decl., Ex. 2 (Kolchin RFP No. 63).

19    • "Any and all DOCUMENTS RELATING TO all executed[, unexecuted, and

20    cancelled] orders on BITMEX PLATFORM during MANIPULATION TIMES."

21    *See* Hibbard Decl., Ex. 2 (Kolchin RFP Nos. 69-71).

22    • "Any and all time and sales records on BITMEX platform during

23    MANIPULATION TIMES." *See* Hibbard Decl., Ex. 2 (Kolchin RFP No. 72).

24    • "Any and all DOCUMENTS that demonstrate or tend to demonstrate that illegal

25    acts did not take place on BitMEX platform during RELEVANT PERIOD." *See*

26

27    ───────────────
    [3] Plaintiffs define "MANIPULATION TIMES" as eleven (11) periods of time varying in
length over the course of approximately two years. *See* Hibbard Decl., Ex. 1 (Dubinin RFPs
28    Definition #13).

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

1    Hibbard Decl., Ex. 1 (Dubinin RFP No. 75).

2    • "Any and all DOCUMENTS RELATING TO market makers on BITMEX

3    PLATFORM." *See* Hibbard Decl., Ex. 2 (Kolchin RFP No. 75).

4    • "Any and all DOCUMENTS RELATED TO subsidiaries of HDR GROUP." *See*

5    Hibbard Decl., Ex. 2 (Kolchin RFP No. 84).

6    • "Any and all DOCUMENTS RELATED TO each of the users of [the] BITMEX

7    PLATFORM." *See* Hibbard Decl., Ex. 2 (Kolchin RFP No. 89).

8    And this is just the tip of the iceberg as to Plaintiffs' discovery requests to Defendants.

9         E.    **Plaintiffs' Unprofessional Conduct and Baseless Accusations during Meet and
10   Confer.**

11        On September 14, 2020, in light of Plaintiffs' sweeping and unduly burdensome requests,

12   Defendants requested to meet and confer with Plaintiffs on a stay of discovery. *See* Hibbard

13   Decl., ¶ 10. Plaintiffs asked for more time to assess Defendants' Motion to Dismiss, claiming a

14   need to prepare for the discovery stay discussion. *See* Hibbard Decl., ¶ 11. Defendants agreed in

15   the spirit of cooperation, and Plaintiffs volunteered a short, two-day extension of Defendants'

16   discovery responses. *See* Hibbard Decl., ¶ 12. On September 16, 2020, Plaintiffs then asked for

17   more time to narrow their discovery requests, volunteering a further eight-day extension on all

18   discovery deadlines. *See* Hibbard Decl., ¶ 13. Defendants again agreed to defer the discussion

19   and the filing of their motion to stay in the spirit of cooperation. *See* Hibbard Decl., ¶ 14.

20        On September 21, 2020, Plaintiffs' counsel withdrew via email the discovery requests

21   served on Ben Delo. *See* Hibbard Decl., ¶ 15. On September 23, 2020, Plaintiffs' counsel

22   withdrew via email a few more discovery requests: (a) eight (8) RFPs, two (2) ROGs, and one

23   (1) RFA as to Samuel Reed, and (b) one (1) RFP, ROG, and RFA each as to Arthur Hayes. *See*

24   Hibbard Decl., ¶ 16. All of this withdrawn discovery purports to relate to jurisdiction, which is

25   not at issue following the filing of Defendants' Motion to Dismiss. The total number outstanding

26   remains at 338 discovery requests served on Defendants. *See* Hibbard Decl., ¶ 17.

27        On September 18, 2020, prior to the parties' upcoming meet and confer discussion about a

28   discovery stay, Plaintiffs brought to Defendants' attention an unrelated and purported third-party

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

1    data preservation issue.  *See* Hibbard Decl., ¶ 18.  The parties agreed to discuss both issues during

2    the same meet and confer discussion.  *See* Hibbard Decl., ¶ 18.  On September 22, 2020,

3    Plaintiffs' counsel requested that the meet and confer be performed via videoconference so that

4    he could "record [the discussion] to be able to show [to the Court] [the] expression on

5    [Defendants' counsel's] face, when he will be telling me fairy tales about" the purported data

6    preservation issue.  *See* Hibbard Decl., ¶ 19, Ex. 3.  Plaintiffs' counsel continued:  "[D]o you

7    have a mirror in your office/home office?  You better start practicing now.  I will be recording."

