Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

Attorneys for Plaintiffs BMA LLC,
Yaroslav Kolchin and Vitaly Dubinin

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin and Vitaly Dubinin,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>Defendants. | Case No. 3:20-cv-3345-WHO<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY**<br><br>**Hon. William H. Orrick**<br>**Date: November 4, 2020**<br>**Time: 2:00 PM**<br>**Crtrm.: 2, 17th Floor**<br><br>**Discovery Cutoff: None Set**<br>**Pretrial Conference Date: None Set**<br>**Trial Date: None Set** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION

### Plaintiff BMA

At the outset, early on in the case, Plaintiffs' counsel offered Defendants' attorney Mr. Hibbard to provide full information on the ownership and membership of Plaintiff BMA in exchange for the ownership information of Defendant HDR. Mr. Hibbard, of course, flatly refused and is now crying crocodile tears to the Court about his perceived lack of transparency in Plaintiff BMA in his every paper, Ex. A. He could have also easily served just one discovery request and received this information months ago. This is what discovery is for. Yet, he failed to take any of these trivial steps and now tries to score points with the Court using his own lapse of diligence. Therefore, his disingenuous quibbles about Plaintiff BMA must be summarily rejected.

### Procedural Background

Plaintiffs filed the original Complaint, Dkt. No. 1, on May 16, 2020, alleging that Defendants engaged in racketeering in violation of 18 U.S.C. §§ 1962(d) and (c) ("RICO") and cryptocurrency market manipulation in violation of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1 et seq., as well as state causes of action. Two days later, on May 18, 2020 Plaintiff filed an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A), Dkt. No. 6, with minor corrections of typographical errors and no substantive changes. On July 14, 2020, parties stipulated to waiver of service of process, filing of a Second Amended Complaint ("SAC") and set a briefing schedule. Court has granted this stipulation, Dkt. No. 31, and Plaintiffs filed the SAC on July 14, 2020, Dkt. No. 32. Defendants filed their Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) on September 14, 2020, Dkt. No. 42. Plaintiffs' opposition to said Motion is due on October 29, 2020. Plaintiffs filed a Motion for Leave to File Third Amended Complaint ("TAC", Dkt. No. 45) on October 8, 2020, overcoming all of Defendants' arguments raised in their Motion to Dismiss. Dkt. No. 46.

On October 1, 2020, Defendants Hayes, Delo and Reed were indicted by the United States Department of Justice ("DOJ") on felony charges of violating the Bank Secrecy Act by willfully evading U.S. anti-money laundering requirements, Ex. B. On the same day, the Commodity

Futures Trading Commission ("CFTC") announced the filing of a civil enforcement action in the U.S. District Court for the Southern District of New York charging Defendants HDR, ABS, Hayes, Delo and Reed with operating an unregistered trading platform and violating multiple CFTC Regulations, including failing to implement required anti-money laundering procedures, Ex. C.

In announcing the indictment, Ex. B, FBI Assistant Director William F. Sweeney Jr. said: "As we allege here today, the four defendants, through their company's BitMEX crypto-currency trading platform, willfully violated the Bank Secrecy Act by evading U.S. anti-money laundering requirements. One defendant went as far as to brag the company incorporated in a jurisdiction outside the U.S. because bribing regulators in that jurisdiction cost just 'a coconut.' Thanks to the diligent work of our agents, analysts, and partners with the CFTC, they will soon learn the price of their alleged crimes will not be paid with tropical fruit, but rather could result in fines, restitution, and federal prison time." Defendant Reed was apprehended by the FBI in Boston, Massachusetts. Defendants Hayes and Delo remain at large and are currently fugitives wanted by the U.S. Government.

**Statement Of The Relevant Facts**

The key facts of this case are rather simple and easy to understand. In 2014, Defendants launched a bitcoin derivatives trading platform called BitMEX, which enables traders to place bets on direction of cryptocurrency prices. In designing their platform, Defendants decided to sidestep any financial controls mandated by the traditional banking system by transacting only in bitcoin and refused to implement any know your customer (KYC) or anti-money laundering (AML) checks what so ever, Ex. D, SAC ¶ 215. In other words, Defendants would open account and accept unlimited funds from anyone, without a single question asked. SAC ¶¶ 211-213.

