| | |
|---|---|
| Stephen D. Hibbard (State Bar No. 177865)<br>sdhibbard@jonesday.com<br>Matthew J. Silveira (State Bar No. 264250)<br>msilveira@jonesday.com<br>Dennis F. Murphy, Jr. (State Bar No. 301008)<br>dennismurphy@jonesday.com<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, CA 94104<br>Telephone: +1.415.626.3939<br>Facsimile: +1.415.875.5700<br><br>Attorneys for Defendants<br>HDR GLOBAL TRADING LIMITED, ABS GLOBAL TRADING LIMITED, ARTHUR HAYES, BEN DELO, and SAMUEL REED<br><br>Peter I. Altman (State Bar No. 285292)<br>paltman@akingump.com<br>Marshall L. Baker (State Bar No. 300987)<br>mbaker@akingump.com<br>Jessica H. Ro (State Bar No. 329737)<br>jro@akingump.com<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1999 Avenue of the Stars<br>Suite 600<br>Los Angeles, CA 90067-6022<br>Phone: (310) 229-1000<br><br>Attorneys for Defendant<br>ARTHUR HAYES | Edward H. Takashima (State Bar #270945)<br>BOIES SCHILLER FLEXNER LLP<br>725 S Figueroa Street<br>31st Floor<br>Los Angeles, CA 90017<br>Phone: (213) 629-9040<br>Fax: (213) 629-9022<br>Email: etakashima@bsfllp.com<br><br>Attorneys for Defendant<br>BEN DELO<br><br>Douglas K. Yatter (State Bar No. 234264)<br>douglas.yatter@lw.com<br>LATHAM & WATKINS, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Phone: (212) 906-1200<br><br>Matthew Rawlinson (State Bar No. 231890)<br>matt.rawlinson@lw.com<br>LATHAM & WATKINS, LLP<br>140 Scott Drive<br>Menlo Park, CA<br>Phone: (650) 328-4600<br><br>Attorneys for Defendant<br>SAMUEL REED |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin and Vitaly Dubinin,<br><br>    Plaintiffs,<br><br>    v.<br><br>HDR Global Trading Limited (a.k.a. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>    Defendants. | Case No. 3:20-cv-03345-WHO<br><br>**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>Date: November 10, 2020<br>Time: 2:00 p.m.<br>Ctrm: 2 – 17th Floor<br>Judge: Honorable William H. Orrick |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   RELEVANT BACKGROUND ...................................................................................... 1

    A.    Prior To The Proposed TAC, No Plaintiff Ever Claimed To Have Traded Directly On BitMEX, Let Alone Sustained Any Trading Losses There ................ 1

    B.    Plaintiffs Attempt To Cure Their Pleading Deficiencies On Standing by Alleging That BMA LLC And Kolchin Traded On BitMEX, But Do Not Provide the Information Necessary To Verify Those Allegations ......................... 3

    C.    Plaintiffs' Counsel Has Repeatedly Demonstrated A Disregard For The Truth In This Lawsuit ........................................................................................ 4

III.  ARGUMENT .................................................................................................................. 5

    A.    The Proposed TAC Continues To Omit Key Facts Related To Standing, Raising Serious Questions As To Whether It Has Been Filed In Good Faith ........ 7

    B.    Plaintiffs' Motion For Leave To Amend Should Be Denied As Futile .................. 9

IV.  CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**CASES**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
    465 F.3d 946 (9th Cir. 2006) ................................................................................................ 6, 9

*Bonin v. Calderon*,
    59 F.3d 815 (9th Cir. 1995) ....................................................................................................... 9

*Chew Wing Luk v. Dulles*,
    268 F.2d 824 (9th Cir. 1959) ..................................................................................................... 7

*Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*,
    No. CV 16-9321, 2017 WL 6888246 (C.D. Cal. Nov. 20, 2017) ............................................... 7

*D.P. Textile & Apparel, Inc. v. Unigard Ins. Co.*,
    No. CV 15-5418-GW(RAOX), 2015 WL 12806456 (C.D. Cal. Aug. 25, 2015) ........................ 9

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*,
    980 F. Supp. 2d 1160 (E.D. Cal. 2013) ..................................................................................... 7

*Hunt v. City of Los Angeles*,
    No. CV 17-8064 JFW (PVC), 2020 WL 2089161 (C.D. Cal. Apr. 2, 2020) ............................. 9

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) ................................................................................................... 5

