Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

Attorneys for Plaintiffs BMA LLC,
Yaroslav Kolchin and Vitaly Dubinin

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin and Vitaly Dubinin,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>Defendants. | Case No.  3:20-cv-3345-WHO<br><br>**PLAINTIFFS' REPLY ON MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Hon. William H. Orrick<br>Date: November 10, 2020<br>Time: 2:00 PM<br>Crtrm.: 2, 17th Floor<br><br>**Discovery Cutoff: None Set**<br>**Pretrial Conference Date: None Set**<br>**Trial Date: None Set** |

## REPLY TO DEFENDANTS' OPPOSITION

Defendants' arguments in their Opposition are so extraordinarily bad that it becomes absolutely clear that none of the 13 lawyers who entered appearance for Defendants in this case actually took time to read Plaintiffs' papers.

### Standing

There is no other explanation, but failure to read Plaintiffs' papers, for Defendants trying to argue to the Court that the fact that Plaintiffs Dubinin and BMA traded on Kraken as opposed to BitMEX makes their injury "too attenuated for Article III and statutory standing purposes," while TAC specifically alleges that Defendants' market manipulation was <u>initiated</u> by Defendants using helper accounts on Kraken, and that Kraken was the <u>first</u> exchange affected by it, even



before BitMEX, see TAC ¶¶ 8, 9, 147, 231, 244, 351, 354, 365. Thus, Defendants got it all backwards – injuries of Plaintiffs Dubinin and BMA sustained on Kraken were actually the most proximate to Defendants' manipulative conduct and not "attenuated" as Defendants falsely claim.

If Defendants' 13 lawyers actually read the allegations of the TAC, they clearly would not have made this argument, as it is simply laughable and, in fact, embarrassing.

Equally laughable are Defendants' baseless suggestions of bad faith and specifically that Plaintiffs did not in fact suffer losses that the TAC alleges. Just to show to the Court how reckless and embarrassing Defendants' position is, Plaintiffs attached new Ex. 15 to the TAC, Ex. A, showing Plaintiff Kolchin losses on BitMEX amounting to almost 4 bitcoins ($52,000 at today's rate) sustained on July 14, 2019, as alleged in the TAC ¶¶ 382, 408, 426, 449.[1] This clearly shows that Defendants grew so desperate that they do not even think twice about making reckless and frivolous accusations of bad faith. The Court should not reward this bad faith behavior. Defendants will have a chance to conduct full discovery in the near future, but at this point, for purposes of this Motion, all allegations of the TAC must be taken as true. Motion for leave to amend is not a substitute for discovery that Defendants moved to stay. As such, TAC adequately alleges facts establishing standing of all Plaintiffs and Defendants' meritless argument must be rejected.

Article III of the Constitution extends the judicial "Power of the United States" to only "Cases" and "Controversies." Art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing consists of three elements. Id. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); see also *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). At the pleading stage, the plaintiff must clearly allege facts demonstrating each element. Id. at 1547. "The injury-in-fact requirement requires a plaintiff to allege an injury that is both `concrete and particularized' and `actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). Under the injury-in-fact requirement, particularity and

---

[1] It is especially appalling that the attorney who made these baseless reckless accusations himself misrepresented numerous material facts to multiple Courts, including Judge Orrick, see Ex. B.

concreteness are two separate inquires. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1111 (2017). An injury is concrete when it actually exists. *Spokeo*, 136 S. Ct. at 1548. Intangible injuries can be concrete. Id. at 1549. For an injury to be "particularized," as required for Article III standing, it "must affect the plaintiff in a personal and individual way." Id. at 1548.  The injury allegations of TAC clearly meet all of these requirements, see, for example, TAC ¶¶ 382, 408, 426, 449.

On the other hand, there is absolutely no legal requirement that, at the pleadings stage, Plaintiffs BMA and Kolchin [must] allege specific information sufficient for HDR to ascertain whether they ever traded on the BitMEX platform." There is also absolutely no requirement for "Plaintiffs [to have] specified any user names or email addresses from which HDR could identify any accounts associated with Plaintiffs." Obtaining information about specific trades of Plaintiffs is the subject matter of discovery and not Motion for Leave to Amend at the pleadings stage.  For purposes of this Motion, all Plaintiffs' allegations are taken as true.  Such allegations are clearly sufficient to satisfy both the constitutional and the statutory standing requirement.  For this reason, Defendants' argument is laughable and must be rejected.

