# EXHIBIT F

1  J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
2  Andrew Levine, Esq. (SBN: 278426)
      levine@braunhagey.com
3  BRAUNHAGEY & BORDEN LLP
   351 California Street, Tenth Floor
4  San Francisco, CA 94104
   Telephone:  (415) 599-0210
5  Facsimile:  (415) 599-0210

6  Douglas Curran, Esq. (*pro hac vice*)
      curran@braunhagey.com
7  BRAUNHAGEY & BORDEN LLP
   7 Time Square, Twenty-Seventh Floor
8  New York, NY 10036
   Telephone:  (646) 829-9403
9  Facsimile:  (646) 829-9403

10 ATTORNEYS FOR PLAINTIFFS
   FRANK AMATO, RGB COIN LTD.,
11 and ELFIO GUIDO CAPONE on behalf
   of the G AND M CAPONE TRUST

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**10/23/2020**
**Clerk of the Court**
BY: YOLANDA TABO-RAMIREZ
Deputy Clerk

12

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

13

14   ### COUNTY OF SAN FRANCISCO

15

16  FRANK AMATO, RGB COIN LTD.,

17  and ELFIO GUIDO CAPONE on behalf
    of the G AND M CAPONE TRUST,

18      Plaintiffs,

19          v.

20  HDR GLOBAL TRADING LIMITED, d/b/a
    BITMEX; ARTHUR HAYES; ABS
21  GLOBAL TRADING LIMITED; and DOES
    1-10,

22

23      Defendants.

| |
|---|
| Case No: CGC-19-581267 |
| **DECLARATION OF PLAINTIFFS' INDUSTRY EXPERT TODD ANTONELLI IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER** |
| **Hearing** |
| **Date:**  Monday, October 26, 2020 |
| **Time:**  9:15am |
| **Dept.:** 304 |
| **Judge:** The Hon. Anne-Christine Massullo |
| **Complaint filed:** Dec. 4, 2019 |
| **FAC filed:**  April 27, 2020 |
| **SAC filed:**  August 18, 2020 |
| **Trial Date:** None Set |
| **REDACTED** |

24

25

26

27

28

Case No. CGC-19-581267

DECL. OF TODD ANTONELLI ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH
ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER

I, Todd Antonelli, declare:

1.      I make this declaration based on personal knowledge.  If called as a witness, I could and would testify competently to the facts stated in this Declaration.

2.      I am a Managing Director at Berkeley Research Group in Chicago and serve as a leading financial and strategic advisor to companies in all stages of growth, from venture startups to Global 100 publicly traded companies, including well-known businesses such as Intel, HP, Goldman Sachs, ArcelorMittal, Caterpillar, Stanley Black & Decker, Blackstone, Agilent, Allstate, State Farm, and Starbucks.  A substantial part of my work involves analyzing and advising such clients on all stages of financings, acquisitions and investment, including venture and seed investment and the use of Simple Agreements for Future Equity ("SAFE"), such as those at issue in this case.  I hold an M.B.A. in Finance from New York University and routinely advise clients regarding venture investing, startups, mergers and acquisition, divestitures, IPOs, spin-outs, going private for acquisitive companies, and everything in between.  My curriculum vitae is attached as **Exhibit 1.**

### A.      Summary of Opinions

3.      I have been asked by Plaintiffs Frank Amato and RGB Coin Ltd. (together, "Amato"), and Elfio Guido Capone on behalf of the G and M Capone Trust ("Capone") (collectively, "Plaintiffs") to provide opinions on (1) whether Amato's and Capone's SAFEs in HDR Global Trading Limited ("HDR") were triggered by HDR's fundraising activities in 2015; and (2) if so, the total amount of dividends that Amato and Capone should have received through their equity rights.

4.      As detailed below, the SAFEs entered by Amato and Capone were triggered upon HDR's ███████████████████████████████████ with venture capital investor, SOSV.  ████████████████████████████████████████████████
███████████████████████████ [1] Amato should have received ██ shares (representing **0.50% of HDR**) and Capone should have received ██ shares (representing **0.41%**

---

[1] On the same date, ████████████████████████████████████████████

1  **of HDR**).  Thereafter, Amato and Capone were entitled to participate in dividends distributed to

2  shareholders of the company.

