1   Stephen D. Hibbard (State Bar No. 177865)
    sdhibbard@jonesday.com
2   Matthew J. Silveira (State Bar No. 264250)
    msilveira@jonesday.com
3   Dennis F. Murphy, Jr. (State Bar No. 301008)
    dennismurphy@jonesday.com
4   James M. Gross (Admitted *Pro Hac Vice*)
    jgross@jonesday.com
5   JONES DAY
    555 California Street, 26th Floor
6   San Francisco, CA  94104
    Telephone:   (415) 626-3939
7   Facsimile:    (415) 875-5700

8   Attorneys for Defendants
    HDR GLOBAL TRADING LIMITED and ABS
9   GLOBAL TRADING LIMITED

10  Peter I. Altman (State Bar No. 285292)
    paltman@akingump.com
11  Marshall L. Baker (State Bar No. 300987)
    mbaker@akingump.com
12  Jessica H. Ro (State Bar No. 329737)
    jro@akingump.com
13  AKIN GUMP STRAUSS HAUER & FELD LLP
    1999 Avenue of the Stars, Suite 600
14  Los Angeles, CA  90067-6022
    Telephone: (310) 229-1000
15
    Attorneys for Defendant
16  ARTHUR HAYES

    Edward H. Takashima (State Bar No. 270945)
    etakashima@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
    725 S. Figueroa Street
    31st Floor
    Los Angeles, CA  90017
    Telephone:   (213) 629-9040
    Facsimile:    (213) 629-9022

    Attorneys for Defendant
    BEN DELO

    Douglas K. Yatter (State Bar No. 236089)
    douglas.yatter@lw.com
    LATHAM & WATKINS, LLP
    885 Third Avenue
    New York, NY  10022-4834
    Telephone:  (212) 906-1200

    Matthew Rawlinson (State Bar No. 231890)
    matt.rawlinson@lw.com
    LATHAM & WATKINS, LLP
    140 Scott Drive
    Menlo Park, CA  94025
    Telephone:   (650) 328-4600

    Attorneys for Defendants
    SAMUEL REED, AGATA MARIA REED,
    BARBARA A. REED, TRACE REED,
    GRAPE PARK LLC, MARK SWEEP LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov, and Păun Gabriel-Razvan,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Grape Park LLC, Mark Sweep LLC, Unknown Exchange, Arthur Hayes, Ben Delo, Samuel Reed, Agata Maria Reed (A.K.A. Agata Maria Kasza), Barbara A. Reed, and Trace L. Reed,<br><br>Defendants. | Case No. 3:20-cv-03345-WHO<br><br>(Consolidated Case Nos. 3:20-cv-07140-WHO and 3:20-cv-08034-WHO)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Date:     February 3, 2021<br>Time:     2:00 p.m.<br>Ctrm:     2 – 17th Floor<br>Judge:    Honorable William H. Orrick |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................. 2

   A.    The Entire Complaint Must Be Dismissed Because the Allegations
Forming the Linchpin of Plaintiffs' Lawsuit Are Implausible................................ 2

      1.    Plaintiffs Do Not Satisfy Their Purported Test for "Information and
Belief" Pleading, Which Is Wrong in Any Event ....................................... 3

      2.    Nothing Identified by Plaintiffs Makes Their "Information and
Belief" Allegations Plausible .................................................................. 6

         (a)    Plaintiffs' Chart of "Factual Information Items" Is Entirely
Untethered From Their "Information and Belief"
Allegations ............................................................................ 7

         (b)    Plaintiffs' "Means, Motive, and Opportunity" Argument
Ignores Settled Case Law and Plaintiffs' Own Complaint .......... 10

   B.    Plaintiffs Lack Article III Standing to Pursue Their Claims................................. 13

   C.    Plaintiffs' Federal Claims Are Deficient in Multiple Additional Respects .......... 14

      1.    Plaintiffs Lack Statutory Standing to Assert Their Claims Under the
CEA or RICO ......................................................................................... 14

      2.    Plaintiffs Do Not State a Viable RICO Claim ........................................ 16

      3.    Plaintiffs Do Not State a Viable CEA Claim .......................................... 17

         (a)    Prima Facie Market Manipulation ................................................ 17

         (b)    Aiding and Abetting or Principal/Agent Liability ........................ 18

   D.    Plaintiffs' State Law Claims All Fail as a Matter of Law .................................... 18

III.  CONCLUSION ......................................................................................... 20

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

5

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995)....................................................................................................11

6

7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................................................14

8

9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................5

10

11

*Del Castillo v. Comm. Child Care Council of Santa Clary Cnty., Inc.*,
   No. 17-cv-07243, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019)........................................4

12

13

*Dennis v. JPMorgan Chase & Co.*,
   343 F. Supp. 3d 122 (S.D.N.Y. Nov 26, 2018)..................................................................15

14

*Harry v. Total Gas & Power N. Am., Inc.*,
   889 F.3d 104 (2d Cir. 2018)................................................................................................16

15

16

*In re Amaranth Nat. Gas Commodities Litig.*,
   612 F. Supp. 2d 376 (S.D.N.Y. 2009).................................................................................17

17

18

*In re Amaranth Nat. Gas Commodities Litig.*,
   730 F.3d 170 (2d Cir. 2013)................................................................................................18

19

20

*In re Century Aluminum Co. Secs. Litig.*,
   729 F.3d 1104 (9th Cir. 2013).............................................................................................13

21

22

*In re Cisco Sys. Inc. Sec. Litig.*,
   No. 11-civ-1568, 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) .........................................9

23

24

*In re Commodity Exch., Inc.*,
   213 F. Supp. 3d 631 (S.D.N.Y. 2016).................................................................................17

25

*In re Facebook, Inc. IPO Secs. & Deriv. Litig.*,
   986 F.Supp. 2d 428 (S.D.N.Y. 2013)..................................................................................19

26

27

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*,
   74 F. Supp. 3d 581 (S.D.N.Y. 2015)...................................................................................15

28

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   962 F. Supp. 2d 606 (S.D.N.Y. 2013)........................................................................15

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   935 F. Supp. 2d 666 (S.D.N.Y. 2013)........................................................................15

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
   213 F. Supp. 3d 530 (S.D.N.Y. 2016)........................................................................15

*J.C. v. Choice Hotels Int'l, Inc.*,
   No. 20-cv-00155, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) .........................................5, 6

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002)........................................................................10, 11

*Lytle v. Nutramax Labs., Inc.*,
   No. EDCV 19-835, 2019 WL 8060077 (C.D. Cal. Dec. 6, 2019). .........................................19

*McGovney v. Aerohive Networks, Inc.*,
   367 F. Supp. 3d 1038 (N.D. Cal. 2019) ........................................................................9

*Menzel v. Scholastic, Inc.*,
   No. 17-cv-05499, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018)........................................8

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) ........................................................................20

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015)........................................................................14, 15

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ........................................................................19

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017)........................................................................4, 5

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011)........................................................................19

*Sullivan v. Barclays PLC*,
   No. 13-CV-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)........................................15

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
   809 F.3d 365 (7th Cir. 2016)........................................................................15

*UAB "Planner5D" v. Facebook, Inc.*,
    No. 19-cv-03132, 2020 WL 4260733 (N.D. Cal. July 24, 2020)............................................5, 6

*White v. FedEx Corp.*,
    No. 04-cv-00099, 2006 WL 618591 (N.D. Cal. Mar. 13, 2006)............................................19

*Wool v. Tandem Computers Inc.*,
    818 F.2d 1433 (9th Cir. 1987)............................................15

