1    Stephen D. Hibbard (State Bar No. 177865)     Edward H. Takashima (State Bar No. 270945)
     sdhibbard@jonesday.com                     etakashima@bsfllp.com

2    Matthew J. Silveira (State Bar No. 264250)     BOIES SCHILLER FLEXNER LLP
     msilveira@jonesday.com                     725 S. Figueroa Street

3    Dennis F. Murphy, Jr. (State Bar No. 301008)   31st Floor
     dennismurphy@jonesday.com                  Los Angeles, CA  90017

4    James M. Gross (Admitted *Pro Hac Vice*)      Telephone:   (213) 629-9040
     jgross@jonesday.com                         Facsimile:   (213) 629-9022

5    JONES DAY
     555 California Street, 26th Floor             Attorneys for Defendant

6    San Francisco, CA  94104                 BEN DELO
     Telephone:    (415) 626-3939

7    Facsimile:    (415) 875-5700            Douglas K. Yatter (State Bar No. 236089)
                                        douglas.yatter@lw.com

8    Attorneys for Defendants                 LATHAM & WATKINS, LLP
     HDR GLOBAL TRADING LIMITED and ABS   885 Third Avenue

9    GLOBAL TRADING LIMITED           New York, NY  10022-4834
                                        Telephone:  (212) 906-1200

10   Peter I. Altman (State Bar No. 285292)
     paltman@akingump.com                   Matthew Rawlinson (State Bar No. 231890)

11   Marshall L. Baker (State Bar No. 300987)     matt.rawlinson@lw.com
     mbaker@akingump.com                   LATHAM & WATKINS, LLP

12   Jessica H. Ro (State Bar No. 329737)        140 Scott Drive
     jro@akingump.com                       Menlo Park, CA  94025

13   AKIN GUMP STRAUSS HAUER & FELD LLP   Telephone:  (650) 328-4600
     1999 Avenue of the Stars, Suite 600

14   Los Angeles, CA  90067-6022            Attorneys for Defendants
     Telephone: (310) 229-1000             SAMUEL REED, AGATA MARIA REED,

15                                      BARBARA A. REED, TRACE REED,
                                     GRAPE PARK LLC, MARK SWEEP LLC
     Attorneys for Defendant

16   ARTHUR HAYES

17                 **UNITED STATES DISTRICT COURT**

18             **NORTHERN DISTRICT OF CALIFORNIA**

19                  **SAN FRANCISCO DIVISION**

20

21   BMA LLC, Yaroslav Kolchin, Vitaly      Case No. 3:20-cv-03345-WHO
     Dubinin, Dmitry Dolgov, and Păun Gabriel-
     Razvan,                            (Consolidated Case Nos. 3:20-cv-07140-

22             Plaintiffs,              WHO and 3:20-cv-08034-WHO)

23        v.                         **JOINT CASE MANAGEMENT**
                                    **STATEMENT**

24   HDR Global Trading Limited (A.K.A.
     BitMEX), ABS Global Trading Limited,
     Grape Park LLC, Mark Sweep LLC,      Date:     February 3, 2021

25   Unknown Exchange, Arthur Hayes, Ben     Time:     2:00 p.m.
     Delo, Samuel Reed, Agata Maria Reed     Ctrm:     2 – 17th Floor

26   (A.K.A. Agata Maria Kasza), Barbara A.    Judge:    Honorable William H. Orrick
     Reed, and Trace L. Reed,

27            Defendants.

28

1    Pursuant to Federal Rule of Civil Procedure 16, as well as Civil Local Rule 16-10(d),

2    Plaintiffs BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov, and Păun Gabriel-

3    Razvan (together "Plaintiffs") and Defendants HDR Global Trading Limited ("HDR"), ABS

4    Global Trading Limited ("ABS"), Grape Park LLC, Mark Sweep LLC, Arthur Hayes, Ben Delo,

5    Samuel Reed, Agata Maria Reed, Barbara A. Reed, and Trace L. Reed (together "Defendants")

6    hereby submit this Joint Case Management Statement, reporting progress or changes since the

7    initial Joint Case Management Statement was filed on August 11, 2020.  *See* ECF 33.

8    **I.    FACTS**

9    DEFENDANTS' STATEMENT:

10    The Joint Case Management Statement process is not an appropriate vehicle for Plaintiffs

11    to repeat portions of their Consolidated Complaint and otherwise offer pages of allegations not

12    pertinent to the procedural issues for a Case Management Conference.  *See* Civil L.R. 16-10(d)

13    (stating that purpose of subsequent Joint Case Management Statement is to "report[] progress or

14    changes since the last statement was filed and mak[e] proposals for the remainder of the case

15    development process").  Defendants take exception to Plaintiffs' Statement below in many

16    respects and, while this is not the forum to respond to Plaintiffs' allegations, Defendants

17    respectfully refer the Court to the "Relevant Background" section of Defendants' pending Motion

18    to Dismiss.[1]  ECF 126 at § III.

19    PLAINTIFFS' STATEMENT:

20    **A.    Defendants' history of brazen lawlessness**

21    Defendants Arthur Hayes ("Hayes"), Ben Delo ("Delo") and Samuel Reed ("Reed") are

22    notorious fraudsters, who have been criminally charged with felony money laundering related

23    offenses by the U.S. Department of Justice ("DOJ") and two of whom are currently fugitives from

24    the U.S. law enforcement, see Consolidated Complaint ("Compl.") ¶ 2.  Compl. Ex. 4 and 5 are

25

26    [1] In particular, Plaintiffs reference an *ex parte* application filed in a dismissed and unrelated state court case (*Amato v. HDR*) in which neither Plaintiffs nor their counsel had any involvement.  That entire *ex parte* application was eventually withdrawn and stricken from the

27    record by the Court on December 17, 2020, making the defendants' motion to seal or strike the application in that action—which Plaintiffs also reference below—moot and Plaintiffs' citation to

28    and reliance on the application itself improper.

1    true and correct copies of the DOJ criminal indictment and Commodity Futures Trading

2    Commission ("CFTC") enforcement action against Defendants and the corresponding

3    announcements.  Defendant Hayes publicly admitted to bribery of foreign government officials

4    and bank fraud and even expressed pride in his actions, Compl. ¶¶ 14, 29, 31; Ex. 10, 11.  Compl.

5    Ex. 17 and 18 are true and correct copies of two sworn declarations by two of the defrauded

6    victims of the Defendants, Frank Amato and Elfio Guido Capone, attesting, under oath, how

7    Defendants defrauded them out of millions of dollars.

8         In 2014, Defendants launched a bitcoin derivatives trading platform BitMEX, which

9    enables traders to place bets on direction of cryptocurrency prices.  In designing their platform,

10   Defendants decided to sidestep any financial controls mandated by the traditional banking system

11   by transacting only in bitcoin and refused to implement any know your customer ("KYC") or

12   anti-money laundering ("AML") checks what so ever, Compl. ¶¶ 6, 283-85, 287; Ex. 1; Ex. 4 ¶¶

13   21-23.   In other words, Defendants would open account and accept unlimited funds from anyone,

14   without a single question asked.

15        In fact, one can open an account, deposit unlimited funds and start trading without

16   furnishing a single document, all is required is a user name and email address, which are not

17   verified by BitMEX in any way, Compl. ¶¶ 283-85.  The entire account registration and funding

18   process takes about 10 minutes and no documents are even looked at.  Understandably, because

19   of total lack of controls of any kind, hackers, tax evaders, money launderers, smugglers, drug

20   dealers all flocked to BitMEX flooding the platform with hot money, CC ¶ 7; Ex. 1 p. 2.  A recent

21   and very telling example is the infamous Twitter hacker, who turned out to be a BitMEX trader,

22   Compl. ¶ 7; Ex. 6.

23        Having a large pool of hot money at their disposal, Defendants designed the internal

24   workings of their trading platform to enable, encourage and benefit from market manipulation.  It

25   all has to do with anonymity, lack of trading limits, high leverage and how their .BXBT index

26   price for bitcoin derivatives is calculated, Compl. ¶ 8.  Defendants deliberately designed

27   this .BXBT index price to be based on bitcoin spot price on two or three illiquid bitcoin spot

28   exchanges, Compl. ¶ 8.  Illiquid in this context means that, to precipitously move bitcoin price on

1   those exchanges, relatively small market orders will suffice, Compl. ¶ 8.  Therefore, a relatively

2   small market order on a thinly traded spot exchange results in a relatively large .BXBT index

3   price move on the very liquid BitMEX, making manipulation very profitable, Compl. ¶ 8; Ex. 2

4   pp. 2-3; Ex. 3 p. 2; Ex. 7, 16.

5          Defendants opened two exchange accounts – a helper account on one or more thinly

6   traded exchanges used by BitMEX to calculate its index price (Coinbase Pro, Kraken and

7   BitStamp) and a winner account on BitMEX itself.  Compl. ¶ 9.  Defendants then entered into a

8   large leveraged derivatives position on BitMEX and immediately executed market orders from

9   the helper account with maximum slippage to move the index price in a favorable direction,

10  Compl. ¶ 9; Ex. 2, 3, 7, 16.   Due to a disparity in liquidity between BitMEX and the thinly traded

11  spot exchanges, the aforesaid deliberate design of the index price by Defendants, and the

12  cascading liquidations of leveraged trader positions on BitMEX, the amount spent from the helper

13  account is multiplied greatly and translates into outsized profit in the winner account on BitMEX,

14  Compl. ¶ 9; Ex. 2, 3, 7, 16.  At times, the market manipulation profit in the winner account may

15  be as high as 8000% (or 80x) of the amount spent from the helper account, Compl. Ex. 3 p. 4.

16  This makes Defendants' market manipulation immensely profitable.  The market manipulation

17  gains realized by Defendants in the winner account and the funds confiscated by BitMEX

18  platform as the result of liquidations induced by Defendants themselves were generated at the

19  expense of Plaintiffs and other cryptocurrency traders like Plaintiffs, who were financially ruined

20  by Defendants.  Compl. ¶ 10.

21          **B.     Defendants' brazen asset dissipation on the eve of criminal indictments**

22          Being keenly aware of the CFTC and DOJ civil and criminal investigations and

23  imminently forthcoming civil and criminal charges, and while preparing to go on a lam from the

24  U.S. authorities, Defendants Hayes, Delo and Reed siphoned about $440,308,400 of proceeds of

25  various nefarious activities that took place on the BitMEX platform, from accounts of Defendant

26  HDR to their personal accounts, Compl. ¶¶ 16-17, Ex. 17, 18; ECF 84-8 pp. 9-10.  The siphoned

27  funds were divided among Defendants and their relatives.  These fraudulent distributions of

28  proceeds of illegal acts were made after Defendants learned about the Government investigations

1   and after receiving a draft complaint in this civil action in 2019, with a substantial tranche coming

2   just two months before the criminal indictments, ECF 84-8 pp. 9-10.

3          As soon as Plaintiffs became aware of the evidence of siphoning of $440,308,400 of funds

4   from Defendant HDR by other Defendants on the eve of criminal indictments, which appeared in

5   public court filings in the related case, *Amato et al. v. HDR et al.,* San Francisco Superior Court

6   Case No. CGC-19-581267 ("*Amato* Action"), Defendants urgently settled the *Amato* Action and

7   moved the Court to strike or seal the discovered evidence of asset dissipation telling San

8   Francisco Superior Court Judge Massullo that the relevant documents were filed in a public court

9   record in violation of a protective order in that case and that the revelations caused "great

10  damage" to Defendants, Ex. C pp. 2, 5-6.

11         On October 1, 2020, Defendants Hayes, Delo and Reed were indicted by DOJ on felony

12  charges of violating the Bank Secrecy Act and conspiring to violate the Bank Secrecy Act, by

13  willfully failing to establish, implement, and maintain an adequate anti-money laundering

14  ("AML") program at BitMEX.  Compl. ¶ 3.  In announcing the indictment, Compl. Ex. 4, FBI

15  Assistant Director William F. Sweeney Jr. said: "As we allege here today, the four defendants,

16  through their company's BitMEX crypto-currency trading platform, willfully violated the Bank

17  Secrecy Act by evading U.S. anti-money laundering requirements.  One defendant went as far as

18  to brag the company incorporated in a jurisdiction outside the U.S. because bribing regulators in

19  that jurisdiction cost just 'a coconut.'  Thanks to the diligent work of our agents, analysts, and

20  partners with the CFTC, they will soon learn the price of their alleged crimes will not be paid

21  with tropical fruit, but rather could result in fines, restitution, and federal prison time."  Reed was

22  apprehended by the FBI in Boston, Massachusetts.  Defendant Hayes and Delo remain at large

23  and are currently fugitives wanted by the U.S. Government.   Compl. ¶ 3.

24         On the same day, the CFTC announced the filing of a civil enforcement action in the U.S.

25  District Court for the Southern District of New York charging Defendants HDR, ABS, Hayes,

26  Delo and Reed with operating an unregistered trading platform and violating multiple CFTC

27  Regulations, including failing to implement required anti-money laundering procedures.  Compl.

28  ¶ 4.  Among those charged were company owners Defendants Hayes, Delo, and Reed, who

1    operate BitMEX's platform through a maze of corporate entities, including Defendants HDR and

2    ABS.   BitMEX's platform has received more than $11 billion in bitcoin deposits from U.S.

3    traders and made more than $1 billion in corresponding fees, while conducting significant aspects

4    of its business from California and accepting orders and funds from 85,000 U.S. customers.

5    Compl. Ex. 5 ¶ 3.  Awash with large amounts of tainted cash and encouraged by perceived lack of

6    any accountability, Defendants grew so brazen that they do not even hesitate to publicly admit to

7    bribery and bank fraud, Compl. ¶¶ 14, 29, 31; Ex. 10, 11.

8              **C.     History of Defendants' fraudulent shell games**

9              Despite the fact that the vast majority of personnel and managers of BitMEX are located

10   in California, Compl. ¶¶ 107-108, to avoid being subject to United States laws, regulations and

11   taxes, Defendants established 12 false shell companies, including Defendant ABS, with intent to

12   create an appearance that Defendant HDR has no presence, operations or investors in regulated

13   jurisdictions such as the United States.  As CFTC observed in its complaint, Compl. Ex. 5,

14   Defendants Hayes and his accomplices "operate BitMEX's platform through a maze of corporate

15   entities."  Compl. Ex. 5 ¶¶ 10-15.

16             Defendants are serial offenders when it comes to disregard for the rule of law, as they

17   have demonstrated both by their fraudulent misconduct in their dealings with their own early



investors and their brazen indifference towards the authority of courts and regulators.  When

JOINT CASE MANAGEMENT STATEMENT
3:20-cv-03345-WHO

1   investor Capone emailed Defendant Hayes about status of his equity rights in BitMEX,

2   Defendants responded with a meme, overlaid over a photo of smiling Hayes and reading

3   "incorporated in Seychelles, come at me bro," cynically implying Defendants' belief that they

4   could avoid financial obligations to own investors using a fraudulent shell company incorporated

5   in Seychelles.  Compl. ¶ 30, Ex. 18 ¶ 19-20.

6          Defendants' response to Mr. Capone came shortly after a July 3, 2019 statement made by

7   Hayes, captured on video, in which he was asked by a debate moderator about the differences

8   between various global regulatory authorities and the Seychellois regulatory authorities. Hayes

9   stated "it just costs more to bribe them," and, when pressed by the moderator about "that not

10  being an answer," Defendant Hayes responded, "it is an answer" and claimed he pays "a coconut"

11  to pay off the Seychellois authorities. The DOJ included this same exchange in its indictment,

12  alleging that Hayes "bragged in or about July 2019 that the Seychelles was a more friendly

13  jurisdiction for BitMEX because it cost less to bribe Seychellois authorities - just 'a coconut' -

14  than it cost to bribe regulators in the United States and elsewhere." Compl. ¶ 29, Ex. 4 ¶ 21.

15         In the *Amato* Action after extensive briefing and oral argument, Judge Schulman of San

16  Francisco Superior Court has rejected Defendants' fraudulent shell play and held, based on

17  similar allegations, that Defendants HDR and ABS were a single enterprise under California law.

18  Defendants' application for a writ seeking to overturn this ruling was summarily rejected by the

19  California Court of Appeals.  The same precedent now applies in this case as well and, therefore,

20  Defendants HDR and ABS are a single enterprise, centered in California.

21         **D.      Jurisdictional defense fiasco and discovery of California and U.S. traders on**

22                 **BitMEX leaderboard**

23         Defendants' initial strategy (or, more accurately, a plot) to deal with a mounting number

24  of civil cases against them in the United States was to argue to Courts that Defendants were not

25  subject to personal jurisdiction in this country due to a lack of minimum contacts with the U.S.

26  and, specifically, due to *not* serving U.S. traders on their platform, Compl. ¶ 117 (despite, in truth

27  and in fact, having more that 85,000 U.S. trader accounts and taking more than $11 billion in U.S.

28  customer deposits, Compl. Ex. 5 p. 3).

1    That defense strategy spectacularly imploded when, in early August, 2020, Plaintiffs'

2  counsel Pavel Pogodin, Esq. stumbled upon Defendants' Leaderboard

3  (https://www.bitmex.com/app/leaderboard, Compl. ¶ 116; Ex. 8) and discovered that, contrary to

4  Defendants' denials, among top three Leaderboard traders, who meaningfully revealed their real

5  names, all three turned out to be U.S. persons, generating over $100,000,000 in trading profits on

6  Defendants' BitMEX platform.  Plaintiffs' attorney put this stunning discovery into a CMC

7  statement, ECF 33, filed on August 11, 2020, which caused a bitterly angry response from

8  Defendants' counsel.  Defendants' counsel first demanded that Plaintiffs' remove this very

9  damaging jurisdictional information from the CMC statement using a CMC statement page limit

10  as an excuse.  After receiving a negative response, Defendants' counsel bitterly refused to file

11  Plaintiffs' exhibits, ECF 39, to the CMC statement, ECF 33.

12    After Defendants and their counsel finally came to their senses and realized that the

13  jurisdictional genie was out of the bottle and their plot to mislead U.S. and California Courts has

14  been exposed, they hastily waived jurisdictional challenges in three United States civil cases

15  against them and instituted a "User Verification Programme"[2], designed to create an appearance

16  that Defendants somehow did not know before that most of their leaderboard was filled with U.S.

17  traders.[3] Compl. Ex. 9.

18    **E.    Reed's perjury at CFTC deposition and blatant lying to Courts**

19    As stated above, Defendants' plot to deal with civil litigation against them in the U.S. was

20  to falsely claim to Courts that, despite having more that 85,000 U.S. trader accounts and more

21  than $11 billion in U.S. customer deposits[4], Defendants were not subject to personal jurisdiction

22  in this country due to a lack of minimum contacts with the U.S. and California.  In furtherance of

23  this plot to defraud U.S. Courts, Defendant Reed went as far as to commit a perjury during his

24

25    [2] BitMEX operated for more than 5 years without any user verification what so ever.  The "User Verification Programme" was instituted less than 48 hours after Plaintiffs' counsel put discovered jurisdictional evidence into CMC statement.

26

27    [3] The "User Verification Programme" was apparently instituted in order to avoid civil and criminal liability for knowingly operating an unlicensed money transmission business in the U.S. in violation of 18 U.S.C. § 1960(a).

28    [4] CFTC Complaint, Compl. Ex. 2, p. 2-3, ¶ 3.

2019 deposition before CFTC, by denying that BitMEX maintained reports identifying U.S. customers on its trading platform, see DOJ Indictment, Compl. Ex. 4 p. 13, ¶ 27.  In reality, in December of 2018, Reed received a report showing trading revenue attributable to U.S. customers, see Indictment, Compl. Ex. 4 p. 13, ¶ 27.

Pursuant to the same plot, Defendants repeatedly untruthfully told Judge Schulman in the related *Amato* Action, that BitMEX serves only non-U.S. traders and, therefore, U.S. and California Courts lack jurisdiction over it, see Compl. ¶ 117.  All these misrepresentations are parts of the same scheme to mislead U.S. Courts, which Defendants continue to pursue even today.

**F.     History of Defendants' frivolous litigation conduct in related cases**

This is what San Francisco attorney Noah Hagey, Esq., recently said about Defendants' frivolous and disingenuous conduct in the related *Amato* Action, involving the same Defendants and the same Defendants' counsel:

> Defendants responded with the kitchen sink: an onslaught of motions, denials, pseudo meet-and-confers, and other legerdemain calculated to delay, frustrate, and overwhelm Plaintiffs with frivolous motion practice to run out the clock.

> Defendants first attempted to remove the action to federal court in plain violation of the Federal diversity jurisdiction rules. Under threat of sanctions, Defendants conceded to remand the action and to provide prompt access to discovery to resolve any further issues regarding venue or jurisdiction.

> Defendants then moved to quash for lack of personal jurisdiction, despite the fact that their entire operation was engineered, structured and effectively run from their base of operations in the City of San Francisco. (Defendants ultimately abandoned this motion after months of insisting that they could not be sued in this state.) Ex. A, p. 3.

Just like in the *Amato* Action, Defendants in the present case are undertaking "legerdemain calculated to delay, frustrate, and overwhelm Plaintiffs with frivolous motion practice to run out the clock."  Moreover, in the same *Amato* Action, Defendants have demonstrated an absolute lack of candor towards discovery obligations by concealing and withholding from the opposing party and the Court critical evidence of brazen and enormous asset dissipation, despite receiving multiple discovery requests to produce it,[5] ECF 84-8 p. 1 fn. 1,

---

[5] Plaintiffs ultimately obtained the evidence of asset dissipation by Defendants from a third party SOSV, after filing multiple motions to compel and for sanctions in New Jersey State Court.  Defendants themselves never produced this information.  As soon as Plaintiffs obtained this "smoking gun" type of evidence, Defendants urgently settled and moved to expunge it from

1    and by continuously refusing to produce any other evidence, Ex. A p. 3, 5.  Moreover,

2    Government actions against Defendants reveal that Defendants both falsified and destroyed

3    critical records.  Compl. Ex. 4 p. 12 ¶ 26; Ex. 5 p. 16 ¶ 49.

4    **II.    PROCEDURAL POSTURE**

5          On September 14, 2020, Defendants HDR, ABS, Hayes, Delo, and Reed—the only named

6    defendants at the time—moved to dismiss Plaintiffs BMA LLC, Kolchin, and Dubinin's Second

7    Amended Complaint.  ECF 42.  Those same Defendants also moved for a stay of discovery on

8    September 28, 2020, which Plaintiffs opposed.  ECF 43, 49.

9          On October 8, 2020, Plaintiffs moved for leave to file a Third Amended Complaint, which

10   Defendants opposed.  ECF 46, 69.  On October 26, 2020, Plaintiffs also opposed Defendants'

11   Motion to Dismiss Plaintiffs' Second Amended Complaint.  ECF 74.

12         On October 14 and November 13, 2020, respectively, counsel for Plaintiffs filed two

13   additional actions that have since been related and consolidated with the present action.[6]  ECF 88,

14   94, 98.  On November 10, 2020, the Court also (1) stayed discovery, (2) denied as moot

15   Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and Plaintiffs' Motion for

16   Leave to File a Third Amended Complaint, and (3) ordered counsel for Plaintiffs to file a

17   consolidated complaint.  ECF 94.

18         On November 25, 2020, Plaintiffs filed a Consolidated Complaint naming additional

19   defendants.  ECF 97.  On December 23, 2020, Defendants moved to dismiss Plaintiffs'

20   Consolidated Complaint.  ECF 126.  Plaintiffs opposed on January 13, 2021.  ECF 129.

21   Defendants replied on January 20, 2021.  ECF 130.

22   **III.    PENDING MOTIONS**

23         Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint is fully briefed and set

24   for hearing on February 3, 2021, concurrently with the Case Management Conference.

25

26   _____

Court records, Ex. C.

27         [6] Those two actions are (1) *Dolgov v. HDR Global Trading Limited, et al.*, No. 3:20-cv-
     07140 (N.D. Cal.) and (2) *Gabriel-Razvan v. HDR Global Trading Limited, et al.*, No. 3:20-cv-
28   08034 (N.D. Cal.).

**IV.    EVIDENCE PRESERVATION**

PLAINTIFFS' STATEMENT:

In the related *Amato* Action, Defendants recently demonstrated an absolute lack of candor towards discovery obligations by concealing and withholding from the opposing party and the Court critical evidence of brazen and enormous in size asset dissipation, despite receiving multiple discovery requests to produce it, ECF84-8 p. 1 fn. 1, and by continuously refusing to produce any other evidence at all, Ex. A p. 3, 5.  Moreover, Government actions against Defendants reveal that Defendants both falsified and destroyed critical records.  Compl. Ex. 4 p. 12 ¶ 26; Ex. 5 p. 16 ¶ 49.  Moreover, to all Plaintiffs' requests to positively confirm that Defendants actually possess the critical evidence including order, trading and funds transfer data for the relevant time period, Defendants' counsel responded evasively, always leaving a door open to a possibility that said critical data was deleted just before this lawsuit was filed.  In view of the above circumstances, Plaintiffs have a strong suspicion that, consistent with the well-established pattern of brazen indifference towards authority of the Courts clearly established by Defendants time and again, the evidence critical to this case was also deleted or otherwise made unavailable by Defendants.  If Plaintiffs' suspicions are confirmed, Plaintiffs are anticipating bringing a motion for terminating and/or evidentiary sanctions.

DEFENDANTS' STATEMENT:

Defendants have repeatedly confirmed to Plaintiffs (and this Court) that Defendants have acted properly to preserve evidence.  Plaintiffs' assertions otherwise are incorrect, and are particularly without basis as to a dismissed and unrelated state court case (*Amato*) in which neither Plaintiffs nor their counsel had any involvement.

**V.    SCHEDULING**

PLAINTIFFS' STATEMENT:

Plaintiffs propose a fact discovery cut-off in October 2021 and an expert discovery cut-off in December 2021.  Plaintiffs propose any motions for summary judgment be filed by December 2021 and heard by January 2022.  Plaintiffs propose a pretrial conference in April 2022 and trial starting in May 2022.

JOINT CASE MANAGEMENT STATEMENT
3:20-cv-03345-WHO

1   DEFENDANTS' STATEMENT:

2   Prior to resolution of Defendants' pending Motion to Dismiss, Defendants believe it is

3   premature to attempt to set a case schedule, which should take into account what claims, if any,

4   survive.

5   **VI.    SETTLEMENT AND ADR**

6   PLAINTIFFS' STATEMENT:

7   In view of Court's clear direction that ADR be completed early and timely, Plaintiffs are

8   prepared to engage in ADR process early on and complete it within 90 days.  Parties will confer

9   on a preferred ADR process and will so inform the Court.

10  DEFENDANTS' STATEMENT:

11  Defendants believe it is too early to engage productively in ADR.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

DATED:  January 27, 2021

Respectfully submitted,

2

JONES DAY

3

4

By: /s/ Stephen D. Hibbard
        Stephen D. Hibbard

5

Counsel for Defendants
HDR GLOBAL TRADING LIMITED and
ABS GLOBAL TRADING LIMITED

6

7

AKIN GUMP STRAUSS HAUER & FELD
LLP

8

9

10

By: /s/ Peter I. Altman
        Peter I. Altman

11

Counsel for Defendant
ARTHUR HAYES

12

13

BOIES SCHILLER FLEXNER LLP

14

15

By: /s/ Edward H. Takashima
        Edward H. Takashima

16

17

Counsel for Defendant
BEN DELO

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT
3:20-cv-03345-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS, LLP


By: */s/ Douglas K. Yatter*
     Douglas K. Yatter
     Matthew Rawlinson

Counsel for Defendants
SAMUEL REED, AGATA MARIA REED,
BARBARA A. REED, TRACE REED,
GRAPE PARK LLC, MARK SWEEP LLC

CONSENSUS LAW


By: */s/ Pavel I. Pogodin, Ph.D.*
     Pavel I. Pogodin, Ph.D.

5245 Ave. Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone:  (650) 469-3750
Facsimile:  (650) 472-8961
Email:  pp@consensuslaw.io
Counsel for Plaintiffs

JOINT CASE MANAGEMENT STATEMENT
3:20-cv-03345-WHO

1

**ATTESTATION**

2      I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file

3   this JOINT CASE MANAGEMENT STATEMENT.  In compliance with Civil L.R. 5-1(i)(3), I

4   hereby attest that all signatories concur in this filing.

5

6   DATED:  January 27, 2021

7                                                                        /s/ Stephen D. Hibbard
                                                                         STEPHEN D. HIBBARD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT
3:20-cv-03345-WHO