# PLAINTIFFS' EXHIBIT A

J. Noah Hagey (State Bar No. 262331)
hagey@braunhagey.com
Andrew Levine (State Bar No. 278426)
levine@braunhagey.com
Douglas Curran (*pro hac vice*)
curran@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California St., Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

*Attorneys for Plaintiffs* FRANK AMATO, RGB COIN LTD., and ELFIO GUIDO CAPONE on behalf of the G AND M CAPONE TRUST

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**10/14/2020**
**Clerk of the Court**
BY: JUDITH NUNEZ
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| FRANK AMATO, RGB COIN LTD., and ELFIO GUIDO CAPONE on behalf of the G AND M CAPONE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; ABS GLOBAL TRADING LIMITED; and DOES 1-10,<br><br>Defendants. | Case No: CGC-19-581267<br><br>**CASE MANAGEMENT STATEMENT**<br><br>Date: October 16, 2020<br>Time: 9:15 a.m.<br>Dept.: 304<br>Judge: Hon. Anne-Christine Massullo<br><br>Second Amended Complaint: August 18, 2020<br>Trial Date: None Set |

Plaintiffs Frank Amato, RGB Coin Ltd., and Elfio Guido Capone on behalf of the G and M Capone Trust (together "Plaintiffs") submit this Case Management Statement pursuant to California Rules of Court, Rule 3.750, in advance of the Case Management Conference set for October 16, 2020, at 9:15 a.m. Plaintiffs have met and conferred extensively with Defendants HDR Global Trading Limited ("HDR"), ABS Global Trading Limited ("ABS"), and Arthur Hayes (together "Defendants") (collectively "the parties") regarding this submission.

The parties had intended to file this statement jointly, but shortly before it was to be filed Defendants objected to Plaintiffs' non-substantive changes that standardized the presentation of the issues for clarity and ease of understanding. Plaintiffs therefore respectfully provide this

submission individually; Defendants may or may not file a version of their own that is substantively identical, but is formatted in a different way.

## I.   PARTIES' PRELIMINARY STATEMENTS

### A.   Plaintiffs' Statement[1]

This action was filed over ten months ago in December 2019. Plaintiffs Frank Amato and Guido Capone are seed investors that helped finance one of the world's largest crypto-currency trading platforms, BitMEX, operated by Defendants HDR, ABS, and Arthur Hayes (collectively, "BitMEX"). Since then, Defendants have worked in concert to deprive Plaintiffs of their investments, to lie about the status of their equity stake, and to deprive Plaintiffs of millions of dollars in dividends. This suit seeks to hold Defendants and their agents and co-conspirators liable for their fraud and to ensure that Plaintiffs are made whole.[2]

As set forth in the Complaint, Plaintiffs were solicited to invest in BitMEX in 2015 by defendant Hayes. In exchange for their investments, BitMEX and Plaintiffs each executed a "Simple Agreement for Future Equity" which permit "angel investors" to make investments at an early stage. Plaintiffs were each told that their SAFEs would "trigger" shortly upon BitMEX's planned capital raise, converting Plaintiffs' SAFEs into equity shares worth approximately 1% of the new enterprise. Shortly thereafter, Defendants executed an equity purchase transaction with

---

[1] Defendants complain below that Plaintiffs have included a Preliminary Statement in this submission, but Plaintiffs respectfully do so for the Court's benefit, to orient Your Honor in advance of the parties' first appearance. Plaintiffs explained the need to do so to Defendants, and they have submitted their own statement below.

Plaintiffs had planned to provide this case-background information in their portion of a pre-motion letter in advance of Plaintiffs' anticipated motion to compel. That letter was initially to be submitted together with this Case Management Statement in advance of the pre-motion conference, which was scheduled to go forward in conjunction with the October 16, 2020 case management conference. Because that pre-motion conference is no longer set for October 16, Plaintiffs include this information here.

[2] Defendant Hayes and his BitMEX co-founders were indicted on October 1, 2020 by the U.S. Department of Justice in the Southern District of New York for (i) violations of the Bank Secrecy Act, and (ii) conspiracy to violate the Bank Secrecy Act. *United States v. Hayes, et al.*, 20-cr-500 (S.D.N.Y.). According to the indictment, Mr. Hayes "willfully failed to establish, implement, and maintain an adequate antimony laundering ('AML') program, including an adequate customer identification program, more commonly referred to as a know your customer ('KYC') program, for BitMEX, in violation of the BSA." (*Id.* at 2). The CFTC filed a civil enforcement action on the same day against Defendants, including HDR, ABS, Hayes, other BitMEX affiliates, and the other co-founders, for operating an unregistered futures trading platform in the United States and failing to comply with AML regulations. *CFTC v. HDR Global Trading Ltd., et al.*, 20-cv-8132 (S.D.N.Y.). Shortly thereafter, Hayes stepped down from his management role at BitMEX.

third-party funder SOSV, thereby triggering the SAFEs.  (The precise terms of SOSV's investment were never disclosed to Plaintiffs and only very recently were discovered through third-party subpoenas.)  Notwithstanding SOSV's transaction, Defendants repeatedly misrepresented that the SAFEs had not converted, that SOSV had not invested money into BitMEX, and that Plaintiffs were not entitled to any ownership interest in the now multi-billion-dollar company.

Plaintiff Amato ultimately filed suit in December 2019, and was later joined by Plaintiff Capone in April 2020.  Defendants responded with the kitchen sink: an onslaught of motions, denials, pseudo meet-and-confers, and other legerdemain calculated to delay, frustrate, and overwhelm Plaintiffs with frivolous motion practice to run out the clock.

**Defendants' Failed Removal to Federal Court.**  Defendants first attempted to remove the action to federal court in plain violation of the Federal diversity jurisdiction rules.  Under threat of sanctions, Defendants conceded to remand the action and to provide prompt access to discovery to resolve any further issues regarding venue or jurisdiction.

**Defendants' Failed Motion to Quash**.  Defendants then moved to quash for lack of personal jurisdiction, despite the fact that their entire operation was engineered, structured and effectively run from their base of operations in the City of San Francisco.  (Defendants ultimately abandoned this motion after months of insisting that they could not be sued in this state.)

**Defendants' Refusal to Produce Jurisdictional Discovery**.  Despite their prior agreement to provide jurisdictional discovery in an efficient manner, Defendants produced just <u>ten documents</u> in response to Plaintiffs' discovery requests, knowing that Plaintiffs did not have any immediate avenue for relief in light of the Court's Covid-19-related shutdown. Defendants declared that they would not produce any additional documents unless ordered to do so by this court.

**Plaintiffs' Successful Motions to Compel.**  As a result, when the Court reopened in June 2020, Plaintiffs filed a motion to compel, and after extensive briefing and argument, the Court ordered substantial document production, and found that (i) Defendants' discovery conduct did not "evidence[] a good faith response to the Requests," and (ii) the unilateral limitations

Defendants imposed in responding "w[ere] not consistent with a good faith attempt to provide a meaningful response." Despite this order, HDR and Hayes still refuse to fully produce the documents and information at issue. They now contend that they do not have to produce this discovery because that discovery is "jurisdictional" in nature and Defendants have now dropped their jurisdictional defense. This is wrong. The documents that HDR and Hayes were ordered to produce bear on more than the strict question of whether Defendants can be sued in this forum; they have merits-related value, too, and Plaintiffs are entitled to them.[3]

**ABS's Failed Demurrer**. ABS was added as a Defendant in April 2020, and filed a demurrer to Plaintiffs' claims in June. ABS largely claimed that it was not a proper defendant because it was a mere affiliate of the other BitMEX entities. On July 29, Judge Schulman overruled the demurrer in relevant part on the grounds that Plaintiffs had sufficiently alleged that ABS was the alter ego of Defendant HDR, as they were both part of the broader BitMEX venture that operates as a "single enterprise." Judge Schulman ruled:

> Plaintiffs may assert claims against ABS on a single enterprise theory of liability, and have alleged sufficient facts to allow them to pursue such a claim. . . .
>
> Here, the first amended complaint alleges that HDR Global funds all of ABS's operations, including paying for all of its employees, overhead, and lease and rent obligations, and is ABS's sole source of income (FAC ¶ 14); that HDR Global dominates and controls every aspect of ABS's operations and uses ABS' San Francisco offices to manage HDR Global's own operations (*id.* ¶ 15); that Defendant Arthur Hayes is the sole director, president, secretary, and treasurer of ABS, and runs its activities without regard to its corporate form and for the benefit of HDR Global and its insiders (*id.* ¶ 16); that HDR Global has created ABS as a false shell company intended to present the false appearance that HDR Global has no California or United States operations or investors (*id.* ¶ 17); and that HDR Global employs dozens of managers and personnel in San Francisco. (*Id.* ¶¶ 28-31). Those allegations are sufficient as a matter of pleading.

(July 29, 2020 Order at 3-5).

---

[3] This matter will be the subject of a motion to compel that Plaintiffs will file following the Court's scheduling of a pre-motion conference.

1    **HDR's and Hayes's Failed Motions for a Protective Order.**  HDR and Hayes next
2    moved for a protective order, seeking a ruling that, notwithstanding their then-pending motion to
3    quash, they should not have to provide any jurisdiction-related deposition testimony.  Judge
4    Schulman denied those motions on August 11.

5    **ABS's Failed Motion to Stay Discovery.**  ABS then sought a stay of all discovery
6    because of the demurrer it had filed in response to Plaintiffs' First Amended Complaint.  Judge
7    Schulman also denied that motion on August 11.

8    **Defendants' Withdrawn Jurisdictional Defense.**  On September 9, 2020, HDR and
9    Hayes informed Plaintiffs that—after nearly nine months of resisting this Court's jurisdiction and
10   waging a scorched-earth campaign that forced Plaintiffs to fight tooth and nail for every inch of
11   ground—they would drop their jurisdictional challenge after all and simply file an answer to the
12   complaint.

13   **Defendants' Ongoing Refusals to Produce Evidence.**  Having given up their
14   jurisdictional gambit, HDR and Hayes still did not provide the discovery as ordered; rather they
15   used their changed strategy as a purported justification to continue withholding evidence of their
16   wrongdoing.  Defendant ABS, for its part, continues to refuse to produce documents in response
17   to Plaintiffs' discovery served four months ago.  ABS clings to this position even after the Court
18   overruled its demurrer to Plaintiffs' alter-ego allegations and denied its motion for a discovery
19   stay.  ABS's position is baseless—indeed, in transferring this case to Your Honor for resolution
20   of the parties' discovery disputes, Judge Schulman ordered that "the Court trusts" that ABS will
21   produce "a substantial portion" of the outstanding discovery, notwithstanding any pending
22   objections. (Aug. 11, 2020 Order).  To date, ABS has produced zero documents.[4]

23   Indeed, the only substantive document production to date has been made by third-party
24   SOSV.  Those documents demonstrate that Plaintiffs' SAFEs have in fact triggered, as alleged in
25   the complaint, such that Plaintiffs were entitled to their share of the millions of dollars in dividend
26   payments that HDR issued to its equity holders in the last few years.  In light of the enforcement
27   actions filed by the DOJ and CFTC against Defendants in the Southern District of New York,

---

[4] This matter will also be the subject of Plaintiffs' forthcoming motion to compel.

Plaintiffs are now analyzing how they can best protect their ability to enforce a judgment against Defendants and the widespread BitMEX enterprise. Although the allegations underlying the government's charges are different than the claims in the present case, concerns regarding Defendants' efforts to expatriate assets and place them beyond the reach of U.S.-based creditors have only been heightened.

\*     \*     \*

Defendants' delays and obstruction have been endless. Plaintiffs are committed to litigating this case as efficiently and expeditiously as possible so they can finally be made whole for the economic harms caused by Defendants' wrongdoing.

**B.     Defendants' Preliminary Statement**[5]

In 2015, Plaintiffs Frank Amato and Guido Capone each passed on an opportunity to invest $50,000 in defendant HDR Global Trading Limited for a 0.5% equity interest in the company. Instead, each of them later agreed to enter into a different type of contract—a Simple Agreement for Future Equity ("SAFE")—under which they would pay less money—$25,000 to $30,000—for similar upside, but only if certain conditions were met. The SAFEs provided that, if and when HDR conducted an "Equity Financing," Plaintiffs would be issued shares at a discount rate, capped at 0.5% (Amato) and 0.41% (Capone) of HDR's share capital.[6] HDR's extensive efforts to raise an Equity Financing were unsuccessful. But HDR's business began gaining traction on its own, allowing it to meet its financing needs from its own cash flows. As a result, HDR did not complete an Equity Financing, and Plaintiffs' rights to receive shares did not

---

[5] The parties did not discuss preliminary statements when they met and conferred about the preparation of this statement. In fact, the parties agreed that they would avoid advocacy pieces. Nonetheless, at 6:30 p.m. on the night this joint statement was due, Plaintiffs informed Defendants that the Court had taken off calendar a pre-motion discovery conference that Plaintiffs had scheduled for the same day as the CMC, and unilaterally announced that they would be preparing a "preliminary statement" addressing the procedural history of this case. At 9:00 p.m., Plaintiffs provided their first set of revisions to a two-page joint statement that Defendants had provided them 11 hours earlier, expanding that statement to nine pages, including the four-page advocacy piece they call a "preliminary statement," and offered that they would not object to Defendants providing a "supplement" in response to their standalone "preliminary statement" the following day. At Defendants' request, Plaintiffs agreed to file the joint statement a day late rather than to provide the Court with piecemeal statements. While Defendants would always prefer to negotiate neutral joint statements, Plaintiffs' tactics have left Defendants with no choice but to set the record straight in a separate statement.

[6] Equity Financing is defined as "transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Preferred Shares at a fixed pre-money valuation." Compl., Ex. 1 at p. 4.

trigger. This remains true today. This case is therefore about Plaintiffs' stale attempt to rewrite contracts that they signed to achieve a result that they hoped—but had no guarantee—to receive.

Plaintiffs allege that one of HDR's co-founders, Defendant Arthur Hayes, told them that HDR planned to conduct a financing round in November 2015 after HDR completed a "Chinaccelerator" program offered by venture capital firm SOSV to help start-up companies break into the Chinese market. As compensation for its services, SOSV required participating start-ups, including HDR, to pay in shares of their companies instead of cash. These were standard terms for SOSV's program. Because those shares were issued as payment for services, they were not part of an Equity Financing. More than four years later, however, Amato, and then Capone, sued HDR and Hayes, seeking more than half a billion dollars on the theory that SOSV's receipt of shares as payment for the Chinaccelerator services—a relationship Plaintiffs knew of before entering their contracts with HDR—triggered Plaintiffs' rights to receive shares.

The contracts at issue were negotiated in the Asia Pacific region, where all of the primary parties to this action were based at the time. HDR is a Seychelles corporation, and was founded in Hong Kong, where Hayes and his co-founders resided. Amato, who worked at JPMorgan's Singapore office when the contracts were negotiated, and his Ohio company, RGB Coin Ltd., which was unknown to Defendants until this action, initially filed this suit against HDR and Hayes alone. Plaintiffs filed suit in this Court on the principal basis that the jurisdictional contacts of HDR's subsidiary ABS—a company incorporated in 2017 and operating in San Francisco, but not named in the initial complaint—could be imputed to HDR.

While Defendants initially removed this case to federal court on diversity jurisdiction grounds, they stipulated to a remand after Plaintiffs clarified that RGB Coin Ltd.—erroneously described as a limited liability "corporation" in the complaint, Compl. ¶ 8—was in fact a limited liability company, and that the foreign citizenship of an unidentified member of that entity, which allegedly holds a 5% interest in the SAFE, broke diversity. As part of that stipulation, Defendants agreed to waive challenges to defects in service of process and to "negotiate in good faith as to a schedule for any jurisdictional discovery requested by Plaintiffs to ensure that Plaintiffs will have an opportunity to obtain any such discovery *approved by the Court or agreed by the parties*

within a reasonable time prior to the date Plaintiffs' opposition to Defendants' [jurisdictional] challenge is due." *Amato v. HDR Global Trading Ltd.*, No. 3:20-cv-00086-JS, Dkt. 10 (Jan. 29, 2020) (emphasis added).

Before Defendants even filed their jurisdictional challenge, Plaintiffs served nearly 150 jurisdictional discovery requests on HDR and Hayes combined. The scope of that discovery far exceeded the narrow grounds of Defendants' motion to quash for lack of jurisdiction, which argued that even if Plaintiffs could establish unity of interest and ownership of HDR and ABS—the first prong of the alter ego doctrine—Plaintiffs could not establish that it would be inequitable to respect HDR's and ABS's separate corporate identities—the second prong of the alter ego doctrine—simply because Plaintiffs would otherwise be unable to sue in California. Before their opposition was due, Plaintiffs mooted the motion to quash by filing a First Amended Complaint ("FAC") naming ABS as a defendant—alleging ABS was liable both directly and secondarily as HDR's alleged alter ego—and adding Australian citizen and resident Capone as a plaintiff.

HDR and Hayes responded to the FAC with a renewed motion to quash. ABS demurred because (1) ABS did not even exist when HDR negotiated, entered, and allegedly breached the SAFEs; (2) ABS provides engineering and IT security services to HDR, and has no involvement with the trading engine at the heart of the BitMEX trading platform or raising capital for HDR; and (3) California's prohibition against reverse veil piercing precludes holding ABS liable for its shareholder HDR's debt, *see Postal Instant Press v. Kaswa Corp.,* 162 Cal. App. 4th 1510, 1512-13 (2008). In opposition, Plaintiffs denied that this was a situation of reverse veil piercing and for the first time argued that ABS could be held liable as HDR's alter ego on a "single enterprise" theory.

After doing nothing in April and May on the written jurisdictional discovery that Defendants first answered in March, Plaintiffs moved to compel in mid-June, seeking supplemental responses on more than 100 requests directed to HDR, Hayes, and all of their and their affiliated companies' and agents' contacts with the entire United States. Plaintiffs then demanded depositions of HDR, Hayes, and ABS before either the motion to compel demurrer

were decided, forcing Defendants to move for protective orders and, in ABS's case, a discovery stay.

A series of rulings in July and August led to Judge Schulman's referral of this case to the Complex Department:

- On July 16, Judge Schulman adopted a pro tem judge's recommendation to partially grant plaintiffs' motion to compel jurisdictional discovery limited to California, but modified it to allow defendants to answer "any [discovery] device" with a summary or compilation in lieu of a "filing cabinet of stuff." 7/16/20 Tr. at 26:23-27:4.[7] As Judge Schulman explained, "[t]his is jurisdictional discovery. This is not full bore discovery, and the courts have recognized that jurisdictional discovery should be limited." *Id.* at 25:10-12. Judge Schulman "impose[d] on both parties the obligation to read [the discovery requests] in good faith with reasonable restrictions such that responding to them is not unduly burdensome to the Defendants and doesn't take forever, but also fairly gives the Plaintiffs the information that they need [for jurisdiction] in one form or another." *Id.* at 26:4-9.

- On July 29—after issuing a tentative ruling to sustain the demurrer in its entirety and then ordering concurrent supplemental briefing to address Plaintiffs' citation of new, undisclosed authorities for the first time at the hearing—Judge Schulman sustained ABS's demurrer except to the extent plaintiffs alleged single enterprise liability. According to Judge Schulman, "Plaintiffs may not assert claims against ABS on a theory of piecing the corporate veil" because this is a "situation of reverse piercing," prohibited by *Postal Instant Press*. Order at 2-3. Yet "Plaintiffs may assert claims against ABS on a single enterprise theory of liability," which Judge Schulman earlier described as a form of "piercing the corporate veil." *Id.*

- On August 11, Judge Schulman adopted a different pro tem judge's recommendation to partially deny defendants' protective order and discovery stay motions, while preserving defendants' ability to contest the scope of discovery, with any such disputes "to await further rulings." Order ¶ 2.[8] In the same order, Judge Schulman decided this action qualified as a complex case.

- Also on August 11, Judge Schulman certified his demurrer ruling for appellate review under Code of Civil Procedure section 166.1, recognizing that "the viability of the single enterprise theory of alter ego liability on the facts alleged in the first

---

[7] "[F]or example, if there were a subsidiary that had 81 contracts with California employees, or to be performed in California, or whatever, you don't have to produce every one of those contracts or every page of every one of those contracts. But you may provide, read reasonably, a summary or compilation in text, by way of an interrogatory response, for example, that says between such and such date and such and such date this subsidiary entered into the following number of contracts with the following number of California residents." 7/16/20 Tr. at 25:22-26:3.

[8] Plaintiffs have sought discovery sanctions in connection with every discovery motion filed by either party in this litigation. Each request has been denied, with the pro tem judge on the protective order and discovery stay motions emphasizing that sanctions were not warranted because "the parties were litigating other matters that had bearing on these discovery issues." 8/11/20 Order, Ex. A at 2. Indeed, the record is replete with examples of Plaintiffs refusing to litigate this matter in an orderly and efficient manner.

amended complaint" presents "a controlling question of law as to which there are substantial grounds for difference of opinion." Order at 2. ABS filed a writ petition directed to the single enterprise issue just three days later.

Throughout July and August, HDR and Hayes supplemented their responses to the jurisdictional discovery as ordered by Judge Schulman. On August 18, plaintiffs filed their Second Amended Complaint ("SAC"), mooting defendants' renewed motion to quash. With merits discovery effectively underway through third parties—including SOSV, against which plaintiffs were aggressively enforcing subpoenas in New Jersey—HDR and Hayes chose to answer the SAC and defend this case on the merits rather than incurring further costs litigating jurisdiction while its uninvolved subsidiary was forced to defend this suit in its stead. ABS demurred, both because Plaintiffs still have not sufficiently alleged that ABS has engaged in any conduct relevant to their claims and because Plaintiffs' single enterprise theory—even if it is legally viable—would fail on the "inequitable result" prong of the alter ego test now that HDR and Hayes have answered the SAC. That demurrer is scheduled to be heard on January 19, the first date available on the Court's calendar.

Merits discovery is now underway against HDR and Hayes. Hayes received his first set of merits discovery requests on September 24, and HDR has already produced more than 1,200 documents in response to its first set of merits requests and is continuing to produce documents on a rolling basis. (As such, Plaintiffs' representation that "the only substantive document production to date has been made by third-party SOSV" is false.) Despite the fact that HDR is answering merits discovery, Plaintiffs have insisted on multiplying the proceedings, demanding that Defendants supplement their responses to jurisdictional discovery that is moot, and that ABS produce HDR documents that HDR is already producing, as well as documents responsive to approximately 50 RFPs directed to secondary liability before the Court has even had an opportunity to consider the sequencing of discovery in this action. Among the three Defendants, Plaintiffs have now served a combined 491 discovery requests, including 214 requests for productions on the merits alone. Defendants welcome the Court's management of this litigation so that the parties can proceed to the essential issues in the case while avoiding the unnecessary and burdensome discovery procedures that have marked this litigation to date.

1  On a final note, Plaintiffs did not seek to meet and confer about the two government
2  actions that they reference in their portion of the preliminary statement despite being aware of
3  them.  Both court proceedings were initiated two weeks ago, and Defendants are still evaluating
4  the potential impact of those proceedings on this action in light of Plaintiffs' allegations and the
5  discovery they have served to date.  Plaintiffs have not identified any non-speculative grounds to
6  question Defendants' ability to satisfy any judgment in this case.

## II.   ANTICIPATED ADDITIONAL PARTIES

### A.   Plaintiffs' Statement

Defendants have recently announced a corporate restructuring that created a new parent holding company called 100x. According to the BitMEX website, "100x will become the new holding structure for HDR Global Trading and all our other assets, including the BitMEX platform." Plaintiffs have served discovery on Defendants to gather information about 100x, and Plaintiffs anticipate amending their complaint to include 100x as a named defendant.

### B.   Defendants' Statement

Plaintiffs entered contracts with HDR Global Trading Limited.  HDR Global Trading Limited has no parent company.  Defendants will respond to Plaintiffs' discovery when it is due.  As Plaintiffs acknowledge, however, they presently have no basis to name 100x as a defendant.

## III.   SCHEDULE FOR DISCOVERY PROCEEDINGS

Plaintiffs identify below a topic of discovery that they believe deserves attention. Defendants disagree with Plaintiffs' position regarding that topic. Defendants request the Court's guidance with regard to scheduling discovery in this case, and identify two additional topics of discovery that they believe should be sequenced in a certain manner. Plaintiffs disagree and believe the litigation will be conducted less efficiently with Defendants' sequencing proposals.

### A.   Plaintiffs' Topic 1: Discovery that HDR and Hayes Have Been Ordered to Produce

Following Plaintiffs' June 2020 motion to compel, Defendants HDR and Hayes were ordered on July 16 to supplement certain discovery responses bearing on the jurisdictional challenge that they were advancing at the time. Plaintiffs maintain that Defendants have failed to

1  fully comply with that order, and believe that additional documents that Judge Schulman
2  expressly directed Defendants to produce bear on the merits of the parties' dispute and should
3  therefore be turned over.  Plaintiffs do not believe that Defendants should be permitted to make
4  their own ad hoc determinations of the purported "relevance" of discovery *that they have already*
5  *been ordered to produce*.  Plaintiffs intend to file a motion to compel should a pre-motion
6  discovery conference not resolve the issue.

7  Defendants believe that they fully complied with the July 16 order, including to the extent
8  they produced summaries in lieu of documents for some requests, which they believe was
9  expressly authorized by Judge Schulman.  Defendants further believe that any dispute over
10 compliance with the July 16 order is moot and wasteful because (1) HDR and Hayes are now
11 defending this case on the merits and their obligations under the order cannot be divorced from
12 the jurisdictional context in which the order issued, and (2) HDR is in the process of producing
13 merits discovery, and has already produced documents in response to the sole jurisdictional
14 discovery request (regarding Hayes's investment outreach in California) that Plaintiffs have
15 argued also bears on the merits of this dispute.

16 **B.  Defendants' Topic 1: Single-Enterprise Discovery**

17 As noted above, Plaintiffs have named three defendants in this case, HDR, HDR's co-
18 founder Arthur Hayes, and HDR's subsidiary ABS, which was first named in the First Amended
19 Complaint.  ABS's demurrer to the First Amended Complaint was overruled on alter ego grounds
20 on a single-enterprise theory of alter ego liability and sustained on ABS's direct and aiding and
21 abetting liability theories.  At Defendants' request, Judge Schulman certified the single-enterprise
22 issue for appellate review under Code of Civil Procedure section 166.1. ABS thereafter filed a
23 writ petition appealing the ruling.  The petition is pending.  ABS also demurred to plaintiffs'
24 Second Amended Complaint, with the hearing currently set for January 19, 2021.

25 Defendants believe that ABS is complying with its discovery obligations relating to merits
26 discovery given that (1) ABS did not even exist at the time the SAFEs were negotiated, executed,
27 and allegedly breached but is nonetheless searching for any ABS documents responsive to
28 Plaintiffs' merits requests; (2) HDR is in the process or producing documents responsive to the

1   same merits discovery served on ABS; and (3) HDR has produced ABS documents in connection
2   with jurisdictional discovery based on Plaintiffs' theory that HDR has possession, custody, or
3   control of all of ABS's documents.  Defendants view single enterprise discovery as distinct from
4   merits discovery, as that theory of alter ego liability is directed to extending liability from HDR to
5   ABS on grounds unrelated to the merits of Plaintiffs' claims for purposes of judgment
6   enforcement.  Defendants also believe that alter ego discovery should be sequenced to take place
7   after merits discovery, but in any event after (a) the court of appeal has ruled on ABS's writ
8   petition, and (b) this Court has ruled on ABS's demurrer to the Second Amended Complaint.

9       Plaintiffs disagree that ABS has in any way satisfied its discovery obligations, as it has, to
10  date, produced *zero* documents, despite Plaintiffs' having served the requests more than four
11  months ago.  Plaintiffs believe that ABS is a proper party to the case, and that all merits-based
12  discovery should proceed at this time, in light of Judge Schulman's prior orders overruling ABS's
13  demurrer and denying ABS's request for a discovery stay and/or protective order.  Plaintiffs
14  intend to file a motion to compel should a pre-motion discovery conference not resolve these
15  issues.

16      **C.    Defendants' Topic 2: Third Party Discovery**

17      Plaintiffs subpoenaed third parties Sean O'Sullivan and SOSV III LP earlier this year,
18  seeking documents and deposition testimony.  Mr. O'Sullivan and SOSV are currently producing
19  documents and plaintiffs are seeking to schedule depositions pursuant to orders issued by a New
20  Jersey court in which the subpoenas were domesticated, following the denial of SOSV's multiple
21  motions to quash.  Defendants have also subpoenaed Mr. O'Sullivan and SOSV, and have asked
22  Plaintiffs to coordinate on depositions so that these third parties need only sit for deposition once,
23  as also requested by those third parties and as contemplated by California Code of Civil
24  Procedure section 2025.290.

25      Plaintiffs do not object to Defendants' attending any depositions scheduled, but view the
26  New Jersey depositions as a separate issue because the SOSV parties have already been
27  sanctioned by the New Jersey court for violating a direct order to provide documents and
28  testimony, and have now been directly ordered again to provide that requested discovery

1  "immediately." Plaintiffs are not willing to postpone or in any way further delay those depositions
2  for the convenience of Defendants or the third parties.

### IV.   SETTLEMENT AND ALTERNATIVE DISPUTE RESOLUTION

The parties believe that a mandatory settlement conference is premature at this stage of the litigation. The parties have discussed potential alternative dispute resolution, but have yet to reach agreement on the framework for either. Plaintiffs do not consent to any ADR process that would delay discovery from Defendants or otherwise jeopardize their ability to recover in this action. Defendants believe that even informal discussions with a neutral would help to expedite the resolution of this dispute.

### V.   LISTS OF PERSONS TO BE DEPOSED

The parties agree in principle that the preparation of non-binding deposition lists could be helpful for structuring discovery efforts and agree to discuss the exchange of preliminary lists. Plaintiffs do not believe that the Court must set a date for the exchange of this information, as merits-based discovery has just barely gotten under way. Defendants have proposed November 13 as a reasonable date for the exchange of preliminary lists and seek the Court's guidance in setting a date if the parties cannot agree.

### VI.   ESSENTIAL ISSUES IN THE LITIGATION

#### A.   Plaintiffs' Statement

Plaintiffs object to Defendants' efforts to artificially segment the litigation of the case by seeking "early resolution" of certain hand-picked issues relating to Plaintiffs' contract claims. Plaintiffs' fraud and equitable theories substantially overlap with their contract claims, such that creating a separate track for the contract claims would (i) create unwarranted delay that would unfairly defer Plaintiffs' ability to secure redress for Defendants' misconduct; (ii) lead to significant duplication of effort for both the Court and the parties; and (iii) would unfairly force Plaintiffs to incur substantial additional litigation costs.

#### B.   Defendants' Statement

Plaintiffs assert fraud, contract, and equitable theories related to contracts they entered into with HDR in 2015. Defendants believe that the contract claims present a number of legal

issues to be decided by the court (e.g., related to integration, ambiguity, and interpretation), are amenable to early resolution (by summary judgment, a bench trial or otherwise), and that early resolution will streamline the remainder of the litigation (because several of plaintiffs' other theories depend on proof of a breach and the limitations period on those claims are shorter than for breach of contract). Thus, Defendants request the Court's assistance in streamlining the resolution of these issues while the parties engage in broader discovery directed to the merits of all claims.

Dated: October 14, 2020

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: /s/ J. Noah Hagey
     J. Noah Hagey

Attorneys for Plaintiffs FRANK AMATO, RGB COIN LTD., and ELFIO GUIDO CAPONE on behalf of the G AND M CAPONE TRUST