# PLAINTIFFS' EXHIBIT C

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | Stephen D. Hibbard (State Bar No. 177865)<br>sdhibbard@jonesday.com<br>Matthew J. Silveira (State Bar No. 264250)<br>msilveira@jonesday.com<br>Dennis F. Murphy, Jr. (State Bar No. 301008)<br>dennismurphy@jonesday.com<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, CA 94104<br>Telephone: +1.415.626.3939<br>Facsimile: +1.415.875.5700 |

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/02/2020**
**Clerk of the Court**
BY: SANDRA SCHIRO
Deputy Clerk

Attorneys for Defendants
HDR GLOBAL TRADING LIMITED and
ABS GLOBAL TRADING LIMITED

Peter I. Altman (State Bar No. 285292)
paltman@akingump.com
Marshall L. Baker (State Bar No. 300987)
mbaker@akingump.com
Shelly A. Kim (State Bar No. 322231)
shelly.kim@akingump.com
Jessica H. Ro (State Bar No. 329737)
jro@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone: +1.310.229.1000
Facsimile: +1.310.229.1001

Attorneys for Defendant
ARTHUR HAYES

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| FRANK AMATO, RGB COIN LTD., and ELFIO GUIDO CAPONE on behalf of the G AND M CAPONE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, d/b/a BITMEX; ARTHUR HAYES; ABS GLOBAL TRADING LIMITED; and DOES 1-10,<br><br>Defendants. | Case No: CGC-19-581267<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEAL OR STRIKE PLAINTIFFS' EX PARTE APPLICATION**<br><br>Assigned for All Purposes to:<br>Hon. Anne-Christine Massullo, Dept. 304<br><br>Date: December 18, 2020<br>Time: 10:00 a.m.<br><br>Second Am. Compl. filed: Aug. 18, 2020 |

**CASE NO. CGC-19-581267**

MPA ISO DEFS.' MOT. TO SEAL OR STRIKE PLS.' EX PARTE APP.

I.      **INTRODUCTION**

Defendants file this motion to resolve a dispute that never should have arisen and that they believed had already been resolved. On the morning of October 23, Plaintiffs filed an ex parte application for a right to attach order, writ of attachment, and temporary protective order (the "Ex Parte Application") notwithstanding Defendants' proposal of a negotiated resolution that would avoid the need for motion practice. The next business day, the parties agreed to substantially the same proposal that Defendants had proposed before the Ex Parte Application was filed, and notified the Court that the Ex Parte Application could be taken off calendar without prejudice to its renewal. The Court did just that, and confirmed that it would dispose of the courtesy copies of the Ex Parte Application, which it had never reviewed.

Despite the resolution of the dispute underlying the Ex Parte Application and the fact that the Court never considered, let alone ruled on that application, Plaintiffs refuse to withdraw those papers. Instead, Plaintiffs are requiring that Defendants move to seal the extensive confidential material submitted in connection with the Ex Parte Application. Moreover, Plaintiffs insist on this needless expenditure of Court, party, and third-party resources despite the fact that Plaintiffs violated the protective order in filing the Ex Parte Application. Withdrawing the Ex Parte Application from the public record is the most efficient means to end Plaintiffs' violation.

Because Plaintiffs have refused to minimize the work required of the parties and the Court, notwithstanding their protective order violation, Defendants move to strike the Ex Parte Application in its entirety. That remedy is well within the Court's inherent authority given that the Court never even considered, let alone decided, the Ex Parte Application and because such a remedy is the most efficient way to limit the needless expenditure of resources and stem the damage flowing from Plaintiffs' protective order violation. In the alternative, the Court should strike or permanently seal all of the material initially lodged confidentially under seal, and the entirety of certain documents containing confidential information that were initially filed on the public docket in violation of the protective order. Defendants reserve their right to seek further remedies related to Plaintiffs' violation of the protective order.

## II.   BACKGROUND

On Friday October 16, the Court held the first Case Management Conference ("CMC") in this matter. At the CMC, Plaintiffs suggested that they might seek a writ of attachment, noting that they had sent an email to Defendants the previous evening asking questions related to that form of relief. The Court explained that a writ of attachment is an extraordinary remedy with a high bar, but did not address the substance of Plaintiffs' assertions, which had not been raised in the parties' case management statements filed just two days prior, and encouraged the parties to "work it out" short of motion practice. *See* 10/16/20 Tr. at 24:3-25:13, 37:5-6.

The Court also addressed the topic of sealing at the CMC. In addition to directing the parties to "deal with the sealing motions at the time" of the underlying motion addressing confidential material, *id.* at 46:16-25, the Court asked the parties "to be judicious in terms of what you attach" and to "be mindful, when you are attaching documents, about the sealing requirements and the work," *id.* at 47:5-17. Moreover, the Court assured the parties that it would provide guidance if it found a motion to seal unsatisfactory, rather than "automatically just unseal[ing] confidential documents." *Id.* at 46:26-47:4.

On Friday October 23 at 10:21 a.m., Plaintiffs filed the Ex Parte Application, set for hearing the following Monday at 9:15 a.m. At an informal discovery conference later that day, Defendants explained that they had been in contact with Plaintiffs both before and after the filing of the Ex Parte Application and had made a proposal before the Ex Parte Application was filed that would have mooted the relief sought in that application and avoid unnecessary motion practice. The Court noted that it had not seen the papers, but encouraged the parties to work cooperatively to resolve the issue without motion practice. To that end, the Court continued the ex parte hearing from Monday, October 26 to Tuesday, October 27, and directed the parties to notify the Court by Monday at 1:00 p.m. if they were able to reach an agreement that would avoid the need for Tuesday's hearing.

On Monday, October 26, the parties called the Court to report that they had been able to reach an agreement such that the Ex Parte Application could be taken off calendar, without prejudice to Plaintiffs' renewing that application if they thought it necessary. As a result, the

3                                    CASE NO. CGC-19-581267
MPA ISO DEFS.' MOT. TO SEAL OR STRIKE PLS.' EX PARTE APP.

1  Court took the hearing off calendar.  In addition, the Court stated that it had not read the Ex Parte
2  Application and would dispose of the courtesy copies Plaintiffs had delivered.
3      On Thursday, October 29, Defendants directly proposed that the parties stipulate to the
4  removal of the Ex Parte Application from the Court's record.  Defendants explained that removal
5  from the record would avoid the need for the parties, third parties whose confidential information
6  was filed with the Ex Parte Application, and the Court to expend resources addressing the sealing
7  of materials that were never considered, let alone addressed by the Court.  Defendants also
8  explained that removal of the papers from the docket would be the simplest and least intrusive
9  method of removing confidential information that Plaintiffs had included on the public docket
10 without lodging that information conditionally under seal, in violation of the protective order in
11 this case.  Plaintiffs asked for Defendants to identify the portions of the submitted documents
12 filed in violation of the protective order.  Plaintiffs then stated that their response to this request
13 for removal of the papers would be tied to Defendants accommodating *other*, distinct requests
14 regarding expedited discovery and relief beyond a writ of attachment, which Plaintiffs had raised
15 in a letter earlier that day.
16     On Friday, October 30, the parties met and conferred again.  Defendants renewed their
17 request that Plaintiffs agree to remove the Ex Parte Application from the Court's records.
18 Defendants further identified specific portions of that application that had been filed in violation
19 of the Protective Order.  Plaintiffs, however, declined to stipulate to removal of the Ex Parte
20 Application from the Court's record.  Instead, in a purported effort to compromise, Plaintiffs
21 offered to stipulate that (i) Defendants' time to submit any sealing motion be extended by two
22 weeks (or so) under CRC 2.551(b)(3)(B); and (ii) the parties will promptly replace the documents
23 you identify below with versions that redact the additional information you request.  Plaintiffs
24 later agreed to replace the entirety of three documents filed in support of the Ex Parte Application
25 with conditionally under seal versions.  *See generally* Silveira Decl.[1]

---

[1] Consistent with the Court's guidance at the CMC to avoid unnecessary sealing issues, Defendants have limited their submission of factual material underlying this motion to relevant, non-confidential information to avoid the need for still further expenditure of party, third-party, and Court resources on sealing issues that are ancillary to the merits of this dispute.

1    III.    ARGUMENT

2           A.    The Court Should Strike the Entire Ex Parte Application From Its Files.

3           A Superior Court has the "inherent and plenary [power]" to "strike from its files" material
4    that "was in no sense essential to decision of the question before the court." *Warner v. Warner*,
5    135 Cal. App. 2d 302, 304–305 (1955), *cited approvingly by Overstock.com, Inc. v. Goldman*
6    *Sachs Group, Inc.*, 231 Cal. App. 4th 471, 500 (2014).  Where a court strikes such materials, they
7    "have effectively been removed from the court's file, eliminating the need to address any sealing
8    issues as to these materials." *Overstock.com*, 231 Cal. App. 4th at 500; *cf. Mercury Interactive*
9    *Corp. v. Klein*, 158 Cal. App. 4th 60, 105 (2007) (holding that the "sealed records rules did not
10   apply" to documents that "consisted of discovery material that was not admitted at trial or used as
11   a basis of the court's adjudication of a substantive matter").

12          Plaintiffs' Ex Parte Application—more than 250 pages, including exhibits—is full of
13   confidential material designated as such under the protective order.  Plaintiffs attached entire
14   contracts and emails that have been designated confidential and discussed those confidential
15   materials at length in their memorandum of points and authorities and expert declaration.  While
16   Plaintiffs lodged much of this confidential material under seal and made redactions to the
17   documents summarizing that material, their redaction efforts were insufficient.  Plaintiffs
18   included confidential material even in their redacted versions of documents and filed them in the
19   public file, in violation of the protective order.  Plaintiffs' initial proposal to remedy these
20   protective order violations by replacing the public documents with further-redacted versions
21   would just exacerbate the damage to Defendants given that litigants in other proceedings have
22   already downloaded the documents and placed them in other public court files and on the internet.
23   Placing new versions in the public file would only draw more attention to the confidential
24   material placed in the public file in violation of the protective order, as third parties would be able
25   to compare improperly and properly redacted versions and identify the very material that never
26   should have been made public.

27          Shortly before this motion was filed, Plaintiffs stated that they agreed to replace the as-
28   submitted versions of three documents that Defendants had identified as disclosing confidential

1  information with conditionally under seal versions.  Assuming Plaintiffs follow through with that
2  course of action, the Court should nonetheless strike the entire Ex Parte Application from the
3  public file.  Not only is such a remedy proper under California precedent—no part of the Ex Parte
4  Application is "essential to decision of the question before the Court," *Warner*, 135 Cal. App. 2d
5  at 304–305, because the Court never considered, let alone decided, the questions presented by
6  those papers—but there is also no prejudice to Plaintiffs.  The parties reached an interim
7  agreement that moots the Ex Parte Application and agreed to finalize the agreement by the end of
8  November.  And the removal of the Ex Parte Application from the Court's calendar does not
9  prejudice the renewal of that request.  The Court should thus exercise its inherent authority to
10 mitigate the damage that Plaintiffs' violation of the protective order has caused and continues to
11 cause Defendants by striking the entirety of Plaintiffs' Ex Parte Application from the file.

  **B.**  **Alternatively, the Court Should Strike the Portions of the Ex Parte Application Lodged Confidentially Under Seal and the Entirety of Documents That Include Material Filed in Violation of the Protective Order.**

14   Subsumed within the Court's inherent authority to strike the entire Ex Parte Application
15 from its files is the power to strike portions of those papers.  *See Overstock*, 231 Cal. App. 4th at
16 500 ("when a party submits a tsunami of discovery materials subject to a protective order, the trial
17 court should welcome a well-honed motion to strike to winnow down the material to that which is
18 *relevant* to the contentions advocated by the proffering party").  "The public's right of access to
19 court records … does not extend to irrelevant materials submitted to the court out of laziness in
20 reviewing and editing evidentiary submissions, or worse, out of a desire to overwhelm and harass
21 an opponent." *Id.*  Here, as noted above and discussed in more detail below, none of the
22 confidential materials are relevant because there was no legitimate issue in dispute in the first
23 instance.  Therefore, all of those materials should be stricken, including the entirety of the
24 documents containing information that Plaintiffs filed publicly in violation of the protective order.
25   Two days before the Ex Parte Application was filed, the parties met and conferred about a
26 potential negotiated resolution.  Defendants expressed optimism about the ability to resolve
27 Plaintiffs' concerns and followed up with an email targeting that Friday for further feedback.  The
28 next morning, notwithstanding their acquiescence to further negotiations, Plaintiffs gave ex parte

1  notice that they intended to seek a temporary protective order.  Defendants responded by saying
2  that motion practice was unwarranted, asked Plaintiffs to hold their application, and confirmed
3  that they still intended to provide an update that following morning that would move the parties
4  toward the ultimate goal of a prompt negotiated resolution of the issue.  Defendants also
5  requested that Plaintiffs provide the set of papers they were planning to file as soon as possible,
6  which would provide further opportunity to reach a resolution without motion practice.  The next
7  morning, within a 15-minute period starting at 9:15 a.m., Plaintiffs provided copies of the Ex
8  Parte Application they intended to file and Defendants notified Plaintiffs of their proposal that
9  would moot the requested relief.  Plaintiffs nevertheless filed their Ex Parte Application at 10:21
10 a.m.  By Monday, the parties agreed on a framework that would allow the Ex Parte Application to
11 be taken off calendar and notified the Court of that agreement, leading the Court to take the Ex
12 Parte Application off calendar without prejudice to its renewal.  The Court also informed the
13 parties that it had never considered the courtesy copies and would be disposing of them.
14        Under these circumstances, Plaintiffs should never have filed the Ex Parte Application.
15 And they certainly should not have filed reams of confidential material without first giving
16 Defendants an opportunity to minimize or eliminate the amount of confidential material being
17 publicized.  Whether out of "laziness," "a desire to overwhelm and harass" Defendants, or any
18 other motivation, Plaintiffs' filing of an Ex Parte Application that was quickly mooted by the
19 parties' mutual agreement renders the application irrelevant to any decision required from the
20 Court.  Indeed, the Court did not consider the Ex Parte Application.  There is no reason to place
21 confidential materials in support of that irrelevant Ex Parte Application into the public file.
22        Because Plaintiffs have already placed into the public file confidential material in
23 violation of the protective order, it is also proper for the Court to strike the documents containing
24 that confidential material to avoid drawing attention to them.  Thus, if the Court is not inclined to
25 strike the entire Ex Parte Application from the file, it should strike the Memorandum of Points
26 and Authorities, the Hagey Declaration, and the Antonelli Declaration, all of which disclose
27 Defendants' confidential information, either directly or indirectly.
28

**C.     At a Minimum, the Court Should Place the Ex Parte Application Under Seal.**

The sealed records rules do not apply to all motions and records filed or lodged with the Court. For example, rule 2.550 expressly provides that the "rules do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings." Cal. Rules of Ct., rule 2.550(a)(3). Thus, discovery papers can be filed under seal and remain under seal without the holder of the confidential information making any type of showing. In explaining the distinction between discovery proceedings and substantive matters, the Advisory Committee Comment to rule 2.550 notes that the sealed record rules "recognize the First Amendment right of access to documents used at trial or *as a basis of adjudication*," but not to discovery matters. *Id.*, Advisory Committee Comment (emphasis added). While the First District has recognized that documents "submitted as a basis of adjudication" are subject to the sealed records rules, it did so in the context of a fully briefed and decided motion for summary judgment. *See Overstock*, 231 Cal. App. 4th at 492-97. And in doing so, that court narrowly held that this phrase "embraces discovery materials submitted in support of and opposition to substantive pretrial motions, regardless of *the ground on which the trial court ultimately rules*." *Id.* at 497 (emphasis added). Because the Court here did not rule on the Ex Parte Application at all, it should place those papers under seal in their entirety.

To be clear, there is no dispute that the Court never ruled on the Ex Parte Application. To the contrary, at the parties' request, the Court specifically took the application off calendar, without prejudice to its renewal, in light of the parties' negotiated resolution. Thus, the sealed record rules should not apply to the Ex Parte Application. The material lodged confidentially under seal should remain under seal. Moreover, the Memorandum of Points and Authorities, the Hagey Declaration, and the Antonelli Declaration, all of which disclose Defendants' confidential information, either directly or indirectly, should also be placed under seal.[2] Treatment of these papers, which were never considered or ruled upon by the Court, is consistent with rule 2.550 and the precedents upon which that rule is based. *See, e.g.*, *Matter of Krynicki*, 983 F.2d 74, 75–76

---

[2] Assuming Plaintiffs have swapped out those three documents in their entirety for slip sheets indicating that they have been filed provisionally under seal, as Plaintiffs stated they would do shortly before this motion was filed, those three documents should remain under seal.

(7th Cir. 1992) (explaining that "[i]nformation that is used at trial or otherwise becomes the basis of decision enters the public record," and that "[s]ecrecy persists only if the court does not use the information to reach a decision on the merits"), *cited approvingly in NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*, 20 Cal. 4th 1178, 1209 n.25 (1999).

      Finally, if the Court declines to grant any of the foregoing relief, Defendants request that the parties and non-parties that produced the confidential information at issue be given leave to make a further showing under rule 2.551 of the California Rules of Court, consistent with the Court's guidance at the CMC that it would not "automatically" unseal confidential documents. 10/16/20 Tr. at 46:16-47:17.

### IV.   CONCLUSION

      For these reasons, the Court should (1) strike the entire Ex Parte Application from the record, (2) strike all material lodged confidentially under seal and the entire Memorandum of Points and Authorities, Hagey Declaration, and Antonelli Declaration; or (3) permanently seal the portions of the Ex Parte Application lodged confidentially under seal, and the entirety of the Memorandum of Points and Authorities, the Hagey Declaration, and the Antonelli Declaration.

Dated:  November 2, 2020                       JONES DAY

By: */s/ Stephen D. Hibbard*
      Stephen D. Hibbard

Attorneys for Defendants
HDR GLOBAL TRADING LIMITED and ABS GLOBAL TRADING LIMITED

Dated:  November 2, 2020                       AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Peter I. Altman*
      Pater I. Altman

Attorneys for Defendant
ARTHUR HAYES