Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov and Păun Gabriel-Razvan,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Grape Park LLC, Mark Sweep LLC, Unknown Exchange, Arthur Hayes, Ben Delo, Samuel Reed, Agata Maria Reed (A.K.A. Agata Maria Kasza), Barbara A. Reed and Trace L. Reed,<br><br>Defendants. | Case No. 3:20-cv-3345-WHO<br><br>**PARTIES' JOINT CMC STATEMENT**<br><br>**Hon. William H. Orrick**<br>**Date: April 6, 2021**<br>**Time: 2:00 PM**<br>**Crtrm.: 2, 17th Floor**<br><br>**Discovery Cutoff: None Set**<br>**Pretrial Conference Date: None Set**<br>**Trial Date: None Set** |

## I. INTRODUCTION

In its March 12, 2021, Order on Defendants' Motion to Dismiss Consolidated Complaint, ECF # 143, Honorable Court Ordered the Parties, in "their Joint Case Management Statement, due March 30, 2021, [to] address what kind of coordination is appropriate with the Messieh suit and whether this suit should be transferred to the Southern District of New York." ECF # 143.

## I. STATEMENT OF THE RELEVANT FACTS

### A. Plaintiffs' Statement

Defendants deliberately designed their cryptocurrency derivatives exchange platform BitMEX ("BitMEX" or "BitMEX platform") to fraudulently induce unsuspecting victims to deposit their bitcoins with Defendants and then rob them blind of all their property. For example, Defendants used false and fraudulent promises of "1500% more liquidity than any other platform" and of "Bitcoin's most advanced trading platform" to lure unsuspecting traders into their trap. In reality, BitMEX was a rigged casino, set up to use sensitive insider information of its traders to automatically liquidate them and misappropriate their money, when it was particularly profitable for Defendants to do so.

Defendants operated an undisclosed Insider Trading Desk managed by Gregory Dwyer with at least three key employees, including Stuart Elkington and Nick Andrianov. This desk operated to continuously manipulate markets on the BitMEX platform and cause artificial prices for BitMEX derivatives, including derivatives of bitcoin and ether.

The operators of the Insider Trading Desk had what BitMEX internally referred to as "God Access" that allowed them to see all of the information of all trader accounts, including any hidden orders, leverage amounts and liquidation points for all orders and all open positions. They were also provided with automated systems, built by BitMEX, leveraging this highly sensitive insider information to enable and automate their manipulation that told them how the market was likely to move by assessing the impact of the hidden orders and liquidations, when they triggered. Thus, based on the sensitive insider information of BitMEX traders, the automated system was able to predict a potential profit for BitMEX from liquidating its traders, triggered by a potential manipulation.

The traders at the Insider Trading Desk had tools that showed them which liquidations would occur across the entirety of BitMEX's platform if prices moved in any given direction, which was used to predict profitability of potential liquidations.

Once predetermined predicted profitability was met, the manipulative trades were automatically executed by the BitMEX automated systems, resulting in trader liquidations. To prevent the conditions of the order book from changing between the profitability prediction time and actual liquidation time, BitMEX froze its servers, preventing traders from closing or changing their positions or placing new orders that could interfere with the manipulation, so that BitMEX would get the exact profit that was predicted.

The access to hidden information thus provided the operators of the Insider Trading Desk with a substantial and secret advantage over BitMEX customers. By analyzing the impact of hidden trade orders and liquidation prices, BitMEX Insider Trading Desk could determine when placing a large order would cause the liquidations and hidden orders to trigger. BitMEX could then assess whether these hidden orders would affect prices in a way that would cause liquidations resulting in a profit for BitMEX. BitMEX automated system that operated 24 hours a day, 7 days a week was configured to automatically act based on the results of the prediction by placing manipulative trades on BitMEX and "reference" exchanges, when BitMEX servers were frozen for its traders.

BitMEX used anonymous "burner" (e.g. @gmail.com) email addresses, as opposed to "official" BitMEX email addresses (e.g. @bitmex.com), to open trading accounts for its Insider Trading Desk with BitMEX exchange, to cover up the tracks of wrongdoing so the trading histories and illegal manipulation profits cannot be traced back to BitMEX. The "burner" accounts were periodically recycled and corresponding trading records deleted.

Financially ruined by Defendants' blatant fraud, some victimized traders were driven by Defendants into taking their own lives.  For example, Defendants fraudulently induced Chinese trader Hui Yi to enter into a large short position on BitMEX, which BitMEX's Insider Trading Desk subsequently deliberately liquidated using Hui Yi's confidential information, confiscating 2,000 bitcoins of Hui Yi clients' money.  The trader, who was the co-founder and CEO of

cryptocurrency market analysis platform BTE.TOP, died by suicide on June 5, 2019.

### B. Defendants' Statement

Because the Court has carefully considered and granted Defendants' motion to dismiss the Consolidated Complaint, ECF 143, Defendants recognize the Court is familiar with the nature of Plaintiffs' allegations to date, and Defendants will not impose further on the Court's time and resources to address Plaintiffs' characterization of claims yet to be filed.  It is sufficient here to note that Defendants deny any wrongdoing and anticipate moving to dismiss with prejudice Plaintiffs' forthcoming further amended complaint.

## II. COORDINATION WITH MESSIEH CLASS ACTION AND WHETHER THIS SUIT SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

### A. Plaintiffs' Statement

#### 1. Blackmail And Threats Used By Stephen Hibbard In Connection With Preparation Of This CMC Statement

During a phone call on March 22, 2021, Stephen Hibbard made extortionate ultimatum-type demands to receive a draft CMC statement by the evening on Friday, March 26, 2021, four days before the deadline, and threatened Plaintiffs' counsel with unspecified future sanctions or other very harmful adverse actions from Judge Orrick if Plaintiffs' counsel did not comply with his unilateral demands.[1]  On the other hand, in connection with a previous CMC statement filed on August 11, 2020, ECF #33, Stephen Hibbard himself failed to provide a first draft CMC statement to the opposing counsel until the morning of August 11, 2020, which was the day it was due, and just hours before the deadline, Exhibit A.

Stephen Hibbard's conduct constituted civil blackmail under California law.  Moreover, using blackmail-type threats to obtain a CMC statement draft four days before the deadline, while himself previously failing to provide a similar CMC statement draft to the opposing counsel until the morning on the day it was due, leaving Plaintiff's' counsel just hours to prepare, constituted highly uncivilized and unprofessional conduct in violation of Guidelines For Professional

---

[1] Plaintiffs' counsel had no other choice but to yield to the demands.

Conduct of the Northern District of California and Rule 3.10, Threatening Criminal, Administrative, or Disciplinary Charges, of Rules of Professional Conduct of the State Bar of California.

Pursuant to Rule 3.10, "A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." Stephen Hibbard used extortionate threats to "present criminal, administrative, or disciplinary charges" personally against Plaintiffs' counsel to obtain for himself substantially greater preparation time than he himself previously afforded Plaintiffs' counsel in connection with a similar filing. This clearly constitutes obtaining an "advantage in a civil dispute." Thus, Stephen Hibbard violated Rule 3.10.

This kind of uncivil, unethical and unprofessional behavior should never take place in the Northern District of California Bar.

2. Stephen Hibbard's Highly Improper And Defamatory Comments To Potential Plaintiffs' Co-Counsel Calculated To Deny The Victims Of His Clients Access To Justice

In January of 2021, Plaintiffs' counsel was in discussions with a well-known Bay Area attorney, and a former AUSA, regarding joining this litigation as a co-counsel. When the terms of the engagement were already agreed upon, the new attorney telephoned Stephen Hibbard to let him know he was joining the case as a co-counsel. During the phone call, Stephen Hibbard made highly improper, defamatory and unprofessional statements about Plaintiffs' counsel and told this lawyer not to join this case.

This unethical, unprofessional, defamatory, prejudicial and cowardly act had a very clear and corrupt purpose: to use unsavory trickery and gamesmanship to try to deny legal representation in this case to the innocent victims of the heinous acts committed by his clients, some of whom were driven by defendants' fraud into taking their own lives, Exhibit B. This despicable and cowardly conduct by Stephen Hibbard flies in the face of every principle that the State Bar of California was founded upon – universal access to justice.

3. Stephen Hibbard's History Of Prejudicial And Disingenuous Litigation Conduct In Related Cases

This is how another member of the Bar of this Court Noah Hagey described Stephen Hibbard's litigation playbook in a related litigation matter:

> [Stephen Hibbard] responded with the kitchen sink: an onslaught of motions, denials, pseudo meet-and-confers, and other legerdemain calculated to delay, frustrate, and overwhelm Plaintiffs with frivolous motion practice to run out the clock.
>
> [Stephen Hibbard] first attempted to remove the action to federal court in plain violation of the Federal diversity jurisdiction rules. Under threat of sanctions, [Mr. Hibbard] conceded to remand the action and to provide prompt access to discovery to resolve any further issues regarding venue or jurisdiction.
>
> [Stephen Hibbard] then moved to quash for lack of personal jurisdiction, despite the fact that their entire operation was engineered, structured and effectively run from their base of operations in the City of San Francisco. ([Stephen Hibbard] ultimately abandoned this motion after months of insisting that they could not be sued in this state.)

As if the above frivolous conduct was not enough, Stephen Hibbard made a mockery of Honorable Judge Schulman of San Francisco Superior Court, in a related civil matter, by repeatedly untruthfully telling the Judge, in connection with a motion to quash for lack of personal jurisdiction, that his clients served only non-U.S. customers, when, in truth and in fact, his clients had more than 85,000 U.S. customer accounts and more than $11 billion in U.S. customer deposits.  Moreover, Stephen Hibbard failed to withdraw or correct these blatant untruths even after he learned the true facts, which appeared in a criminal indictment of his clients.  This clearly establishes willfulness of Stephen Hibbard's conduct.

It should be noted that Stephen Hibbard does not even attempt to deny, refute or even address any of the above very serious allegations of his misconduct, which clearly establishes that he is unable to do so based on the facts and evidence.  In view of the above and other gross misconduct, some of which was detailed in Plaintiff counsel's letter to Judge Orrick of January 6, 2021, Plaintiffs' counsel respectfully requests a referral of Stephen Hibbard to the Standing Committee on Professional Conduct.  The basis for this is clearly overwhelming.

4. **In the Court's Sound Discretion, This Action May Be Transferred To The Southern District Of New York**

As Honorable Judge Orrick wisely suggested, this case may be transferred to the Southern District of New York, where a related class action brought by two premier New York law firms is currently pending ("Messieh Class Action").

**Avoiding Manifestly Unjust Result Of Rewarding Defendants For Their Own Evidence Suppression Misconduct**. Courts have long recognized that market manipulation cases are inherently difficult to plead without the benefit of discovery and relaxed the corresponding pleading standards. The reason is that such manipulation may be accomplished by just one actor sitting in front of a computer or even a fully automated software program executing in the cloud. There are no direct witnesses to such conduct and BitMEX's accounts are by design anonymous, further hindering detection.

This is exactly what is happening in the present case. The main issue that the Honorable Court had with the Plaintiffs' Consolidated Compliant is the absence of direct witnesses or direct documentary proof of the market manipulation by Defendants on specific days when Plaintiffs suffered their specific losses. There are three reasons for this and all three are created by Defendants themselves. First, as stated above, BitMEX accounts were by design anonymous. Therefore, trading data that is available publicly generally does not permit identification of actors behind specific market manipulation events. This hinders exactly pinpointing specific perpetrators. Second, as CFTC clearly stated in their Compliant, Defendants actively deleted and destroyed required records including trader identity information. Third, as former Defendants' employees revealed, BitMEX generally used anonymous "burner" (e.g. @gmail.com) email addresses, as opposed to "official" BitMEX email addresses (e.g. @bitmex.com), to open trading accounts for its own Insider Trading Desk with BitMEX exchange, in order to cover up the tracks of wrongdoing so the trading histories and illegal manipulation profits cannot be traced back to BitMEX. The "burner" accounts were periodically recycled and corresponding trading records deleted. Thus, Defendants made every possible effort to suppress evidence of their own wrongdoing in order to evade liability for their market manipulation. Not allowing this lawsuit to

move past the pleading stage, merely because of lack of direct documentary evidence that Defendants' themselves destroyed, like Defendants want the Honorable Court to do, would amount to unjustly rewarding Defendants for their own evidence destruction misconduct.[2]

In fact, account anonymity on BitMEX, as well as the associated lack of the required KYC and AML checks, was the exact reason Defendants were criminally charged by the DOJ with felony failing to prevent money laundering on BitMEX.  Defendants' counsel seeks the Honorable Court to reward Defendants for this blatant criminal violation of federal anti-money laundering laws by not allowing this case to move past the pleading stage under the pretense of absence of a direct evidence of market manipulation by Defendants on specific days.  However, the aforesaid lack of direct evidence was the natural and proximate result of the federal crimes committed by Defendants themselves in deliberately making the trading accounts on BitMEX anonymous and willfully failing to institute KYC and AML.  It cannot possibly be in the interests of justice to reward Defendants for their own federal crimes, which crimes involved deliberately making BitMEX accounts anonymous and willfully failing to use KYC and AML, and which also had a side effect of suppressing the evidence of Defendants' own market manipulation conduct.

On the other hand, very capable counsel in the Messieh Class Action obtained access to substantial additional information specifically pointing to Defendants as culprits, including employee and eyewitness accounts as well as extensive expert analysis.  Considering all the extensive evidence suppression efforts by Defendants, this is a very rare and very remarkable success.  This new evidence, summarized in the amended complaint in the Messieh Class Action filed on February 12, 2021, reveals that Defendants used highly automated and highly sophisticated software that they themselves developed to automatically manipulate markets on BitMEX and three reference exchanges used for price discovery in order to automatically liquidate victim traders when it was particularly profitable for Defendants to do so.  Accordingly, it would be certainly in the interests of justice to permit Plaintiffs in the instant action to leverage

---

[2] Courts have also held that if a defendant engages in deliberate evidence suppression, the pleading standards are further relaxed.  This is done in order to avoid rewarding defendants for their own evidence destruction misconduct.

that additional evidentiary information available in Southern District of New York, to move past the pleading stage, especially considering the inherent difficulties in pleading manipulation cases pre-discovery and difficulties in obtaining direct proof to satisfy the Honorable Court presented by Defendants' own well-documented evidence suppression efforts, which resulted in their federal criminal indictments. This can be achieved by consolidating the present case with the Messieh Class Action. This would also avoid manifestly unjust result of rewarding Defendants for their own evidence suppression misconduct, and associated federal money laundering-related crimes, which Defendants' counsel seeks to achieve against all logic here.

**Judicial Economy**. Clearly, judicial economy favors the transfer of the present action to Southern District of New York, as the transfer will save the valuable time of Judge Orrick that he would spend on adjudicating the future motions to dismiss, dispositive motions, discovery disputes as well as conducting trial. It will also save the time of the Ninth Circuit that it would spend on adjudicating any appeals. Therefore, the judicial time savings are very substantial and may favor the transfer.

**Certainty And Avoiding Inconsistent Results**. Second Circuit has a highly developed body of law on the market manipulation. In fact, the vast majority of the authority cited by defendants themselves originated in that Circuit. Therefore, transfer of the case to SDNY will promote certainty and avoid inconsistent results, which may be in the interests of justice.

**Access To Justice For Victims**. Moreover, involvement of other lawyers in the class action currently pending in the Southern District of New York will prevent or at least discourage Stephen Hibbard from using his highly abusive and prejudicial bullying and gamesmanship, such as the despicable defamation of Plaintiffs' counsel to a potential co-counsel, clearly aimed at denying the innocent victims of the heinous acts committed by his clients an access to justice. Therefore, interests of victims' access to justice may favor the transfer of this case to the Southern District of New York.

**Economy Of Parties' Resources**. The transfer and consolidation with the Messieh Class Action will save very substantial resources of all parties, including Defendants themselves. By the end of the discovery and trial preparation, the cost savings could run into millions of dollars

for all affected parties.  This also may favor transfer of this case to the Southern District of New York.

Defendants appear to frivolously and disingenuously question Honorable Judge Orrick's wisdom in suggesting the transfer.  This position is disingenuous at the very least.  The transfer and consolidation with Messieh Class Action would avoid rewarding Defendants for their own federal money laundering crimes, save very substantial resources for the Honorable Court, the Ninth Circuit Court of Appeal and all parties, including defendants themselves.  Therefore, there may be no legitimate economic reason to keep this case in the Northern District of California, except for the employment of Steven Hibbard's unsavory trickery and gamesmanship, such as the despicable defamation of Plaintiffs' counsel to a potential co-counsel, specifically aimed to cowardly deny an access to legal representation in this case to the innocent victims of the heinous acts committed by his clients.

As it became a tradition in this case, Defendants' counsel is crying crocodile tears about Plaintiffs' counsel alleged failure to notify the Court about the Messieh Class Action.  What Defendants' counsel disingenuously conceals from the Court is the fact that all Defendants' attorneys in the present case, except for Stephen Hibbard himself, are also Defendants' counsel in the Messieh Class Action and they completely failed to notify the Court about the Messieh Class Action.  Plaintiffs timely notified the Court about Messieh Class Action as soon as he read the amended complaint in Messieh, filed on February 12, 2021, which contained allegations very similar to the allegations made in this action, including cross-market manipulation.

Therefore, in the sound discretion of the Honorable Court, this action may be transferred to the Southern District of New York for further proceedings.[3]  In the event of transfer, Plaintiffs will dismiss, without prejudice, all the associated California state law claims.

---

[3] Because some of the Defendants in the Messieh Class Action are still contesting personal jurisdiction in Southern District of New York, in the event Honorable Court orders the transfer, Plaintiffs respectfully request the Honorable Court to stay the present action for six months, or until these jurisdictional challenges are resolved, whichever comes first, and then effectuate the transfer.

### 5. Alternatively, This Action May Be Stayed, Pending Resolution Of Dispositive Motions In Southern District Of New York Action

As stated above, unlike the Ninth Circuit, Second Circuit has a highly developed body of law on the market manipulation. In fact, the absolute vast majority of the authority cited by Defendants themselves originated in the Second Circuit.

Therefore, for the sake of certainty and avoiding inconsistent results and in the sound discretion of the Honorable Court, the present action may be stayed pending a resolution of the Motion to Dismiss in the Messieh Class Action, which is due on April 12, 2021. After that, both actions may proceed with a coordinated discovery, as outlined below. Certainty and avoiding inconsistent results are clearly in the interests of justice.

### 6. Discovery In The Present Action May Be Coordinated With Discovery In Southern District Of New York Action

Plaintiffs are also proposing to coordinate discovery in the present action with the Discovery in the Messieh Class Action. This will clearly result in substantial costs savings for all parties. Plaintiffs' counsel in this action is prepared to work with the Plaintiffs' counsel in the Messieh Class Action, whom he knows professionally, on joint discovery requests to Defendants, which would require only a single set of discovery responses from Defendants, resulting in elimination of redundancy and cost saving for all parties.

Finally, Defendants' counsel Stephen Hibbard, who previously demonstrably lied to multiple Judges and opposing counsel and employed just about every frivolous and dishonest legerdemain known to a man, now attempts to frivolously argue to the Honorable Court that "Plaintiffs' last minute suggestion—floated after reviewing a draft of Defendants' comments here—that, if only the case were transferred, Plaintiffs will dismiss (but without prejudice) their California claims demonstrates how weak, if not Rule 11 frivolous, such claims are and warrants this Court's consideration in connection with Defendants' further motion to dismiss an Amended Consolidated Complaint when filed," which is simply despicable. All Plaintiffs' counsel was trying to do is to simplify the issues for the Southern District of New York Court so that the Court is not burdened with interpretation of a foreign law. This effort should be applauded and not used

to frivolously argue that the corresponding claims are somehow meritless and violate Rule 11. It was Stephen Hibbard who continuously and with a sense of entitlement, blatantly and arrogantly lied to multiple Judges and opposing counsel and filed motions that misrepresented both law and fact. In fact, Stephen Hibbard filed two frivolous ex-parte applications in San Francisco Superior Court this last Friday, March 26, 2021, which were first ridiculed and then summarily denied by Judge Schulman, to whom Stephen Hibbard lied on multiple prior occasions.

**B.     Defendants' Statement**

Defendants trust the Court will disregard Plaintiffs' counsels' unprofessional, uncivil, and categorically false ad hominem attacks in Sections II.A.1-4 and 6. There is no place for such assertions in any Case Management Conference statement, let alone in a submission responsive to specific questions posed by the Court. If, however, the Court determines any of Plaintiffs' statements in these sections warrant attention, Defendants welcome the opportunity to refute them separately in an appropriate forum.

The Court requested the parties to address in this Case Management Conference Statement two specific questions: "what kind of coordination is appropriate and whether this suit should be transferred to the Southern District of New York" in light of *Messieh v. HDR Global Trading Limited*, 1:20-cv-03232-ALC (S.D.N.Y. Apr. 23, 2020). Much of Plaintiffs' statement is extraneous, unsupported commentary—which does not respond to the Court's questions and warrants no response here by Defendants.

To address the Court's questions, first, as to coordination, Defendants respect that coordination is an important judicial tool. But Defendants believe it is premature to assess what form of coordination, if any, might be appropriate. To date, the Court has consolidated three actions into this suit, granted an amendment that mooted Defendants' first motion to dismiss, granted Defendants' second motion to dismiss, and stayed discovery. It may be that this Court will dismiss a further complaint with prejudice (what would be BMA's fifth amended complaint), and it may be that Judge Carter in the Southern District of New York will do likewise, although briefing on a first motion to dismiss in *Messieh* has not yet commenced. Accordingly, Defendants believe questions of coordination should be deferred until it is known whether both actions will

proceed and, if so, what claims remain.

Second, Defendants do not believe that transfer of this action to the Southern District of New York would be in the interest of justice. Importantly, this Court has already invested substantial resources in assessing Plaintiffs' Consolidated Complaint and ruling on Defendants' motion to dismiss. The claims presented here go far beyond the Commodity Exchange Act ("CEA") claims asserted in *Messieh*. Plaintiffs asserted 17 causes of action in the consolidated complaint, including under RICO, California's Unfair Competition Law, the California Penal Code, and California common law. Plaintiff's counsel has also filed four actions in California state court, including one pursuing the same market manipulation theories alleged here. After the state court sustained Defendants' demurrer in that action, *see* Feb. 25, 2021 Order in *Kanyshev v. HDR Global Trading Limited*, No. CGC-20-584483 (S.F. Super. Ct.), Plaintiffs amended their complaint to add claims under California's Consumer Legal Remedies Act and False Advertising Law. Defendants anticipate Plaintiffs will attempt to plead similar claims in this action even if Plaintiffs now intend to amend their complaint by cutting and pasting allegations from the *Messieh* complaint. Even if additional CEA claims are added, Defendants expect this case will continue to present RICO and California law claims. This Court, therefore, is better equipped to address the full scope of Plaintiffs' claims, including under California law, and has already devoted substantial resources to familiarizing itself with those claims. Thus, Defendants do not believe transfer would be warranted since this action is both far broader and more advanced than the *Messieh* action, where the first motion to dismiss has yet to be filed.

Notably, Plaintiffs' last minute suggestion—floated after reviewing a draft of Defendants' comments here—that, if only the case were transferred, Plaintiffs will dismiss (but without prejudice) their California claims demonstrates how weak, if not Rule 11 frivolous, such claims are and warrants this Court's consideration in connection with Defendants' further motion to dismiss an Amended Consolidated Complaint when filed. Moreover, Plaintiffs ignore entirely their sprawling RICO claims, to which there are no counterparts in the *Messieh* action, and thus no potential for efficiencies to be gained by transfer to New York. Rather, transfer would substantially broaden the scope of a proceeding in New York that plaintiffs' counsel in New York

have already separated from other federal claims—under the securities laws—filed against Defendants in that forum. *See Messieh v. HDR Global Trading Limited*, 1:20-cv-03232-ALC, Dkt. 44 (S.D.N.Y. Apr. 23, 2020) (urging the court not to coordinate the *Messieh* action with the parallel *Williams* action in which the *Messieh* plaintiffs' claims were initially brought).

Further, a transfer to New York is not in the interests of the parties or witnesses. None of the Parties here are present in or have offices in New York. Moreover, while Plaintiffs contend there are numerous party and non-party witnesses in California (which Defendants dispute) and in Asia, there are no material witnesses in New York. Plaintiffs' counsel's current enthusiasm for transfer also raises the question of whether Plaintiffs' counsel actually hopes to avoid further judgment by this Court. Plaintiffs' counsel was aware of the *Messieh* class action when he filed his initial complaint in this Court, when he added additional plaintiffs to his complaint, and when he filed complaints in this Court on behalf of still more plaintiffs who were then consolidated into this action. Until this Court heard argument on Defendants' motion to dismiss, Plaintiffs did not even notify the Court of the proceedings in New York (which Defendants did not consider related). Moreover, until this Court granted Defendants' motion to dismiss, Plaintiffs did not express any interest in transfer and, as Plaintiffs make plain here, they expect and intend to try their claims separately even if transferred to New York. Finally, this Court has exercised jurisdiction over all parties, but substantial questions are yet to be addressed as to whether the Southern District of New York has jurisdiction over all of the Defendants in this action, which itself poses another barrier to transfer. Plaintiffs' suggestion that this Court should stay this action for at least six months until jurisdiction questions in *Messieh* are settled would needlessly delay resolution of these claims and unduly prejudice Defendants.

| | | |
|---|---|---|
| 1 | DATED: March 30, 2021 | Respectfully submitted, |
| 2 | | CONSENSUS LAW |
| 4 | | By: */s/ Pavel I. Pogodin, Ph.D.* <br>      Pavel I. Pogodin, Ph.D. |
| 5-9 | | 5245 Ave. Isla Verde<br>Suite 302<br>Carolina, PR 00979<br>United States of America<br>Telephone:  (650) 469-3750<br>Facsimile:  (650) 472-8961<br>Email:  pp@consensuslaw.io<br>Counsel for Plaintiffs |
| 11 | | JONES DAY |
| 13 | | By: */s/ Stephen D. Hibbard* <br>      Stephen D. Hibbard |
| 15 | | Counsel for Defendants<br>HDR GLOBAL TRADING LIMITED and ABS GLOBAL TRADING LIMITED |
| 17 | | AKIN GUMP STRAUSS HAUER & FELD LLP |
| 19 | | By: */s/ Peter I. Altman* <br>      Peter I. Altman |
| 20-21 | | Counsel for Defendant<br>ARTHUR HAYES |
| 22 | | BOIES SCHILLER FLEXNER LLP |
| 24 | | By: */s/ Edward H. Takashima* <br>      Edward H. Takashima |
| 26 | | Counsel for Defendant<br>BEN DELO |

1
2      LATHAM & WATKINS, LLP
3
4      By: */s/ Douglas K. Yatter*
              Douglas K. Yatter
5             Matthew Rawlinson

6      Counsel for Defendants
       SAMUEL REED, AGATA MARIA REED,
7      BARBARA A. REED, TRACE REED, GRAPE
       PARK LLC, MARK SWEEP LLC
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 30, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice List.

By: */s/ Pavel I. Pogodin, Ph.D.*
Pavel I. Pogodin, Ph.D.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS