Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

Attorneys for Plaintiffs
BMA LLC, Yaroslav Kolchin,
Vitaly Dubinin, Dmitry Dolgov
and Păun Gabriel-Razvan

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov and Păun Gabriel-Razvan,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>Defendants. | Case No. 3:20-cv-3345-WHO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO LIFT DISCOVERY STAY IN VIEW OF NEW FACTS AND OVERWHELMING "SMOKING GUN" EVIDENCE OF MARKET MANIPULATION AND MONEY LAUNDERING CONSPIRACY BETWEEN DEFENDANTS, A REED FAMILY MEMBER AND PROLIFIC AND BRAZEN MARKET MANIPULATOR BEN AABTC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hon. William H. Orrick**<br>**Date: July 14, 2021**<br>**Time: 2:00 PM**<br>**Crtrm.: 2, 17th Floor**<br><br>**Discovery Cutoff: None Set**<br>**Pretrial Conference Date: None Set**<br>**Trial Date: None Set** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that at 2:00 p.m. on July 14, 2021, before the Honorable William H. Orrick, in Courtroom 2, 17th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov and Păun Gabriel-Razvan will and hereby do move for a lift of a current stay discovery in view of both ample and detailed facts and overwhelming documentary evidence, including photographic evidence, screenshots and disinterested witness statements all pointing to Defendants and their co-conspirators as the culprits behind market manipulation.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support of this Motion, the Declaration of Pavel I. Pogodin, Ph.D. and the Proposed Order filed concurrently herewith, the pleadings and records on file in this action, and upon such other matters as may be presented to the Court at or prior to the hearing on this Motion.

## RELIEF REQUESTED

Discovery stay that is currently in place should be lifted and normal discovery process pursuant to Federal Rule of Civil Procedure 26 should be allowed to proceed.

Dated: June 8, 2021                                        Respectfully submitted,

By: _____
         Pavel I. Pogodin

CONSENSUS LAW
Pavel I. Pogodin, Ph.D., Esq.
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io
Attorneys for Plaintiffs
BMA LLC, Yaroslav Kolchin,
Vitaly Dubinin, Dmitry Dolgov
and Păun Gabriel-Razvan

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF THE ISSUES TO BE DECIDED ............................................... 2

III. STATEMENT OF THE NEW FACTS AND EVIDENCE ...................................... 2

IV. ARGUMENT & AUTHORITIES ........................................................................... 11

A. Legal Standard ................................................................................................. 11

B. Any Future Defendants' Motion To Dismiss Will Not

Be Dispositive Of The Entire Case ................................................................. 12

C. Continued Discovery Stay Rewards Defendants For Exactly The Conduct For Which

They Were Criminally Charged By The DOJ .................................................. 15

D. Defendants' Insider Trading On Their Own Exchange Is Fundamentally Different From

Manipulative Trading In Other Market Manipulation Cases ........................... 16

E. Contrary To Defendants' Baseless Contentions, Defendants Had A Legal Duty To

Disclose Omitted Material Facts To Plaintiffs ................................................ 16

F. Defendants' Arguments That Rely On Inapplicable Heightened Pleading Standard Of

PSLRA Are Without Merit ............................................................................... 19

G. Current Discovery Stay Must Be Lifted Also Because Amended Complaint Alleges

Viable Causes Of Action For Violation Of California Consumer Protection Statutes ............. 21

H. Current Discovery Stay Must Be Lifted Also Because Relevant Evidence

In Possession Of Third Parties May Be Lost Or Destroyed ........................... 23

V. CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 2

*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039 .......................................................... 21

*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1379 ................ 21

*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217 .................................................... 21

*Gibbs v. Carson*, No. C-13-0860, 2014 WL172187 (N.D. Cal. Jan. 15, 2014) .......................... 12

*Grae v. Corrections Corporation of America*, No. 3:16-cv-2267 (M.D. Tenn. Jul. 31, 2018) ..... 20

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39 (N.D. Cal. 1990) ...................................... 11

*Hamilton v. Rhoads*, No. C 11-0227 RMW (PR), 2011 WL 5085504

(N.D. Cal. Oct. 25, 2011) ................................................................................ 12

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing*, 295 F.Supp.3d 927 (2018) ...................... 20, 21

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 ............................................. 21

*LiMandri v. Judkins* (1997) 52 Cal. App. 4th 326 ................................................ 18, 19

*Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) ............................................. 11

*Messieh v. HDR Global Trading Limited*, 1:20-cv-03232-ALC

(S.D.N.Y. Apr. 23, 2020) ................................................................................ 19

*Nexus 6P Products Liability Litigation*. Case No. 17-cv-02185-BLF

(N.D. Cal., June 19, 2018) ............................................................................... 15

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349

(N.D. Cal. 2003) .......................................................................................... 12

*Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019) ............................ 19

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) .................................................. 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................ 20

*Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597 (D. Nev. 2011) ........................................ 11

*Wenger v. Monroe*, 282 F.3d 1068 (9th Cir. 2002) .................................................... 11

*Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981) ........................................................................ 11

**STATUTES**

18 U. S.C. § 1960 ........................................................................................................................... 9

18 U.S.C. § 1343 ...................................................................................................................... 9, 11

18 U.S.C. § 1956 ...................................................................................................................... 9, 11

18 U.S.C. § 1957 ...................................................................................................................... 9, 11

18 U.S.C. § 2314 ...................................................................................................................... 9, 11

7 U.S.C. § 9 ....................................................................................................................... 9, 11, 19

Cal. Civ. Code § 1710 ................................................................................................................. 17

Civil L.R. 1-2 ........................................................................................................................ 14, 24

Fed. R. Civ. P. 1 .................................................................................................................... 14, 24

Fed. R. Civ. P. 26 ........................................................................................................................ 11

Fed. R. Civ. P. 9 .......................................................................................................................... 20

Fed. R. Civ. Pro. 12 .................................................................................................................... 11

Rule 180.1, 17 C.F.R. § 180.1 (2019) .......................................................................... 9, 11, 17, 19

## I.    INTRODUCTION

On November 10, 2020, the Court stayed discovery in this action "until further order of the Court at or after the hearing of subsequent motions to dismiss."  The Court conducted a hearing on Defendants' motion to dismiss on February 3, 2021.  Pursuant to leave granted by the Court, Plaintiffs filed an Amended Consolidated Complaint on May 5, 2021 and then, pursuant to a stipulation, a Second Amended Consolidated Complaint ("Amend. Compl.") on June 5, 2021.  As directed by the Court, the Second Amended Consolidated Complaint contains both ample and detailed facts and overwhelming documentary evidence, including photographic evidence, screenshots and disinterested witness statements all pointing to Defendants and their co-conspirators as the culprits behind market manipulation.  This new information and evidence is, in the words of Honorable Judge Orrick, the "connective tissue" directly linking Defendants to the market manipulation and Plaintiffs' monetary losses.

The main issue that the Honorable Court had with the Plaintiffs' case is the absence of direct witnesses or direct documentary proof of the market manipulation by Defendants *on specific days* when Plaintiffs suffered their specific losses.  As explained in detail below, there are multiple reasons for this result and all of them are the intended consequence of Defendants' own active and carefully planned evidence suppression efforts.

Specifically, Defendants actively concealed the true facts related to wrongdoing perpetrated by their Insider Trading Desk and their co-conspirators, who continuously manipulated prices on BitMEX and "reference" spot exchanges.  Amend. Compl. ¶¶ 4-9, 269-317.  In addition to deliberately making all BitMEX accounts anonymous, Amend. Compl. ¶¶ 360, 361, which hindered pinpointing the Insider Trading Desk and their co-conspirators as the culprits behind the manipulative trading, and actively deleting critical records, including trader identity information, Amend. Compl. Ex. 5, ¶ 49, BitMEX deliberately used anonymous "burner" (e.g. @gmail.com) email addresses, as opposed to "official" BitMEX email addresses (e.g. @bitmex.com), to open trading accounts for their Insider Trading Desk with the BitMEX platform.  Amend. Compl. ¶ 9.  This was done to cover up any remaining tracks of wrongdoing, so that the trading histories and illegal manipulation profits of the Insider Trading Desk could not be traced back to the BitMEX.  The

"burner" accounts were periodically recycled and corresponding trading records deleted. Amend. Compl. ¶ 9. Finally, the market manipulation process used by Defendants was highly automated and was automatically executed, with a minimal human participation, using special automated software tools internally developed by BitMEX. Amend. Compl. ¶¶ 5, 273. This further reduced the chances of Defendants' manipulative conduct to be directly witnessed by third party witnesses.

However, after the Court's ruling on Defendants' motion to dismiss and despite being completely deprived of any opportunity for discovery, Plaintiffs have developed both ample and detailed facts and overwhelming documentary evidence, including photographic evidence, screenshots and witness statements all pointing to Defendants and their co-conspirators as the culprits behind market manipulation. These new facts and evidence completely obviate Honorable Court's concerns over plausibility issues and, therefore, Plaintiffs respectfully request the Court that the current discovery stay be lifted immediately. In other words, the new information clearly "nudged [Plaintiffs'] claims … across the line from conceivable to plausible" and the issue of plausibility has been finally laid to rest. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

## II.     STATEMENT OF THE ISSUES TO BE DECIDED

Whether Plaintiffs are entitled to the lift of the current discovery stay in view of both ample and detailed facts and overwhelming documentary evidence, including photographic evidence, screenshots and disinterested witness statements all pointing to Defendants and their co-conspirators as the culprits behind market manipulation?

## III.     STATEMENT OF THE NEW FACTS AND EVIDENCE

Defendant Hayes and his accomplices Ben Delo ("Delo") and Samuel Reed ("Reed") are notorious and habitual fraudsters, who have been criminally charged with felony money laundering related offenses by the U.S. Department of Justice ("DOJ") and who are currently released on bail pending their criminal felony trial. There is also a second ongoing DOJ criminal investigation against Defendants, which is likely to result in additional felony charges. Amend. Compl. Ex. 4 and 5 are true and correct copies of the DOJ criminal indictment and Commodity Futures

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

Trading Commission ("CFTC") enforcement action against Defendants and the corresponding announcements. Defendant Hayes publicly admitted to bribery of foreign government officials and bank fraud and even expressed pride in his actions, Amend. Compl. Ex. 10, 11. Amend. Compl. Ex. 17 and 18 are true and correct copies of two sworn declarations by two of the defrauded victims of the Defendants, Frank Amato and Elfio Guido Capone, attesting, under oath, how Defendants defrauded them out of millions of dollars. Amend. Compl. ¶ 2.

Defendants deliberately designed and operated their cryptocurrency derivatives exchange platform BitMEX ("BitMEX" or "BitMEX platform") to fraudulently induce unsuspecting victims to deposit their bitcoins with Defendants and then rob them blind of all their property, Amend. Compl. Ex. 1. In reality, BitMEX was a rigged casino, set up to use sensitive insider information of its traders to automatically liquidate them and misappropriate their money, when it was particularly profitable for Defendants to do so. To entice their victims to trade on the rigged BitMEX platform and pay trading commissions to Defendants, Defendants engaged in fraudulent solicitation using a laundry list of material misrepresentations[1], half-truths and omissions, falsely describing BitMEX as "Bitcoin's most advanced trading platform" offering "1500% more Bitcoin / USD Liquidity than any other platform." Plaintiffs justifiably relied on these representations made by Defendants, which all turned out to be materially false, and lost their bitcoins as the result of this reasonable reliance, Amend. Compl. ¶¶ 3, 525-551.

In reality, promises of "1500% more Bitcoin / USD Liquidity than any other platform" turned out to be materially false, as BitMEX had liquidity below competing exchanges. Amend. Compl. ¶ 527. Moreover, Defendants operated an undisclosed Insider Trading Desk managed by Gregory Dwyer with at least three key employees, including Stuart Elkington and Nick Andrianov. This desk operated to continuously manipulate markets on the BitMEX platform and cause

---

[1] Among other, Defendants used a fraudulent solicitation that was similar to the one in *SEC v. Kristijan Krstic et al.*, Case No. 1:21-cv-00529 (E.D.N.Y. 2021), where SEC charged fraudsters with claiming to be "the largest Bitcoin exchange in euro volume and liquidity." In the present case, Defendants fraudulently claimed to provide "1500% More Bitcoin/USD liquidity than any other platform," which is even more factual and capable of misleading consumers. Defendants abruptly ceased to use this fraudulent solicitation only in March of 2021, after being sued for fraud.

artificial prices for BitMEX derivatives, including derivatives of bitcoin and ether, for the benefit of BitMEX and to the detriment of traders, Amend. Compl. ¶ 4.

The operators of the Insider Trading Desk had what BitMEX internally referred to as "God Access" that allowed them to see all of the information of all trader accounts, including any hidden orders, leverage amounts and liquidation points for all orders and all open positions. They were also provided with automated systems, built by BitMEX, leveraging this highly sensitive insider information to enable and automate their manipulation that told them how the market was likely to move by assessing the impact of the hidden orders and liquidations, when they triggered. Thus, based on the sensitive insider information of BitMEX traders, the automated system was able to predict a potential profit for BitMEX from liquidating its traders, triggered by a potential manipulation. Amend. Compl. ¶ 5.

The traders at the Insider Trading Desk had tools that showed them which liquidations would occur across the entirety of BitMEX's platform if prices moved in any given direction, which was used to predict profitability of potential liquidations. Once predetermined predicted profitability was met, the manipulative trades were automatically executed by the BitMEX automated systems, resulting in trader liquidations. To prevent the conditions of the order book from changing between the profitability prediction time and actual liquidation time, BitMEX froze its servers, preventing traders from closing or changing their positions or placing new orders that could interfere with the manipulation, so that BitMEX would get the exact profit that was predicted. Amend. Compl. ¶¶ 5-7.

The access to hidden information thus provided the operators of the Insider Trading Desk with a substantial and secret advantage over BitMEX customers. By analyzing the impact of hidden trade orders and liquidation prices, BitMEX Insider Trading Desk could determine when placing a large order would cause the liquidations and hidden orders to trigger. BitMEX could then assess whether these hidden orders would affect prices in a way that would cause liquidations resulting in a profit for BitMEX. BitMEX automated system that operated 24 hours a day, 7 days a week was configured to automatically act based on the results of the prediction by placing manipulative trades on BitMEX and "reference" exchanges, when BitMEX servers were frozen

for its traders.  Amend. Compl. ¶ 8.

Defendants actively concealed the facts related to the wrongdoing perpetrated by their In-
sider Trading Desk.  In addition to deliberately making all BitMEX accounts anonymous, Amend.
Compl. ¶¶ 360, 361, which hindered pinpointing the Insider Trading Desk as the culprits behind
the manipulative trading, and actively deleting critical records, including trader identity infor-
mation, Amend. Compl. Ex. 2, ¶ 49, BitMEX deliberately used anonymous "burner" (e.g.
@gmail.com) email addresses, as opposed to "official" BitMEX email addresses (e.g.
@bitmex.com), to open trading accounts for their Insider Trading Desk with the BitMEX plat-
form.  Amend. Compl. ¶ 9.  This was done to cover up any remaining tracks of wrongdoing, so
that the trading histories and illegal manipulation profits of the Insider Trading Desk could not be
traced back to the BitMEX.  The "burner" accounts were periodically recycled and corresponding
trading records deleted.  Amend. Compl. ¶ 9.  Finally, the market manipulation process used by
Defendants was highly automated and was automatically executed, with a minimal human partic-
ipation, using special automated software tools internally developed by BitMEX.  Amend.
Compl. ¶¶ 5, 273.  This further reduced the chances of Defendants' manipulative conduct to be
directly witnessed by third party witnesses.

Financially ruined by Defendants' blatant fraud, some victimized traders were driven by
Defendants into taking their own lives.  For example, Defendants fraudulently induced Chinese
trader Hui Yi to enter into a large short position on BitMEX, which BitMEX's Insider Trading
Desk subsequently deliberately liquidated using Hui Yi's confidential information, confiscating
2,000 bitcoins of Hui Yi clients' money.  The trader, who was the co-founder and CEO of crypto-
currency market analysis platform BTE.TOP, died by suicide on June 5, 2019.  Amend. Compl. ¶
10.

Being keenly aware of the CFTC and DOJ civil and criminal investigations and imminent-
ly forthcoming civil and criminal charges, and while preparing to go on a lam from the U.S. au-
thorities, Defendant Hayes as well as his accomplices Delo and Reed siphoned about
$440,308,400 of proceeds of various nefarious activities that took place on the BitMEX platform,
from accounts of Defendant HDR, to their personal accounts and accounts of their associates and

relatives. The last funds were siphoned just two months before the criminal indictments were un-

sealed on October 1, 2020. Amend. Compl. ¶¶ 24-26.

Below is an actual photograph, inadvertently released in May of 2020, by Defendant

Hayes himself, depicting a meeting of co-conspirators in furtherance of the Racketeering Con-



spiracy orchestrated by Defendants as alleged in the Amend. Compl. ¶¶ 345-349. All individual

Defendants were present in the photographed meeting of co-conspirators of the Racketeering

Conspiracy and their faces are marked with red ovals in the above photograph. As shown in the

photograph, Agata Reed was also present during the meeting of co-conspirators of the Racketeer-

ing Conspiracy and took part in the Racketeering Conspiracy. Photographed sitting directly

across the table from Defendants Hayes and Delo and next to Agata Reed was co-conspirator

named Ben who operated under an alias ActualAdviceBTC, and who will be referred to herein as

Ben Aabtc. Co-conspirator Ben Aabtc is marked in the above photograph with a red arrow. Ben

Aabtc was a former J.P. Morgan trader who used the alias ActualAdviceBTC or AABTC because

he was under a non-competition agreement with J.P. Morgan and wanted to hide his true identity

from his former employer. Ben Aabtc was universally known in the cryptocurrency industry as a

brazen and prolific market manipulator who specialized in orchestrating coordinated artificial

bitcoin and altcoin "pumps and dumps." Numerous cryptocurrency traders witnessed firsthand

and posted numerous eyewitness accounts of his brazenly lawless activities. Amend. Compl. ¶¶

466, 473.



**Romano** @RNR_0 · Apr 30, 2020

In the end surely BTC is programmed to go up. But price can be manipulated

I was in **Thailand**, sitting in **@ActualAdviceBTC** room and actually see him **pump** BTC up several hundred dollars, liquidating bears and laughing

All that while knowing he had to attend a funeral in few hours

💬 4          ↻ 4          ♡ 47          ↑

As alleged in the Second Amended Consolidated Complaint, one of the purposes of the Racketeering Conspiracy was to manipulate bitcoin spot prices on "reference" spot exchanges Kraken, BiStamp and Coinbase Pro in order to profit from artificial prices through very large (tens of millions of dollars) derivatives perpetual swap positions on BitMEX using anonymous trading "winner" accounts provided by Defendants-co-conspirators Hayes, Delo and Reed through the BitMEX platform.  Amend. Compl. ¶ 349.

Shortly after the above meeting of the co-conspirators took place and the above photograph was taken, and in furtherance of the Racketeering Conspiracy, Defendants-co-conspirators Hayes, Delo and Reed opened multiple oversized $30,000,000 Perpetual Swap positions in an anonymous trading "winner" account set up by them on their BitMEX platform for their co-conspirator Ben Aabtc.   Ben Aabtc himself documented these positions having been opened for



him on BitMEX by his Defendants-co-conspirators Hayes, Delo and Reed by taking screenshots thereof. These enormous size Perpetual Swap positions were opened by Defendants-co-conspirators Hayes, Delo and Reed in furtherance of the Racketeering Conspiracy and with the specific purpose of reaping the illegal market manipulation gains from artificially "pumping" and then "dumping" the bitcoin spot price on "reference" exchanges by their co-conspirator Ben Aabtc. Furthermore, these $30,000,000 Perpetual Swap positions were opened by co-conspirators in disregard of all BitMEX position limits and all limits imposed by CFTC regulations and its size was specifically calculated by co-conspirators to make the market manipulation highly profitable. Amend. Compl. ¶¶ 466-473.

As well-documented by multiple witnesses in the industry and Ben Aabtc himself, in furtherance of the Racketeering Conspiracy, Ben Aabtc subsequently proceeded to artificially



"pump" bitcoin spot markets on "reference" spot exchanges used by BitMEX for price discovery "with all the force he had" from about $6,800 on April 8, 2018 to about $9,948 on May 4, 2018,



### ← **Thread**

**TheBoot**
@TheBootMex

RIP @ActualAdviceBTC . You are always in my memory- back in April 2018 I was ultra rekt left with only 0.6btc followed by best winning streak ever – went from 0.6 to 60btc in 10 days. At the time aabtc was trying to pump the market with all the force he had. I bought in and...

3:21 PM · May 19, 2020 · Twitter Web App

in order to create artificially high bitcoin spot prices and profit from the aforesaid anonymous $30,000,000 Perpetual Swap positions on BitMEX, which used the bitcoin spot prices as a reference, while being assisted, aided, abetted and encouraged by Defendants-co-conspirators Hayes, Delo and Reed.  Amend. Compl. ¶¶ 466-473.  The fact that, in furtherance of the Racketeering Conspiracy, Ben Aabtc "pumped" bitcoin market price from $6,800 to about $9,948 on "reference" spot exchanges while maintaining open $30,000,000 Perpetual Swap positions in his winner account on BitMEX, opened for him by Defendants-co-conspirators Hayes, Delo and Reed, is well documented, including by Ben Aabtc himself, and this is a classic example of cross-market manipulation in violation of 18 U.S.C. § 1343, 18 U.S.C. § 1956, 18 U.S.C. § 1957, 18 U. S.C. § 1960(a), 18 U.S.C. § 2314, 7 U.S.C. § 9(1) and Rule 180.1, 17 C.F.R. § 180.1(a) (2019).  One of the witnesses called this artificial price "pump" while maintaining $30,000,000 open position on BitMEX to capture the illegal gains to be "heroic."  Amend. Compl. ¶¶ 466-473.

Ben Aabtc himself "documented position sizes upwards of $30 million on BitMEX," during his artificial "pump" manipulation of the spot bitcoin prices on "reference" exchanges.  After this manipulation was successful, Ben Aabtc pocketed at least 534.3253 bitcoins in illegal cross-market manipulation profits, now valued at over $21,373,012.  Amend. Compl. ¶ 470.



In furtherance of the Racketeering Conspiracy, Defendants-co-conspirators Hayes, Delo and Reed listed their co-conspirator Ben Aabtc on their Leaderboard, with full knowledge of the illegal nature of his activities on BitMEX and "reference" exchanges and illegal source of the

## Top 25 Traders by Notional

| Rank | Name | Profit | Is Real Name |
|---|---|---|---|
| 1 | Hot-Relic-Fancier | 4,196.9329 XBT | ✖ |
| 2 | Heavy-Autumn-Wolf | 3,596.7630 XBT | ✖ |
| 3 | Green-Sky-Whip | 1,101.4551 XBT | ✖ |
| 4 | Cream-White-Ox | 906.6117 XBT | ✖ |
| 5 | Thorn-Moor-Braid | 878.7421 XBT | ✖ |
| 6 | Xzcxcxz | 828.6553 XBT | ✔ |
| 7 | Silent-Plume-Otter | 669.8737 XBT | ✖ |
| 8 | Truth-Bitter-Runner | 586.1175 XBT | ✖ |
| 9 | Almond-Cookie-Soarer | 541.1664 XBT | ✖ |
| 10 | aabtc | 534.3252 XBT | ✔ |
| 11 | Splash-Petal-Jackal | 510.5438 XBT | ✖ |
| 12 | Coffee-Brown-Thorn | 481.2309 XBT | ✖ |
| 13 | ahhereLIO | 461.2755 XBT | ✔ |
| 14 | Taylor | 452.7239 XBT | ✖ |
| 15 | Cedar-Spice-Fisher | 407.6904 XBT | ✖ |
| 16 | Rag-Equinox-Eater | 403.1834 XBT | ✖ |
| 17 | Paint-Mercury-Face | 384.9927 XBT | ✖ |
| 18 | Prism-Fate-Slicer | 370.1898 XBT | ✖ |
| 19 | daniel3 | 345.6583 XBT | ✔ |
| 20 | Marble-Hollow-Seeker | 336.6878 XBT | ✖ |
| 21 | Navy-Midnight-Servant | 335.6627 XBT | ✖ |
| 22 | Quick-Grove-Mind | 316.1076 XBT | ✖ |
| 23 | Silent-Hurricane-Guardian | 311.5210 XBT | ✖ |
| 24 | Grove-Cosmic-Bite | 307.4127 XBT | ✖ |
| 25 | Neon-Marsh-Raver | 304.3723 XBT | ✖ |

funds involved in the "winnings" from the aforesaid documented cross-market manipulation activity. This was done with the purpose of encouraging other traders to follow advice of Ben Aabtc to further facilitate manipulative activity on BitMEX by orchestrating coordinated "pumps and dumps" involving Ben Aabtc and other traders following Ben Aabtc "trading advice". Amend. Compl. ¶ 471.

In furtherance of the Racketeering Conspiracy, Defendants-co-conspirators Hayes, Delo and Reed knowingly and willfully charged trading commissions on the proceeds of the above illegal cross-market manipulation and transferred the proceeds of the above illegal cross-market manipulation from BitMEX "winner" bitcoin wallet to the bitcoin wallet of Ben Aabtc and their own bitcoin wallets all in violation of 18 U.S.C. § 1343, 18 U.S.C. § 1956, 18 U.S.C. § 1957, 18 U.S.C. § 1960(a), 18 U.S.C. § 2314, 7 U.S.C. § 9(1) and Rule 180.1, 17 C.F.R. § 180.1(a) (2019). Moreover, Defendants-co-conspirators Hayes, Delo and Reed knowingly and willfully aided and abetted Ben Aabtc's market manipulation in violation of the 7 U.S.C. § 9(1) and Rule 180.1, 17 C.F.R. § 180.1(a) (2019). Amend. Compl. ¶ 472.

## IV. ARGUMENT & AUTHORITIES

### A. Legal Standard

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011). "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). However, a district court does have "wide discretion in controlling discovery," *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and that discretion extends to staying discovery upon a showing of "good cause," see Fed. R. Civ. P. 26(c)(1)(A). Good cause for staying discovery may exist when the district court is "'convinced that the plaintiff will be unable to state a claim for relief.'" *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)); see also *Tradebay*, 278 F.R.D. at 601 ("Staying discovery when a court

is convinced that the plaintiff will be unable to state a claim for relief furthers the goal of efficiency for the court and the litigants."). Under Ninth Circuit law, "[a] party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray*, 133 F.R.D. at 40 (citation omitted).

Courts in Northern District of California have applied a two-pronged test to determine whether discovery should be stayed pending resolution of a dispositive motion. See, e.g., *Gibbs v. Carson*, No. C-13-0860, 2014 WL172187, at *3 (N.D. Cal. Jan. 15, 2014); *Hamilton v. Rhoads*, No. C 11-0227 RMW (PR), 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011); *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 351 (N.D. Cal. 2003). First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. *Pac. Lumber Co.*, 220 F.R.D. at 351 (citation omitted). Second, the court must determine whether the pending motion can be decided absent discovery. *Id.* at 352 (citation omitted). "If the Court answers these two questions in the affirmative, a protective order may issue. However, if either prong of this test is not established, discovery proceeds." *Id.* In applying this two-factor test, the court must take a "preliminary peek" at the merits of the pending dispositive motion to assess whether a stay is warranted. *Tradebay*, 278 F.R.D. at 602.

## B. Any Future Defendants' Motion To Dismiss Will Not Be Dispositive Of The Entire Case

Turning to the first prong of the two-pronged test, pending motion must be potentially dispositive of the entire case. At this stage, there is not even a motion to dismiss pending and even if Defendants filed one, there is absolutely no chance for it to meet this prong. The Second Amended Consolidated Complaint alleges 33 causes of action, including multiple causes of action which are based on patently false statements that Defendants undeniably made. For example, there is no reasonable dispute that Defendants represented to Plaintiffs that BitMEX provided "1500% more Bitcoin / USD Liquidity than any other platform" and that the Insider Trading Desk did not enjoy any special technical, informational and trading privileges over Plaintiffs. Amend. Compl. ¶ 525, Ex. 20.

The Second Amended Consolidated Complaint further alleges that Plaintiffs justifiably relied on these representations made by Defendants, which all turned out to be materially false, and lost their bitcoins as the result of this reasonable reliance. Amend. Compl. ¶¶ 527, 529-536. In view of these allegations, which must be taken as true at the motion to dismiss stage, there is simply no room for Defendants to argue that they are legally insufficient. The only two conceivable issues that Defendants may even try to assert is the reasonableness of Plaintiffs' reliance on Defendants' false statements and intervening "market moves" causation of Plaintiffs' losses. The reasonableness of Plaintiffs' reliance, on the other hand, is manifestly a question of fact, specific to each Plaintiff, and is squarely for the jury to decide. Defendants simply cannot succeed on this issue at the motion to dismiss stage.

With respect to the issue of intervening causation, Defendants are likely to again challenge causation of Plaintiffs' damages, inartfully arguing that the market moves are the intervening cause destroying causation of Plaintiffs' damages by Defendants' misrepresentations. However, Defendants are overlooking that fact that the Amended Complaint clearly alleges that Plaintiffs suffered three separate types of damages and not just one, only one of which – pure trading losses – could, even conceivably, be subject to such intervening causation of market price moves, in the unlikely event such moves were not caused by Defendants themselves in order to deliberately liquidate Plaintiffs. Amend. Compl. ¶¶ 539-541. The remaining two classes of damages, including bitcoin loss of use damages and damages associated with trading commissions paid by Plaintiffs to Defendants, were suffered by Plaintiffs based *solely* upon their reliance on Defendants' misrepresentations and omissions and completely independently of any market moves or manipulation that could, even conceivably, constitute an intervening cause. Amend. Compl. ¶¶ 539, 541. In other words, Plaintiffs paid the trading commissions to Defendants and lost the substantial financial benefits of the use of their bitcoins purely in reliance on Defendants' fraudulent representations, and irrespective of any moves by the market. Amend. Compl. ¶¶ 539, 541. Thus, Defendants' fraud was the sole and exclusive cause of these two types of damages and Defendants' purported intervening causation argument spectacularly implodes.

Accordingly, for all the foregoing reasons, with respect to all the causes of action of the Second Amended Consolidated Complaint, which are based on false statements or fraudulent omissions undeniably made by Defendants (Counts I-IV, XV-XX), Defendants' future motion to dismiss will necessarily fail rendering the current discovery stay not warranted.

Moreover, Defendants' chances to dismiss the remaining pleaded causes of action, including the RICO (Counts IX-XIV) and market price manipulation claims under CEA (Count VI) are looking even worse in view of the very specific and credible allegations of the Amended Complaint regarding the intricacies of the operation and the use of the automated market manipulation tools by the Insider Trading Desk by BitMEX, Amend. Compl. ¶¶ 228-317, and further in view of the overwhelming new facts, including photographic evidence and statements from multiple credible witnesses with absolutely no motive to fabricate, of money laundering conspiracy between Defendants, a Reed family member and a prolific and habitual market manipulator Ben Aabtc, wherein Defendants enlisted him to manipulate markets on their BitMEX platform, opened for him multiple $30 million perpetual swap positions to enable him to capture the illegal profits from his manipulative trading and then even listed him on their leaderboard, with full knowledge of his illicit activities. Amend. Compl. ¶¶ 466-473. Moreover, Defendants clearly engaged in financial transactions involving the illicit proceeds of Ben Aabtc's market manipulation and collected trading commissions from these illegal funds, which constitutes violations of 18 U.S.C. 1956 and 1957 and multiple other criminal and civil statutes. Amend. Compl. ¶¶ 472-473. In view of these new very specific and overwhelming facts and uncontroverted evidence, "[w]hen the *entire* factual context is considered, it is clear that" Plaintiffs "nudged their claims … across the line from conceivable to plausible." *Soo Park*, 851 F.3d at 928; *Ashcroft*, 556 U.S. at 680.

Therefore, any motion to dismiss that Defendants decide to file will not be dispositive of the entire case and, therefore, the discovery stay is not warranted per the controlling Northern District of California law and, therefore, must be lifted immediately to permit "the just, speedy, and inexpensive determination of [this] action." Fed. R. Civ. P. 1 and Civil L.R. 1-2(b). ("However, Defendants must prevail on both prongs to justify a protective order, and "if either prong of this test is not established, discovery proceeds." *Id.* Because the Court is not satisfied that De-

fendants' motions are potentially dispositive of the case as to either Google or Huawei, the Court declines to exercise its discretion to continue the discovery stay."). *Nexus 6P Products Liability Litigation*. Case No. 17-cv-02185-BLF, (N.D. Cal., June 19, 2018).

### C. Continued Discovery Stay Rewards Defendants For Exactly The Conduct For Which They Were Criminally Charged By The DOJ

As explained in detailed above and alleged in the Amended Complaint, Defendants made every possible effort to suppress evidence of their own wrongdoing in order to evade liability for their market manipulation. Not allowing this lawsuit to move to discovery, merely because of lack of direct documentary evidence that Defendants' themselves destroyed, like Defendants want the Honorable Court to do, would amount to unjustly rewarding Defendants for their own evidence destruction misconduct.[2]

In fact, account anonymity on BitMEX, as well as the associated lack of the required KYC and AML checks, was exactly the reason Defendants were criminally charged by the DOJ with felony failing to prevent money laundering on BitMEX in violation of the Bank Secrecy Act. Amend. Compl. Ex. 4. Defendants' counsel seeks the Honorable Court to reward Defendants for this blatant criminal violation of federal anti-money laundering laws by not allowing this case to move to discovery under the pretense of absence of a direct evidence of market manipulation by Defendants on specific days. However, the aforesaid lack of direct evidence was the natural and proximate result of the federal crimes committed by Defendants themselves in deliberately making the trading accounts on BitMEX anonymous and willfully failing to institute KYC and AML in violation of federal law. It cannot possibly be in the interests of justice to reward Defendants for their own federal crimes, which crimes involved deliberately making BitMEX accounts anonymous and willfully failing to use KYC and AML, and which also had a side effect of suppressing the evidence of Defendants' own market manipulation conduct. Amend. Compl. Ex. 4.

---

[2] Courts have also held that if a defendant engages in deliberate evidence suppression, the pleading standards are further relaxed. This is done in order to avoid rewarding defendants for their own evidence destruction misconduct.

## D. Defendants' Insider Trading On Their Own Exchange Is Fundamentally Different From Manipulative Trading In Other Market Manipulation Cases

Defendants' insider trading on their own exchange BitMEX is fundamentally different from alleged manipulative trading in other market manipulation cases. Defendants in the other cited cases, such as JPMorgan, did not trade financial instruments on an exchange that they themselves designed, built, own and operate. JPMorgan traded on completely independent third-party exchanges like Nasdaq, NYSE, CME or CBOE, all subject to tight monitoring and oversight by both industry associations and government regulators. To draw a familiar parallel for the Court, JPMorgan was playing in fully licensed public swimming pools, which it entered pursuant to a general admission ticket, with around the clock security guards, entrance passes, ID checks, and with security cameras watching all the action 24/7. All the play was being watched and recorded non-stop. Defendants, on the other hand, are playing in their own private bathtub filled with murky water that they themselves designed, constructed and operate and with no one else around to watch. Defendants completely control all the information related to their own trading that they can destroy or alter it at will. In fact, this case should be a poster child for illustrating the reason why CFTC conflict of interest rule prohibits exchange owners from trading on their own trading platforms. To require Plaintiffs to produce the same level of information that was produced by SEC (!) in the JPMorgan case is akin demanding Plaintiffs to produce a security camera footage from Defendants' private bathroom, where there are no cameras and have never been. Thus, comparing Defendants to JPMorgan is akin comparing the Medellin Cartel of Pablo Escobar to Johnson & Johnson "because they are both chemical companies."

## E. Contrary To Defendants' Baseless Contentions, Defendants Had A Legal Duty To Disclose Omitted Material Facts To Plaintiffs

Another clearly faulty argument that Defendants are trying to make in the New York Action and are likely to repeat here is that Defendants did not have "any statutory, rule-based or other duty to disclose" to Plaintiffs the true material facts related to the operation of their Insider Trading Desk and specifically the technical, information and trading privileges that it enjoyed over Plaintiffs and the fact that it continuously manipulated markets on BitMEX and "reference" exchanges to the benefit of BitMEX and financial detriment of Plaintiffs. Defendants are making

similar arguments regarding purported absence of their duty to disclose their strategic use of server freezes and system overloads to effectuate market manipulation. This argument is simply laughable.

First of all, Rule 180.1, 17 C.F.R. § 180.1(a) (2019), provides, in relevant part:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, … to intentionally or recklessly:

(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading…

Thus, Pursuant to Rule 180.1(a)(2), 17 C.F.R. § 180.1(a)(2) (2019), Defendants had a duty to avoid making the above partial, misleading representations that effectively concealed material facts from each Plaintiff. In addition, Defendants had a statutory duty under California law to avoid making the above partial, misleading representations that effectively concealed material facts from each Plaintiff under Cal. Civ. Code § 1710(3), which defines deceit as a "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

As alleged in the Second Amended Consolidated Complaint, ¶¶ 498-499, Defendants presented a false Warranty and Representation to Plaintiffs, claiming that the Insider Trading Desk did not receive any technical, informational and trading privileges over Plaintiffs. This Warranty and Representation was false and, therefore, Defendants were under duty of Rule 180.1(a)(2), 17 C.F.R. § 180.1(a)(2) (2019) and Cal. Civ. Code § 1710(3) to disclose to Plaintiffs the true material facts related to the operation of their Insider Trading Desk "necessary in order to make the statements made [in the Warranty and Representation] not untrue or misleading." Defendants failed to fulfill this duty and, therefore violated the respective statutes. Amend. Compl. ¶ 500.

Moreover, California law recognizes four circumstances in which an obligation to disclose may arise: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes

partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

As alleged in the Amended Compliant, Defendants had exclusive knowledge of material facts related to the informational, technical and trading privileges that the Insider Trading Desk enjoys over Plaintiffs and other BitMEX customers and of material fact that the Insider Trading Desk artificially manipulates the prices of bitcoin and ether on the U.S.-based third-party reference exchanges, as described above, in order to make its own trades profitable and to force customer, including each Plaintiffs' liquidations. Amend. Compl. ¶ 587. These material facts were not known to Plaintiffs. Therefore, Defendants were obligated to disclose the above information to Plaintiffs under prong (2) of *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997), which they failed to do.

Additionally, Defendants engaged in an active concealment of the true facts related to the operation of the Insider Trading Desk. First, Defendants deliberately made all accounts on Bit-MEX platform anonymous, which hindered specifically pinpointing the Insider Trading Desk as the origin of manipulative trading. Second, according to the CFTC Complaint, Ex. 5, p. 16, ¶ 49, Defendants actively deleted critical records, including trader identities. Third, Defendants deliberately used anonymous "burner" (e.g. @gmail.com) email addresses, as opposed to "official" BitMEX email addresses (e.g. @bitmex.com), to open trading accounts for their Insider Trading Desk with the BitMEX platform. This was done to cover up any remaining tracks of wrongdoing, so that the trading histories and illegal manipulation profits of the Insider Trading Desk could not be traced back to the BitMEX. The "burner" accounts were periodically recycled and corresponding trading records deleted. Amend. Compl. ¶ 588. Therefore, Defendants were additionally obligated to disclose the above information to Plaintiffs under prong (3) of *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997), which they failed to do.

Furthermore, Defendants "[made] partial representations [about the Insider Trading Desk] but also suppresses some material facts" regarding informational, technical and trading privileges that the Insider Trading Desk enjoys over Plaintiffs and other BitMEX customers and the fact that the Insider Trading Desk artificially manipulates the prices of bitcoin and ether on the U.S.-based

third-party reference exchanges, as described above, in order to make its own trades profitable and to force customers, including Plaintiffs' liquidations. Amend. Compl. ¶¶ 589. Therefore, Defendants were additionally obligated to disclose the above information to Plaintiffs under prong (4) of *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997), which they failed to do.

Accordingly, by failing to disclose the above facts, as they were required to do under California law, Defendants committed fraudulent concealment and, therefore, engaged in "manipulative device, scheme, or artifice to defraud" and further engaged in "act, practice, or course of business, which operates or would operate as a fraud or deceit upon" Plaintiffs, under Rule 180.1(a), 17 C.F.R. § 180.1(a) (2019).

Therefore, contrary to Defendants' baseless arguments, Defendants' conduct violated 7 U.S.C. § 9(1) (2018) and Rule 180.1, 17 C.F.R. § 180.1(a) (2019) and the Amended Complaint alleges a viable private cause of action for market manipulation under of 7 U.S.C. §§ 25(a)(1)(B), (C)(iv).

### F. Defendants' Arguments That Rely On Inapplicable Heightened Pleading Standard Of PSLRA Are Without Merit

In their motion to dismiss filed on April 13, 2021 in a related case *Messieh v. HDR Global Trading Limited*, 1:20-cv-03232-ALC (S.D.N.Y. Apr. 23, 2020), currently pending in the Southern District of New York, Defendants inaptly argued that:

> information learned from "former BitMEX employees" about unidentified "unique functionalities" granted to the market making desk (Am. Compl. ¶¶ 109–110, 120) cannot be credited, as there is no supporting detail stating what positions such persons held, for what period of time and whether they would have been in a position to possess the information alleged. See *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019).

Notably, in support of their baseless assertion, Defendants cite a District Court ruling in a securities fraud case, which was decided under Private Securities Litigation Reform Act's heightened pleading standards, which are inapplicable to RICO cases, such as the case at bar. Defendants failed to provide any explanation of the relevance of Private Securities Litigation Reform Act's heightened pleading standards to non-PSLRA cases.

On the other hand, in *In re Chrysler-Dodge-Jeep Ecodiesel Marketing*, 295 F.Supp.3d 927, 978 (2018), the Honorable Judge Edward M. Chen of this Court eloquently explained:

> While *Pirnik* is notable given that the securities-fraud claims there are predicated on the same factual events at issue here, the decision is not particularly persuasive on the issue of intent. As a securities-fraud case, *Pirnik* is governed by the Private Securities Litigation Reform Act, which requires scienter to be pled with "particularity." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). This heightened pleading standard does not apply in the context of RICO, where only "general allegations" of a defendant's state of mind are required. *Odom*, 486 F.3d at 554. Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A general allegation of scienter does not require the level of specificity (e.g., specific allegations that the defendant received actual test results) required in *Tellabs*.

Just as *Chrysler-Dodge-Jeep Ecodiesel Marketing,* this is a RICO case and not a securities-fraud case subject to the heightened pleading requirements of the Private Securities Litigation Reform Act.  As Judge Chen expressly held, the heightened pleading requirements of the Private Securities Litigation Reform Act simply do not apply to the RICO case at bar.  *In re Chrysler-Dodge-Jeep Ecodiesel Marketing*, 295 F.Supp.3d 927, 978 (2018).  Thus, Defendants' attempt to cite clearly inapplicable PSLRA caselaw without even trying to explain to the Court how it is relevant to the present case simply does not help them.

Moreover, as another federal District Court aptly explained: "in an ordinary, non-PSLRA complaint, [plaintiff] could have simply alleged the facts that [a former employee] provided without any explanation of where they were from and likely would have met the requirements of Rule 8 and even Rule 9(b). See Fed. R. Civ. P. 9(b) ('In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.' (emphasis added)). Only the PSLRA made any mention of [the former employee] necessary." *Grae v. Corrections Corporation of America*, No. 3:16-cv-2267 (M.D. Tenn. Jul. 31, 2018).  Because the present action is not

a PSLRA case but an "ordinary" RICO case, just as *In re Chrysler-Dodge-Jeep Ecodiesel Marketing*, 295 F.Supp.3d 927, 978 (2018), Defendants' arguments that rely on the inapplicable PSLRA heightened pleading standard cases are simply meritless.

### G. Current Discovery Stay Must Be Lifted Also Because Amended Complaint Alleges Viable Causes Of Action For Violation Of California Consumer Protection Statutes

With respect to the causes of action for violation of California Consumer Protection statutes (Counts XXII-XXV), there are two controlling California decisions, with facts nearly identical to the present case. Those are *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217 (*Chapman*) and *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322, 326 (*Kwikset*), both of which go directly against Defendants' arguments. In *Chapman*, plaintiff alleged causes of action against Skype for fraud, negligent misrepresentation, as well as violations of the UCL, FAL and CLRA, based on Skype's advertising of its calling plan as "unlimited," while, in truth and in fact, the plan was subject to certain "fair use" limitations, which were disclosed in a footnote and in Skype's User Agreement. On a Demurrer, Skype made almost identical arguments that Defendants in the present case are expected to make to this Court. All these arguments were flatly rejected by the California Court of Appeal.

With respect to the fraud cause of action, Skype challenged the misrepresentation and justifiable reliance elements. The Court of Appeal rejected Skype's arguments and held that "Chapman adequately alleges a misrepresentation of fact based on Skype's use of the word "Unlimited" to describe calling plans that were not unlimited." The Court did so even though the limits were disclosed in the Skype's User Agreement. With respect to the justifiable reliance, the Court held that to "allege actual reliance on misrepresentations with the required specificity for a fraud count, "'[t]he plaintiff must plead that he believed the representations to be true ... and that in reliance thereon (or induced thereby) he entered into the transaction." (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1063.) Chapman requests leave to amend her complaint to allege that she would not have purchased a subscription if she had known that the calling plan was limited and is entitled to leave to so amend. (*Careau*, supra, 222 Cal.App.3d at p. 1386)… We reject the argu-

ment that Chapman cannot satisfy the element of actual reliance." *Chapman*, 220 Cal.App.4th at 232.

Facts of the present case are identical. To lure unsuspecting traders, Defendants falsely advertised their trading services as providing "1500% More Bitcoin/USD liquidity than any other



platform." After this lie was exposed by Plaintiffs' counsel in a related matter, Defendants hastily changed their website to simply read "Highly Liquid Markets," which confirmed that the original statement was false, Amend. Compl. ¶ 537, Ex. 20. Just as Defendants intended, Plaintiffs relied on this falsehood when deciding to trade on BitMEX, deposit their bitcoins, and pay trading commissions to Defendants.

Defendants are making identical arguments to ones made by Skype, which were previously flatly rejected by the California Court of Appeal. First, they argue that their statement "1500% More Bitcoin/USD liquidity than any other platform" does not constitute a misrepresentation. This argument was flatly rejected in *Chapman*. Second, Defendants challenge allegations of Plaintiffs' reliance, despite the fact that to "allege actual reliance on misrepresentations with the required specificity for a fraud count, "`[t]he plaintiff must plead that he believed the representations to be true ... and that in reliance thereon (or induced thereby) he entered into the transaction." Amended Complaint clearly satisfies this simple requirement. Therefore, Plaintiffs' causes of action under California consumer protection statutes are also viable.

As the last resort argument, Defendants are likely to again challenge causation of Plaintiffs' damages, inartfully arguing that the market moves are an intervening cause destroying causation of Plaintiffs' damages by Defendants' misrepresentations. However, Defendants are overlooking that fact that Plaintiffs suffered three kinds of damages and not just one, only one of

which – pure trading losses – could, even conceivably, be subject to such intervening causation of market price moves.  Amend. Compl. ¶¶ 539-541.  The remaining two classes of damages, including bitcoin loss of use damages and damages associated with trading commissions paid to Defendants, were suffered by Plaintiffs based *solely* on their reliance on Defendants' misrepresentations and independently of any market moves or manipulation that could constitute an intervening cause.  Amend. Compl. ¶¶ 539, 541.  In other words, Plaintiffs paid the trading commissions to Defendants in reliance on their fraudulent representations irrespectively of any and all market moves.  Thus, Defendants' fraud was the sole and exclusive cause of these damages.

### H. Current Discovery Stay Must Be Lifted Also Because Relevant Evidence In Possession Of Third Parties May Be Lost Or Destroyed

Finally, considering the facts that Plaintiffs' losses go back to 2018, passage of additional time makes it more likely that critical evidence in possession of third parties not subject to data presentation obligations, such as U.S.-based "reference" sport exchanges BitStamp, Kraken and Coinbase, may be routinely deleted pursuant to third parties' normal document retention policies.  In fact, some industry players do have a three-year document detention policy.  Therefore, Plaintiffs respectfully request the Honorable Court to lift the discovery stay to prevent unfair prejudice to plaintiffs from destruction of such critical third-party records.

## V. CONCLUSION

In view of the new detailed factual allegations of the Second Amended Consolidated Complaint and the above irrefutable "smoking gun" type evidence of money laundering conspiracy between Defendants, a Reed family member and prolific market manipulator Ben Aabtc, there is absolutely no good reason to keep Plaintiffs from proceeding with the full discovery in this action.  Defendants' conspiracy to manipulate cryptocurrency markets is all but proven using photographic evidence, screen shots from Defendants' own trading platform showing enormous position sizes in BitMEX "winner" accounts designed to capture illegal manipulation profits that Defendants opened for a notorious market manipulator Ben Aabtc and corroborating statements from multiple disinterested witnesses with absolutely no motive to fabricate.  Moreover, Plaintiffs have alleged sufficiently detailed facts explaining exactly how Defendants' undisclosed Insider

Trading Desk used automated software tools, sensitive inside information of Plaintiffs and other traders and strategic server freezes to automatically manipulate markets on BitMEX and "reference" spot exchanges and intentionally liquidate traders, including Plaintiffs. All these allegations are extremely detailed and are entitled to be presumed to be true, which makes even partial success of Defendants' future motion to dismiss highly doubtful.

Thus, the continued discovery stay in this action flies in the face of the explicit mandate of Fed. R. Civ. P. 1 and Civil L.R. 1-2(b) "to secure the just, speedy, and inexpensive determination of every action and proceeding" and rewards Defendants for their own federal crimes, which crimes involved violating of the Bank Secrecy Act by deliberately making BitMEX accounts anonymous and willfully failing to use KYC and AML, and which also had a side effect of suppressing the evidence of Defendants' own market manipulation misconduct. Accordingly, for all the foregoing reasons, the discovery stay is no longer warranted and should be lifted.

Dated: June 8, 2021

Respectfully submitted,

By: _____

Pavel I. Pogodin

CONSENSUS LAW
Pavel I. Pogodin, Ph.D., Esq.
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io
Attorneys for Plaintiffs
BMA LLC, Yaroslav Kolchin,
Vitaly Dubinin, Dmitry Dolgov
and Păun Gabriel-Razvan