Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
James M. Gross (Admitted *Pro Hac Vice*)
jgross@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    +1.415.626.3939
Facsimile:    +1.415.875.5700

Attorneys for Defendants
HDR GLOBAL TRADING LIMITED and ABS
GLOBAL TRADING LIMITED

Peter I. Altman (State Bar No. 285292)
paltman@akingump.com
Marshall L. Baker (State Bar No. 300987)
mbaker@akingump.com
Jessica H. Ro (State Bar No. 329737)
jro@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:    +1.310.229.1000
Facsimile:    +1.310.229.1001

Attorneys for Defendant
ARTHUR HAYES

Edward H. Takashima (State Bar No. 270945)
etakashima@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone:    +1.213.629.9040
Facsimile:    +1.213.629.9022

Attorneys for Defendant
BEN DELO

Douglas K. Yatter (State Bar No. 236089)
douglas.yatter@lw.com
LATHAM & WATKINS, LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone:    +1.212.906.1200
Facsimile:    +1.212.751.4864

Matthew Rawlinson (State Bar No. 231890)
matt.rawlinson@lw.com
LATHAM & WATKINS, LLP
140 Scott Drive
Menlo Park, CA  94025
Telephone:    +1.650.328.4600
Facsimile:    +1.650.463.2600

Attorneys for Defendant
SAMUEL REED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov, and Păun Gabriel-Razvan,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo, and Samuel Reed,<br><br>Defendants. | Case No. 3:20-cv-03345-WHO<br><br>(Consolidated Case Nos. 3:20-cv-07140-WHO and 3:20-cv-08034-WHO)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT DISCOVERY STAY**<br><br>Date:  July 14, 2021<br>Time:  2:00 p.m.<br>Ctrm:  2 – 17th Floor<br>Judge:  Honorable William H. Orrick |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. RELEVANT BACKGROUND ............................................................................... 2

    A. This Court Grants Defendants' Motion To Stay Discovery Pending Resolution of Defendants' Motion To Dismiss ........................................ 2

    B. Following Further Amendments, Plaintiffs' Lawsuit Is Dismissed With Leave To Amend .................................................................................... 2

    C. After Multiple Iterations, Plaintiffs File an Amended Pleading That Fails To Remedy the Fundamental Flaws With Plaintiffs' Lawsuit ............... 3

    D. Plaintiffs Seek To Set Aside the Discovery Stay and Burden Defendants with Hundreds of Discovery Requests and Multiple Non-Party Subpoenas ......... 5

III. ARGUMENT ........................................................................................................ 7

    A. Plaintiffs' Request For This Court To Revisit Its Prior Discovery Stay Order Is Procedurally Improper ............................................................. 7

    B. In Any Event, a Stay Remains Warranted Given The Pendency of Defendants' Dispositive Motion To Dismiss ......................................... 8

        1. As Before, Defendants' Motion to Dismiss Is Dispositive of the Entire Case ....................................................................................... 10

        2. Discovery Is Still Not Necessary for the Resolution of Defendants' Motion to Dismiss ........................................................................... 12

        3. All Other Factors Support Continuing the Stay Pending the Resolution of the Motion to Dismiss ........................................... 13

    C. Plaintiffs' Additional Arguments Are Uniformly Meritless ................... 15

IV. CONCLUSION .................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Al Otro Lado, Inc. v. Nielsen,*
No. 3:17-cv-02366-BAS-KSC, 2018 WL 679483 (S.D. Cal. Jan. 31, 2018) ...............9, 11, 12

*Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.,*
5 F.3d 378 (9th Cir. 1993)...........................................................................................12

*Ameritel Inns v. Moffat Bros. Plastering, L.C.,*
No. CV 06-359-S-EJL, 2007 WL 1792323 (D. Id. June 20, 2007) ...........................14

*Canyon Cnty v. Syngenta Seeds, Inc.,*
No. CV 05-306-S-EJL, 2005 WL 8165145 (D. Id. Oct. 28, 2005)....................11, 13

*In re Term Commodities Cotton Futures Litig.,*
No. 12 Civ. 5126(ALC)(KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013).........................15

*Dao v. Liberty Life Assurance Co. of Boston,*
No. 14-cv-04749-SI (EDL), 2016 WL 796095 (N.D. Cal. Feb. 23, 2016) ..............15

*Gibbs v. Carson,*
No. C-13-0860 THE (PR), 2014 WL 172187 (N.D. Cal. Jan. 15, 2014)...................12

*Gilead Sciences, Inc. v. Merck & Co, Inc.,*
No. 5:13-cv-04057-BLF, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016) ....................15

*In re Graphics Processing Units Antitrust Litig.* ("*GPU*"),
No. C 06-07417 WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ............13, 14

*In re Nexus 6P Prods. Liab. Litig.,*
No. 17-cv-02185-BLF, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017)...................12

*In re Nexus 6P Prods. Liab. Litig.,*
No. 17-cv-02185-BLF, 2018 WL 3036734 (N.D. Cal. June 19, 2018) ....................12

*Jarvis v. Regan,*
833 F.2d 149 (9th Cir. 1987)........................................................................13

*Kramer v. JP Morgan Chase Bank, N.A.,*
771 F. App'x 358 (9th Cir. 2019) .........................................................................13

*Little v. City of Seattle,*
863 F.2d 681 (9th Cir. 1988)...................................................................................9

*Wenger v. Monroe*,
   282 F.3d 1068 (9th Cir. 2002)................................................................9

*Yiren Huang v. Futurewei Techs., Inc.*,
   No. 18-cv-00534-BLF, 2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) ........................... passim

STATUTES

Commodity Exchange Act .....................................................................4, 5, 11

Racketeer Influenced and Corrupt Organizations Act ..........................................4, 5, 11

OTHER AUTHORITIES

Fed. R. Civ. P. 1 ..............................................................................10, 13

Fed. R. Civ. P. 26 ...............................................................................9

Local Civil Rule 7-9.............................................................................8

OPPOSITION TO MOT. TO LIFT
DISCOVERY STAY 3:20-cv-03345-WHO

I.     **INTRODUCTION**

On November 28, 2020, the Court stayed discovery in this action "until further order of the Court at or after the hearing of subsequent motions to dismiss."  ECF No. 94.  The reasons for staying discovery that existed last November continue to exist in full measure today.  Indeed, there is no reason for the Court even to hear this motion as noticed, given that the Court will soon consider Defendants' Motion to Dismiss Plaintiffs' Second Amended Consolidated Complaint (ECF No. 155 (the "Motion to Dismiss")), which may terminate this lawsuit in full.  If anything, the Court should continue the hearing on this motion until August 25, 2021—the hearing date for Defendants' Motion to Dismiss—so that all outstanding motions can be heard together.

But regardless of when this motion is heard, it should be denied for at least three reasons. *First*, Plaintiffs' latest operative complaint remains fundamentally deficient in multiple, independent respects.  As this Court detailed in its previous 31-page order granting Defendants' earlier motion to dismiss (ECF No. 143 (the "Order")), all of the claims raised in Plaintiffs' prior operative complaint failed for at least four independent reasons:  (1) implausibility, (2) lack of Article III standing, (3) lack of statutory standing, and (4) Plaintiffs' failure to allege any prima facie claim.  The same is true of the Second Amended Consolidated Complaint ("SACC"), as Defendants' currently pending Motion to Dismiss details.

*Second*, because Defendants challenge the legal sufficiency of Plaintiffs' SACC, no discovery is necessary or appropriate to resolve the Motion to Dismiss.  Nor could Plaintiffs credibly claim otherwise, given that their opposition to the Motion to Dismiss is due only days after this motion is scheduled to be heard and Plaintiffs have made no attempt in their motion to narrow or focus the scope of the nearly 340 outstanding discovery requests.

*Third*, the other relevant Ninth Circuit factors uniformly weigh against lifting the stay of discovery.  Those factors include the burdensome nature of the nearly 340 sweeping discovery requests for which Plaintiffs previously sought responses from Defendants before this Court stayed discovery, the lack of pending discovery deadlines set by any case schedule, and the proportionality principles outlined in the Federal Rules of Civil Procedure.  And while Plaintiffs trumpet their so-called "smoking gun" allegations—based upon a May 2020 tweet regarding

1   supposed third party conduct back in April and May 2018, which is months before any Plaintiff is

2   alleged to have deposited bitcoin, let alone traded, on BitMEX—those allegations are entirely

3   irrelevant to Plaintiffs' claims, as Defendants' Motion to Dismiss explains.  Moreover, Plaintiffs'

4   claims about Defendants' purported document destruction remain just as speculative and

5   ungrounded factually as they were the last time that Plaintiffs made them.

6       For these reasons, the stay of discovery ordered by the Court should remain in place while

7   the Court considers Defendants' Motion to Dismiss.

8   **II.      RELEVANT BACKGROUND**

9       **A.     This Court Grants Defendants' Motion To Stay Discovery Pending
             Resolution of Defendants' Motion To Dismiss.**

10

11      On September 28, 2020, Defendants filed a Motion to Stay Discovery (ECF No. 43 (the

12  "Original Stay Motion")) after Plaintiffs served upon them nearly 400 oppressive and harassing

13  discovery requests—nearly 340 of which are again at issue in this motion.  Hibbard Decl. ¶¶ 2, 5-

14  6.  In parallel, and in response to Defendants' motion to dismiss Plaintiffs' then-operative

15  complaint (ECF No. 42), Plaintiffs moved for leave to file a Third Amended Complaint (ECF No.

16  46), thereby acknowledging key defects in their prior complaint that Defendants addressed in

17  their first-filed motion to dismiss.

18      At the November 10, 2020 hearing, the Court (1) granted Defendants' Motion to

19  Consolidate the *BMA* action with another substantially similar lawsuit filed by Plaintiffs' counsel,

20  (2) ordered Plaintiffs to file an amended consolidated complaint, (3) denied as moot Defendants'

21  motion to dismiss and Plaintiffs' motion for leave to file a Third Amended Complaint, and (4)

22  granted Defendants' Original Stay Motion.  ECF No. 94.  Of particular relevance here, the Court

23  ordered, "Discovery is stayed until further order of the Court at or after the hearing of subsequent

24  motions to dismiss."  *Id.*

25      **B.     Following Further Amendments, Plaintiffs' Lawsuit Is Dismissed With Leave
             To Amend.**

26

27      Following the Court's order staying discovery, Plaintiffs filed a second separate, related

28  action, which was consolidated with the two other cases via stipulation and order from the Court

OPPOSITION TO MOT. TO LIFT
DISCOVERY STAY 3:20-cv-03345-WHO

1    (ECF Nos. 96 and 98).  On November 25, 2020, Plaintiffs filed a Consolidated Complaint (ECF

2    No. 97), which Defendants moved to dismiss on December 23, 2020 (ECF No. 126).

3           On March 13, 2021, the Court granted in full Defendants' Motion to Dismiss Plaintiffs'

4    Consolidated Complaint.  The Court held that Plaintiffs had "fail[ed] to plausibly explain how the

5    defendants have harmed them," as the "limited allegations plaintiffs offer . . . are all alleged on

6    information and belief, with no explanation of the basis for such beliefs or facts that would make

7    their allegations plausible."  Order 1-2, 9-15.  Plaintiffs' claims independently failed because

8    "plaintiffs fail[ed] to sufficiently plead the elements of each claim and their statutory standing to

9    bring them."  Order 2.

10          This Court granted Plaintiffs leave to amend "to the extent they have a good faith basis to

11   do so."  Order 30.  The Court did so based upon Plaintiffs' counsel's representations that

12   Plaintiffs had received "'substantial additional information relevant to this case' . . . from a

13   'former high-ranking employee of Defendant HDR,'" and "that they can better explain the basis

14   of their alleged price manipulation scheme and support it with reports from experts who would

15   look at the data and say to a high degree of certainty as to what happened."  *Id.* at 30; *see also*

16   ECF No. 138 (requesting leave to amend because "Plaintiffs are in a process of developing new

17   facts directly linking Defendants with the manipulative acts alleged in the Consolidated

18   Complaint and resulting in Plaintiffs' losses").

19   **C.**    **After Multiple Iterations, Plaintiffs File an Amended Pleading That Fails To**

20              **Remedy the Fundamental Flaws With Plaintiffs' Lawsuit.**

21          On May 4, 2021, Plaintiffs filed an Amended Consolidated Complaint.  ECF No. 149.

22   Despite having had nearly two months to prepare their amended complaint, Plaintiffs filed

23   another "Corrected" Amended Consolidated Complaint ("CACC") the next day on May 5, 2021.

24   ECF No. 150.  Then, that same day, Plaintiffs' counsel asked Defendants to stipulate to the filing

25   of a proposed Second Amended Consolidated Complaint to make further changes to the CACC.

26   *See* ECF No. 151.  While the parties negotiated a stipulation to avoid burdening the Court with

27   additional briefing on a further motion for leave to amend, Plaintiffs sent Defendants multiple

28   versions of their proposed amended complaint, including a version sent on May 26, 2021 that

OPPOSITION TO MOT. TO LIFT
DISCOVERY STAY 3:20-cv-03345-WHO

1   Plaintiffs agreed would be a final version of their proposed SACC.  *See id.*; *see also* Hibbard

2   Decl. ¶ 7.  On June 1, 2021, the Court granted the parties' stipulation as to the proposed SACC

3   (ECF No. 152), which Plaintiffs filed on June 5, 2021 (ECF No. 153).

4          Despite their representations to the Court (both in open court and in signed pleadings

5   governed by Rule 11) that Plaintiffs could amend their complaint to include "'substantial

6   additional information relevant to this case' . . . from a 'former high-ranking employee of

7   Defendant HDR,'" and "reports from experts who would look at the data and say to a high degree

8   of certainty as to what happened," Order 30, Plaintiffs included no such information in the SACC.

9   Instead, the SACC attempts to alter fundamentally Plaintiffs' core theories of liability.  Although

10  the SACC repeats Plaintiffs' allegations—still made entirely on "information and belief" without

11  any accompanying facts establishing the basis for that belief—that Defendants harmed Plaintiffs

12  by executing trades on other cryptocurrency exchanges on the dates that Plaintiffs supposedly

13  suffered trading losses, those allegations are no longer the focus of Plaintiffs' complaint.  Instead,

14  the SACC shifts to a fraudulent inducement theory, claiming that "Defendants deliberately

15  designed their cryptocurrency derivatives exchange platform BitMEX . . . to fraudulently induce

16  [] victims to deposit their bitcoins" by "engag[ing] in fraudulent solicitation using a laundry list of

17  material misrepresentations, half-truths and omissions."  *E.g.*, SACC ¶ 3.

18         Specifically, the SACC asserts that various representations in the BitMEX Terms of

19  Service (regarding Defendants' purported trading activities) and on the BitMEX website

20  (regarding the platform's "Bitcoin/USD liquidity") were false, and that Plaintiffs relied upon

21  these purported misrepresentations when depositing bitcoin to later trade on BitMEX.  Plaintiffs

22  further contend that because of those misrepresentations, Plaintiffs not only suffered trading

23  losses as alleged in the Consolidated Complaint, but also two previously unmentioned categories

24  of damages:  "loss of use" damages that Plaintiffs claim to have suffered because of their inability

25  to deposit their bitcoin "in interesting-bearing accounts," SACC ¶ 512, and "trading commissions

26  damages" purportedly suffered from executing trades—including profitable ones—on BitMEX,

27  *id.* ¶ 514.  Based on these new allegations, Plaintiffs continue to allege a series of claims under

28  the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Commodity

OPPOSITION TO MOT. TO LIFT
DISCOVERY STAY 3:20-cv-03345-WHO

1   Exchange Act ("CEA"), and various California statutory and common laws.

2          Plaintiffs' new allegations in the SACC fare no better than their old ones, as Defendants

3   explain in their Motion to Dismiss the SACC filed on June 21, 2021.  As set forth in the Motion

4   to Dismiss, like before, the SACC pleads no plausible facts establishing a basis for Plaintiffs'

5   conclusory allegations that Defendants either manipulated the price of cryptocurrency derivatives

6   to Plaintiffs' detriment, or made any misrepresentation on the BitMEX website upon which

7   Plaintiffs reasonably relied.  *See* Motion to Dismiss at 8-22.  Indeed, Plaintiffs' own pleadings,

8   the documents attached and incorporated by reference, and other judicially noticeable documents

9   established that all of Plaintiffs' core misconduct allegations are *im*plausible.  *See* Motion to

10  Dismiss at 8-22.  Moreover, Plaintiffs still failed to make a threshold showing that they possessed

11  Article III standing to bring their claims, because Plaintiffs have not pled plausible facts showing

12  that Defendants' conduct—as opposed to market conditions or third party conduct—caused their

13  losses.  *See* Motion to Dismiss at 22-25.  (Plaintiff BMA independently lacks Article III standing

14  because, despite having now filed nine separate iterations of its operative complaint, BMA still

15  alleges no facts showing that it is seeking to vindicate its own rights.  *See* Motion to Dismiss at

16  25.)  And in all events, Plaintiffs failed to plead plausible facts under any standard making out

17  prima facie RICO, CEA, and California statutory or common law claims, let alone with the

18  requisite particularity required for Plaintiffs' fraud-based claims.  *See* Motion to Dismiss at 25-35.

19         **D.      Plaintiffs Seek To Set Aside the Discovery Stay and Burden Defendants with
20                   Hundreds of Discovery Requests and Multiple Non-Party Subpoenas.**

21         After finalizing the stipulation regarding the proposed Second Amended Consolidated

22  Complaint, Plaintiffs' counsel sent five emails over Memorial Day Weekend to request that

23  Defendants stipulate to lift the stay of discovery ordered by the Court.  Hibbard Decl. ¶ 8.  On

24  June 2, 2021, after Defendants declined to stipulate, Plaintiffs' counsel wrote, among other

25  things, "Counsel, read my letter.  You have no right to stay discovery and never had.  This case is

26  moving forward no matter what you do.  Stay will be lifted."  Hibbard Decl. ¶ 9, Ex. 3.  Plaintiffs

27  then filed their Motion on June 8, 2021.  ECF No. 154.

28         Although ostensibly moving to lift the discovery stay to pursue discovery, Plaintiffs'

motion does not even address any of their 300+ discovery requests to Defendants.  It is difficult to overstate the over breadth of those requests, which is what originally compelled Defendants to seek a stay of discovery.[1]  Indeed, in many instances, Plaintiffs appear to be requesting *all* of the corporate defendants' records, regardless of whether those requests have any conceivable bearing on Plaintiffs' claims.  By way of example only, Plaintiffs broadly request information regarding *any* user of the BitMEX platform at nearly any point in time, regardless of the user's connection (or lack thereof) to this litigation.[2]  *See, e.g.*, Hibbard Decl., Ex. 2 (Kolchin RFP No. 2) ("List of all names, addresses and email addresses of all users of [the] BITMEX PLATFORM."); Hibbard Decl., Ex. 2  (Kolchin RFP No. 89) ("Any and all DOCUMENTS RELATED TO each of the users of [the] BITMEX PLATFORM."); Hibbard Decl., Ex. 1 (Dubinin RFP No. 1) ("Any and all DOCUMENTS RELATED TO each of the LEADERBOARD ACCOUNTS.").[3]  Plaintiffs also seek vast troves of documents relating to all trades executed on BitMEX during various extended periods of time, regardless of the identity of the trader, the success of the trade, or any purported relationship between the trade and this litigation.   *See* Hibbard Decl., Ex. 2 (Kolchin RFP Nos. 69-71) ("Any and all DOCUMENTS RELATING TO all executed[, unexecuted, and cancelled] orders on BITMEX PLATFORM during MANIPULATION TIMES.").[4]  And Plaintiffs seek *all* documents relating to HDR's subsidiaries, without any limitation whatsoever.  Hibbard Decl., Ex. 2 (Kolchin RFP No. 84) ("Any and all DOCUMENTS RELATED TO subsidiaries of HDR GROUP.").

As those examples demonstrate, Plaintiffs have made no effort to tailor their discovery requests (as well as their non-party subpoenas) to the needs of the case, and instead are seeking leave to launch a fishing expedition that would impose tremendous expense and burdens on both

---

[1] *See* ECF No. 43 at 7-10.  For the Court's convenience, Defendants highlight a sample of Plaintiffs' discovery requests again here.

[2] The "Relevant Period" defined in Plaintiffs' RFPs is from January 1, 2017 through the present. *See, e.g.*, Hibbard Decl., Ex. 2 (Kolchin RFPs Definition #17).

[3] Plaintiffs define "LEADERBOARD ACCOUNTS" as forty (40) trader accounts on the BitMEX leaderboard web page.  *See* Hibbard Decl., Ex. 1 (Dubinin RFPs Definition #14).

[4] Plaintiffs define "MANIPULATION TIMES" as eleven (11) periods of time varying in length over the course of approximately two years.  *See* Hibbard Decl., Ex. 2 (Kolchin RFPs Definition #13).

1   Defendants and non-parties.  While that is impermissible in any case, it is particularly

2   inappropriate here both because it has been determined once already that Plaintiffs lack any basis

3   for their lawsuit and because the Court will in any event soon address Defendants' pending

4   Motion to Dismiss.

5   **III.     ARGUMENT**

6        **A.     Plaintiffs' Request For This Court To Revisit Its Prior Discovery Stay Order**

7            **Is Procedurally Improper.**

8        At the outset, Plaintiffs' motion violates this Court's local rules.  The Court's prior order

9   staying discovery stated the Court would consider whether discovery should continue to be stayed

10  "*at or after* the hearing on subsequent motions to dismiss."  ECF No. 94 (emphasis added).  This

11  Court thus contemplated that there may be multiple motions to dismiss before the complaint was

12  either dismissed with prejudice or permitted to proceed to the merits stage, and that discovery

13  should not proceed (if at all) until such time.

14       By seeking to lift the discovery stay *before* this Court decides Defendants' pending

15  Motion to Dismiss, Plaintiffs are attempting to re-argue an issue already decided by the Court,

16  purportedly on the basis of "new facts and evidence" discovered by Plaintiffs since this Court's

17  prior ruling.  *See, e.g.*, Pltfs' Br. 2.  That is the quintessential example of a motion for

18  reconsideration.  *See* Local Civil Rule 7-9(b)(2) (authorizing party to file motion for

19  reconsideration upon showing of "[t]he emergence of new material facts or a change of law

20  occurring after the time of such order").  Nevertheless, Plaintiffs have not filed a motion for leave

21  to file a motion for reconsideration, as required by Local Civil Rule 7-9.  Indeed, Plaintiffs failed

22  to file such a motion for leave even though this issue was raised during the parties' meet and

23  confer process.  Hibbard Decl. ¶ 9, Ex. 3.

24       By itself, Plaintiffs' failure to comply with this Court's Local Rules warrants denial of

25  Plaintiffs' motion.  Yet that procedural default is even more glaring when considered in the

26  broader context of this litigation.  Plaintiffs' primary basis for seeking an order lifting the stay of

27  discovery appears to be a more than one-year-old tweet regarding the purported conduct of a third

28  party ("Ben Aabtc," whose real name Plaintiffs do not know) that occurred months *before* any

Plaintiff deposited bitcoin on BitMEX.  But despite the prior availability of this so-called "smoking gun" evidence,[5] Plaintiffs waited for nearly three months after this Court's dismissal order to file their motion on June 8, 2021.  In doing so, Plaintiffs ensured that Defendants' response would have to be served on June 22, 2021, just one day after filing their Motion to Dismiss.

Plaintiffs' strategy is obvious.  Plaintiffs ensured that Defendants would need to brief this motion simultaneously with Defendants' Motion to Dismiss the SACC.  And they further cluttered this Court's calendar by adding yet another motion—one which requests this Court to take a "preliminary peek" at the merits—to the Court's docket only weeks before it is scheduled to hear Defendants' Motion to Dismiss the SACC based on a full record, not the limited record constrained by the page limits for this motion.

Plaintiffs' gamesmanship should not be rewarded.  This Court should deny Plaintiffs' motion as procedurally improper and reiterate that the discovery stay will remain in place until Plaintiffs demonstrate that they can survive a motion to dismiss.

**B.      In Any Event, A Stay Remains Warranted Given The Pendency of Defendants' Dispositive Motion To Dismiss.**

Setting aside Plaintiffs' procedural gamesmanship, Plaintiffs have not and cannot demonstrate that discovery is necessary before this Court rules on Defendants' pending Motion to Dismiss.  A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding . . . discovery." Fed. R. Civ. P. 26(c)(1)(A).  "The district court has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); *see also Al Otro Lado, Inc. v. Nielsen*, No. 3:17-cv-02366-BAS-KSC, 2018 WL 679483, at *1 (S.D. Cal. Jan. 31, 2018) ("The Court has the discretion to stay discovery as part of its inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." (internal quotation omitted)).  "Good cause for staying

---

[5] Plaintiffs' speculation about "Ben Aabtc" demonstrates nothing and fails to support Plaintiffs' claims.  *See* Motion to Dismiss at 7, 13-14.

1   discovery may exist when the district court is 'convinced that the plaintiff will be unable to state a

2   claim for relief.'" *Yiren Huang v. Futurewei Techs., Inc.*, No. 18-cv-00534-BLF, 2018 WL

3   1993503, at *2 (N.D. Cal. Apr. 27, 2018) (quoting *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th

4   Cir. 2002)).

5          "Courts in this district have applied a two-pronged test to determine whether discovery

6   should be stayed pending resolution of a dispositive motion." *Huang*, 2018 WL 1993503, at *2

7   (collecting cases); *see also Al Otro Lado*, 2018 WL 679483, at *2. "First, a pending motion must

8   be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery

9   is directed." *Huang*, 2018 WL 1993503, at *2; *see Al Otro Lado*, 2018 WL 679483, at *2.

10  "Second, the court must determine whether the pending motion can be decided absent discovery."

11  *Id.* "In applying this two-factor test, the court must take a 'preliminary peek' at the merits of the

12  pending dispositive motion to assess whether a stay is warranted." *Huang*, 2018 WL 1993503, at

13  *2.

14         Both of those prongs are readily satisfied here.  Defendants have already prevailed on one

15  motion to dismiss, and dismissal is again appropriate given the numerous, unremediated

16  deficiencies in the SACC that are addressed in Defendants' pending Motion to Dismiss.

17  Moreover, as was true when Defendants first moved for a stay, no discovery is necessary for

18  resolution of Defendants' current Motion to Dismiss as it can be decided on the pleadings,

19  particularly given that Plaintiffs—not Defendants—control the evidence that would be necessary

20  for them to demonstrate they have standing to sue.  Finally, in any event, Plaintiffs have not and

21  cannot explain how permitting discovery to proceed now would result in the "just, speedy, and

22  inexpensive determination" of this case.  Fed. R. Civ. P. 1.  If anything, the sheer volume and

23  breadth of the discovery requests that Plaintiffs seek to press *after* Plaintiffs' complaint was

24  already dismissed once suggests that Plaintiffs' primary objective in pressing this discovery now

25  is simply to harass Defendants and drive up the cost of a potential resolution.  That is

26  impermissible, and Plaintiffs' motion should be denied.

27

28

OPPOSITION TO MOT. TO LIFT
DISCOVERY STAY 3:20-cv-03345-WHO

1

### 1.    *As Before, Defendants' Motion to Dismiss Is Dispositive of the Entire Case.*

2       As noted, the Court in its Order addressing Defendants' prior motion to dismiss concluded

3   that Plaintiffs' claims in the Consolidated Complaint failed for four independent reasons.  *See*

4   *generally* Order.  The same is true of the claims in Plaintiffs' SACC.  As set forth in Defendants'

5   Motion to Dismiss (which Defendants incorporate by reference in full), Plaintiffs still do not

6   allege any plausible facts establishing that Defendants harmed Plaintiffs, whether via market

7   manipulation (as Plaintiffs alleged previously), fraudulent inducement (as Plaintiffs now claim),

8   or otherwise.  *See* Motion to Dismiss at 8-22.  In fact, Plaintiffs' own allegations, documents

9   attached to and incorporated by the SACC, and other judicially noticeable materials confirm that

10   Plaintiffs' allegations of purported misconduct are entirely *im*plausible.  *See* Motion to Dismiss at

11   8-22.  Moreover, as before, all Plaintiffs lack Article III standing because they plead no plausible

12   facts showing that Defendants caused their purported losses.  *See* Motion to Dismiss at 22-25.

13   (Plaintiff BMA also lacks standing because after filing nine separate versions of its operative

14   complaint, it still has not alleged facts showing that it is seeking to vindicate its own rights.  *See*

15   Motion to Dismiss at 25).  Just as with the Consolidated Complaint, Plaintiffs fail to allege

16   plausible facts establishing that they possess statutory standing to pursue their claims, or plausible

17   facts to otherwise make out prima facie claims under RICO, the CEA, and California statutory or

18   common law.  *See* Motion to Dismiss at 25-35.

19       Prevailing on *any* one of these issues—implausibility, Article III standing, statutory

20   standing, or failure to state a claim—would be dispositive of this action, satisfying the first prong

21   of the stay analysis.  While district courts in the Ninth Circuit appear to apply both a "clear

22   possibility" and a related "convincing" standard to whether a defendant's motion is potentially

23   dispositive of the entire case, Defendants' Motion to Dismiss satisfies either standard.  *Compare*

24   *Al Otro Lado*, 2018 WL 679483, at *2 (applying "clear possibility" standard) *with Huang*, 2018

25   WL 1993503, at *2 (discussing "convincing" standard).  In applying the "clear possibility"

26   standard, the court in *Al Otro Lado* performed a "preliminary peek" of the defendants' motion to

27   dismiss.  2018 WL 679483, at *2-3.  Evaluating the strength of the motion as a whole, the court

28   granted the defendants' motion to stay discovery where their motion to dismiss "pose[d] strong

arguments that present a 'clear possibility'" that the motion "might" be granted by the court. *Id.* at *3. Similarly, in *Canyon Cnty v. Syngenta Seeds, Inc.*, the court found "a cursory review of Defendants' motions to dismiss reveal[ed] that [the plaintiff] must overcome significant *legal* hurdles to survive" the motions, "without requiring the Court to delve into factual issues." No. CV 05-306-S-EJL, 2005 WL 8165145, at *2 (D. Id. Oct. 28, 2005) (emphasis in original) (granting defendants' motion for stay of discovery). Likewise, in *Huang*, the court took an analogous approach while applying a "convincing" standard and took a "preliminary peek" at the defendant's motion to dismiss before granting a stay. 2018 WL 1993503, at *3. Although the court recognized that the defendant's pending motion to dismiss could go either way upon a further analysis at the appropriate time, it still found the defendant had "sufficiently shown that the pending motion is *potentially* dispositive." *Id.* at *4 (emphasis added).

Here, any "preliminary peek" conducted of Defendants' Motion to Dismiss demonstrates the strength of the arguments and the dispositive nature of the pending motion. That is particularly true given Plaintiffs' failure even to attempt to remedy many of the defects that this Court already identified. Furthermore, the threshold question of standing must be decided prior to Plaintiffs launching a disproportionate and burdensome fishing expedition. *See Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993) (affirming stay of discovery pending disposition of motions to dismiss where there was "no suggestion . . . that the discovery sought was relevant to whether or not the court has subject matter jurisdiction"). Accordingly, because Defendants' Motion to Dismiss is potentially dispositive of the entire case, Defendants have again met the first prong of the motion to stay analysis.[6]

---

[6] Plaintiffs cite *In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185-BLF, 2018 WL 3036734 (N.D. Cal. June 19, 2018) for the proposition that a stay of discovery cannot continue if a court is not satisfied that a pending motion is potentially dispositive of the case. There, despite only twelve document requests having been served to date, the court entered a stay of discovery through resolution of the motion to dismiss hearing because of the defendants' potentially dispositive pending motions to dismiss. *See* 2017 WL 3581188, at *2-3 (N.D. Cal. Aug. 18, 2017). The court lifted the stay of discovery only after (1) the plaintiffs narrowed their class action complaint, (2) one defendant no longer asserted its personal jurisdiction defense, (3) several claims survived the first round of motions to dismiss, (4) the defendants' latest motions to dismiss "[did] not appear to be potentially case dispositive or even dispositive on the issue at which discovery [was] directed," and (5) a trial date had been set. 2018 WL 3036734, at *2 and n.1. Here, (a) Defendants' prior motion to dismiss was granted in its entirety, (b) much of the same arguments still apply to Plaintiffs' latest overly long complaint, and (c) Plaintiffs have

### 2. *Discovery Is Still Not Necessary for the Resolution of Defendants' Motion to Dismiss.*

Defendants also still meet the second prong of the test because discovery is not necessary for the resolution of their Motion to Dismiss.  Defendants' Motion to Dismiss turns entirely on questions of law that do not require discovery to resolve.  That is the textbook example of when a stay of discovery is warranted.  *See Huang*, 2018 WL 1993503, at \*4 (finding second prong met where discovery "is not necessary to resolve" pending motion to dismiss); *Al Otro Lado*, 2018 WL 679483, at \*3 ("the Motion [to Dismiss] turns entirely on questions of law, the answers to which do not depend on discovery"); *Gibbs v. Carson*, No. C-13-0860 THE (PR), 2014 WL 172187, at \*3 (N.D. Cal. Jan. 15, 2014) (granting stay where "any discovery is unnecessary for resolution of the motion because the issues raised are exhaustion of administrative remedies and compliance with the statute of limitations"); *Canyon Cnty*, 2005 WL 8165145, at \*2 (granting stay where, among other reasons, "it does not appear that discovery would significantly illuminate the issues presented in the pending motions to dismiss").

*In re Graphics Processing Units Antitrust Litig.* ("*GPU*") is instructive.  There, the plaintiffs requested a specific subset of discovery—documents already produced in an ongoing, related government investigation—to bolster their antitrust claims that were being challenged by the defendants by means of a Rule 12 motion.  No. C 06-07417 WHA, 2007 WL 2127577, at \*5 (N.D. Cal. July 24, 2007).  The court denied that request, holding instead that the "better course" was to stay discovery while it determined whether the plaintiffs had stated a viable claim.  *Id.*  As the Court explained, "[a]fter full ventilation of the viability *vel non* of the complaint, we will all be in a much better position to evaluate how much, if any, discovery to allow."  *Id.* at \*3.  But until then, the Court determined that the speedy resolution of the litigation would be best served by a stay of discovery pending its order on the motion to dismiss.

The same is true here.  Indeed, this is the precise circumstance in which "[t]he Ninth Circuit has consistently upheld court orders staying discovery."  *Canyon Cnty*, 2005 WL 8165145, at \*2 (collecting cases); *see also Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987)

---

outstanding 300+ pending discovery requests that were not tailored to specific issues in the case.

OPPOSITION TO MOT. TO LIFT
DISCOVERY STAY 3:20-cv-03345-WHO

(affirming stay of discovery and holding that "[d]iscovery is only appropriate where there are factual issues raised by a Rule 12(b) motion"); *Kramer v. JP Morgan Chase Bank, N.A.*, 771 F. App'x 358, 360 (9th Cir. 2019) (finding district court was within its discretion in staying discovery pending resolution of defendants' motions to dismiss).

### 3. All Other Factors Support Continuing the Stay Pending the Resolution of the Motion to Dismiss.

Although Defendants' pending dispositive motion and the absence of the need for discovery to resolve that motion alone support maintaining the existing discovery stay, that conclusion is buttressed by three other factors.

*First*, maintaining the status quo will continue to promote the efficient resolution of this case. *See* Fed. R. Civ. P. 1. As detailed in Defendants' Motion to Dismiss, Plaintiffs' complaint is fundamentally flawed in multiple respects and should be dismissed in full. But even if the Court concludes otherwise and some part of the SACC survives Defendants' Motion to Dismiss, it is likely that Plaintiffs' 378-page (plus exhibits), 1035-paragraph, and 33-count complaint will be narrowed. As in *GPU*, the Court will then "be in a much better position to evaluate how much, if any, discovery to allow" after evaluation of Defendants' pending motion, at which point it can chart "the best course for discovery." *GPU*, 2007 WL 2127577, at *5. Indeed, a more narrowly tailored discovery plan is particularly important here given the extraordinarily broad nature of Plaintiffs' requests to date.

*Second*, Plaintiffs have failed to identify any need—let alone a "compelling" one—for immediate discovery. There are no current case deadlines necessitating immediate discovery. Further, there are no legitimate concerns of evidence preservation as to Defendants or, to Defendants' knowledge, non-parties, as this Court has recognized. *See* Aug. 11, 2020 Joint Case Management Conference Statement, ECF No. 33 at 12; June 15, 2020 Order Denying Ex Parte Application for Evidence Preservation, ECF No. 29. Indeed, Defendants have already certified that all documents have been preserved in light of HDR's broad litigation hold (that also applies to the other Defendants in this action) and in light of HDR's efforts with Twilio and Intercom to ensure potentially relevant information in the possession of those non-parties is preserved instead

of lost due to those non-parties' routine document retention policies.  *See* Hibbard Decl. ¶ 10.

And even Plaintiffs do not seriously contend that they need discovery to proceed with their

claims, as they purport to "have developed both ample and detailed facts and overwhelming

documentary evidence" to oppose Defendants' Motion to Dismiss (a characterization which

Defendants obviously dispute).  *See* Pltfs' Br. 2.  Because even a cursory "review of the record

does not reveal factual issues in need of immediate exploration," a stay of discovery remains

warranted.  *Ameritel Inns v. Moffat Bros. Plastering, L.C.*, No. CV 06-359-S-EJL, 2007 WL

1792323, at *4 (D. Id. June 20, 2007) (granting stay of discovery pending ruling on motion to

dismiss except for service of initial disclosures); *In re Term Commodities Cotton Futures Litig.*,

No. 12 Civ. 5126(ALC)(KNF), 2013 WL 1907738, at *6-7 (S.D.N.Y. May 8, 2013) (finding

"plaintiffs failed to demonstrate that a short delay in discovery will impose any unfair prejudice

on them" as assertions like witnesses' memories fading and relevant documents being destroyed

by non-parties "are the usual litigation risks that affect all the parties equally, regardless of the

amount of time permitted for discovery").

   *Third*, Defendants continue to face significant prejudice absent a stay given the

disproportionate discovery propounded by Plaintiffs.  "No longer is it good enough to hope that

the information sought might lead to the discovery of admissible evidence . . . Instead, a party

seeking discovery of relevant, non-privileged information must show, before anything else, that

the discovery sought is proportional to the needs of the case."  *Gilead Sciences, Inc. v. Merck &*

*Co, Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (denying

motion to compel where discovery sought was disproportionate to needs of case).

   Here, Plaintiffs have propounded overly broad and burdensome discovery on issues that

have no bearing on, and are not necessary for, resolution of the Motion to Dismiss, let alone this

action.  Even a cursory review of Plaintiffs' requests demonstrates that they are needlessly

overbroad as propounded, are not proportional to the needs of the case, and appear intended

mainly to harass.  A continued stay pending the outcome of the Motion to Dismiss will, as

discussed above, prevent Defendants from incurring significant discovery costs and burdens,

which ultimately will be unnecessary if the Court, again, grants Defendants' Motion to Dismiss.

1    *See Dao v. Liberty Life Assurance Co. of Boston*, No. 14-cv-04749-SI (EDL), 2016 WL 796095,

2    at *5 (N.D. Cal. Feb. 23, 2016) (denying motion to compel discovery because, among other

3    things, considerations of relevance and proportionality depended on presiding judge's ultimate

4    ruling on legal question related to discovery requests).  Simply put, before requiring Defendants

5    at this juncture to bear the significant burden of responding to Plaintiffs' discovery requests,

6    including inevitable motion practice to rein in Plaintiffs' abusive discovery demands, this Court

7    should first determine if Plaintiffs have any viable claim, or if the time has come to dismiss the

8    SACC with prejudice.

9         **C.      Plaintiffs' Additional Arguments Are Uniformly Meritless.**

10        Plaintiffs' improper motion to lift the discovery stay is predicated on two overarching

11   points, each of which is entirely meritless.

12        *First*, Plaintiffs purport to have uncovered "'smoking gun' type evidence of money

13   laundering conspiracy between Defendants, a Reed family member and prolific market

14   manipulator Ben Aabtc."  Pltfs' Br. 23.  As detailed in Defendants' Motion to Dismiss, these so-

15   called revelations are nothing more than unwarranted inferences and rank speculation that

16   Plaintiffs do not even connect to their claimed damages.  As Defendants' Motion to Dismiss

17   explains, Plaintiffs' SACC now includes an allegation, apparently based upon a tweet from May

18   2020, that a now-deceased individual known only as "Ben Aabtc" (Plaintiffs do not know his real

19   name) pumped "bitcoin market price . . . on 'reference' spot exchanges while maintaining an

20   open $30,873,844 Perpetual Swap position in his winner account on BitMEX."  SACC ¶ 469; *id.*

21   ¶¶ 466–70.  Plaintiffs allege, however, that this supposed third-party conduct occurred in April

22   and May 2018—again, months before any Plaintiff claims to have deposited bitcoin with

23   BitMEX, let alone traded on the platform.  SAC ¶¶ 511–12.  And while Plaintiffs claim that

24   Defendants "aided and abetted" that purported third-party conduct, the only "evidence" that

25   Plaintiffs offer in support of that conclusion is an undated photograph that Plaintiffs claim shows

26   the individual Defendants and "Ben Aabtc" together.  *Id.* ¶ 466.  That obviously is not evidence

27   of anything, let alone evidence of a criminal conspiracy as Plaintiffs illogically claim.  Moreover,

28   Plaintiffs still have not explained how these new additions render plausible the core allegations in

1  their SACC:  namely, that Defendants *themselves* manipulated the price of bitcoin derivatives by

2  trading on other exchanges on the precise dates Plaintiffs allegedly suffered harm, or that

3  Defendants fraudulently induced Plaintiffs to trade on BitMEX through misrepresentations on the

4  BitMEX website.

5  　　*Second*, Plaintiffs yet again raise the baseless allegation that Defendants have destroyed

6  evidence (*see* Pltfs' Br. 15 & n.2) and speculate that third party records may be deleted because of

7  normal document retention policies (*see* Pltfs' Br. 23).  But as before, Plaintiffs offer nothing to

8  support such claims.  Defendants have consistently confirmed to Plaintiffs that relevant evidence

9  in the possession, custody, or control of Defendants has been preserved.  Hibbard Decl. ¶ 10.

10  There are no legitimate concerns of evidence preservation as to Defendants.  In the parties'

11  August 11, 2020 Joint Case Management Conference Statement, Defendants certified that they

12  have taken steps to preserve relevant evidence.  ECF No. 33 at 12.  Nothing has changed since.

13  *See Huang*, 2018 WL 1993503, at *4 (finding stay appropriate where "[t]here is minimal concern

14  on evidence preservation as the parties have represented that they have taken steps to preserve

15  relevant information").  And while Plaintiffs once again invoke the unrelated DOJ actions

16  brought against the individual Defendants, Pltfs' Br. 15, Plaintiffs yet again "fail to explain why

17  [the DOJ action is] relevant to the claims brought in this suit."  Order at 3 n.2.

18  　　As to Plaintiffs' concerns about document preservation by non-parties, the Court already

19  denied Plaintiffs' *ex parte* application for an evidence preservation order as to third parties

20  Twilio, SendGrid, and Intercom on June 15, 2020 because of Plaintiffs' failure to demonstrate

21  any imminent concern with document destruction.  *See* ECF No. 29.  Plaintiffs now claim

22  evidence preservation issues relate to third parties BitStamp, Kraken, and Coinbase.  Pltfs' Br. 23.

23  But Plaintiffs fail to explain what relevant evidence will be deleted and only allege evidence "*may*

24  be routinely deleted" without reference to any specific facts supporting the basis for such claim.

25  Nor do Plaintiffs offer any support for their statement that "industry players" have a "three-year"

26  document retention policy.  Further, a stay of discovery does not prevent Plaintiffs from sending

27  letters requesting that these third parties preserve purportedly relevant evidence, similar to what

28  Plaintiffs have already done for Twilio, SendGrid, Intercom, and others.  Hibbard Decl. ¶ 11.

1

## IV.     CONCLUSION

2          For the foregoing reasons, this Court should deny Plaintiffs' Motion to Lift Discovery

3     Stay.

4

5      DATED:  June 22, 2021                              Respectfully submitted,

6                                                         JONES DAY

7

8                                                         By: */s/ Stephen D. Hibbard*

9                                                              Stephen D. Hibbard

10                                                        Counsel for Defendants
                                                          HDR GLOBAL TRADING LIMITED and
11                                                        ABS GLOBAL TRADING LIMITED

12                                                        AKIN GUMP STRAUSS HAUER & FELD
                                                          LLP
13

14

15                                                        By: */s/ Peter I. Altman*
                                                               Peter I. Altman
16
                                                          Counsel for Defendant
17                                                        ARTHUR HAYES

18                                                        BOIES SCHILLER FLEXNER LLP

19

20                                                        By: */s/ Edward H. Takashima*
                                                               Edward H. Takashima
21

22                                                        Counsel for Defendant
                                                          BEN DELO
23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS, LLP


By: _/s/ Douglas K. Yatter_
    Douglas K. Yatter
    Matthew Rawlinson

Counsel for Defendants
SAMUEL REED

1        I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file

2    this DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT DISCOVERY

3    STAY.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all signatories concur in this

4    filing.

5

6    DATED:  June 22, 2021                        _____/s/ Stephen D. Hibbard_____

7                                                 STEPHEN D. HIBBARD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28