8    *Id.*

9            The next day, on September 23, 2020, Defendants' counsel informed Plaintiffs' counsel

10   that they do not consent to the recording of the meet and confer discussion or any other

11   conversations in this action, whether conducted by telephone or by video, citing California Penal

12   Code Section 632.  *See* Hibbard Decl., ¶ 20, Ex. 4.  Plaintiffs' counsel responded:  "I guess you

13   do not want to be recorded on the video lying to me, do you?"  *Id.*  Later that same day, Plaintiffs'

14   counsel sent citations to several federal court opinions purportedly showing that the federal

15   wiretap statute trumps state law and claimed, "Our call on Thursday will be INTERSTATE and in

16   INTERSTATE COMMERCE between Puerto Rico and California, thus Federal law applies.  I do

17   not need your consent or even to tell you that I AN [sic] recording.  Thus, pick your words VERY

18   carefully on Thursday."  *See* Hibbard Decl., ¶ 21, Ex. 5 (emphasis in original).

19           At 2:10 A.M. local time on September 24, Plaintiffs' counsel wrote again, stating, ". . . I

20   am expecting some quality fairy tail [sic] from you, not a cheap fabrication.  Show us that you

21   have some creativity and imagination worthy of a senior partner at Jones Day.  Come up with

22   something that even Bernie Madoff would be proud of.  Show us all how to bamboozle Judge

23   Orrick without breaking a sweat.  Give us the best shot you got!"  *See* Hibbard Decl., ¶ 21, Ex. 5.

24           On September 24, 2020, prior to the meet and confer discussion, Defendants' counsel

25   declined, again, to consent to the recording of the conversation, citing multiple California federal

26   district court opinions finding recording of conversations between counsel improper where one

27   side does not consent.  *See* Hibbard Decl., ¶ 22, Ex. 6.  Plaintiffs' counsel responded, "[B]ut you

28   would be lying through your teeth otherwise, wouldn't you?  How do we make sure you are

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

1    telling the truth?  Do you have another workable suggestion?"  *Id.*

2            During the telephonic meet and confer discussion on September 24, 2020, the parties were

3    unable to resolve the issues, requiring Defendants' motion to stay.  Plaintiffs' counsel said he

4    would be open to agreeing to stay discovery, subject to the following conditions and exceptions:

5    (1) Defendants must certify for the Court that all documents have been preserved, something that

6    Defendants have already done on multiple occasions, including by email to Plaintiffs and in the

7    August 11, 2020 Joint Case Management Conference Statement (*see* ECF 33, at 12); (2) The stay

8    would not apply to discovery requests aimed at Plaintiffs obtaining information they purportedly

9    need to add additional defendants, including potentially family members of current Defendants;

10   and (3) The stay would also not apply to discovery requests and related documents that explain

11   how HDR exchanges bitcoin for fiat currency because Plaintiffs are considering adding those

12   financial institutions as money laundering defendants.  *See* Hibbard Decl., ¶ 23.

13           Defendants do not agree to accept Plaintiffs' conditions and exceptions.  *See* Hibbard

14   Decl., ¶ 24.  Among other reasons, Defendants have already certified that all documents have

15   been preserved in light of HDR's broad litigation hold (that also applies to the other defendants in

16   this action) and in light of HDR's efforts with Twilio and Intercom to ensure potentially relevant

17   information in the possession of those non-parties is preserved instead of lost due to those non-

18   parties' routine document retention policies.  *See* Hibbard Decl., ¶ 25.  Further, where discovery

19   should not proceed as to Defendants, against whom Plaintiffs have not even stated viable claims,

20   allowing Plaintiffs to use discovery as a fishing expedition in seeking to add new defendants is

21   even more inappropriate.  Defendants' first discovery response deadline is September 28, 2020,

22   thus necessitating the need for the Court's intervention to implement a stay of discovery while

23   Defendants' Motion to Dismiss is pending.[4]  *See* Hibbard Decl., ¶ 26.

24

25

26           [4] Plaintiffs' willingness to stay discovery as to requests that are unrelated to adding new
     defendants—which constitute the majority of their requests—is at least a partial admission that a
27   stay is warranted.  Further, the fact that Plaintiffs would rather insist on requests that bear no
     conceivable relevance to the claims at issue while staying requests that ostensibly go to the merits
28   only demonstrates the tactical, harassing nature of Plaintiffs' discovery demands.

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

1    **IV.    ARGUMENT**

2        A court "may, for good cause, issue an order to protect a party or person from annoyance,

3    embarrassment, oppression, or undue burden or expense," including "forbidding . . . discovery."

4    Fed. R. Civ. P. 26(c)(1)(A).  "The district court has wide discretion in controlling discovery."

5    *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); *see Al Otro Lado, Inc. v. Nielsen*, No.

6    3:17-cv-02366-BAS-KSC, 2018 WL 679483, at *1 (S.D. Cal. Jan. 31, 2018) ("The Court has the

7    discretion to stay discovery as part of its inherent power to control the disposition of the cases on

8    its docket in a manner which will promote economy of time and effort for itself, for counsel, and

9    for litigants.") (internal quotation omitted).  "Good cause for staying discovery may exist when

10   the district court is 'convinced that the plaintiff will be unable to state a claim for relief.'" *Yiren*

11   *Huang v. Futurewei Techs., Inc.*, No. 18-cv-00534-BLF, 2018 WL 1993503, at *2 (N.D. Cal.

12   Apr. 27, 2018) (quoting *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002)).

13       "Courts in this district have applied a two-pronged test to determine whether discovery

14   should be stayed pending resolution of a dispositive motion."  *Huang*, 2018 WL 1993503, at *2

15   (collecting cases); *see also Al Otro Lado*, 2018 WL 679483, at *2.  "First, a pending motion must

16   be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery

17   is directed."  *Huang*, 2018 WL 1993503, at *2; *see Al Otro Lado*, 2018 WL 679483, at *2.

18   "Second, the court must determine whether the pending motion can be decided absent discovery."

19   *Id.*  "In applying this two-factor test, the court must take a 'preliminary peek' at the merits of the

20   pending dispositive motion to assess whether a stay is warranted."  *Huang*, 2018 WL 1993503, at

21   *2.

22       Here, Defendants' pending Motion to Dismiss pursuant to Federal Rules of Civil

23   Procedure 12(b)(1) and 12(b)(6) is dispositive of the entire case, including on grounds that

24   Plaintiffs lack constitutional and statutory standing.  *See* ECF 42.  Discovery is not necessary for

25   the resolution of Defendants' Motion to Dismiss as the motion can be decided on the pleadings,

26   particularly given that Plaintiffs—not Defendants—control the evidence that would be necessary

27   for them to demonstrate that they have standing to sue.  Finally, given the sheer volume of

28   discovery requests Plaintiffs have already served to date, the best course moving forward is to

1    first determine if Plaintiffs have stated a viable claim before subjecting Defendants to any of

2    Plaintiffs' burdensome and expensive fishing expedition.  *See* Fed. R. Civ. P. 1 (The Federal

3    Rules of Civil Procedure "should be construed, administered, and employed by the court and the

4    parties to secure the *just, speedy, and inexpensive* determination of every action and proceeding.")

5    (emphasis added).

6           **A.**        **Defendants' Motion to Dismiss Is Dispositive of the Entire Case.**

7           Defendants meet the first prong of the test because their Motion to Dismiss is dispositive

8    of the entire case.  Defendants make several compelling arguments necessitating the dismissal of

9    Plaintiffs' SAC.

10          *First*, as a threshold matter, Plaintiffs lack constitutional and statutory standing.  Plaintiffs

11   do not plausibly allege a "causal connection" between any alleged injury they suffered and

12   Defendants' purported conduct.  *See* ECF 42, at § IV.A.1; *Bass v. Facebook, Inc.*, 394 F. Supp.

13   3d 1024, 1036 (N.D. Cal. 2019) (dismissing claims predicated on data breach for lack of Article

14   III standing when "none of the circumstantial evidence [Plaintiff] provides plausibly connects to

15   the data breach," as all the facts pled "do not trace to the data breach at all or are so common the

16   infinite possibilities forecloses plausibility").  Further, Plaintiffs lack statutory standing to pursue

17   their RICO and CEA claims given that they allege only that they made unspecified trades

18   "directly or indirectly" on unspecified exchanges resulting in vague losses unconnected to any

19   specific conduct by Defendants.  *See* ECF 42, at §§ IV.A.2-3.  A discovery stay is warranted here

20   where Defendants' standing arguments would dispose of the entire case at the outset.

21          *Second*, Plaintiffs also do not allege plausible facts establishing that U.S. law reaches the

22   conduct complained of in their complaint.  *See* ECF 42, at § IV.B.  The CEA, RICO, and

23   California law all require a sufficient nexus between either the conduct complained of or the

24   injury suffered due to that conduct and the United States.  Plaintiffs' allegations with regards to

25   both the location of their claimed damages and the Defendants' purported conduct are so vague

26   and conclusory that they provide no basis to conclude that this case is sufficiently tethered to the

27   United States.

28          *Third*, and finally, Plaintiffs fail to allege facts stating prima facie RICO or CEA claims or

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

1   state law claims.  Plaintiffs' conclusory, generalized pleading of legal elements stripped of any

2   concrete factual allegations about their or Defendants' specific conduct prevents them from

3   adequately alleging any legal violations.  *See* ECF 42, at §§ IV.C-D.

4       Prevailing on *any* of these issues—standing, extraterritoriality, or failure to state a claim—

5   would be dispositive of this action, satisfying the first prong of the stay analysis.  While district

6   courts in the Ninth Circuit appear to apply both a "clear possibility" and a related "convincing"

7   standard to whether a defendant's motion is potentially dispositive of the entire case, Defendants'

8   Motion to Dismiss satisfies either one.  *Compare Al Otro Lado*, 2018 WL 679483, at *2

9   (applying "clear possibility" standard) *with Huang*, 2018 WL 1993503, at *2 (discussing

10  "convincing" standard).  In applying the "clear possibility" standard, the court in *Al Otro Lado*

11  performed a "preliminary peek" of the defendants' motion to dismiss.  2018 WL 679483, at *2-3.

12  Evaluating the strength of the motion as a whole, the court granted the defendants' motion to stay

13  discovery where their motion to dismiss "pose[d] strong arguments that present a 'clear

14  possibility'" that the motion "might" be granted by the court.  *Id.* at *3.  Similarly, in *Canyon*

15  *Cnty v. Syngenta Seeds, Inc.*, the court found "a cursory review of Defendants' motions to dismiss

16  reveal[ed] that [the plaintiff] must overcome significant *legal* hurdles to survive" the motions—

17  "without requiring the Court to delve into factual issues."  2005 WL 8165145, at *2 (D. Id. Oct.

18  28, 2005) (emphasis in original) (granting defendants' motion for stay of discovery).

19      Applying a "convincing" standard, the court in *Huang* took an analogous approach in

20  taking a "preliminary peek" at the defendant's motion to dismiss before granting a stay.  2018

21  WL 1993503, at *3.  The court recognized that the defendant's pending motion to dismiss could

22  go either way upon a further analysis at the appropriate time, but it still found the defendant had

23  "sufficiently shown that the pending motion is *potentially* dispositive."  *Id.* at *4 (emphasis

24  added).

25      Here, any "preliminary peek" conducted of Defendants' Motion to Dismiss demonstrates

26  the strength of their arguments and the dispositive nature of the pending motion.  In particular, the

27  threshold question of standing must be decided prior to Plaintiffs beginning a disproportionate

28  and burdensome fishing expedition.  *See Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*, 5

F.3d 378, 383 (9th Cir. 1993) (affirming stay of discovery pending disposition of motions to dismiss where there was "no suggestion . . . that the discovery sought was relevant to whether or not the court has subject matter jurisdiction").

Accordingly, because Defendants' Motion to Dismiss is potentially dispositive of the entire case, Defendants have met the first prong of the motion to stay analysis.

**B.      Discovery Is Not Necessary for the Resolution of Defendants' Motion to Dismiss.**

Defendants also meet the second prong of the test because discovery is not necessary for the resolution of their Motion to Dismiss. Defendants' Motion to Dismiss turns entirely on questions of law, obviating Plaintiffs' purported need for any immediate discovery. Neither the parties nor the Court have any need for discovery before the Court rules on Defendants' Motion to Dismiss. *See Huang*, 2018 WL 1993503, at *4 (finding second prong met where discovery "is not necessary to resolve" pending motion to dismiss); *Al Otro Lado*, 2018 WL 679483, at *3 ("the Motion [to Dismiss] turns entirely on questions of law, the answers to which do not depend on discovery"); *Gibbs v. Carson*, No. C-13-0860 THE (PR), 2014 WL 172187, at *3 (N.D. Cal. Jan. 15, 2014) (granting stay where "any discovery is unnecessary for resolution of the motion because the issues raised are exhaustion of administrative remedies and compliance with the statute of limitations"); *Canyon Cnty*, 2005 WL 8165145, at *2 (granting stay where, among other reasons, "it does not appear that discovery would significantly illuminate the issues presented in the pending motions to dismiss").

Any assertion from Plaintiffs that discovery is needed to assist them in drafting a viable complaint is unavailing. In *In re Graphics Processing Units Antitrust Litig.* ("*GPU*"), the plaintiffs requested a specific subset of discovery—documents already produced in an ongoing, related government investigation—to bolster their antitrust claims. No. C 06-07417 WHA, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007). Finding the "better course" was to first determine whether the plaintiffs had stated a viable claim, the court in *GPU* granted a stay of discovery pending the resolution of the motions to dismiss. *Id*. The court recognized that if "the complaint proves to be solid save for perhaps a single soft element for which evidence would normally be

1    outside the reach of plaintiffs' counsel without discovery, then it may be that a narrowly-directed

2    and less burdensome discovery plan should be allowed with leave to amend to follow." *Id.* But

3    the court determined that adjudicating the defendants' motions to dismiss first properly balanced

4    all interests involved. *Id.*

5         Moreover, "[t]he Ninth Circuit has consistently upheld court orders staying discovery

6    when a pending motion to dismiss raises no factual issues, or where further discovery would be

7    futile." *Canyon Cnty*, 2005 WL 8165145, at *2 (collecting cases). In *Jarvis v. Regan*, the Ninth

8    Circuit held that a district court was within its discretion to stay discovery pending the disposition

9    of motions to dismiss because "[d]iscovery is only appropriate where there are factual issues

10   raised by a Rule 12(b) motion." 833 F.2d 149, 155 (9th Cir. 1987) (affirming stay of discovery);

11   *see Kramer v. JP Morgan Chase Bank, N.A.*, 771 F. App'x 358, 360 (9th Cir. 2019) (finding

12   district court was within its discretion in staying discovery pending resolution of defendants'

13   motions to dismiss). Further, where RICO claims are asserted, the Ninth Circuit has affirmed

14   lower courts' denial of discovery after granting a motion to dismiss where "[t]here are no factual

15   issues in dispute" as to those claims in particular. *See, e.g.*, *Wagh v. Metris Direct, Inc.*, 363 F.3d

16   821, 829-30, 832 (9th Cir. 2003) (affirming lower court's denial of discovery following grant of

17   motion to dismiss Section 1962(a) claim), *overruled on other grounds*, *Odom v. Microsoft Corp.*,

18   486 F.3d 541, 551 (9th Cir. 2007).

19        As Defendants' Motion to Dismiss can be decided without the need for discovery, the

20   second prong of the analysis also shows that a stay should be entered.

21   **C.    All Other Factors Warrant Granting a Stay Pending the Resolution of the**

22   **        Motion to Dismiss.**

23        While Defendants' motion satisfies the two-prong test, three additional factors also favor a

24   stay here, in particular (1) whether the stay would further the goal of efficiency for the court and

25   the parties; (2) whether there is a compelling need for immediate discovery, *see Little*, 863 F.2d at

26   685; *GPU*, 2007 WL 2127577, at *5; and (3) whether the current requests are proportional to the

27   needs of the case, given that Plaintiffs have already served 338 discovery requests on Defendants

28   and three subpoenas for documents on non-parties.

1          **1.      A Stay Furthers the Goal of Efficiency for the Court and the Parties.**

2          A stay of discovery will promote efficiency in this case.  *See* Fed. R. Civ. P. 1.  As

3   outlined above, Defendants raise important arguments challenging Plaintiffs' constitutional and

4   statutory standing to bring their purported claims.  Defendants also challenge the legal sufficiency

5   of Plaintiffs' allegations in their complaint.  Even if some aspects of the SAC survive, which they

6   should not, the scope of discovery may be more narrowly tailored depending on the Court's

7   determination of the legal sufficiency of Plaintiffs' complaint.

8          For example, the court in *GPU* concluded that "first resolving the motions to dismiss is

9   the better course" because the court and the parties "will all be in a much better position to

10  evaluate how much, if any, discovery to allow" after "full ventilation of the viability *vel non* of

11  the complaint."  *GPU*, 2007 WL 2127577, at *5.  Judge Alsup balanced the "possible outcomes"

12  from the pending motions to dismiss, including if "the complaint proves to be so weak that any

13  discovery at all would be a mere fishing expedition," and found that "adjudicating the motions to

14  dismiss [first] will shed light on the best course for discovery."  *Id.*; *see Little*, 863 F.2d at 685

15  (affirming stay of discovery as it furthered "goal of efficiency for the court and litigants").

16         A stay of discovery is particularly necessary here where Plaintiffs have already served

17  nearly 400 discovery requests on Defendants, and have only withdrawn a fracture of that number

18  during meet and confer discussions, leaving 338 requests still outstanding.  Plaintiffs have made

19  no meaningful effort to tailor their discovery requests to their actual needs in the case.  Some of

20  their extraordinarily overbroad requests include "any and all documents that demonstrate or tend

21  to demonstrate that illegal acts did not take place on the BitMEX Platform during the relevant

22  period" (*see* Hibbard Decl., Ex. 1 (Dubinin RFP No. 75)) and "any and all documents related to

23  each of the users of the BitMEX Platform" (Hibbard Decl., Ex. 2 (Kolchin RFP No. 89)).  *See*

24  *supra*, § III.D.

25         "[R]equiring Defendants and other non-parties to respond to apparently burdensome

26  discovery requests would result in a substantial waste of resources."  *Canyon Cnty*, 2005 WL

27  8165145, at *2 (staying discovery "[f]or this reason and because it does not appear that discovery

28  would significantly illuminate the issues presented in the pending motions to dismiss"); *see In re*

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO

1    *Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738, at

2    *6 (S.D.N.Y. May 8, 2013) (considering breadth of discovery and burden of responding to it in

3    granting stay of discovery pending ruling on motion to dismiss commodities and antitrust claims).

4    Plaintiffs cannot use the filing of a complaint in federal court to force Defendants to expend

5    tremendous efforts to collect, review, and produce documents, nor this Court to expend judicial

6    resources to delineate the proper scope of discovery, where the Court may soon dismiss this case

7    altogether.  Under the circumstances of this case, Plaintiffs should be required to advance past the

8    pleading stage before subjecting Defendants and non-parties to burdensome discovery.

9            **2.**        **There Is No Need for Immediate Discovery.**

10         In addition to serving this Court's efficiency goals, a discovery stay is warranted because

11   there is no need—let alone a "compelling" need—for immediate discovery.  The Court and the

12   parties have not conducted their initial Case Management Conference yet, which is scheduled for

13   the same date as Defendants' Motion to Dismiss on December 16, 2020, and thus there are no

14   current case deadlines necessitating immediate discovery.  Further, there are no legitimate

15   concerns of evidence preservation as to Defendants or, to Defendants' knowledge, non-parties.

16   *See* Aug. 11, 2020 Joint Case Management Conference Statement, ECF 33, at 12; June 15, 2020

17   Order Denying Ex Parte Application for Evidence Preservation, ECF 29; *Huang*, 2018 WL

18   1993503, at *4 (finding stay appropriate where "[t]here is minimal concern on evidence

19   preservation as the parties have represented that they have taken steps to preserve relevant

20   information").  In particular, Defendants have already certified that all documents have been

21   preserved in light of HDR's broad litigation hold (that also applies to the other defendants in this

22   action) and in light of HDR's efforts with Twilio and Intercom to ensure potentially relevant

23   information in the possession of those non-parties is preserved instead of lost due to those non-

24   parties' routine document retention policies.  *See* Hibbard Decl., ¶ 25.

25         Moreover, where the "immediate circumstances omit any compelling need for prompt

26   discovery, such as might be the case if provisional relief were being sought or if testimony needed

27   to be preserved due to ill health of a witness," the court may "critique the complaint and [] then

28   consider the best course for discovery."  *GPU*, 2007 WL 2127577, at *5.  Here, "a review of the

record does not reveal factual issues in need of immediate exploration." *Ameritel Inns v. Moffat Bros. Plastering, L.C.*, No. CV 06-359-S-EJL, 2007 WL 1792323, at *4 (D. Id. June 20, 2007) (granting stay of discovery pending ruling on motion to dismiss except for service of initial disclosures); *Commodities Cotton Futures Litig.*, 2013 WL 1907738, at *6 -7 (finding "plaintiffs failed to demonstrate that a short delay in discovery will impose any unfair prejudice on them" as assertions like witnesses' memories fading and relevant documents being destroyed by non-parties "are the usual litigation risks that affect all the parties equally, regardless of the amount of time permitted for discovery").

### 3.   Discovery Should Be Stayed Because Plaintiffs' Voluminous Requests Are Not Proportionate to the Needs of the Case.

Plaintiffs' well over 300 discovery requests to Defendants are not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence . . . Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Sciences, Inc. v. Merck & Co, Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (denying motion to compel where discovery sought was disproportionate to needs of case).

Here, Plaintiffs propounded overly broad and burdensome discovery on issues that have no bearing on, and are not necessary for, the resolution of Defendants' Motion to Dismiss, let alone this action. Even a cursory review of Plaintiffs' requests demonstrates that they serve no legitimate purpose, are not proportional to the needs of the case, and are intended only to harass. A limited stay pending the outcome of the Motion to Dismiss will, as discussed above, prevent Defendants from incurring significant discovery costs, which ultimately will be unnecessary if the Court grants the motion. *See Dao v. Liberty Life Assurance Co. of Boston*, No. 14-cv-04749-SI (EDL), 2016 WL 796095, at *5 (N.D. Cal. Feb. 23, 2016) (denying motion to compel discovery because, among other things, considerations of relevance and proportionality depended on presiding judge's ultimate ruling on legal question related to discovery requests). Before requiring Defendants to undergo a significant burden in responding to Plaintiffs' discovery

1    requests, including the inevitable motion practice at this juncture to rein in Plaintiffs' abusive

2    discovery demands, this Court should first determine if Plaintiffs have any viable claim.

3    **V.    CONCLUSION**

4        For the foregoing reasons, this Court should issue a protective order staying discovery

5    until after the Court rules on Defendants' Motion to Dismiss Plaintiffs' Second Amended

6    Complaint.

7

   DATED:  September 28, 2020          JONES DAY

8

9

                                */s/ Stephen D. Hibbard*

10                                    Stephen D. Hibbard

11                       Counsel for Defendants

12                       HDR GLOBAL TRADING LIMITED, ABS
                         GLOBAL TRADING LIMITED, ARTHUR

13                       HAYES, BEN DELO, and SAMUEL REED

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO STAY DISCOVERY
3:20-cv-03345-WHO