In fact, one can open an account, deposit unlimited funds and start trading without furnishing a single document, all is required is a user name and email address, which are not verified by BitMEX in any way. SAC ¶¶ 211-213. The entire account registration and funding process takes about 10 minutes and no documents are even looked at. Understandably, because

of total lack of controls of any kind, hackers, tax evaders, money launderers, smugglers, drug dealers all flocked to BitMEX flooding the platform with hot money, Ex. D.  A recent and very telling example is the infamous Twitter hacker, who turned out to be a BitMEX trader, Ex. E.[1,2]

But Defendants' wrongdoing does not stop there.  Having a large pool of hot money at their disposal, Defendants designed the internal workings of their trading platform to enable, encourage and benefit from money laundering and market manipulation.  It all has to do with anonymity, lack of trading limits, high leverage and how the index price for bitcoin derivatives is calculated.   Defendants deliberately designed this index price to be based on bitcoin spot price on two or three illiquid bitcoin spot exchanges, SAC ¶ 214.  Illiquid in this context means that, to precipitously move bitcoin price on those exchanges, relatively small market orders will suffice.  Therefore, a relatively small market order on a spot exchange results in a relatively large bitcoin index price move on the very liquid BitMEX, SAC ¶¶ 109, 214.

A money launderer (Defendant) would open two exchange accounts – a helper account on one or more exchanges used by BitMEX to calculate its index price (Coinbase Pro, Kraken and BitStamp) and a winner account on BitMEX, SAC ¶ 110.  The money launderer would then enter into a large leveraged derivatives position on BitMEX and immediately execute market orders from the helper account with maximum slippage to move the index price in a favorable direction, Ex. F, G, H, SAC ¶ 214.   Due to disparity in liquidity between BitMEX and the spot exchanges, the aforesaid deliberate design of the index price by Defendants, and the cascading liquidations of leveraged trader positions on BitMEX, the amount spent from the helper account is multiplied greatly and translates into outsized profit in the winner account on BitMEX, Ex. F, G, H, SAC ¶ 214.  Because BitMEX accounts are by design anonymous, the laundered money cannot be traced

---

[1] Of course, such business model would be illegal, and even criminal under 18 U.S.C. § 1960(a), if only Defendants had United States traders on their BitMEX platform, especially in view of the fact that more than two thirds of Defendants' employees and almost entire technical team behind the BitMEX platform are located in this District.
[2] In reality, BitMEX is a California enterprise, having most of its employees in California and doing hundreds of billions of dollars of business in the U.S. with U.S. traders, which uses a sham offshore shell company HDR Global Trading Limited to dodge U.S. laws and regulations and to evade U.S. taxes.

from the helper account to the winner account, SAC ¶ 215.  Thus, the money laundering proceeds in the winner account on BitMEX appear as legitimate trading gains and the money laundering scheme achieves its purpose, SAC ¶ 214.  The described money laundering and other nefarious acts are well documented and take place on BitMEX almost daily, Ex. F, G, H.  Moreover, to exacerbate the described price manipulations, BitMEX intentionally locks users out of their accounts during manipulation times and accepts trading orders only on one side of the market,



falsely telling the users that their "system is overloaded," SAC ¶ 185.

Defendants' own Leaderboard (https://www.bitmex.com/app/leaderboard, I), which lists the most profitable trading accounts on BitMEX, is replete with evidence of market manipulation and money laundering.  For example, BitMEX's Leaderboard account under assumed name Quick-Grove-Mind shows multimillion-dollar profit spikes, which exactly match known market manipulation events, while entirely avoiding any and all trading losses.  Notably, Defendants' own data shows that this market manipulator generated over $30,000,000 in profit during three

market manipulation events that took place on September 24, 2019, November 18-19, 2019 and March 11-12, 2020, at the expense of retail traders, including Plaintiffs.  In view of the fact that to



generate this $30,000,000 profit, the trader would need to open at least $100,000,000 leveraged position on the BitMEX platform, this account is clearly used by one of the Defendants Hayes, Delo or Reed.

BitMEX directly participates in and financially benefits from market manipulation and money laundering through its internal trading desk, which orchestrates execution of the market orders from the helper accounts and indirectly, by collecting increased trading fees and also by liquidating users' accounts.  Specifically, BitMEX knowingly collects high trading fees for the above money laundering transactions, which constitute "proceeds" of money laundering under 18 U.S.C. §§ 1956 and 1957 and which are deposited into its general account (bitcoin wallet), from

which it pays all its employees and even its attorneys (after currency conversion).  Thus, the salaries of all BitMEX employees as well as legal fees paid to its lawyers are tainted with the proceeds of money laundering in violation of 18 U.S.C. §§ 1956 and 1957, SAC ¶ 214.

In the described money laundering scheme, the market manipulation gains realized by the launderer in the winner account and the funds confiscated by BitMEX as the result of liquidations induced by the launderer are generated at the expense of Plaintiffs and other cryptocurrency traders like Plaintiffs, who traded on BitMEX itself as well as on Kraken exchange, which Defendants used to manipulate cryptocurrency prices, SAC ¶ 214.  Notably, BitMEX deposits proceeds from the user account liquidations into its so called "Insurance Fund," which has steadily grown over the years and now amounts to over $427,000,000 dollars, all misappropriated from traders, including Plaintiffs, SAC ¶¶ 145-149.

Moreover, BitMEX has been recently caught red-handed doing at least $70,000,000 of business in New York and California without obtaining a money transmitting license in those states and without complying with FinCEN regulations, in violation of 18 U.S.C. § 1960(a).  This violation has been conclusively proven using BitMEX's own public Leaderboard, and without the benefit of discovery, which Defendants stonewalled, Ex. I.  Even Defendants themselves acknowledged this fact by hastily instituting a "User Verification Programme" less than 48 hours after being caught doing unlicensed business in the United States, Ex. J.  The amount of $70,000,000 of unlicensed United States business exceeds any possible threshold for the obligation to obtain the money transmitting license under 18 U.S.C. § 1960(a).  Specifically, in *United States v. Faiella*, 39 F. Supp. 3d 544 (S.D.N.Y. 2014), the threshold for triggering 18 U.S.C. § 1960(a) liability was $1,000,000 in unlicensed bitcoin transmissions.  In *United States v. Klein*, 6:17-cr-03056 (W.D.Mo. 2017), the threshold for 18 U.S.C. § 1960(a) liability was less than $30,000 in unlicensed bitcoin transmissions.  Based on these cases, Defendants have exceeded the legal threshold for triggering 18 U.S.C. § 1960(a) liability by a factor of 2,333x (two thousand three hundred thirty three times).  Consequently, all the funds that BitMEX collected from its trading operations and deposited into its general account (bitcoin wallet) are proceeds of

unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a) (in addition to being proceeds of money laundering in violation of 18 U.S.C. §§ 1956 and 1957, as explained above).

Awash with large amounts of tainted cash and encouraged by perceived lack of any accountability, Defendants grew so brazen that they do not even hesitate to publicly admit to bribery and bank fraud, SAC ¶¶ 11, 13. Despite the fact that the vast majority of Defendants' personnel and managers are located in this District, to avoid being subject to United States laws, regulations and taxes, Defendants established 12 false shell companies, including Defendant ABS, with intent to create an appearance that Defendant HDR has no presence, operations or investors in regulated jurisdictions such as the United States, SAC ¶¶ 12, 24.

### The Leaderboard Fiasco And Hasty "User Verification Programme"

Defendants' initial strategy to deal with a mounting number of civil cases against them in the United States was to argue to Courts that Defendants were not subject to personal jurisdiction in this country due to a lack of minimum contacts with the U.S. and, specifically, due to "U.S. persons [being] expressly prohibited from trading on BitMEX platform."

That defense strategy spectacularly imploded when, in early August, Plaintiff's counsel Pavel Pogodin stumbled upon Defendants' Leaderboard (https://www.bitmex.com/app/leaderboard, Ex. I) and discovered that, contrary to Defendants' denials, among top three Leaderboard traders, who meaningfully revealed their real names, all three turned out to be United States persons, generating over $70,000,000 in trading profits on Defendants' BitMEX platform. Plaintiffs' attorney put this stunning discovery into a CMC statement filed on August 11, 2020, Dkt. No. 33, which caused an angry response from Defendants' counsel. Defendants' counsel first demanded that Plaintiffs remove this very damaging information from the CMC statement using a CMC statement page limit as an excuse. After receiving a negative response, Defendants' counsel bitterly refused to file Plaintiffs' exhibits to the CMC statement.

After Defendants and their counsel finally came to their senses and realized that the jurisdictional genie was out of the bottle and their plot to bamboozle U.S. Courts has been

exposed, they hastily waived jurisdictional challenges in three United States civil cases against them and instituted a "User Verification Programme" on BitMEX[3], designed to create an appearance that Defendants somehow did not know before that most of their leaderboard was filled with U.S. traders,[4] Ex. J.

**Plaintiffs' Third Amended Complaint Overcomes All Defendants' Arguments**

In the proposed Third Amended Complaint, filed with the Court on October 8, 2020, Plaintiffs dispose of all Defendants' arguments made in their Motion to Dismiss:

1. TAC ¶¶ 5-11, 354-363, 376-381, 402-406 make causal connection between Defendants' conduct in violation of RICO and CEA and specific Plaintiffs' injuries sustained on specified domestic exchanges crystal clear. The same paragraphs as well as TAC ¶¶ 229-237 clearly allege plausible facts establishing that Plaintiffs suffered an "injury in fact" by reason of Defendants' conduct.

2. Tables in TAC ¶¶ 354-355 and diagram in TAC ¶ 9 clearly show, in great detail, exactly how Plaintiffs' injuries were caused by specific RICO and CEA overt acts perpetrated by specific Defendants.

3. Tables in TAC ¶¶ 351, 357 clearly show specific dates and times when Defendants engaged in the alleged overt acts in violation of both RICO and CEA.

4. TAC ¶¶ 229-237 specifically allege that Plaintiffs traded XBTUSD Perpetual Swap on BitMEX and Kraken, which meets the definition of "swap" under 7 U.S.C. § 1a(47)(a)(iv) and, therefore, is covered by the CEA private right of action under 7 USC § 25(a)(1)(D).

5. TAC ¶¶ 9, 354, 355 contain tables that clearly allege the exact place where each Defendants' overt act in violation of RICO and CEA took place, establishing that both RICO and CEA violations clearly occurred in the United States and refuting all RICO and CEA

---

[3] BitMEX operated for more than 5 years without any user verification what so ever. The "User Verification Programme" was instituted less than 48 hours after Plaintiffs' counsel put discovered jurisdictional evidence into CMC statement, Dkt. No. 33. This timing is not a coincidence.

[4] The "User Verification Programme" was apparently instituted in order to avoid civil and criminal liability for knowingly operating an unlicensed money transmission business in the U.S. in violation of 18 U.S.C. § 1960(a), see fn. 1 above.

extraterritoriality arguments made by Defendants in their Motion to Dismiss.

6. TAC ¶ 361 contains a table providing excruciatingly detailed information of who, what, when, where, and how, with respect to the alleged overt acts by specific Defendants in violation of both RICO and CEA, which clearly satisfies the heightened pleading requirement of Fed. R. Civ. P. 9(b).

7. TAC ¶ 359 contains a table clearly describing an individual role of each Defendant in the alleged misconduct in violation of both RICO and CEA.

8. TAC ¶ 465 clearly alleges a pre-existing relationship between Plaintiffs and Defendants that gives a rise to a duty of Defendants to Plaintiffs BMA and Kolchin to maintain a functional cryptocurrency derivatives marketplace. Therefore, the negligence claim (COUNT VII) will clearly survive Defendants' attack.

9. With respect to Defendants' argument with respect to statutory language "on or subject to the rules of any registered entity," this requirement applies only to contracts for "future delivery" and not to "contract[s] of sale of any commodity in interstate commerce" or XBTUSD and ETHUSD "swaps" that Plaintiffs traded. This is especially clear from reading 7 U.S. Code § 13 which states: "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or of any swap…" See also *Commodity Futures Trading Com'n v. McDonnell*, 287 F.Supp.3d 213, 228 (E.D.N.Y. 2018) (which did not apply "registered entity" requirement to the "contract[s] of sale of any commodity in interstate commerce" under the same 7 U.S. Code § 9). Thus, XBTUSD and ETHUSD "swaps" traded by Plaitniffs are not subject to the registered entity requirement. Thus, Defendants' argument is meritless and must be rejected.

Accordingly, for all the foregoing reasons, the proposed TAC would clearly survive the Motion to Dismiss that Defendants filed. Therefore, the discovery stay that Defendants are seeking is not warranted and must be denied. In the event the Court orders the discovery to be stayed, Plaintiffs respectfully request an exception to be made for discovery aimed at identifying a new party named in the TAC as "Unknown Exchange," which Defendants allegedly used to

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISC.   - 10 -   BMA LLC ET AL. V. HDR ET AL.   CASE NO. 3:20-CV-3345-WHO

launder ill gotten profits denominated in bitcoin by converting them to U.S. dollars.   Early identification of this new party is highly desirable for judicial efficiency reasons, to permit this new party to file any initial motions under Fed. R. Civ. P. 12(b) at the same time as Defendants. Plaintiffs further respectfully request the Court to provide for termination of the discovery stay, should one issue, as soon as Defendants' Motion to Dismiss is denied, at least in part.

Dated:  October 13, 2020

Respectfully submitted,

By:   /s/ Pavel I. Pogodin
        Pavel I. Pogodin

CONSENSUS LAW
Pavel I. Pogodin, Ph.D., Esq.
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io
Attorneys for Plaintiff BMA LLC

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISC.   - 11 -   BMA LLC ET AL. V. HDR ET AL.   CASE NO. 3:20-CV-3345-WHO