*Luce v. Dalton*,
    166 F.R.D. 457 (S.D. Cal. 1996) ............................................................................................... 9

*Vitrano v. United States*,
    643 F.3d 229 (7th Cir. 2011) ..................................................................................................... 7

*Wash. Envtl. Council v. Belton*,
    732 F.3d 1131 (9th Cir. 2013) ................................................................................................. 10

*Wizards of the Coast LLC v. Crytozoic Entm't LLC*,
    309 F.R.D. 645 (W.D. Wash. 2015) .......................................................................................... 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ...................................................................................................................11

Fed. R. Civ. P. 11 ....................................................................................................................7

Fed. R. Civ. P. 12 ..................................................................................................................11

Fed. R. Civ. P. 15 ................................................................................................................5, 9

I.   **INTRODUCTION**

Defendants HDR Global Trading Limited, ABS Global Trading Limited, Arthur Hayes, Ben Delo, and Samuel Reed (together, "Defendants") respectfully submit this brief in opposition to Plaintiffs' motion for leave to file a Third Amended Complaint ("TAC").  Because Defendants have reason to believe that Plaintiffs are seeking this amendment in bad faith, and because the proposed TAC is otherwise futile, Plaintiffs' motion for leave to amend should be denied.

II.  **RELEVANT BACKGROUND**

Defendants' primary basis for opposing Plaintiffs' motion for leave to amend is one that Defendants do not advance lightly.  But Plaintiffs' conspicuous refusal to plead the information necessary for Defendants to ascertain the veracity of their newly added allegations regarding Plaintiffs' purported trading activity on the BitMEX platform, coupled with a repeated willingness by Plaintiffs' counsel to engage in abusive tactics points to only one conclusion: Plaintiffs' proposed TAC attempts to mislead the Court with regard to whether this Court possesses subject matter jurisdiction over this case.

    **A.   Prior To The Proposed TAC, No Plaintiff Ever Claimed To Have Traded Directly On BitMEX, Let Alone Sustained Any Trading Losses There.**

This lawsuit asserts claims under the Commodity Exchange Act ("CEA"), the federal Racketeering Influenced and Corrupt Organizations ("RICO") Act, and California law against Defendants—the corporate owner of the BitMEX cryptocurrency trading platform (HDR), a subsidiary (ABS), and HDR's founders—for purportedly manipulating the price of cryptocurrencies via BitMEX and then allegedly laundering the funds obtained from that purported market manipulation.[1]  But, at least until the proposed TAC, no named Plaintiff claimed to have actually traded on the BitMEX platform or to have otherwise interacted with the Defendants whom Plaintiffs now seek to blame for their bitcoin losses.

When Plaintiff BMA first filed this lawsuit on May 16, 2020, it alleged that it possessed standing to sue Defendants because it "traded (directly *or indirectly*)" unidentified "spot bitcoin

---

[1] For additional background on Plaintiffs' theories of liability, Defendants' respectfully direct the Court to the "Introduction" and "Relevant Background" sections of Defendants' Motion to Dismiss SAC, which Defendants incorporate herein by reference.  *See* ECF 42 at 1-5.

and/or bitcoin derivatives" on unnamed cryptocurrency exchanges at unspecified times, and subsequently "sustained a domestic loss" of bitcoin on those anonymous cryptocurrency exchanges on a variety of dates.  Complaint ¶¶ 297-300, ECF 1 (filed May 16, 2020) (emphasis added).  That initial pleading has since been officially amended twice (such that it now includes two additional individual Plaintiffs, Yaroslav Kolchin and Vitaly Dubinin), and Plaintiffs' counsel has also sent more than a dozen proposed amended complaints that he has threatened to file, but ultimately refrained from doing so.  Yet in all of those amendments—whether actually filed or simply threatened—no Plaintiff ever claimed to have traded directly on the BitMEX platform.  Instead, Plaintiffs continued to allege only that they possessed standing because they "sustained a domestic loss" of bitcoin by trading unspecified "spot bitcoin and/or bitcoin derivatives" on some unnamed cryptocurrency exchange.

Confronted with a complaint seeking tens of millions of dollars in compensatory and punitive damages by Plaintiffs with whom Defendants had no relationship whatsoever, Defendants moved to dismiss the SAC on September 14, 2020.  *See* ECF 42.  That Motion to Dismiss argues that Plaintiffs' entire complaint must be dismissed because, among other reasons, Plaintiffs failed to allege plausible facts establishing that they possess both constitutional and statutory standing.  ECF 42 at 7-8.

Specifically, Defendants' Motion to Dismiss highlights the absence of any allegations that any Plaintiff suffered losses by virtue of having traded a futures contract or swap on the BitMEX platform.  Indeed, Defendants noted that it was unclear whether any Plaintiff had directly traded on a cryptocurrency exchange (BitMEX or otherwise), as the SAC alleged only that each Plaintiff had "directly *or indirectly*" traded unspecified cryptocurrencies or cryptocurrency derivatives on some unnamed cryptocurrency exchange.  *Id.*  That argument applied with particular force to Plaintiff BMA LLC—a Puerto Rico company formed by Plaintiffs' counsel Pavel Pogodin, who is also that entity's lone authorized person, *id.* at 4-5—which the SAC alleges is "co-owned by multiple individual cryptocurrency traders and [] holds the title to, and ownership in, any and all claims, causes of action and demands … that its owner traders had against" Defendants, *id.* at 9 (quoting SAC ¶ 8).  Because the SAC is unclear as to whether BMA is "seeking to vindicate [its]

own rights" or the rights of its purported "owner traders," Defendants submitted that BMA lacked Article III standing. *Id.*

### B. Plaintiffs Attempt To Cure Their Pleading Deficiencies On Standing By Alleging That BMA LLC And Kolchin Traded On BitMEX, But Do Not Provide The Information Necessary To Verify Those Allegations.

Plaintiffs responded to Defendants' Motion to Dismiss by filing this motion for leave to file the TAC, which they assert "dispose[s] of all Defendants' arguments made in the Motion to Dismiss." ECF 46 at 10. Relevant to this opposition, the proposed TAC attempts to remedy the standing deficiencies highlighted by Defendants' Motion to Dismiss by adding new details regarding Plaintiffs' purported trading activity and losses.

The TAC now admits that one of the individual Plaintiffs, Vitaly Dubinin, did not suffer any losses from trading on the BitMEX platform, and is instead attempting to hold Defendants liable for losses sustained on Kraken, a *different* cryptocurrency exchange not named as a defendant in this lawsuit. Proposed TAC ¶¶ 380-81, 424, 447 (alleging that "Plaintiff Dubinin sustained a domestic loss of at least 10 bitcoin, on a domestic United States based cryptocurrency exchange Kraken … when XBTUSD Swap position that Plaintiff Dubinin directly and personally purchased and owned was liquidated"). As Defendants explained in their Motion to Dismiss, that is precisely the attenuated theory of liability that is insufficient to satisfy the standing requirements of either Article III or the federal statutes that Mr. Dubinin invokes.

For Plaintiffs BMA and Yaroslav Kolchin, the proposed TAC advances a slightly different theory of standing. For the first time at any point in this lawsuit, each of those Plaintiffs now suggests—although the allegations remain ambiguous, at best—that they traded directly on BitMEX and "sustained a domestic loss of at least 10 bitcoins" on BitMEX as a result. *See* Proposed TAC ¶¶ 376, 378, 402, 404, 420-22, 443-45 (alleging that "Plaintiff BMA sustained a domestic loss of at least 10 bitcoins, on a domestic United States based cryptocurrency exchange BitMEX … due to a liquidation cascade, when XBTUSD Perpetual Swap position that Plaintiff BMA directly and personally purchased and owned was liquidated or otherwise closed"); *Id.* ¶¶ 379, 405, 423, 446 (same allegation for Plaintiff Kolchin). In other words, two of the Plaintiffs now purport to possess the sort of direct relationship with BitMEX that they claim affords them

standing to pursue their claims against Defendants.

These new allegations are puzzling, however, because, by their own admission, Plaintiffs BMA and Kolchin do not allege specific information sufficient for HDR to ascertain whether they *ever* traded on the BitMEX platform. Both the SAC and TAC acknowledge that before an individual can trade on BitMEX, he or she must first create an account by providing a name, email, and country of residence, and accept BitMEX's Terms of Service. Proposed TAC ¶ 262. A country of residence is required because the Terms of Service expressly prohibit persons from certain jurisdictions, including the U.S., from trading on the platform. Yet Plaintiffs also allege that a user can create a BitMEX account "with nothing more than an email address, which often has no relationship to the identity of the actual user. Accounts are therefore easily opened anonymously …." *Id.* ¶ 264. In short, Plaintiffs do not dispute that before Mr. Kolchin or BMA LLC could have traded directly on BitMEX as they allege, each would have first been required to register on the exchange and certify that they agreed to abide by BitMEX's Terms of Service. But Plaintiffs have not specified any user names or email addresses from which HDR could identify any accounts associated with Plaintiffs. Nor have Plaintiffs pleaded the specifics of any trades such that HDR could identify their claimed trades from the blockchain.

### C. Plaintiffs' Counsel Has Repeatedly Demonstrated A Disregard For The Truth In This Lawsuit.

The disparity between the TAC's allegations regarding user registration and the vague allegations that Mr. Kolchin and BMA directly traded on BitMEX raises a serious question as to whether Plaintiffs have standing to pursue their claims. Indeed, Plaintiff BMA LLC, in particular, appears not to have suffered any direct losses at all, and instead is attempting to bring claims on behalf of unidentified individuals. *See* ECF 42 at 9 (explaining why BMA LLC lacks Article III standing to bring claims on behalf of its members)

Defendants recognize this is a weighty accusation. But unfortunately, this would hardly be the first time that Plaintiffs' counsel has distorted the truth in an apparent effort to gain an advantage in this litigation. Over the past few months, Plaintiffs' counsel has engaged in conduct far outside the acceptable norms of professional behavior, including by repeatedly impugning the

character of Defendants' counsel both over the phone and via e-mail, and otherwise levying insults and invective which qualify as defamation per se.  Plaintiffs' counsel has also sent those unfounded and slanderous accusations to multiple Jones Day partners who are not involved in the case.  Plaintiffs' counsel has persisted in doing so even after Defendants expressly requested that he stop emailing Jones Day attorneys who are not working on this litigation.

Plaintiffs' counsel has further sought to leverage a recently-filed CFTC action and DOJ indictment alleging certain regulatory compliance violations as a vehicle for advancing even more reckless accusations at Defendants' counsel for defending against the allegations in this case. Plaintiffs have gone so far as to threaten to report Defendants' counsel to the U.S. Attorneys' Office for representing Defendants in this action.

Those allegations, of course, are frivolous.  As detailed *infra* in Argument Part B, Plaintiffs' suggestion that the government proceedings prove their case ignores that the allegations contained therein—which are based on (i) the failure as an alleged futures commission merchant to implement and maintain an adequate anti-money laundering program as allegedly required by the Bank Secrecy Act and (ii) the failure to register with the CFTC as a foreign board of trade or other designated trading facility—have nothing to do with the market manipulation and money laundering claims at the center of this case.  But such factual realities have not stopped Plaintiffs' counsel from attempting to weaponize the DOJ and CFTC proceedings against Defendants' counsel in this case.

This is not the proper vehicle for litigating this attorney misconduct by Plaintiffs' counsel, and Defendants remain committed to prevailing in this case on the merits.  But Defendants mention Plaintiffs' repeated disregard for the truth because that conduct only further buttresses Defendants' conclusion that Plaintiffs' motion for leave to amend has been filed in bad faith and should be rejected, for the reasons that Defendants further explain herein.

### III. ARGUMENT

It is true that Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  But "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).  "[A] district court need not

grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Two of those conditions are present here. First, there is a serious question as to whether Plaintiffs' proposed TAC was filed in bad faith. Defendants' Motion to Dismiss establishes that Plaintiffs lack constitutional and statutory standing to sue because, among other reasons, the SAC did not allege that Plaintiffs suffered any losses from trades they made on BitMEX directly; instead, Plaintiffs only claimed that they "sustained a domestic loss" of bitcoin when they "traded (directly or indirectly)" on an unspecified exchange. *E.g.*, SAC ¶ 336. The proposed TAC now purports to cure those fundamental deficiencies by alleging that Plaintiffs BMA and Kolchin (but not Dubinin) "sustained a domestic loss … on … BitMEX … when" a swap position that those Plaintiffs "directly and personally purchased and owned was liquidated or otherwise closed." TAC ¶¶ 376, 378-79.

But Plaintiffs have still yet to allege any specifics or identify records of *any* trades executed by any of the named Plaintiffs, let alone of trades executed on the specific dates that BMA and Kolchin claimed they "sustained a domestic loss on BitMEX." Plaintiffs have not even provided the user names or email addresses of the alleged traders, which would allow Defendants to identify those users. The inconsistency between Plaintiffs' allegations regarding "anonymous" account creation and their own failure to allege how they identified themselves on the platform confirms that, at best, Plaintiffs' proposed pleading omits key details. At worst, this amounts to a blatant attempt to mislead the Court as to whether it possesses subject matter jurisdiction over this case. Either way, Plaintiffs' lack of candor weighs in favor of denial of leave to amend.

Second, and relatedly, even a cursory review of Plaintiffs' proposed TAC reflects that it remains replete with many of the fundamental pleading defects already identified by Defendants' Motion to Dismiss the SAC. For instance, even if Plaintiffs BMA and Kolchin had traded directly on BitMEX, as they claim—and again, Plaintiffs provide no information sufficient to confirm any such trades—that would not salvage the claims of Plaintiff Dubinin, who claims only to have suffered losses on a *different* exchange, Kraken. In any event, regardless of whether any

Plaintiff traded on BitMEX or elsewhere, the TAC is bereft of plausible, nonconclusory allegations tying Plaintiffs' purported trading losses to any alleged wrongful conduct of Defendants.  Plaintiffs' motion for leave to amend should therefore also be denied because the proposed amendments would be futile.

### A. The Proposed TAC Continues To Omit Key Facts Related To Standing, Raising Serious Questions As To Whether It Has Been Filed In Good Faith.

"In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Crytozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015).  Bad faith therefore "includes amendments filed frivolously or for an improper purpose" because they were filed in disregard of Rule 11's mandate that the allegations must be "well grounded in fact." *Id.*  Bad faith also encompasses "claims … in which the allegations are false, constituting a fraud and willful imposition on the dignity of the court." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1178–79 (E.D. Cal. 2013) (internal citations omitted); *see also Chew Wing Luk v. Dulles*, 268 F.2d 824, 827 (9th Cir. 1959) (remanding for district court to determine it should deny leave to amend because "the amended complaint was filed in bad faith, that the allegations contained therein are false and constitute a fraud and willful imposition on the dignity of the court").  Thus, when the record suggests that a plaintiff's proposed amendment is predicated on falsehoods designed to overcome a legal challenge from the defendant or to delay, courts have not hesitated to deny leave to amend. *See, e.g.*, *Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, No. CV 16-9321, 2017 WL 6888246, at *2 (C.D. Cal. Nov. 20, 2017) (denying leave to amend when plaintiff tried to introduce a fact that could have been "alleged … originally or at least much earlier in the case" and the "suspicious timing" of the proposed amendment—in response to the defendants' opposition to class certification—"suggest[ed] that the attempt to amend is a bad faith maneuver").  Put another way, "if a motion [for leave to amend] doesn't pass the sniff test, i.e., reeks of bad faith or dilatory motive, the district court is permitted to deny it and hold the plaintiff to his original complaint." *Vitrano v. United States*, 643 F.3d 229, 234 (7th Cir. 2011).

Plaintiffs' proposed TAC does not pass that baseline test.  As detailed above, the

circumstances surrounding BMA LLC's and Kolchin's newly added allegations of "direct" trading on BitMEX raise serious questions as to whether those Plaintiffs are misrepresenting the facts necessary for this Court to determine whether it possesses subject matter jurisdiction over this dispute. Even assuming that Plaintiffs' failure to allege direct trading on BitMEX until the proposed fourth iteration of the operative complaint was an innocuous oversight, that does not explain why Plaintiffs still allege no specific details that would allow HDR to confirm that either Mr. Kolchin or BMA LLC ever traded on BitMEX, let alone did so on the dates that those Plaintiffs allegedly sustained the losses that are the subject of this lawsuit.

Plaintiff BMA LLC's newly added allegations of its "direct[] and personal[]" trading on BitMEX are particularly troubling. *See* Proposed TAC ¶ 376, 378, 402, 404, 420-22, 443-45. As the proposed TAC acknowledges (at ¶ 85), BitMEX's Terms of Service expressly prohibit U.S. persons from trading on the platform and requires users to verify their country of residence during the registration process. Here, not only does the TAC fail to provide any details as to how BMA LLC allegedly registered to trade on BitMEX, but any attempted registration would have violated BitMEX's Terms of Service because BMA LLC, as a Puerto Rico corporation, is a U.S. person barred from trading on BitMEX.

Because there is no indication that BMA LLC ever registered to trade on BitMEX (nor could it validly do so under BitMEX's Terms of Service), it appears that the TAC is not telling the entire story as to BMA LLC's claimed trading losses. That is a fundamental problem. As Defendants' Motion to Dismiss explains, if BMA LLC did not suffer any "direct" harm because of Defendants' purported conduct and is instead attempting to bring claims on behalf of its members (such as Plaintiffs' counsel), BMA LLC's complaint must be dismissed for lack of Article III standing.

Simply put, Plaintiffs' opaque pleading, combined with Plaintiffs' counsel's irresponsible disregard for the truth in other aspects of the case to date, lead Defendants to believe that the proposed TAC is designed to mislead the Court and that Plaintiffs' motion for leave to amend has been filed in bad faith. At a minimum, this Court should exercise its inherent power to assure itself of subject matter jurisdiction in this case and issue an Order to Show Cause to Plaintiffs

1  BMA LLC and Kolchin as to whether they have a good faith basis for alleging that they traded
2  "directly" on BitMEX. *See, e.g.*, *D.P. Textile & Apparel, Inc. v. Unigard Ins. Co.*, No. CV 15-
3  5418-GW(RAOX), 2015 WL 12806456, at *1 (C.D. Cal. Aug. 25, 2015) (ordering party to show
4  cause why the action should not be dismissed for lack of subject matter jurisdiction when
5  pleadings lacked the facts necessary for the court to "assure [itself] of the existence of subject
6  matter jurisdiction" (internal quotation marks omitted)).

**B.     Plaintiffs' Motion For Leave To Amend Should Be Denied As Futile.**

A district court may also deny leave to amend under Rule 15 on futility grounds. *See AmerisourceBergen Corp.*, 465 F.3d at 951; *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). "A proposed amendment is futile for purposes of denying a motion to amend where no set of facts may be proven under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Hunt v. City of Los Angeles*, No. CV 17-8064 JFW (PVC), 2020 WL 2089161, at *3–6 (C.D. Cal. Apr. 2, 2020), *report and recommendation adopted*, No. CV 17-8064 JFW (PVC), 2020 WL 2079991 (C.D. Cal. Apr. 30, 2020) (quoting *Luce v. Dalton*, 166 F.R.D. 457, 459 (S.D. Cal. 1996)). Amendment here is futile.

At the threshold, the proposed TAC now confirms that Plaintiff Dubinin did not trade on BitMEX, and is instead attempting to impose liability upon Defendants for losses he allegedly sustained on a *different* cryptocurrency exchange, Kraken.[2] Defendants' arguments as to why that theory of liability is too attenuated for Article III and statutory standing purposes thus apply with full force to Plaintiff Dubinin's claims. And those arguments likewise apply to Plaintiffs BMA LLC and Kolchin if, as Defendants strongly suspect, the proposed TAC misrepresents whether those Plaintiffs directly traded on BitMEX.

But even setting aside for the moment whether and where each Plaintiff traded directly, the proposed TAC remains devoid of any facts establishing that Defendants' alleged actions—as opposed to any other market factor—caused Plaintiffs' claimed bitcoin losses. *See* ECF 42 at 8.

---

[2] Plaintiff BMA LLC likewise asserts that it suffered damages from trading on Kraken. TAC ¶¶ 377, 403.

Indeed, both the SAC and the proposed TAC expressly allege that the "[b]itcoin futures and especially spot markets" that Plaintiffs allegedly traded are "particularly susceptible to … [multiple] forms of market manipulation" perpetrated by unnamed third parties.  SAC ¶ 102; Proposed TAC ¶ 139.  Thus, because it is impossible to determine from the SAC that any of the Defendants caused Plaintiffs' alleged bitcoin losses, the Defendants explained that "the causal chain is too weak to support standing." ECF 42 at 9 (quoting *Wash. Envtl. Council v. Belton*, 732 F.3d 1131, 1142 (9th Cir. 2013)).

Nothing in Plaintiffs' proposed TAC remedies this fatal defect, including Plaintiffs' allegations regarding the recent government actions filed against Defendants.  On October 1, 2020, the CFTC announced a civil enforcement action against all of the named Defendants, alleging six violations of the CEA and related regulations.  Those claims are predicated on Defendants' alleged operation of the BitMEX platform without first registering with the CFTC pursuant to the CEA, as well as Defendants' purported failure to adequately discharge supervisory responsibilities over BitMEX.  On the same day, the DOJ filed a two-count indictment charging Defendants Hayes, Delo, and Reed with operating BitMEX in violation of the Bank Secrecy Act and with conspiring to violate the Bank Secrecy Act.  The predicate for both of those charges is the alleged failure to cause BitMEX to establish and implement a sufficient anti-money laundering program, an obligation imposed on futures commission merchants that are required to register under the CEA.  In short, the allegations in both government proceedings turn on *registration* with the CFTC and regulatory requirements associated with such registration.

Relevant here, however, neither the DOJ nor the CFTC allege that any of the Defendants violated the CEA or any other statute or law by manipulating the price of cryptocurrencies— Plaintiffs' core theory in this lawsuit.  Thus, despite featuring prominently in Plaintiffs' proposed TAC, neither the DOJ indictment nor the CFTC enforcement action has any bearing on the CEA, RICO, and California law claims alleged by Plaintiffs in this lawsuit, let alone on Plaintiffs' standing to assert those claims.

Standing is hardly the only area where Plaintiffs' proposed TAC remains deficient.[3] For example, Defendants' Motion to Dismiss demonstrated that Plaintiffs failed to plead with the requisite particularity facts establishing that Defendants manipulated the price of a commodity contract at all, let alone that this purported manipulation was sufficiently connected to Plaintiffs' claimed injuries. *See* ECF 42 at 15, 20-21. Those pleading defects persist in the proposed TAC. Indeed, while Plaintiffs now identify contracts that they claim to have traded to their detriment on both Kraken and BitMEX, Proposed TAC ¶ 231, Plaintiffs still do not provide any details of such trades sufficient to support their purported cryptocurrency price manipulation claims, let alone make the connection between that alleged manipulation and Plaintiffs' claimed losses. ECF 42 at 15, 20-21.

The proposed TAC likewise continues to fail to state *prima facie* RICO claims against Defendants. Defendants showed that Plaintiffs' RICO claims failed as a matter of law both because the SAC failed to satisfy the pleading requirements of Rule 9(b) and because Plaintiffs failed to plausibly allege that each Defendant engaged in at least two predicate acts prohibited by RICO. ECF 42 at 21-23. In their motion for leave to amend, Plaintiffs claim to have cured these problems by including a "table providing excruciatingly detailed information of who, what, when, where, and how, with respect to the alleged overt acts by specific Defendants in violation of both RICO and CEA," which they say "clearly satisfies the heightened pleading requirement of Fed. R. Civ. P. 9(b)." ECF 46 at 11 (citing TAC ¶ 361). But this chart and others now contained in the proposed TAC are nothing more than aggregations of the conclusory and impermissibly collective allegations that Defendants have already explained do not suffice under any pleading standard, much less the heightened standards of Rule 9(b).

Accordingly, because the proposed TAC still fails to state viable claims against Defendants, Plaintiffs' motion for leave to amend should be denied as futile.

---

[3] In the event that the Court grants Plaintiffs' motion for leave to amend, Defendants reserve the right to challenge all aspects of the proposed TAC in a motion to dismiss filed under Rules 12(b)(1) and 12(b)(6).

## IV.     CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for leave to further amend their complaint. In the alternative, this Court should exercise its inherent authority to assure itself of subject matter jurisdiction by issuing an Order to Show Cause requiring Plaintiffs BMA and Kolchin to produce *prima facie* evidence supporting their claims in the proposed TAC that they sustained trading losses directly on BitMEX.

Dated: October 22, 2020

Respectfully submitted,

JONES DAY

By: */s/ Stephen D. Hibbard*
    Stephen D. Hibbard

Counsel for Defendants
HDR GLOBAL TRADING LIMITED, ABS GLOBAL TRADING LIMITED, ARTHUR HAYES, BEN DELO, and SAMUEL REED


AKIN GUMP STRAUSS HAUER & FELD LLP


By: */s/ Peter I. Altman*
    Peter I. Altman

Counsel for Defendant
ARTHUR HAYES


BOIES SCHILLER FLEXNER LLP


By: */s/ Edward H. Takashima*
    Edward H. Takashima

Counsel for Defendant
BEN DELO


LATHAM & WATKINS, LLP


By: */s/ Douglas K. Yatter*
    Douglas K. Yatter
    Matthew Rawlinson

Counsel for Defendant
SAMUEL REED

I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file this DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all signatories concur in this filing.

DATED: October 22, 2020

*/s/ Stephen D. Hibbard*
STEPHEN D. HIBBARD