Notably, while attempting to bamboozle the Court with the above meritless arguments, Defendants failed to cite a single market manipulation case resorting to cases containing very general proclamations on the requirements for pleading a specific injury.  On the other hand, multiple market manipulation cases on point from various courts directly contradict all of Defendants' points.  It should be also noted that Plaintiffs' counsel shared the below cases with Defendants' attorneys early on in the case, who chose not to cite them to the Court.

In *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 155 (S.D.N.Y. Nov 26, 2018), in a market manipulation case, the Court held:

> Plaintiffs Dennis, Sonterra, and FrontPoint Event Driven here allege that defendants manipulated BBSW on days when these plaintiffs transacted in BBSW-Based Derivatives, thereby impacting the price of and/or periodic payments due on such derivatives and causing these plaintiffs to be either overcharged or underpaid. This alleged injury readily meets the "low threshold" for injury-in-fact. The harm of "pa[ying] too much" or "receiv[ing] too little" is a "classic economic injury-in-fact." In Gelboim v. Bank of America Corporation, for example, the Second Circuit considered an Article III challenge to plaintiffs who there alleged that they had been "harmed by receiving lower returns on

> LIBOR-denominated instruments as a result of defendants' manipulation of LIBOR." The Circuit concluded that plaintiffs had "easily satisfied" the injury-in-fact requirement. … Accordingly, Dennis, Sonterra and FrontPoint Event Driven each sufficiently has alleged injury-in-fact.

Id. at 155.

In *Sullivan v. Barclays PLC*, 13-cv-2811 (PKC) (S.D.N.Y. Feb 21, 2017), the Court stated:

> Defendants argue that plaintiffs do not have standing to bring claims directed to LIFFE futures and interest rate swaps because the Complaint does not specifically link the dates of defendants' individual Euribor manipulations with the dates that plaintiffs' settled their positions. (Def. Mem. at 8-9.)
> But the Complaint alleges a years-long conspiracy to secretly manipulate the Euribor, and asserts that defendants' misconduct occurred "on a daily basis. . . ." (Compl't ¶ 50.) True, the Complaint identifies certain specific dates where defendants allegedly communicated with one another about manipulating the Euribor, but those dates do not purport to be the universe of defendants' communications and misconduct. It ultimately is plaintiffs' burden to prove that any unlawful manipulation of the Euribor resulted in injury. For the purpose of alleging a standing at the pleading stage, however, the plaintiffs have adequately alleged a traceable injury resulting from the defendants' alleged manipulation of the Euribor.
> Defendants' motion to dismiss plaintiffs' claims directed to LIFFE Futures and Interest Rate Swaps for lack of standing is therefore denied.

Id. at 155.

Even pleading the specific exemplary trades, which Plaintiffs have done in TAC anyway, is not required to establish both constitutional and statutory standing. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F.Supp.3d 581, 595 (S.D.N.Y. 2015) (rejecting argument that a complaint need "allege facts that, if proven, would establish ... actual harm in real trades in specific currencies on particular days" (emphasis omitted)):

> Defendants argue that the U.S. Complaint fails to "allege facts that, if proven, would establish ... actual harm in real trades in specific currencies on particular days." (emphases in original). Defendants contend that the U.S. Complaint does not adequately allege an injury in fact, a requisite for standing, because, absent such specifics, any allegation of harm is conclusory. Defendants' argument is rejected.
> Plaintiffs "must have suffered an injury-in-fact, that is, the invasion of a `legally protected interest' in a manner that is `concrete and particularized' and `actual or imminent, not conjectural or hypothetical.'" Bhatia v. Piedrahita, 756 F.3d 211, 218 (2d Cir.2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The standing requirements ensure that judicial resources are "devoted to those disputes in which the parties have a concrete stake." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 191, 120 S.Ct. 693, 145 L.Ed.2d

> 610 (2000)). Plaintiffs have demonstrated that they have a concrete stake in the present action. Each named Plaintiff claims that it was injured by having to pay supra-competitive prices as a result of Defendants' manipulation of the Fix.
> Defendants conceded at oral argument, as they must, that any particular transaction that a particular Plaintiff entered into with a particular Defendant on a day that the Fix was manipulated to that Plaintiff's detriment would sufficiently demonstrate injury in fact as to that Plaintiff. Defendants' argument based on injury in fact, like their argument based on plausibility, ultimately amounts to a demand for specifics that are not required, and that Plaintiffs could not be reasonably expected to know, at the pleading stage.
> Discovery may show that, for particular transactions, some Plaintiffs benefited instead of being harmed by the manipulation of the Fix, but "the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing." Ross v. Bank of America N.A., 524 F.3d 217, 222 (2d Cir.2008). The U.S. Complaint's plausible allegations about an overarching conspiracy among horizontal competitors to fix prices that resulted in Plaintiffs paying overcharges satisfy the injury-in-fact requirement at the pleading stage.

Id. at 595.

See also *In re London Silver Fixing, Ltd., Antitrust Litig*. No. 14-MD-2573 (VEC), 213 F.Supp.3d 530, 559-60, 2016 WL 5794777, at *7 (S.D.N.Y. Oct. 3, 2016) (rejecting argument that "buyers and sellers who traded at various times" lacked Article III standing because "there is no way to conclude that Plaintiffs sustained any loss as a result of Defendants'" manipulation).

Moreover, alleging each losing trade is not required for establishing standing and the Court will not second-guess the alleged causation at the pleadings stage:

> Defendants' various arguments that a causal nexus between the alleged manipulation and each of plaintiffs' specific transactions is implausible fail as well. As an initial matter, the standard for Article III standing is not whether such the alleged injury is plausibly fairly traceable, but, rather, whether the injury is possibly fairly traceable. Moreover, the Court declines at this early stage of litigation to make assumptions about how enduring or short-lived the effect of the alleged misconduct might have been on a given BBSW-Based Derivative. Finally, the dates identified in the amended complaint in any event "do not purport to be the universe of defendants' communications and misconduct" or of plaintiffs' transactions in BBSW-Based Derivatives.
> In John v. Whole Foods Market Group, Inc., the Second Circuit concluded that the plaintiff, a regular purchaser of certain items from Whole Foods Market, had Article III standing to sue Whole Foods in light of a report that Whole Foods had "systematically" and "routinely" overcharged for those products during the general period in which the plaintiff had made his purchases. Although Whole Foods does not directly control, it nonetheless weighs in favor of plaintiffs, who have asserted here that defendants engaged in systematic manipulation of BBSW and that the trades alleged in the amended complaint are only some examples of numerous transactions entered into by plaintiffs.

*Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 159 (S.D.N.Y. Nov 26, 2018).

Defendants' last resort argument that "the causal chain is too weak to support [Plaintiffs'] standing" due to the general susceptibility of the crypt market to manipulation is similarly laughable. *Wash. Envtl. Council v. Belton*, 732 F.3d 1131, 1142 (9th Cir. 2013) that Defendants cite is simply inapplicable here as the causal chain alleged in the TAC does not involve many "third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries." TAC specifically alleges that Defendants themselves <u>directly</u> caused Plaintiffs' injuries, without any required action by third parties, which allegation must be taken as true, TAC ¶¶ 5-11, 354-363, 376-381, 402-406. Moreover, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, LLC v. American Media, Inc.*, 680 F. 3d 162, 185 (2d Cir. 2012). The Court cannot dismiss a complaint that alleges "plausible version of the events merely because the court finds a different version more plausible." Id.

> Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible. See generally Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("two or more witnesses" may tell mutually inconsistent but "coherent and facially plausible stor[ies]"). The choice between or among plausible inferences or scenarios is one for the factfinder, see id.…
> The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion. "[F]act-specific question[s] cannot be resolved on the pleadings." Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir.2001) ("Todd"). A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.
> Rather, in determining whether a complaint states a claim that is plausible, the court is required to proceed "on the assumption that all the [factual] allegations in the complaint are true." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (emphasis added). Even if their truth seems doubtful, "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," id. at 556, 127 S.Ct. 1955 (internal quotation marks omitted). Given that the plausibility requirement "does not impose a probability requirement at the pleading stage," the Twombly Court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Id. (internal quotation marks omitted).

Id.

Thus, for all the forgoing reasons, the TAC adequately alleges facts establishing both

constitutional and statutory standing and Defendants' laughable arguments must be rejected.

## Heightened Pleading Standard Under Rule 9(b)

Defendants falsely assert that all RICO predicate offenses and all causes of action under CEA must be plead pursuant to Rule 9(b) heightened pleading standard. Not only do Defendants fail to cite any authority for their expansive particularity requirement, but such a requirement is at odds with the principle that Article III requires only "general factual allegations of injury resulting from the defendant's conduct" at the pleading stage. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 ("[O]n a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.")

Regarding Defendants' false assertion (again without any case citation) on page 11 of the Opposition that Rule 9(b) applies to all of the claims asserted, it is inaccurate to say the least. Rule 9(b) only applies to CEA market manipulation claims under CEA Section 6(c)(1) and Regulation 180.1 (Count III), but does not apply to claims for violations of CEA Sections 9(a)(2), 6(c)(3) and Regulation 180.2 (Count IV). Rule 9(b) applicability to various CEA claims was explained in *Kraft Foods Grp., Inc.,* 153 F. Supp. 3d 996, 1007. (N.D. Ill. 2015). Fraud is not part of cause of action for market manipulation under CEA Sections 9(a)(2), 6(c)(3) and Regulation 180.2 (Count IV) and, therefore, no heightened pleading standard is applicable.

Moreover, even when Rule 9(b) applies to a cause of action for market manipulation under CEA Section 6(c)(1) and Regulation 180.1 (Count III), "[d]espite the generally rigid requirement that fraud be pleaded with particularity, the Second Circuit has recognized that "[a] claim of manipulation . . . can involve facts solely within the defendant's knowledge; therefore, at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 102 (2d Cir. 2007) (citing *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 223 F. Supp. 2d 474, 486 (S.D.N.Y. 2002)). As a result, the heightened pleading standard under 9(b) "is generally relaxed in the context of manipulation-based claims, where the complaint must simply specify `what manipulative acts were performed, which defendants performed them, when

the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'" *In re Silver*, 2016 WL 5794777, at *19 (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007), quoting *In re Nat. Gas Commodity Litig.*, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005)); see also *Sullivan v. Barclays*, 2017 WL 685570, at *30. TAC clearly meets this standard, see, for example, TAC ¶¶ 351, 354, 355, 357, 359, 361.

The heightened standard of Rule 9(b) also applies only to RICO claims alleging predicate acts involving fraud. See, e.g., *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991) (mail fraud); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (mail and wire fraud). Thus, the heightened pleading standard under Rule 9(b) is applicable only to RICO predicate offense under 18 U.S.C. § 1343. It does not apply to RICO predicate offenses under 18 U.S.C. § 1960(a), 18 U.S.C. § 1957(a), 18 U.S.C. § 1956(a), 18 U.S.C. § 1952 and 18 U.S.C. § 2314. Therefore, Defendants' arguments that the TAC fails to satisfy the heightened pleading standard under Rule 9(b) are also baseless.

But even with respect to the CEA market manipulation claims under CEA Section 6(c)(1) and Regulation 180.1 (Count III) and RICO predicate offense under 18 U.S.C. § 1343, TAC sufficiently alleges the requisite acts. In the context of RICO, Rule 9(b) requires that a plaintiff "detail[s] with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011) (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991))."

TAC easily satisfies this requirement, see, for example, TAC ¶¶ 8, 9, 351, 354, 355, 357, 359, 361, which contain various tables and diagrams providing excruciatingly detailed information of who, what, when, where, and how, with respect to each of the alleged overt acts by specific Defendants in violation of both RICO and CEA, which clearly satisfies the heightened pleading requirement of Fed. R. Civ. P. 9(b). Se also TAC ¶¶ 315-324, alleging with great specificity the elements of the wire fraud scheme perpetrated by Defendants.

### Defendants' Lumping Argument is Laughable

A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011).  TAC easily satisfies this requirement, see, for example, TAC ¶¶ 9, 243-246, 359, which describe with great particularity the role of each Defendant in the alleged scheme.  Therefore, Defendants' lumping argument is baseless.

### TAC Alleges Two RICO Predicate Offenses For Each RICO Defendant

Defendants further argue that TAC fails to allege that each Defendant engaged in at least two predicate acts prohibited by RICO.  This is false, see TAC ¶¶ 251, 351, 354, 355, 357, 359, 361, 377, 401, 404.  Therefore, this argument is also laughable.

### CONCLUSION

Accordingly, for all the foregoing reasons, the TAC would clearly survive the Motion to Dismiss that Defendants filed and the proposed amendment is not futile.  Moreover:

1.    TAC ¶¶ 5-11, 354-363, 376-381, 402-406 make causal connection between Defendants' conduct in violation of RICO and CEA and specific Plaintiffs' injuries sustained on specified domestic exchanges crystal clear.  The same paragraphs as well as TAC ¶¶ 229-237 clearly allege plausible facts establishing that Plaintiffs suffered an "injury in fact" by reason of Defendants' conduct.

2.    Tables in TAC ¶¶ 354-355 and diagram in TAC ¶ 9 clearly show, in great detail, exactly how Plaintiffs' injuries were caused by specific RICO and CEA overt acts perpetrated by specific Defendants.

3.    Tables in TAC ¶¶ 351, 357 clearly show specific dates and times when Defendants engaged in the alleged overt acts in violation of both RICO and CEA.

4.    TAC ¶¶ 229-237 specifically allege that Plaintiffs traded XBTUSD Perpetual Swap on BitMEX and Kraken, which meets the definition of "swap" under 7 U.S.C. § 1a(47)(a)(iv) and, therefore, is covered by the CEA private right of action under 7 USC § 25(a)(1)(D).

5. TAC ¶¶ 9, 354, 355 contain tables that clearly allege the exact place where each Defendants' overt act in violation of RICO and CEA took place, establishing that both RICO and CEA violations clearly occurred in the United States and refuting all RICO and CEA extraterritoriality arguments made by Defendants in their Motion to Dismiss.

6. TAC ¶ 465 clearly alleges a pre-existing relationship between Plaintiffs and Defendants that gives a rise to a duty of Defendants to Plaintiffs BMA and Kolchin to maintain a functional cryptocurrency derivatives marketplace. Therefore, the negligence claim (COUNT VII) will clearly survive Defendants' attack.

7. With respect to Defendants' argument with respect to statutory language "on or subject to the rules of any registered entity," this requirement applies only to contracts for "future delivery" and not to "contract[s] of sale of any commodity in interstate commerce" or XBTUSD and ETHUSD "swaps" that Plaintiffs traded. This is especially clear from reading 7 U.S. Code § 13 which states: "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or of any swap…" See also *Commodity Futures Trading Com'n v. McDonnell*, 287 F.Supp.3d 213, 228 (E.D.N.Y. 2018) (which did not apply "registered entity" requirement to the "contract[s] of sale of any commodity in interstate commerce" under the same 7 U.S. Code § 9). Thus, XBTUSD and ETHUSD "swaps" traded by Plaitniffs are not subject to the registered entity requirement. Thus, Defendants' argument is meritless and must be rejected.

Thus, given the Ninth Circuit's clear direction and Rule 15(a)'s mandate that leave to amend be freely given, Plaintiffs believe that in view of clearly baseless arguments that Defendants made in their Opposition, the Court should reject them all and grant a leave to file the attached Third Amended Complaint without conducting a hearing in order to advance prosecution of this case. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In addition, Defendants should be precluded from raising the same baseless arguments that have been rejected by the Court in their future motion to dismiss.

Dated:  October 24, 2020

Respectfully submitted,

By:   /s/ Pavel I. Pogodin
         Pavel I. Pogodin

CONSENSUS LAW
Pavel I. Pogodin, Ph.D., Esq.
5245 Ave Isla Verde, Suite 302
Carolina, PR 00979
United States of America
Email: pp@consensuslaw.io
Attorneys for Plaintiff BMA LLC