3       5.     ████████████   ████████   ████████

4  Of that amount, Amato should have received ██████   and Capone should have received

5  ████.  The table below summarizes the key inputs and results of my analysis; for clarity, I

6  present only the shareholders required to conduct my analysis.

| Shareholder | Ownership Percentage | Shares | Dividends |
|---|---|---|---|
| HDR Founders | ████ | ███ | ████ |
| SOSV | ████ | ███ | ████ |
| Amato | 0.50% | ██ | ████ |
| Capone | 0.41% | ██ | ████ |

12      6.     I understand that Plaintiffs requested from Defendants a schedule or summary of all

13  distributions, dividends or otherwise, that HDR has made to its shareholders from June 2015 to the

14  present.  I further understand that Defendants have not provided this information to Plaintiffs.

15  Accordingly, my opinions and analysis are based solely on the evidence produced thus far in the

16  case, which likely understates the amount of money owed to Plaintiffs.

17      7.     I accordingly reserve the right to supplement and/or amend my opinions and

18  analysis in the event that Defendants produce additional relevant documents or information.

19      **B.     Material Reviewed**

20      8.     I have been provided with the evidence identified in **Appendix 1** relating to

21  Plaintiffs' SAFE investments, including without limitation:  (a) each SAFE instrument;

22  (b) investment transactions entered by SOSV; (c) business records of SOSV reflecting the

23  accounting and receipt of dividends from HDR; (d) correspondence regarding SOSV's investments

24  and dividends; and (e) the pleadings in this matter.  These materials are the same type of business

25  records I routinely obtain, review, and rely upon in my professional work as a strategic advisor to

26  business and investors.

Case No. CGC-19-581267

DECL. OF TODD ANTONELLI ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH
ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER

## C.     Analysis

9.     The Amato and Capone SAFEs are among the more straightforward SAFEs that I have reviewed and advised on.  Below I describe the features of each SAFE, then discuss the SOSV triggering event, and finally provide the mathematical computation showing the amount of dividends Plaintiffs are owed.

### 1.     Plaintiffs' SAFEs

10.     The Amato SAFE contains, in relevant part, a provision requiring HDR to automatically issue shares to Amato upon an "Equity Financing" event.  Upon that trigger, the SAFE uses a formula for calculating the number of shares to be issued, with a cap of "0.50% of [HDR's] issued and outstanding share capital on a fully-diluted and as converted basis":

---

1.  *Events*

(a)  **Equity Financing**. If there is an Equity Financing before the expiration or termination of this instrument, the Company will automatically issue to the Investor a number of shares of Safe Preferred Shares equal to the Purchase Amount divided by the Discount Price. In any event, the member of shares of Safe Preferred Shares issued to the Investor shall not exceed 0.50% of the Company's issued and outstanding share capital on a fully-diluted and as converted basis.

---

(**Amato Exhibit 1** § 1(a).)

11.     The Capone SAFE is nearly identical and contains a similar provision, but with the number of shares issued capped at "0.41% of [HDR's] issued and outstanding share capital on a fully-diluted and as converted basis."

---

1.  *Events*

(a)  **Equity Financing**. If there is an Equity Financing before the expiration or termination of this instrument, the Company will automatically issue to the Investor a number of shares of Safe Preferred Shares equal to the Purchase Amount divided by the Discount Price. In any event, the member of shares of Safe Preferred Shares issued to the Investor shall not exceed 0.41% of the Company's issued and outstanding share capital on a fully-diluted and as converted basis.

---

(**Capone Exhibit 1** § 1(a).)

12.     Both SAFEs define an "Equity Financing" as follows:

3

"**Equity Financing**" means a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Preferred Shares at a fixed pre-money valuation.

(**Amato Exhibit 1** at 3; **Capone Exhibit 1** at 3.)

13.    The SAFEs do not define the term "Preferred Shares."  (*See generally*, **Amato Exhibit 1; Capone Exhibit 1**.)

14.    Based on my experience, the correct interpretation of these provisions is that Plaintiffs' equity rights would trigger once three conditions were satisfied: (1) there is a "bona fide transaction or series of transactions with the principal purpose of raising capital"; (2) the transaction or series of transactions are transactions "pursuant to which [HDR] issues and sells Preferred Shares"; and (3) HDR sells the shares "at a fixed pre-money valuation."

   **2.    SOSV's ███████████████    Triggered the SAFEs**

15.    On ██████████████████████████ On its face, the █████████ is a bona fide transaction with the principal purpose of raising capital. █████████ ████████████████████████ SOSV's Chinaccelerator Program.[2]  (*See* **Exhibit 2** at SOSV - 293.)  Accelerator programs, such as SOSV's Chinaccelerator Program, enable startup companies to compete with one another for funding from venture capital investors such as SOSV, *i.e.*, they are competitions through which startup companies raise capital.[3]  Thus, the ████████, under which HDR (as a participant in Chinaccelerator) ██████████ ███████████████████, is a bona fide transaction with the principal purpose of raising capital.  (*See id*. § 1(a).)

16.    **The** ████████████████████    The ███████████████ ██████████████████████ Although the ████████████ █████████████████████████████ ███████████████████████

---

[2] In fact, Chinaccelerator touts its investment in HDR and BitMEX to attract investors for its funds.  For instance, it states that it "invested in BitMEX through Batch 8 which later became a Fintech unicorn."  (*See* https://chinaccelerator.com/10th-anniversary/.)

[3] For instance, Chinaccelerator markets itself to startups by advertising that it offers a "$150,000 Investment" of which "US$55,000 is cash investment."  (*See* https://chinaccelera1tor.com/offerings/.)

17. *First,* ███████████████████████████
████████████████████████████████████████
████████████ (*See id.* § 2.)  In my experience, ██████████
████████████████

18. *Second,* █████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██ (*See id.* § 6.)  In my experience, ████████████████████
██

19. *Third,* █████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████ (*See id.* § 8.)  By
its own terms, ████████████████████████████████
████████████████████ (*Id.*)

20. In my experience, ██████████████████████████
████████████████████████████████████████████
████████ In my opinion, ████████████████████████
████████████████████████████████████████
████████████████████████████████████████
under a reasonable and commercially standard interpretation of that term as used in SAFEs.

21. █████████████████████████████████████ Pursuant to the ████
████████████████████████████████████████
████████████████████████████████ (**Exhibit 2** § 1(a).)  This represents a

DECL. OF TODD ANTONELLI ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH
ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER



1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3   22.   Therefore, ████████████████████████████████████████████

4 ████ an "Equity Financing" event under Plaintiffs' SAFEs, which triggered their equity rights.

**3.   Computation of Plaintiffs' Triggered Shares**

23.   Amato and Capone invested amounts into HDR ($30,000 and $25,000, respectively) █████████████████████████████████████████ (*Compare* **Amato Exhibit 1** at 1 *and* **Capone Exhibit 1** at 1 *with* **Exhibit 2** § 1(a).)  The Amato SAFE, however, limited the number of shares HDR would issue to Amato to "0.50% of the Company's issued and outstanding share capital on a fully-diluted and as converted basis."  (**Amato Exhibit 1** § 1(a).)  The Capone SAFE, likewise limited the number of shares HDR would issue to Capone to "0.41% of the Company's issued and outstanding share capital on a fully-diluted and as converted basis." (**Capone Exhibit 1** § 1(a).)

24.   The ██████████████████████████████, when Amato and Capone invested in HDR, ████████████████████████████████████ (**Exhibit 3** at 1.)  Therefore, the number of shares HDR should have issued to Amato and Capone is a straightforward calculation based on the caps in their respective SAFEs.  Amato's right to 0.50% of HDR's issued and outstanding share capital on a fully diluted and as converted basis equates to ████ shares.  Capone's right to 0.41% of HDR's issued and outstanding share capital on a fully diluted and as converted basis equates to ████ shares.

25.   In my opinion, it is unusual and contrary to industry practice for HDR to treat Amato's and Capone's SAFEs as if they simply did not exist.  Amato's and Capone's equity rights do not appear to have been included ████████████████████████████████, which is contrary to industry practice, *even if the SAFEs had not been triggered.*  (**Exhibit 3** at 22; **Exhibit 4** at SOSV - 135.)  In my long experience working with company capital tables, including with Y Combinator companies and advising on acquisitions involving outstanding SAFEs, I have never seen a company wholesale disregard and ignore its SAFE holders in this manner.  Such conduct not only



1   acts to deprive Plaintiffs of their investment status, but conceals their existence from other

2   investors and is a strong indication that HDR and Hayes intended to deprive Plaintiffs of their

3   equity, no matter what transpired.

4      26. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **(Exhibit 5**

6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7 ▓▓▓▓▓▓▓▓▓ **Exhibit 6** ▓▓▓▓▓▓▓▓▓

8 ▓▓▓▓▓▓▓▓▓▓▓▓▓

### 4.     Computation of Plaintiffs' Outstanding Dividends

27.     The computation of Plaintiffs' outstanding dividends is easily performed by using the methodology applied to ▓▓▓▓▓▓

28. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓ **(Exhibit 4** at SOSV - 135.) ▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓ (*Id.* at SOSV - 137; **Exhibit 7** ▓▓▓▓▓▓

▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

29.     Accordingly, by operation of simple math, Amato would have received ▓▓▓

▓▓▓▓▓▓, and Capone would have received ▓▓▓▓▓▓▓▓ .

30. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ . Thus, ▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ **(Exhibit 3** at 22.) Arthur Hayes and Samuel Reed, who I understand ▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓ (*Id.* at 1, 22.)

Ben Delo ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 22.)

Together the HDR founders ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓

Case No. CGC-19-581267

DECL. OF TODD ANTONELLI ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER

**D.**     **Conclusion**

31.     I have worked with companies and investors for almost my entire career and cannot ever recall a case such as this:  where seed investors were deprived of their investment notwithstanding such an obvious triggering event and such obvious success from the use of their capital.  Amato and Capone should receive their past-due dividends, along with all other incidents of share ownership.

32.     I reserve the right to supplement and amend my opinions, particularly as HDR reveals additional payments and distributions to which Plaintiffs are entitled a share.

8

Case No. CGC-19-581267

DECL. OF TODD ANTONELLI ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER

1        I declare under penalty of perjury under the laws of the State of California that the

2  foregoing matters are true and correct.

3

4  Dated:  October 23, 2020          By: _____

5                                    Todd Antonelli

Case No. CGC-19-581267

DECL. OF TODD ANTONELLI ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH
ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER

**<u>Appendix 1 – Materials Reviewed</u>**

- Second Amended Complaint ("SAC")

- Simple Agreement for Future Equity ("SAFE") executed by Plaintiff Amato and Defendant HDR on June 15, 2015 (the "Amato SAFE"), attached as **Exhibit 1 to the Declaration of Frank Amato**

- SAFE executed by Plaintiff Capone and Defendant HDR on July 16, 2015 (the "Capone SAFE"), attached as **Exhibit 1 to the Declaration of Guido Capone**

- ████████████████████████████████████ that was produced by a third party SOSV III LP ("SOSV") and is bates stamped SOSV - 293–300 (the ███████ attached as **Exhibit 2**

- ██████████████████████████ that was produced by SOSV and is bates stamped SOSV - 249–81 ███████ attached as **Exhibit 3**

- A document titled ████████████████████████████ ████████████ that was produced by a SOSV and is bates stamped SOSV - 134–39 ██████████████ attached as **Exhibit 4**

- E-mail sent by ████████████████████████ ████ that was produced by SOSV and is bates stamped SOSV - 2907–08, attached as **Exhibit 5**

- E-mail sent by ████████████████████████ ████ that was produced by SOSV and is bates stamped SOSV - 2884, attached as **Exhibit 6**

- E-mail sent by ████████████████████████ ████ that was produced by SOSV and is bates stamped SOSV - 1506–10, attached as **Exhibit 7**

DECL. OF TODD ANTONELLI ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A RIGHT TO ATTACH ORDER, WRIT OF ATTACHMENT, AND TEMPORARY PROTECTIVE ORDER

# EXHIBIT 1



**TODD ANTONELLI**
BERKELEY RESEARCH GROUP, LLC
70 West Madison, Suite 5000 | Chicago, IL 60602
Direct: 312.429.7913        Mobile: 312.860.7480
tantonelli@thinkbrg.com

## SUMMARY

Todd co-leads Berkeley Research Group's (BRG)'s strategy and operations practice. Todd has more than 30 years' experience selling, architecting, and implementing solutions to identified client needs. His passion is to facilitate leaders (boards, CEOs, leadership teams) to maintain their focus on the design and delivery of long – range corporate, business, and functional change management solutions, including:

- Strategy development, business model design, organization design, and implementation
- Long range market assessments, commercialization feasibility studies and resultant articulation of the total addressable market across a variety of industries for customer/ consumer products and services
- Strategic business combinations
- Sales management and sales force effectiveness
- Sales training, development, and delivery
- Performance measurement, balanced scorecard, and profitability measurement
- Large – scale technology implementations (SAP, Oracle, salesforce.com) for cloud and on-premise architected solutions
- Digital business transformation initiatives in secure environments
- Family office strategy, business, operating model, and organizational design, structure, and implementation
- Board and executive compensation advisory
- A variety of human capital and talent strategies, and total rewards programs to global 1000 companies

He has extensive knowledge and experience consulting with investors, boards and their top leadership teams on large scale change initiatives focused on strategic business combinations in over 70 assignments, including:

- Complex mergers, acquisitions, divestitures
- Joint ventures/strategic alliances
- Business restructurings
- Initial public offerings
- Privatizations

Todd has offered multifaceted advice and implementation expertise to companies in the following industries and locations:



- Manufacturing, automotive, high technology, aerospace and defense, consumer products/ packaged goods, insurance, hospitality, financial services, pharmaceutical, energy, and steel industries
- North America, Europe, and Asia

## EXPERIENCE

**Berkeley Research Group LLC**
***Managing Director Strategy and Human Capital Advisory Services***
***Present***

Berkeley Research Group, LLC is a leading global strategic advisory and expert consulting firm that provides independent expert testimony, litigation and regulatory support, authoritative studies, strategic advice, and document and data analytics to major law firms, Fortune 500 corporations, government agencies, private equity firms, and regulatory bodies around the world. As a Managing Director in and co-leader of the strategy practice, Todd provides boards, senior management and their extended teams strategic, financial, and innovative solutions to their firm's business challenges. Todd is also co-leader of the Board Advisory, Human Capital, and Digital practices where he advises boards and senior executives on the governance, incentives, and talent issues.

Representative clients and recent engagements include:
- Intel (long-range strategic plan development and implementation guidance)
- Flexera Software (long range strategic plan development and implementation guidance for new CEO)
- Lloyds Banking Group (cyber security academy design, training development, and delivery)
- Nokia (executive leadership training for strategic management and implementation to the team at the top)
- Here.com (2040 autonomous driving strategy development and implementation)
- Moffitt Cancer Research Center (optimization and commercialization of 50 clinical oncology treatment pathways)
- ArcelorMittal (U.S.A. and Canada long range strategic planning and implementation)
- New Era Cap Company (long range strategic planning and implementation for this 100-year-old company and 4th generation founder)
- Stanley Black & Decker (M&A due diligence support)
- Goldman Sachs (Global Atlantic Financial Group regulatory crises management for a failing outsourced technology solution)
- Blackstone (EQ Office (long-range strategic planning, leadership development, and brand strategy implementation for the new CEO and her leadership team)
- ReVantage Shared Business Services Center (Cultural foundation workshop for this newly created shared service center Blackstone's U.S. commercial real estate businesses)
- Pacific Market International (long range strategic planning and implementation for chairman and founder in transition to a new CEO and executive leadership team)
- Starbucks (strategic planning and advisory for joint venture)
- OFD Foods (long range strategic planning and execution)
- Oracle (sales force incentive compensation review)
- Zix (cybersecurity acquisition of AppRiver and long-range strategy and execution)
- Variety of startup companies providing strategic/ financial and capital raising guidance.



**Antonelli LLC, Hinsdale, IL**
*President*
*2010 to 2013*

Formed in 2003, Antonelli LLC was a strategy, leadership, and organizational business advisory firm. They primarily assist clients with accelerating decision – making processes and with unlocking complex business combination or restructuring opportunities. In January 2010, Todd resumed leadership of the day-to-day execution on all sales and services. Through a rapid facilitation approach, Todd provided senior management and their extended teams strategic and innovative solutions to his clients' business challenges. His clients were located in North America, Europe. and Asia. Clients included a variety of leading private equity firms, a global steel company, a global pharmaceutical firm, a software company, a global health insurance company, a US property, casualty and life insurance firm, two multinational technology companies, and two nonprofit health systems. Representative clients included: Wynnchurch, J.F. Lehman, ArcelorMittal (Mexico/ Brazil, CEO Mexico and CEO Long Carbon Americas), Astellas Pharma, Cigna, Applied Materials, HP, Agilent, Marathon Pharma, CDH Delnor, Nalco/Ecolab, Fujikura Ltd. Japan, Molex, Allstate, Flexera Software, Allstate, and State Farm.

**CSC, Oakbrook Terrace, IL,**
*Partner*
*May 2008 to January 2010*

CSC is a business and information technology outsourcing solutions firm. As a partner in the strategic services group, Todd led the management consulting practice in the Chicago Region and was a senior leader in the North America merger, acquisition, and divestiture, IT strategy services, and sales effectiveness teams. Representative clients included: Nalco, Grant Thornton, J.F. Lehman, Ashland Chemical (Drew Marine), ITT, Motorola, and the Chicago Tribune.

**Mercer, Chicago**
*Principal*
*May 2006 to May 2008*

Mercer is a human resources advisory firm. As a client manager and principal in the human resources strategy group, Todd was responsible for selling and delivering human resources strategy work. Given his background upon arriving at Mercer, Todd led large enterprise-wide Merger, Acquisition, and Divestiture engagements. Clients included: PepsiAmericas expansion (central, eastern Europe and the Balkans), ArcelorMittal (acquisition integration of largest state-owned steel company in Mexico and Lat Am HQ transition to Mexico City), Hyatt (global general manager pay program review), Hilton, Astellas Pharma (interim leader human resources post-merger), Mercer (Seibel Global implementation), Menasha, and Children's Hospital of Minnesota.



**SolomonEdwardsGroup LLC, Chicago**
*Managing Director*
*November 2005 to May 2006*

SolomonEdwardsGroup is a CFO Services Firm solving the non-attest needs of today's CFO organizations, and their professionals. Todd led the startup of the Chicago office; selected/ designed the location, recruited key talent, and led the marketing, sales and delivery work for a team of 20 professionals.

**Antonelli LLC, Hinsdale, IL**
*President*
*March 2003 to November 2005*

Representative clients included: Lawson Software, Agilent Technologies, The Coca Cola Company, Colgate (SAP and Finance Shared Service Center), and Mercer (Seibel global implementation).

**Huron Consulting Group, Chicago**
*Managing Director*
*March 2002 to March 2003*

As one of 35 founding managing directors, Todd led multiple (bankruptcy, restructuring and turnaround strategy) projects in this $200 million revenue start-up business that purchased the litigation support, corporate restructuring, higher education, and healthcare consulting businesses from Arthur Andersen during its wind down. Todd worked with fellow managing directors to develop the three-year strategic plan to go public. Today Huron successfully trades at over $1 billion in market capitalization.

**Andersen Business Consulting, Chicago**
*Principal and Leader of Change Management and Merger Services Teams*
*December 1997 to March 2002*

- Led this $30 billion retail company's senior leadership team through a yearlong restructuring of its corporate office resulting in $200 million plus cumulative annual savings from the realignment of CRM, marketing and IT services areas. **SEARS**
- Led the CFO and a joint senior management/ consultant team through a yearlong initiative to prepare and take this tier three global application developer through a successful IPO. **Lawson Software**
- Led the general manager of this multibillion-dollar high tech spinout to create a billion-dollar life science business and restructure its multibillion-dollar petrochemical test and measurement business. **Agilent**



- Led the Chairman, senior team and their direct reports through pre-close and post-close activities necessary to implement a merger of equals (merger of #2 and #4 suppliers). Including: identification of critical success factors, redesign of business operating model and strategies (sales, marketing, operations and administration), reconfiguration of senior management team, including roles and responsibilities. Synergies achieved within 90 days. **Asten Johnson**

- Led a newly formed 19-member senior team through the development of their merger strategy map to successfully grow from $2 billion to $4 billion in three years. Results included formulating global strategies in all divisions of this decentralized company of ten operating entities, development of an approach to determine optimal number and match of strategic acquisitions and partnerships. **Amsted Industries**

- Led the president and his senior team of a newly formed, joint venture, global food business through the articulation and development of its strategy, short-term and long-term business plans and detailed implementation plans. Led the new Board through the development of a Governance Charter. Facilitated quarterly board meetings. **Altus Food Company (Novartis/ PepsiCo (Quaker))**

- Led the Chairman and his senior team through the development and implementation of their corporate strategy map for a global mid-tech company. Results include a spinout and sale of the semi-conductor business, reformulation of the corporate strategy, turnaround of the automotive business, management buy-out from the public shareholders, worldwide organizational redesign, executive pay and performance management and measurement process and system to implement the newly redesigned strategy. **Cherry Corporation.**

- Led the Chairman and his senior team through the strategic and operational integration of a $3.5 billion post-combination PepsiCo anchor bottler. **PepsiAmericas**

- Led the Chairman and his senior team through restructuring of their $3.5 billion revenue, global transportation company. Growing rapidly through mergers and acquisitions of related businesses, this effort resulted in the appropriate governance model and new roles, responsibilities, and reporting relationships for the newly acquired companies.

- Led the Board and the senior team of a Hungary-based electric utility through a privatization process and the build of a customer facing organization to prepare for free market competition post privatization. **Edasz**

- Led the senior management team and a team of partners through the visioning, design and outsourcing of a Big 3's finance services functions. **General Motors**

**Price Waterhouse Management Consulting, Chicago**

***Principal Consultant***

***September to December 1997***

Led the change management team for a SAP implementation at a multibillion-dollar waste management company.



**Ernst & Young, Chicago**
*Senior Manager*
*1993 to September 1997*

- Led the two general managers and a joint consultant / client team to restructure a $4 billion revenue (market leader) division of a Fortune 50 high technology organization. Work included strategy development, organizational design, organizational change, process design, and performance measurement tools / techniques, providing just-in-time support to management to make fast-paced decisions resulting in the implementation of new organizational and operating models. Result was improved profitable growth and time-to-market in key strategic areas such as Internet, Mass Storage, Electronic Commerce, UNIX / NT integration. **Evolved from SAP engagement and connected to worldwide procurement and supply chain. (Hewlett Packard).**

- Led a senior team through the growth, expansion and migration of a leading technology organization into three new geographic locations in support of their U.S. Campus Implementation Strategy. Including: developing and implementing the human resources strategy, communication strategy and plan, and organizational design and structure. **Oracle (Sun Microsystems).**

- Led a senior client/ consultant team through the change management and business process redesign portion of a global implementation of Oracle and a redesign of the global supply chain for this high tech $10 billion spinout from its parent company. **3M (Imation).**

- Led as part of the program management function the change management and packaged enabled reengineering portions of **multiple global SAP implementations.** (**UOP and The Coca Cola Company).**

- Led multiple executive pay, performance management and sales force effectiveness projects.

**Senior Consultant, Towers Perrin, Chicago, 1991, Sibson & Company, 1992 and Consultant, Frederic W. Cook & Co., Inc., New York City, 1989 to 1990**
Led and assisted a variety of board and executive pay and performance design and implementation engagements in a variety of industries and business situations.

**Arthur Andersen & Co., New York City**
*Senior Accountant*
*1983 -1988*

## EDUCATION

M.B.A. Finance, 1989                                New York University,
                                                   Leonard N. Stern School of Business
B.S. Industrial Engineering, 1983                  University of Illinois, Champaign

## BOARD MEMBERSHIPS

University of Illinois, College of Engineering Board/ Industrial and Systems Engineering Board

Little City Foundation, Board

# EXHIBIT 2

# LODGED CONDITIONALLY UNDER SEAL

# EXHIBIT 3

# LODGED CONDITIONALLY UNDER SEAL

# EXHIBIT 4

# LODGED CONDITIONALLY UNDER SEAL

# EXHIBIT 5

# LODGED CONDITIONALLY

# UNDER SEAL

# EXHIBIT 6

# LODGED CONDITIONALLY

# UNDER SEAL

# EXHIBIT 7

# LODGED CONDITIONALLY

# UNDER SEAL