**STATUTES**

18 U.S.C. § 1962............................................17

Cal. Bus. & Prof. Code § 17204 ............................................20

Cal. Pen. Code § 496............................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 7 ............................................19

Fed. R. Civ. P. 8 ............................................1, 6

Fed. R. Civ. P. 9 ............................................passim

Fed. R. Civ. P. 12 ............................................10, 14, 19

Fed. R. Evid. 404 ............................................8

N.D. Cal. Civ. R. 7-3............................................19

1    **I.    INTRODUCTION**

2        Plaintiffs' Opposition confirms that the Consolidated Complaint ("Complaint") is nothing

3    more than an impermissible exercise in speculation, filed by Plaintiffs in an effort to launch a

4    baseless fishing expedition.  Plaintiffs acknowledge that all of their claims hinge on the

5    plausibility of their allegations—made solely on "information and belief"—that one of the

6    Defendants executed trades on other cryptocurrency exchanges on the precise dates that Plaintiffs

7    claim they suffered bitcoin losses on BitMEX, and that those purported trades, as opposed to any

8    other factor, caused Plaintiffs' losses.  Those fundamental allegations, however, did not appear in

9    prior iterations of the operative complaint.  It was not until Defendants explained in their prior

10    motion to dismiss that Plaintiffs' then-operative complaint should be dismissed because it failed

11    to allege a connection between Plaintiffs' injuries, Defendants' purported conduct, and the United

12    States (ECF No. 42 at 15-20) that Plaintiffs shifted their theory of causation, now alleging solely

13    on "information and belief" that one of the Defendants—an individual Defendant who just so

14    happens to reside in the United States—made trades that caused their losses.

15        Defendants' motion to dismiss showed that Plaintiffs' newfound and naked "information

16    and belief" allegations fail under binding precedent and baseline pleading standards.  To proceed

17    on a complaint founded on "information and belief" allegations, Plaintiffs must allege the specific

18    facts underlying their "belief" and that belief must be plausible.  But here, the Complaint is

19    entirely devoid of *any* facts suggesting that the individual Defendant identified—or any other

20    Defendant—ever executed trades on other platforms, let alone trades large enough to impact the

21    price of cryptocurrency derivatives on BitMEX, or on the dates that Plaintiffs claim to have

22    suffered bitcoin losses.  Instead, Plaintiffs appear to be wielding the phrase "information and

23    belief" as a means simply to assert that Defendants caused their purported losses, all in an effort

24    to survive a motion to dismiss and increase the value of a potential settlement.  That is exactly

25    what Rule 8, let alone the heightened requirements of Rule 9(b) applicable here, prohibits.

26        Plaintiffs' Opposition confirms this fatal defect.  After paying lip service to the binding

27    precedent requiring them to plead specifically the basis for their "information and belief"

28    allegations, Plaintiffs contend that those requirements do not apply to them because whether one

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

of the Defendants made trades on a given date is information "peculiarly within the control" of Defendants. That is wrong on both the facts and the law. Not only do Plaintiffs' own pleadings reflect their ability to obtain trading data (which is both publicly available, *see infra* note 1, and otherwise possessed by third parties), but both Supreme Court and this Court's precedents also require that allegations (whether made on "information and belief" or otherwise) must be plausible. Here, Plaintiffs' Opposition establishes that Plaintiffs have *no* plausible basis for their specific allegations, and are instead blindly speculating as to what caused their losses. Indeed, while Plaintiffs purport to identify 50 "facts" supporting their information and belief allegations, not a single one provides any support for their assertion that a Defendant executed trades on specific dates to Plaintiffs' detriment. Because Plaintiffs have not alleged any facts tying their purported losses to any conduct by Defendants, all of Plaintiffs' claims fail.

Plaintiffs' speculation as to what caused their alleged losses is hardly the only flaw in their Complaint. As explained in the Opening Brief, each and every one of Plaintiffs' causes of action—brought under the Commodity Exchange Act ("CEA"), RICO, and California law—is independently deficient. Nothing cited by Plaintiffs suggests otherwise. This Court should dismiss the Complaint—the lead Plaintiff's fourth amendment—with prejudice.

## II.   ARGUMENT

### A.   The Entire Complaint Must Be Dismissed Because the Allegations Forming the Linchpin of Plaintiffs' Lawsuit Are Implausible.

Defendants showed that Plaintiffs' entire lawsuit rises and falls with Plaintiffs' allegations, made only on "information and belief," that one Defendant executed trades on other cryptocurrency platforms as part of an intricate market manipulation conspiracy on the exact dates that Plaintiffs suffered their losses. Opening Br. 7-10. That is because those purported trades form Plaintiffs' sole basis for alleging that Defendants caused their injuries—a required element for each of Plaintiffs' causes of action. Opening Br. 11-15 (Article III Standing), 17-18 (RICO), 18-19 (CEA), 29-30 (Negligence), 32 (Fraud), 32-33 (Conversion).

As Defendants explained, however, Plaintiffs' Complaint lacks any allegations whatsoever providing a basis for or making those "information and belief" allegations plausible.

Opening Br. 9-10.  To the contrary, the Complaint pleads facts *contradicting* their "information

and belief" allegations that Defendant Sam Reed executed any trades on the relevant dates to

Plaintiffs' detriment.  Among other things, the Complaint asserts that Nick Andrianov (a

Ukrainian national who lives and works outside the U.S.) and not Defendant Sam Reed (alleged

to be the "CTO of both Defendants HDR and ABS, responsible for supervising the software

development of the BitMEX platform") operated BitMEX's "own for-profit trading desk," and

that trades placed by other individuals or entities (again, not Defendant Sam Reed) on other

exchanges impacted the price of Plaintiffs' positions on the dates they allegedly lost bitcoin.

Opening Br. 10, 13-14.  To the extent Plaintiffs' Complaint shows anything, it is only that

Plaintiffs have *no* basis for their "information and belief" allegations that Defendant Reed or

anyone else executed trades that caused their losses, and instead simply offer speculation to plead

around the deficiencies identified in Defendants' first motion to dismiss.  *See* Opening Br. 7-15.

    In their Opposition, Plaintiffs concede that their entire lawsuit depends on the viability of

their allegations regarding one individual Defendant's purported trading activity.  *See* Opp. 4

("Specifically, if Defendant Reed did not execute a large market SELL order from helper account

on Kraken's thinly traded XBTUSD/BTC order book, the above sequence would not have taken

place and the Plaintiffs' long positions on the very liquid BitMEX exchange would not have been

liquidated.").  Plaintiffs also admit that they do not have any actual knowledge of any of the

trades they claim caused their losses, let alone that any Defendant executed them, and are instead

making all of those allegations solely on information and belief.  Opp. 5-20.  Plaintiffs

nonetheless contend that their "information and belief" allegations are sufficient here because

(1) the information regarding whether Defendants traded to Plaintiffs' detriment is "peculiarly

within the possession and control of the defendants" and (2) Plaintiffs have pleaded other facts

making those allegations plausible.  Neither assertion is correct.

## 1.    Plaintiffs Do Not Satisfy Their Purported Test for "Information and Belief" Pleading, Which Is Wrong in Any Event.

    Plaintiffs first contend that they are excused from offering any actual facts in support of

their naked assertion that Defendant Reed executed "large" trades on the dates that Plaintiffs

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

claim to have suffered losses, and that those trades—as opposed to trades made by others or any other market factor—caused Plaintiffs' losses because that information is "peculiarly within the possession and control of the defendants."  Opp. 5-6.

       That is factually false.  If Defendant Reed (or anyone else) executed a trade on a given date on Kraken or Bitstamp as Plaintiffs claim, those third-party exchanges—who are not named as defendants in this lawsuit—would possess the information regarding the specifics of those trades.  The vast majority of that information would also be publicly available.[1]  Indeed, Plaintiffs alleged the size and timing of trades they claim were executed by an unidentified "perpetrator or group of perpetrators" on Kraken and Bitstamp on May 17, 2019 and July 14, 2019—two dates that Plaintiffs claimed they sustained a loss on BitMEX—and the impact that those trades had on the price of cryptocurrency derivatives available on BitMEX.  *See* Opening Br. 14.  Yet, while Plaintiffs repeatedly assert that Defendant Reed executed "large" trades on Kraken that they claim ultimately resulted in the liquidation of their holdings on BitMEX, they provide no information regarding the specifics of those purported trades.  *Cf.* Compl. ¶ 254 (repetitively alleging "large" trades on third-party exchanges that "triggered liquidation of Plaintiff's … position" on BitMEX or Kraken).  Thus, far from being "peculiarly within the possession or control" of Defendants, Plaintiffs' own Complaint confirms that they could have tried to support their theory of causation with facts if such facts actually existed.  *See Del Castillo v. Comm. Child Care Council of Santa Clary Cnty., Inc.*, No. 17-cv-07243, 2019 WL 6841222, at *7 (N.D. Cal. Dec. 16, 2019) ("information and belief" allegations regarding "unreasonable compensation (e.g., market rates for comparable services)" not "peculiarly within the possession and control" of defendants when "Plaintiffs could have accessed such public information and alleged relevant facts accordingly").

       Plaintiffs are also wrong on the law.  Plaintiffs claim that, because the Ninth Circuit in *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017), used the word "or" when describing

---

[1] Kraken, for example, offers for download "a detailed record of every trade that happens on our markets, including the following information:  The exact date/time of each trade[;] The price at which each trade occurred[;] The amount of volume that was traded."  *See* https://support.kraken.com/hc/en-us/articles/360047543791-Downloadable-historical-market-data-time-and-sales- (last visited Jan. 20, 2021).  Bitstamp's trade data is also publicly available. *See, e.g.*, https://www.kaiko.com/collections/bitstamp (last visited Jan. 20, 2021).

1    the circumstances where "information and belief" pleading is permitted, all that is required for

2    such pleading is a showing that information is within the defendant's control. Opp. 5. To be

3    sure, there are circumstances where courts relax pleading requirements due to a plaintiff's lack of

4    access to information about a specific element of a claim, such as the defendant's state of mind.

5    That is what happened in each of the cases cited in the Opposition. *See Park*, 851 F.3d at 928-29

6    (allegation that defendant "colluded with others to arrange for the filing of criminal charges");

7    *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28,

8    2020) (allegation "that local hotel staff knew or should have known J.C. was a victim of sex

9    trafficking given the red flags that she exhibited"); *UAB "Planner5D" v. Facebook, Inc.*, No. 19-

10    cv-03132, 2020 WL 4260733, at *8 (N.D. Cal. July 24, 2020) (allegation that defendant "knew or

11    should have known that Princeton improperly acquired data files from" plaintiff).

12         None of those cases, however, holds that a plaintiff can predicate his *entire* lawsuit on

13    "information and belief" allegations absent facts making those allegations plausible. Indeed, in

14    both *JC Hotels* and *Planner 5D*, this Court permitted "information and belief" pleading only *after*

15    examining whether the complaint pled other facts making the plaintiff's belief plausible. *See JC

16    Hotels*, 2020 WL 6318707, at *6 (plaintiff "adequately explain[ed] the basis for her 'information

17    and belief' allegations" when she "point[ed] to the publicly-disclosed human trafficking policies

18    and trainings implemented by each of the defendants that make it plausible that local hotel staff,

19    pursuant to the guidance provided in such policies and trainings, reported to them incidents

20    involving" her); *Planner5D*, 2020 WL 42060733, at *8 (plaintiff "elaborated, to the extent that it

21    can, its allegation that Facebook knew or should have known that Princeton improperly acquired

22    data files from it," and otherwise "detail[ed] 'many close connections' between Facebook and

23    Princeton that make Facebook's participation plausible"); *see also Soo Park*, 851 F.3d at 929

24    (emphasizing "additional facts alleged by Park"). Indeed, that is what precedent requires. As the

25    Supreme Court explained in *Bell Atlantic Corp. v. Twombly* when evaluating an allegation on

26    "information and belief that [defendants] have entered into a contract, combination or conspiracy

27    to prevent competitive entry in their respective … markets," a plaintiff must allege "enough facts

28    to state a claim to relief that is plausible on its face." 550 U.S. 544, 551, 570 (2007).

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

Plaintiffs are therefore wrong when they claim that they can stand on "information and belief" allegations unaccompanied by other facts making those allegations "plausible" simply because the information is purportedly in the "possession or control of the defendants."  Indeed, the sheer volume of "information and belief" pleading here makes the basis for those allegations even more critical.  Far from alleging a single element like scienter on "information and belief" as in *Choice Hotels* and *Planner5D*, Plaintiffs allege *each and every* element of their claims (apart from their own alleged injuries) on "information and belief."  Specifically, Plaintiffs allege solely on "information and belief" that, on each date Plaintiffs claim losses:  (1) Defendant Reed made unspecified trades on BitMEX and other platforms (e.g., Kraken or Bitstamp) "to inject false information as to market forces of supply and demand into cryptocurrency markets and mislead traders to open unfavorable positions to be subsequently liquidated"; (2) Defendant Reed executed a different trade from a "helper account" on a platform other than BitMEX; (3) that trade was of sufficient size to move the market price of the underlying cryptocurrency; (4) other Defendants made "wire transmissions" that facilitated the trade; (5) the "helper account" trade on the other platform, as opposed to any other market factor, caused Plaintiffs' positions on BitMEX to be liquidated; and (6) other Defendants transferred the proceeds from a "winner account" that benefited from the price movement to Defendants' bank accounts.  *See* Compl. ¶ 382; *see also id.* ¶¶ 254, 383.  Indeed, virtually every step of the convoluted diagram Plaintiffs include in both the Complaint (¶¶ 9, 256) and their brief (Opp. 2) is alleged on information and belief.

By asking the Court to accept all of those allegations without any accompanying facts, Plaintiffs seek a rule permitting them to speculate blindly with layer upon layer of baseless allegations in the hope that they can force a settlement or see what sticks in expensive discovery.  That is not the law.  As the precedents cited above make clear, absent additional facts rendering all of Plaintiffs' "beliefs" plausible, those allegations fail under Rule 8, let alone Rule 9(b).  No such "additional facts" are present here, as Defendants next explain.

## 2. Nothing Identified by Plaintiffs Makes Their "Information and Belief" Allegations Plausible.

Apparently recognizing that they must anchor their scores of "information and belief"

allegations in some factual basis, Plaintiffs put forth a five-page, single-spaced chart of "50 specific factual information items contained in the [Complaint]" that Plaintiffs assert "provide a clear and overwhelming basis" for their information and belief pleadings.  Opp. 6-12.  They relatedly contend that their claims are "plausible because Defendants and only Defendants possessed [the] means, motive, and opportunity to manipulate the .BXBT index of BitMEX and cause Plaintiffs' Damages.'"  Opp. 15-18.  Even a cursory review of those purported "facts," however, reflects that Plaintiffs have *no* basis for asserting their "information and belief" allegations, let alone establishing that those allegations are plausible.

> **(a)   Plaintiffs' Chart of "Factual Information Items" Is Entirely Untethered From Their "Information and Belief" Allegations.**

First, not a single one of the "specific factual information items" cited by Plaintiffs supports a reasonable inference that Defendant Reed executed trades on the dates Plaintiffs claim they suffered losses, let alone that those purported trades caused Plaintiffs' losses.  Indeed, the vast majority of the "factual information" cited by Plaintiffs has nothing to do with alleged market manipulation at all.  Much of Plaintiffs' purported "factual information" consists of allegations regarding both Defendants' and Defendants' lawyers' purported conduct in *other*, unrelated lawsuits.[2]  In other words, Plaintiffs' primary basis for alleging that Defendants executed specific trades on other cryptocurrency platforms large enough to impact the leveraged positions allegedly held by Plaintiffs on BitMEX is that Defendants supposedly committed "bad acts" elsewhere.  No authority permits such a leap in logic.  Indeed, basic evidentiary and

---

[2] For instance, Plaintiffs claim that their "information and belief" allegations regarding Defendants' supposed trading on specific dates and its impact on Plaintiffs' holdings are supported by conclusory—and disputed—allegations that:  various Defendants made statements purportedly "showing brazen contempt for the rule of law" (No. 4); "publicly admitted to committing bank fraud in connection with a bitcoin transaction" (No. 6); went "on a lam from the FBI after being charged by DOJ" (No. 7); "defrauded early investors" (No. 8); are "serial offenders when it comes to disregard for the rule of law" (No. 9); "have been charged by DOJ with federal felony money laundering related offenses" (No. 10); "destroyed critical trading and user identity records" (No. 12); "falsified critical records" (No. 13); "committed perjury during [a] deposition before CFTC" (No. 15); "violated U.S. sanctions against Iran" (No. 16); "siphoned $440,000,000 out of Defendant HDR" (No. 19); let BitMEX be "used daily for money laundering on a massive scale by terrorists and other criminals from Russia, Iran, and elsewhere" (No. 28); and "made numerous material misrepresentations of jurisdictional facts to Judge Schulman of San Francisco Superior Court, further showing utter disregard for the rule of law" (No. 35).

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1   pleading principles preclude such an argument. *See* Fed. R. Evid. 404(a)(1) ("Evidence of a

2   person's character or character trait is not admissible to prove that on a particular occasion the

3   person acted in accordance with the character or trait."); *id.* 404(b)(1) ("Evidence of any other

4   crime, wrong, or act is not admissible to prove a person's character in order to show that on a

5   particular occasion the person acted in accordance with the character."); *Menzel v. Scholastic,*

6   *Inc.*, No. 17-cv-05499, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018) (rejecting

7   information-and-belief allegation that defendant violated license agreement when basis was that

8   defendant "has exceeded licenses given by *other* individuals or entities").

9          To the extent that Plaintiffs point to *any* allegations touching upon issues ostensibly

10   related to market manipulation, those allegations are themselves conclusory and/or made on

11   "information and belief," and do not otherwise provide any basis for Plaintiffs' contention that

12   Defendants executed market-moving trades on the specific dates coinciding with Plaintiffs'

13   losses.  For example, Plaintiffs assert that "[h]alf of BitMEX revenues comes from liquidations of

14   retail traders like Plaintiffs" (No. 2), "[m]anipulating using .BXBT index generates 8000% return

15   on investment for BitMEX" (No. 5), "Defendants completely deleted manipulator accounts with

16   all trading and identity records under the false pretense of the 'right to be forgotten'" (No. 14);

17   "Defendants deleted evidence of a manipulator account with over $120,000,000 profit just 1 hour

18   after it popped up soon after a market manipulation event" (No. 22); and the "BitMEX

19   leaderboard lists trading accounts with multimillion-dollar profit spikes perfect matching market

20   manipulator events" (No. 23).  But the paragraphs from the Complaint cited in support of each of

21   those statements—¶¶ 11-12, 228, 236, 275, 286, 385-90 respectively—are wholly conclusory (*see*

22   ¶¶ 12 and 275, accusing Defendants of violating federal statutes), duplicative of their implausible

23   "means, motives, and opportunity" allegations addressed below (¶ 228), or are themselves

24   prepared on information and belief (¶¶ 11, 236, 286, 385-90).  The same is true of the Exhibits

25   referenced in support of those statements (Exhibits 1, 2, and 3), which are stories found online

26   referencing BitMEX and speculating about the potential for cryptocurrency market manipulation,

27   generally.[3]  In any event, none of those materials provides a factual basis for Plaintiffs to allege

28   ────────────────────────

   [3] Many of Plaintiffs' other allegations similarly rely on speculation and generic allegations

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1    that any Defendant executed trades on any of the specific dates that Plaintiffs claim to have

2    suffered losses, let alone that those specific trades impacted the market to Plaintiffs' detriment.

3         Plaintiffs also claim to have an inside source—a "former high ranking employee of

4    Defendant HDR"—who has provided Plaintiffs "with substantial additional information relevant

5    to this case." Pogodin Decl. ¶ 5. As a threshold matter, new allegations proffered in opposition

6    to a motion to dismiss cannot salvage the operative complaint; rather, such allegations only bear

7    on whether leave to amend is warranted upon dismissal. Yet, as shown below, Plaintiffs' new

8    allegations do not even support amendment.

9         First, Plaintiffs do not even attempt to satisfy the standard for relying on confidential

10   witness statements, as Plaintiffs offer no facts about the alleged source's role or the time of their

11   employment, let alone "with sufficient particularity to support the probability that a person in the

12   position occupied by the source would possess the information alleged." *E.g.*, *McGovney v.*

13   *Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1053 (N.D. Cal. 2019) (internal quotation marks

14   omitted); *see also In re Cisco Sys. Inc. Sec. Litig.*, No. 11-civ-1568, 2013 WL 1402788, at *11-12

15   (N.D. Cal. Mar. 29, 2013) (discounting "highly general" statements lacking "any specific details"

16   of alleged events). Second, even setting that defect aside, the "new information" offered by the

17   purported confidential witness is nothing more than further irrelevant "bad character" evidence or

18   generalized allegations of market manipulation untethered from the dates Plaintiffs allegedly

19   suffered their losses. *See* Opp. 7-8 (Nos. 17-18, 49). Specifically, Plaintiffs claim that

20   "Defendants used anonymous 'burner' (e.g. gmail) email address to open trading accounts for

21

22   culled from these online stories (Nos. 27-32, 37-39), other commentators (No. 11, 33), tweets
     (No. 40-42), or third-party complaints (Nos. 12, 13, 25, 34, 36). In all instances, Plaintiffs have
23   no knowledge of the basis for the third party's allegations, and, as with the other allegations
     discussed above, none speaks to the specific trades that Plaintiffs claim caused their losses or
24   specifically address the timeframe in which those trades were allegedly executed. The latter point
     is also true of allegation Nos. 1, 20, 21, 23-26, 43-45, 47, 48, 50, which consist of conclusory and
25   speculative allegations about the motivations for index design, "access to information," general
     rules for trading on the BitMEX platform, BitMEX's leaderboard, purported manipulation in the
26   cryptocurrency space generally, BitMEX's maintenance of an internal trading desk, and server
     "freezes" that are not alleged to have coincided with Defendants' alleged manipulative trading.
27   And Plaintiffs' conclusory and "information and belief" allegations regarding Defendants' so-
     called "means, motive, and opportunity" to engage in market manipulation, Nos. 2, 3, 11, 20, 21,
28   33, 34, 46 fail for the reasons discussed below in Part II.A.2.b.

their own internal trading desk," (No. 17); "periodically deleted" said "burner" accounts (No. 18); and that two Defendants and a non-party "laughed and cheered when their victim retail traders with large positions were liquidated by them and their bitcoin misappropriated" (No. 49). Those allegations make no sense, as Plaintiffs expressly allege that in April 2018 (long before Plaintiffs claim to have suffered losses), BitMEX updated its Terms of Service to disclose to its users that "BitMEX has a for-profit trading business that, among other things, transacts in products traded on the BitMEX platform."[4] Compl. ¶ 218. Such allegations are also irrelevant to Plaintiffs' charge that their purported bitcoin losses on the specific dates they claim to have suffered losses resulted from Defendants' trades made on other platforms on those dates. And in all events, Plaintiffs do not and cannot allege that Defendants could have destroyed evidence on the other exchanges on which Defendants allegedly traded, thereby causing Plaintiffs' claimed losses.

### (b) Plaintiffs' "Means, Motive, and Opportunity" Argument Ignores Settled Case Law and Plaintiffs' Own Complaint.

Plaintiffs next contend that their allegations about Defendant Reed's trading activity, other Defendants' roles in facilitating those alleged trades, and those trades' purported impact on Plaintiffs' positions on BitMEX—again, each made solely on "information and belief"—are plausible because "only Defendants possessed [the] means, motive, and opportunity to manipulate the .BXBT index of BitMEX and cause Plaintiffs' damages." Opp. 15; *id.* at 18 (citing "cui bono fuisset"). Here again, Plaintiffs' argument cannot be squared with precedent or the Complaint.

*First*, Plaintiffs do not cite any case law holding that they can allege the entirety of Defendants' conduct on "information and belief" solely because they claim that Defendants had the "means, motive, and opportunity" to engage in that purported conduct. Nor could they, as courts have held in analogous contexts that "plaintiffs who plead the required state of mind in general terms of 'motive and opportunity'" fail to establish the requisite element of scienter such that "a Rule 12(b)(6) dismissal is proper." *E.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002). Indeed, the Ninth Circuit has recognized in the context of alleged securities

---

[4] That the allegations from Plaintiffs' so-called "insider" witness focus solely on the disclosure of BitMEX's "internal trading desk" strongly suggests that any knowledge such witness has pre-dates April 2018, well before any of Plaintiffs' alleged losses. Compl. ¶ 254.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1   fraud that "[i]f scienter could be pleaded merely by alleging that officers and directors possess

2   motive and opportunity to enhance a company's business prospects, 'virtually every company in

3   the United States that experiences a downturn in stock price could be forced to defend securities

4   actions.'"  *Id.* (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995)).

5          What Plaintiffs attempt here goes several steps further:  Plaintiffs argue that because they

6   claim to have alleged facts showing that Defendants had the "means, motive, and opportunity" to

7   profit from market manipulation on BitMEX, Plaintiffs are free not only to allege that Defendants

8   possessed the requisite state of mind for market manipulation, but can also claim solely on

9   "information and belief" that Defendants did, in fact, engage in that purported conduct on the

10  exact dates Plaintiffs suffered losses, not only on BitMEX but on other platforms, too.[5]  Nothing

11  in Ninth Circuit precedent or federal pleading requirements permits such brazen speculation.

12  Plaintiffs' circular pleading strategy assumes the very conclusions they are required to plead with

13  factual allegations—that is, Plaintiffs contend that their alleged losses were caused by

14  Defendant's alleged market manipulation because (a) Plaintiffs would not have sustained losses

15  on BitMEX absent market manipulation and (b) Defendants operate BitMEX.  But Plaintiffs fail

16  at the outset to plausibly allege that any loss was caused by market manipulation as opposed to

17  the normal operation of famously volatile cryptocurrency markets, let alone that Defendants

18  engaged in market manipulation.  Plaintiffs rely on "information and belief" not just to fill an

19  understandable gap in their theory (e.g., scienter), but for the entirety of that theory.

20         *Second*, Plaintiffs' allegation that "*only* Defendants" possessed the means, motive, and

21  opportunity to cause Plaintiffs' losses is implausible.  For instance, Plaintiffs claim that "*only*

22  Defendants were able to open sufficiently large ($100,000,000+) trading positions on BitMEX in

23  _____

24         [5] Plaintiff Dubinin, for example, allegedly sustained losses solely on Kraken.  Compl.
    ¶ 254.  Yet Plaintiffs allege that Defendants caused those purported losses in the same manner as

25  the other losses purportedly sustained on BitMEX despite the fact that Defendants are not
    alleged—even on information and belief—to have any special knowledge of or access to the

26  Kraken platform.  *Id.*; *see also id.* ¶ 383 (alleging that actions alleged in Paragraph 382 "were
    repeated by Defendants, almost exactly, during other Manipulation Times").  Having asserted

27  that, due to their role with BitMEX, only Defendants are able to manipulate the market to
    liquidate positions on that exchange, Plaintiffs' assertion that Defendants are able to manipulate

28  the market to liquidate positions on an exchange that Defendants have no involvement in
    operating lays bare that the entire Complaint is speculation.

order to capture the manipulation profits." Opp. 16. Putting aside that, under Plaintiffs' theory, Defendants opened "winner accounts" to profit from the liquidation of Plaintiffs' positions on both BitMEX and Kraken, the latter of which Defendants do not operate (Compl. ¶¶ 254, 382-83), Plaintiffs offer no reason for why this is true even as to BitMEX, particularly absent any allegations about the trading positions on the other side of their swaps. In fact, they expressly allege the opposite in the Complaint, claiming that "perpetrators … as well as cryptocurrency exchanges, such as BitMEX," stand to benefit from market manipulation. *Id.* ¶ 152; *see also id.* ¶ 161. Plaintiffs also contradict that allegation elsewhere when they allege that a third-party user by the name of "Quick-Grove-Mind" made over $120,000,000 in profit on the BitMEX platform. *See* Opening Br. 28-29 & n.18.[6] Plaintiffs also try to justify their pleading by referencing "the exceedingly precisely alleged manipulative acts by Defendants, including very specific wire transmissions alleged in CC ¶¶ 382, containing specific electronic orders and/or instructions, which Defendants *necessarily* transmitted between specific parties in order to perpetrate market manipulation on a daily basis, including the specific dates alleged in CC ¶ 372." Opp. 14. But those two paragraphs, each prepared wholly on "information and belief," reflect only that for Plaintiffs to prevail on their claims Defendants must "necessarily" have engaged in this conduct, not that there are any properly pleaded facts actually suggesting that Defendants did so.

Likewise, Plaintiffs point to their allegations that "Defendants opened and used 'helper' accounts on thinly traded Kraken, Coinbase Pro and Bitstamp to execute large market orders to cause artificial price moves on the .BXBT index … and harm Plaintiffs," Opp. 17, but those allegations (Paragraphs 9, 372-82) are themselves prepared on "information and belief." They are also contradicted by Plaintiffs' more detailed allegations that *other* unidentified parties executed trades on Kraken and Bitstamp which impacted the price of Plaintiffs' positions on BitMEX and Kraken on the precise dates that Plaintiffs sustained losses. Opening Br. 14. While Plaintiffs now claim that they were actually referring to Defendants when using the term "perpetrator," Opp. 19, that is disingenuous. Indeed, the Complaint alleges that on May 17, 2019 "one or more

---

[6] Further, the dates of Quick-Grove-Mind's alleged profits do not overlap with the dates of Plaintiffs' alleged losses due to manipulative trading. *Compare* Compl. ¶ 387-88, *with id.* ¶ 254.

perpetrators" executed a trade valued at $28 million on Bitstamp that "led to a liquidation of $250 million … long positions on the BitMEX derivatives exchange," while alleging that Defendant Reed only traded on Kraken, a *different* exchange, on that date. *Compare* Compl. ¶¶ 230-31, *with id.* ¶ 254. And Plaintiffs entirely ignore the ability of third parties with large cryptocurrency holdings to execute perfectly lawful trades impacting Plaintiffs' leveraged positions.

Simply put, the Opposition confirms that Plaintiffs still have no basis for their "information and belief" allegations that any Defendant traded cryptocurrency or cryptocurrency derivatives on other platforms on the dates Plaintiffs suffered losses, let alone that those trades caused Plaintiffs' losses. Because Plaintiffs concede that those allegations are the linchpin of all of their claims, this Court should grant Defendants' motion to dismiss in its entirety.

**B.      Plaintiffs Lack Article III Standing to Pursue Their Claims.**

While Plaintiffs' failure to allege any plausible facts establishing that Defendants engaged in *any* culpable conduct whatsoever dooms their entire complaint, Defendants showed that Plaintiffs' claims must be dismissed for lack of Article III standing for two other reasons.

*First*, Defendants established that even if Plaintiffs properly alleged facts suggesting that a Defendant traded on a different cryptocurrency exchange on the date that Plaintiffs suffered a loss, nothing in the Complaint makes it plausible that those trades, as opposed to any other market factor or third-party trades, caused Plaintiffs' losses. Opening Br. 11-15. Indeed, Defendants explained that Plaintiffs' allegations in the Complaint regarding trades executed by *other* nonparties makes Plaintiffs' claim that Defendants caused their losses *im*plausible. Opening Br. 14. Plaintiffs respond by claiming that the Complaint "specifically alleges that Defendants themselves *directly* caused Plaintiffs' injuries, without any required action by third parties, which allegation must be taken as true." Opp. 20. As already detailed above, however, those allegations are made solely on "information and belief" without any accompanying facts rendering them plausible. Plaintiffs likewise contend that when there "are two alternative explanations … both of which are plausible, plaintiff's complaint survives a motion to dismiss." *Id.* (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)). That argument assumes the question. Defendants' point is that Plaintiffs' Complaint does *not* satisfy baseline

1    plausibility requirements and instead, at most, sets forth a narrative of causation that is merely

2    theoretically possible (and Plaintiffs have not even done that, given their contradictory allegations

3    regarding third party trades).  That is the precise circumstance where the Ninth Circuit has held

4    that a plaintiff lacks Article III standing.  Opening Br. 11-15.

5        *Second*, Defendants argued that Plaintiff BMA failed to satisfy its burden of establishing

6    that it is seeking to vindicate its own rights, instead of those of its members.  Despite now having

7    filed five iterations of its complaint and two oppositions to Defendants' motions to dismiss, BMA

8    *still* has not provided any information permitting the Court to determine that BMA itself traded on

9    BitMEX.[7]  BMA's insistence that this Court simply take its word does not suffice.  *Id.* at 16-17.

10       **C.    Plaintiffs' Federal Claims Are Deficient in Multiple Additional Respects.**

11               **1.    Plaintiffs Lack Statutory Standing to Assert Their Claims Under the
                         CEA or RICO.**

12

13       While Plaintiffs' "information and belief" allegations that one of the Defendants traded to

14   Plaintiffs' detriment on specific dates fail under any pleading standard (*see supra* Part II.A), those

15   allegations certainly fail under the heightened Rule 9(b) pleading standards applicable to their

16   CEA and RICO claims.  Opening Br. 17-19.  Plaintiffs do not dispute that Rule 9(b) applies to

17   their claims, or that they are attempting to satisfy that standard through "information and belief"

18   pleading.  Instead, they claim that Rule 9(b) is "relaxed" in cases involving market manipulation,

19   and that the Complaint "easily meets this *relaxed* Rule 9(b) standard" because it "clearly alleges

20   that Defendant Reed executed specific large market SELL orders on the Kraken exchange, with

21   maximum slippage, on a daily basis, including the specific exemplary dates alleged … causing

22   liquidations of Plaintiffs' long XBTUSD swap positions on BitMEX."  Opp. 23.

23       That argument is circular.  Even in cases where Rule 9(b)'s pleading requirements are

24   "relaxed"—and Defendants do not concede that is appropriate here—"'general allegations not

25   tied to the defendants or resting upon speculation are insufficient.'"  *ScripsAmerica, Inc. v.*

26   *Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1240 (C.D. Cal. 2015) (quoting *ATSI Commc'ns,*

27   ───────────────
             [7] Statements in Mr. Pogodin's declaration that he has on "numerous occasions" "offered
28   to provide information about all cryptocurrency trader members of Plaintiff BMA" do not relieve
     BMA of its burden of proof under Rule 12(b)(1), and are in any event materially misleading.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1    *Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007), a case relied upon by Plaintiffs, Opp.

2    23).  Rather, "the complaint must set forth '*what* manipulative acts were performed, which

3    defendants performed them [i.e., '*who*'], *when* the manipulative acts were performed, and *what*

4    effect the scheme had on the market for the securities at issue.'"  *Id.*  But here, the only

5    allegations that Plaintiffs contend satisfy even the "relaxed" 9(b) standard are the allegations

6    made solely on "information and belief."  That simply "won't do in a fraud case," as the case law

7    cited by Defendants' Opening Brief and reiterated above makes clear.  Opening Br. 8 (quoting

8    *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016)).[8]

9            The cases Plaintiffs cite to support their standing under the CEA do not help them either.

10   While the court in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 935 F. Supp. 2d

11   666, 718 (S.D.N.Y. 2013), "did not require plaintiffs to allege the specific days on which they

12   traded," that ruling was limited to the plaintiffs' "persistent suppression theory" of manipulation.

13   *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 621-22 (S.D.N.Y.

14   2013).  But where, as here, the plaintiffs alleged "trader-based" "episodic" manipulation—

15   meaning prices were only "artificial for certain discrete days"—the court required more detailed

16   allegations to make a plausible showing of actual damages based on alleged manipulation.  *Id.* at

17   620-22.[9]  Because Plaintiffs here rely solely on "information and belief" to try to connect their

18   losses to purported trades by Defendants, Plaintiffs do not adequately allege that they "traded (at

19   a detriment) in a contract the price of which was tied, via explicit agreement or other mutual

20   ───────────────

21          [8] Plaintiffs rely on *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439-40 (9th Cir.
     1987), a securities fraud case issued two decades before *Twombly*, to argue that "precise"
     allegations made on "information and belief" satisfy Rule 9(b).  But the "precision" present in
22   *Wool* concerned public misstatements based on SEC allegations regarding the same alleged fraud.
     Here, all of Plaintiffs' allegations are made out of whole cloth.

23          [9] *Sullivan v. Barclays PLC*, No. 13-CV-2811, 2017 WL 685570, at *31 (S.D.N.Y. Feb.
     21, 2017), where plaintiffs established CEA standing by alleging that they made trades during "a
24   years-long conspiracy to secretly manipulate the Euribor," is distinguishable on this same ground.
     While the defendants in *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 174 (S.D.N.Y.
25   Nov 26, 2018), and *In re London Silver Fixing, Ltd., Antitrust Litigation*, 213 F. Supp. 3d 530,
     559-60 (S.D.N.Y. 2016), unsuccessfully challenged the causal connections between their alleged
26   conduct and the plaintiffs' injuries, the plaintiffs there did not rely solely on "information and
     belief," nor did they allege manipulation by unknown third parties at the time they suffered their
27   injuries, as Plaintiffs do here.  Finally, *In re Foreign Exchange Benchmark Rates Antitrust
     Litigation*, 74 F. Supp. 3d 581, 595 (S.D.N.Y. 2015), is an antitrust case addressing constitutional
28   standing, not a CEA case subject to heightened pleading standards.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1  understanding, to the price of a contract that a defendant was plausibly manipulating." *Harry v.*

2  *Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 113 (2d Cir. 2018).

3  **2.      Plaintiffs Do Not State a Viable RICO Claim.**

4           In addition to lack of standing, Plaintiffs' RICO claims fail for two other reasons.  *First*,

5  Plaintiffs' inclusion of the Reed Family Members and LLCs in the purported "enterprise" dooms

6  all of their RICO claims, because the Complaint lacks any facts showing that those Defendants

7  shared a "common purpose" with the other Defendants.  Opening Br. 20-22.  And once those

8  Defendants are removed, the purported "enterprise" consists entirely of the corporate owners and

9  officers of BitMEX, a group which is not "distinct" from the purported enterprise.  *Id.* at 23-24.

10          Plaintiffs do not respond to the latter point, arguing only that all members of the purported

11  enterprise (including the Reed Family Members and LLCs) shared the purpose of "concealing

12  trading gains obtained through unlawful practices from regulatory and tax authorities."  Opp. 30.

13  But they offer no facts suggesting that the Reed Family Members and LLCs shared that purpose.

14  Indeed, apart from conclusory allegations, made on information and belief alone, that the Reed

15  Family Members "gave directions to other members," the only fact alleged in the Complaint

16  about these Defendants is that the Reed Family Members "are in possession of two real estate

17  properties" held by the LLCs.  Opening Br. 22 (citing Compl. ¶¶ 20, 380, 577); Compl. ¶¶ 265,

18  267, 273, 314, 380.  That is not enough to establish a "common purpose."  Opening Br. 21-22.

19          *Second*, Plaintiffs' RICO claims fail because the Complaint fails to allege a prima facie

20  wire fraud claim, and wire fraud is the only predicate act alleged by Plaintiffs to have caused their

21  purported losses.  Opening Br. 24-26.  Plaintiffs principally respond by claiming that their

22  "information and belief" allegations are sufficient to establish that Defendants engaged in a

23  "scheme to defraud," Opp. 32, but that argument fails for the reasons already detailed at length

24  above.  Plaintiffs also contend that even if their wire fraud claim fails, they have alleged other

25  "RICO predicate offenses."  Opp. 33-34.  That argument ignores the case law cited by Defendants

26  holding that "[a]t least one of the defendant's predicate acts must have been the proximate cause

27  of the plaintiff's injuries."  Opening Br. 24 (collecting cases).  To the extent Plaintiffs attempt to

28  tie their losses to any predicate offenses other than Defendants' purported wire fraud, they do so

based on the "*same* specific acts" as their wire fraud claims, Opp. 33, all of which are alleged solely on "information and belief."  Thus, all of Plaintiffs' RICO claims must be dismissed.[10]

### 3.        Plaintiffs Do Not State a Viable CEA Claim.

#### (a)        Prima Facie Market Manipulation

Even if Plaintiffs had standing to sue under the CEA, they do not state a prima facie claim for market manipulation because they fail to plausibly allege any of the requisite elements.

*First*, while Plaintiffs allege Defendants had the ability to manipulate the market because the BitMEX "Insurance Fund" is worth $681 million, Opp. 24, the Complaint acknowledges this fund is used "to ensure that BitMEX has enough cash on hand" for trades in which "the losses exceeded the collateral," Compl. ¶ 170.  Absent plausible allegations that Defendants traded using these funds, Plaintiffs cannot demonstrate Defendants' ability to manipulate the market based on this allegation.  *Second*, Plaintiffs do not plausibly allege an "artificial price existed."  Far from conceding that element, Defendants argued that Plaintiffs fail to adequately allege that their losses were caused by market manipulation "as opposed to any other market factor."  Opening Br. 2, 11, 13.  Plaintiffs simply ignore natural market forces—and the volatility of the cryptocurrency derivative markets, in particular—in alleging that any price resulting in a loss must be attributable to artificial market manipulation, while any price benefiting them properly reflects the market. *Third*, Plaintiffs do not plausibly allege causation for the reasons stated in Part II.A.  *Fourth*, Plaintiffs' conclusory statements about Defendants' "motive and opportunity" to manipulate the market do not plausibly allege specific intent to do so.  Opp. 25-26.  The CEA requires that plaintiffs allege "facts that 'give rise to a *strong inference* of scienter.'"  *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 668 (S.D.N.Y. 2016) (quotation omitted).  That means the allegations must "give rise to an inference of scienter *at least as strong as any competing inference*."  *In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 384 (S.D.N.Y. 2009) (emphasis added).  But here, Plaintiffs' alleged circumstantial evidence is equally consistent with natural market forces or manipulation by third parties.  Finally, Plaintiffs' "manipulative device" theory

---

[10] Plaintiffs falsely state that "Defendants do not even challenge allegations of … RICO conspiracy under 18 U.S.C. § 1962(d)," Opp. 29-30, ignoring page 26 of the Opening Brief.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1    fails for the same reasons and also because Plaintiffs cannot establish a "manipulative act" based

2    solely on "information and belief" as shown above.

3                    **(b)    Aiding and Abetting or Principal/Agent Liability**

4        Plaintiffs' aiding-and-abetting claim likewise fails.  To begin, Plaintiffs' assertion that

5    they have alleged "four types" of aiding-and-abetting claims is false.  Aside from conclusory

6    statements at the end of the Complaint, *see* Compl. ¶ 508, Plaintiffs allege no factual basis for

7    their assertion that Defendants aided and abetted any third party other than Quick-Grove-Mind.

8        And even those allegations do not support a plausible aiding-and-abetting claim.

9    Plaintiffs insist that Quick-Grove-Mind's large profits alone demonstrate that it was engaging in

10   market manipulation.  Opp. 28.  But that is not enough.  "[L]arge positions do not necessarily

11   imply manipulation.  A trader may indeed acquire a large position in order to manipulate prices.

12   But a trader may also acquire a large position in the belief that the price of the [commodity] will,

13   for reasons other than the trader's own activity, move in a favorable direction."  *In re Amaranth*

14   *Nat. Gas Commodities Litig.*, 730 F.3d 170, 184 (2d Cir. 2013).  That Quick-Grove-Mind

15   allegedly profited from a "large position" does not establish manipulation, let alone "that

16   [Defendants] actually knew of [Quick-Grove-Mind's] manipulative intent," or "that [they]

17   intended to assist in carrying it out," *id.*—all of which are required for an aiding-and-abetting

18   claim.  Moreover, Plaintiffs' speculation that "Defendants knew [Quick-Grove-Mind] personally

19   and also knew of his manipulation activities," simply because of "his" status "as the second

20   highest ranked trader," is likewise insufficient to establish Defendants' knowledge or intent.

21   Opp. 28.  Without these essential elements, Plaintiffs' aiding-and-abetting claims cannot succeed.

22       Finally, Plaintiffs' failure to allege any viable market manipulation claim also defeats any

23   potential claim for principal/agent liability.

24           **D.    Plaintiffs' State Law Claims All Fail as a Matter of Law.**

25       Defendants showed that all of Plaintiffs' state law claims fail as a matter of law.  Opening

26   Br. 29-35.  That includes the only four claims against the Reed Family Members (conspiracy,

27   unjust enrichment, constructive trust, and accounting), which are derivative of Plaintiffs' claims

28   against other Defendants and are otherwise invalid given the lack of any plausible allegations of

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1    misconduct—or of any involvement at all—by the Reed Family Members.  *Id.* at 35.  Plaintiffs

2    fail to respond to Defendants' arguments regarding these claims and have thus waived them.[11]

3    Indeed, Plaintiffs do not even *mention* the Reed Family Members when discussing their state law

4    claims, Opp. 34-35, further underscoring that these Defendants were added for no legitimate

5    purpose.  Judgment for the Reed Family Members is proper on this basis alone.

6         Plaintiffs also fail to respond to many of Defendants' arguments on the remaining state

7    law causes of action, instead stating that they "oppose all the remaining Defendants' arguments"

8    and "reserve the right to cite any appropriate supporting authority during the oral argument on the

9    MTD."  Opp. 36 n.12.  That is improper.[12]  And the few responses Plaintiffs offer are meritless.

10        **Negligence (Count VII)**.  Defendants offered multiple independent reasons for dismissing

11   Plaintiffs' negligence claim, including that Plaintiffs failed to establish causation or adequately

12   plead the existence of a "special relationship" giving rise to a duty of care.  Opening Br. 30.

13   Plaintiffs offer no argument to rebut Defendants' showing that causation was not adequately pled,

14   and attempt to show the existence of a duty of care by citing a single, out of circuit district court

15   case.  Opp. 35 (citing *In re Facebook, Inc. IPO Secs. & Deriv. Litig.*, 986 F.Supp. 2d 428

16   (S.D.N.Y. 2013)).  *In re Facebook* concluded that the NASDAQ exchange had a duty of care

17   under New York law when it "was aware of, promoted, and profited from the widespread public

18   interest in the Facebook IPO and accepted the trade orders for processing and execution," but

19   failed to properly process those particular IPO trade orders it enticed traders to make.  986 F.

20   Supp. 2d at 460-61.  As Defendants showed, the allegations of this case are not remotely similar.

21        **Fraud (Count VIII)**.  Plaintiffs' fraud claim should be dismissed because Plaintiffs fail to

22   _____

23   [11] *See Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015) ("[F]ailure
     to respond in an opposition brief to an argument put forward in an opening brief constitutes
24   waiver or abandonment in regard to the uncontested issue."); *Stichting Pensioenfonds ABP v.
     Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (same).

25   [12] *White v. FedEx Corp.*, No. 04-cv-00099, 2006 WL 618591, at *2 (N.D. Cal. Mar. 13,
     2006) (refusing to "consider any arguments or evidence raised for the first time at the hearing" in
26   light of Civil Local Rules 7-3(a) and (d)).  Plaintiffs' attempt to "preserve" arguments not raised
     in their brief is also ironic given their incorrect assertions that Defendants "waived" arguments
27   not presented in their opening brief.  *See* Opp. 25, 26, 32.  "Under Rule 12(h)(2), Defendants can
     later assert failure-to-state-a-claim arguments in [] "(A) any pleading allowed or ordered under
28   Rule 7(a); (B) by motion under Rule 12(c); or (C) at trial."  *Lytle v. Nutramax Labs., Inc.*, No.
     EDCV 19-835, 2019 WL 8060077, at *3 n.2 (C.D. Cal. Dec. 6, 2019).

1   plead the requisite elements of "false representation," "damages," and "justified reliance" to Rule

2   9(b)'s stringent standards.  Opening Br. 32.  Plaintiffs now argue that Defendants' alleged

3   injection of false market information constituted "conduct that is designed to mislead," upon

4   which Plaintiffs relied.  Opp. 35.  But as detailed above, the only "conduct" that Plaintiffs cite are

5   their "information and belief" pleadings.  Nor do Plaintiffs dispute that they rely on a "fraud-on-

6   the-market" theory of reliance, which has long been rejected by the California Supreme Court.

7   Opening Br. 32 (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1108 (1993)).

8        **Conversion (Count XIV)**.  Plaintiffs' conversion claim should be dismissed because

9   Plaintiffs do not allege that Defendants unlawfully dispossessed them of their property, since

10  Plaintiffs assented to the inherent risks of investment losses when they agreed to trade on

11  BitMEX in the first place.  Opening Br. 33.  Plaintiffs' assertion that they "did not consent to

12  become victims," Opp. 34, relies entirely on the fraud-based market manipulation allegations that

13  Plaintiffs have failed to plead with particularity, as discussed above.

14       **UCL Claim (Count X)**.  Plaintiffs failed to advance any argument to counter Defendants'

15  demonstration that Plaintiffs lack standing to assert their UCL claim because they have failed to

16  establish "injury in fact" and loss "as a result of the unfair competition."  Opening Br. 34 (citing

17  Cal. Bus. & Prof. Code § 17204).  Instead, Plaintiffs simply repeat their prior assertions that

18  Defendants engaged in a purported market manipulation scheme, which Plaintiffs claim is "an

19  'unfair' business practice" and otherwise "violates multiple statutes … making it 'unlawful.'"

20  Opp. 34.  As discussed above, all of those allegations are made entirely on "information and

21  belief" without any supporting facts establishing the basis for that purported belief.

22       **Remaining State Law Claims.**  Finally, Defendants showed that the remaining counts for

23  Unjust Enrichment (Count XI), Aiding and Abetting (Counts XV-XVI), Constructive Trust (XII),

24  Accounting (XIII), and the alleged violation of Cal. Pen. Code § 496 (Count X), stand or fall with

25  the other claims upon which they are predicated.  Opening Br. 33-35.  Plaintiffs have argued

26  nothing to show otherwise and, accordingly, these claims too should be dismissed.

27  **III.   CONCLUSION**

28       For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint with prejudice.

DATED:  January 20, 2021

Respectfully submitted,

JONES DAY

By: */s/ Stephen D. Hibbard*
    Stephen D. Hibbard

Counsel for Defendants
HDR GLOBAL TRADING LIMITED and
ABS GLOBAL TRADING LIMITED

AKIN GUMP STRAUSS HAUER & FELD
LLP

By: */s/ Peter I. Altman*
    Peter I. Altman

Counsel for Defendant
ARTHUR HAYES

BOIES SCHILLER FLEXNER LLP

By: */s/ Edward H. Takashima*
    Edward H. Takashima

Counsel for Defendant
BEN DELO

LATHAM & WATKINS, LLP

By: */s/ Douglas K. Yatter*
    Douglas K. Yatter
    Matthew Rawlinson

Counsel for Defendants
SAMUEL REED, AGATA MARIA REED,
BARBARA A. REED, TRACE REED,
GRAPE PARK LLC, MARK SWEEP LLC

1

## **ATTESTATION**

2       I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file

3  this REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE

4  CONSOLIDATED COMPLAINT.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that

5  all signatories concur in this filing.

6

7  DATED:  January 20, 2021

8

*/s/ Stephen D. Hibbard*
STEPHEN D. HIBBARD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO