Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
James M. Gross (Admitted *Pro Hac Vice*)
jgross@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:   +1.415.626.3939
Facsimile:    +1.415.875.5700

Attorneys for Defendants
HDR GLOBAL TRADING LIMITED and ABS
GLOBAL TRADING LIMITED

Peter I. Altman (State Bar No. 285292)
paltman@akingump.com
Marshall L. Baker (State Bar No. 300987)
mbaker@akingump.com
Jessica H. Ro (State Bar No. 329737)
jro@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone:   +1.310.229.1000
Facsimile:    +1.310.229.1001

Attorneys for Defendant
ARTHUR HAYES

Edward H. Takashima (State Bar No. 270945)
etakashima@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone:   +1.213.629.9040
Facsimile:    +1.213.629.9022

Attorneys for Defendant
BEN DELO

Douglas K. Yatter (State Bar No. 236089)
douglas.yatter@lw.com
LATHAM & WATKINS, LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone:   +1.212.906.1200
Facsimile:    +1.212.751.4864

Matthew Rawlinson (State Bar No. 231890)
matt.rawlinson@lw.com
LATHAM & WATKINS, LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone:   +1.650.328.4600
Facsimile:    +1.650.463.2600

Attorneys for Defendant
SAMUEL REED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov, and Păun Gabriel-Razvan,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo, and Samuel Reed,<br><br>Defendants. | Case No. 3:20-cv-03345-WHO<br><br>(Consolidated Case Nos. 3:20-cv-07140-WHO and 3:20-cv-08034-WHO)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:     August 25, 2021<br>Time:    2:00 p.m.<br>Ctrm:   2 – 17th Floor<br>Judge:   Honorable William H. Orrick |

1

**TABLE OF CONTENTS**

2

**Page**

3

4    I.    INTRODUCTION .................................................................................................. 1

5    II.    ARGUMENT ........................................................................................................ 2

6         A.    Plaintiffs' Fraud Claims—Which Underlie This Entire Lawsuit—Fail. ............... 2

7              1.    Plaintiffs Fail to Salvage Their Market Manipulation Theory. ................... 2

8              2.    Plaintiffs' New, Contradictory Fraudulent Inducement Theories Are
9                    Inadequately Pleaded. ................................................................................ 4

10                  (a)    Plaintiffs Fail to Plead Facts Supporting the Falsity of the
                          Terms of Service. ............................................................................... 4

11
                    (b)    Plaintiffs Fail to Plead Facts Supporting the Falsity of the
12                         Liquidity Statements on the Website. ............................................... 7

13             3.    Plaintiffs' Reliance Allegations Are Also Insufficient. ............................ 12

14        B.    Plaintiffs Still Lack Article III Standing to Pursue Their Claims. ....................... 13

15        C.    The SACC Otherwise Fails To Support Any Claim. .......................................... 16

16             1.    The SACC Does Not Adequately Allege a RICO Claim. ......................... 16

17             2.    The SACC Does Not Adequately Allege a CEA Claim. .......................... 17

18             3.    The SACC Does Not Adequately Allege Common Law Fraud. .............. 18

19             4.    The SACC Does Not Adequately Allege UCL or FAL Claims ............... 19

20             5.    Plaintiffs Have Forfeited Any Defense of Their Remaining Claims. ....... 20

21   III.   CONCLUSION ................................................................................................... 20

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014)................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................6

*Berkeley v. Wells Fargo Bank*,
   No. 15-cv-00749, 2016 WL 67221 (N.D. Cal. Jan. 6, 2016)................................6

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (2014) .........................................................................6, 7

*Cedric Kushner Promotions v. King*,
   533 U.S. 158 (2001)........................................................................................16

*Chapman v. Skype Inc.*,
   220 Cal. App. 4th 217 (2013) .......................................................................7, 19, 20

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products*
   *Liability Litigation*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ............................................................17

*Crumley v. U.S. Bank Nat'l Ass'n.*,
   No. 17-cv-7144, 2018 WL 3145641 (N.D. Cal. June 27, 2018)................................9

*Edmundson v. Procter & Gamble Co.*,
   537 F. App'x 708 (9th Cir. 2013) ....................................................................9

*Ferris v. Santa Clara Cnty.*,
   891 F.2d 715 (9th Cir. 1989)............................................................................6

*Great Pac. Secs. v. Barclays PLC*,
   No. CV 14-1210, 2016 WL 11502178 (C.D. Cal. Oct. 19, 2016) ...........................10, 12, 20

*Klein v. King*,
   No. C-88-3141-FMS, 1989 WL 225027 (N.D. Cal. Mar. 1, 1989) ...........................6

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017)..........................................................................19

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) .................................................................................7, 20

*Laws. Funding Grp., LLC v. Harris*,
   No. CV 15-04059, 2015 WL 13298145 (C.D. Cal. Sept. 18, 2015)........................................11

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)........................................................................15, 16

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993)................................................................................5, 10

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
   179 Cal. App. 4th 36 (2009) .................................................................................20

*RHUB Commc'ns, Inc. v. Karon*,
   No. 16-cv-06669-BLF, 2017 WL 3382339 (N.D. Cal. Aug. 7, 2017).......................................18

*Royal Primo Corp. v. Whitewater W. Indus., Ltd.*,
   No. 15-cv-04391, 2016 WL 1718196 (N.D. Cal. Apr. 29, 2016)................................4, 7, 8, 13

*In re Seagate Tech. LLC Litig.*,
   233 F. Supp. 3d 776 (N.D. Cal. 2017) ...................................................................10, 12

*Serv. by Medallion, Inc. v. Clorox Co.*,
   44 Cal. App. 4th 1807 (1996) ............................................................................18, 19

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) .....................................................................20

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ....................................................................20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*,
   467 F. Supp. 3d 849 (N.D. Cal. 2020) .....................................................................18

STATUTES

18 U.S.C. § 1964(c) ..........................................................................................16

Cal. Pen. Code § 496..........................................................................................20

Cal. Civ. Code § 3333 ........................................................................................19

1    **I.     INTRODUCTION**

2          Nothing in the Opposition cures the defects in Plaintiffs' Second Amended Consolidated

3    Complaint ("SACC").  If anything, the Opposition reinforces why this action should be dismissed

4    with prejudice.

5          This Court previously dismissed Plaintiffs' Consolidated Complaint ("CC") alleging

6    market manipulation because, among other things, that theory lacked plausibility and relied on

7    "information and belief" allegations that did not describe with particularity the factual basis for

8    Plaintiffs' belief.  In granting leave to amend, the Court relied on Plaintiffs' claim "that they can

9    allege more facts, including expert reports that could connect the dots in their price manipulation

10   theory," and to that end, the Court instructed Plaintiffs to "focus" on that theory.  Order at 2, 30.

11         But the Opposition, like the SACC, does none of those things.  Procedurally, the

12   Opposition is overlong (standing at 36 pages, not counting an unauthorized 13-page exhibit) and

13   thus violates the court-ordered stipulation.  Substantively, it fails to save the SACC, continuing to

14   rely on conclusory accusations of wrongdoing in support of its market manipulation theory

15   without connecting any of Defendants' purported conduct to Plaintiffs' harm.  As for Plaintiffs'

16   representation to the Court about "expert reports," Plaintiffs present none.

17         Rather than shoring up their defective theory of market manipulation, the Opposition

18   pivots to a brand new theory of fraudulent inducement that is just as farfetched.  Worse, this new

19   theory contradicts the old in ways that further confirm the implausibility of Plaintiffs' claims:

20   (1) whereas the old theory of market manipulation was based on BitMEX's "high liquidity,"

21   Plaintiffs' new theory of fraudulent inducement is based on BitMEX's "insufficient liquidity";

22   (2) whereas Plaintiffs' "entire lawsuit" was based on claims about trading by a single "individual

23   defendant" (Order at 9), Plaintiffs now blame "automated tools" operated by a trading desk and

24   conspiring third parties; (3) whereas Plaintiffs' "information and belief" claims purportedly came

25   from "former employees," Plaintiffs now have deleted reference to those employees—providing

26   even less of a basis for their claims.  These and other self-serving reversals detailed in

27   Defendants' papers only reinforce that the SACC's evident implausibility justifies granting

28   Defendants' third motion to dismiss with prejudice.

1    **II.    ARGUMENT**

2        **A.    Plaintiffs' Fraud Claims—Which Underlie This Entire Lawsuit—Fail.**

3        Plaintiffs' lawsuit is and always has been premised on allegations of fraud.  Though

4    Plaintiffs have fundamentally changed their theory of fraud since the Court last evaluated their

5    complaint, it remains the case that as go Plaintiffs' fraud claims, so goes the rest of Plaintiffs'

6    complaint.  Plaintiffs still have failed to plausibly allege a fraud claim under any theory.  For this

7    reason, and because Plaintiffs have now presented nine separate iterations of the operative

8    complaint, the Court should grant Defendants' motion to dismiss without leave to amend.

9            **1.    Plaintiffs Fail to Salvage Their Market Manipulation Theory.**

10        Plaintiffs' original complaint focused exclusively on a market manipulation theory of

11    fraud—namely, that Defendants manipulated markets to Plaintiffs' detriment on specific dates

12    between November 2018 and July 2019 by trading on illiquid spot cryptocurrency exchanges to

13    cause liquidations on the highly liquid BitMEX cryptocurrency derivatives exchange.  *See* ECF

14    No. 97, CC ¶¶ 8, 166-215, 407–415; *see also* ECF No. 143, Order at 9, 13 n.5 ("[T]he entire

15    market manipulation scheme underl[ies] all of plaintiffs' causes of action").  But the Court

16    rejected that theory—including on the basis that Plaintiffs failed to plead plausible facts

17    connecting any purported market manipulation to the dates on which Plaintiffs allege they

18    sustained losses.  Order at 9–16.  The Court nonetheless granted Plaintiffs leave to amend,

19    instructing that Plaintiffs "must keep their focus on how defendants have harmed them and

20    explain why their theory of price manipulation is plausible." *Id.* at 30.

21        Plaintiffs make no attempt to cure the core pleading deficiency identified by the Court.

22    Nowhere in their SACC or Opposition do Plaintiffs identify particularized and plausible factual

23    allegations tying their alleged trading losses to specific trades on other exchanges that purportedly

24    caused liquidations of Plaintiffs' positions.  Indeed, although Plaintiffs promised the Court that

25    "they can better explain the basis of their alleged price manipulation scheme and support it with

26    reports from experts" (Order at 30), the SACC does not include an "expert report."  *See* Mot. at 7.

27    Plaintiffs cite various paragraphs in the SACC that purport to include "extensive expert analysis"

28    (Opp. at 12)—but those citations reveal only a copy-and-paste job from the *Messieh v. HDR*

1    *Global Trading Ltd.* complaint.  *Compare* SACC ¶¶ 247-53, 263, 294-98, 308-09, *with* No. 20-

2    cv-3232, ECF No. 53 ¶¶ 87-93, 103, 134-37, 146 (S.D.N.Y. Feb. 12, 2021).  Nor do Plaintiffs

3    support their "information and belief" allegations with "very detailed information" supposedly

4    provided by former employees; in fact, the SACC deletes those references.  *See* Mot. at 12.

5            Instead, Plaintiffs simply swap one set of speculative allegations with another, and

6    preview unpled allegations that are still more conjecture.  Most prominently, Plaintiffs have taken

7    inconsistent and conclusory positions as to *who* executed the unspecified, supposedly

8    manipulative trades that purportedly led to liquidations.  Plaintiffs initially alleged those trades

9    were executed by an individual from HDR and by unidentified third-party "perpetrators."  *See* CC

10   ¶¶ 152-164, 230, 232, 238, 298, 311, 325, 419.  But unable to plausibly plead that Defendants'

11   trades (as opposed to third-party trades) caused Plaintiffs' losses, Plaintiffs attempted to argue

12   that they were referring to Defendants when using the term "perpetrator"—an excuse that this

13   Court found "disingenuous."  Order at 13 n.6.  After the Court granted Defendants' motion to

14   dismiss the CC, Plaintiffs shifted gears once more, alleging in their SACC that "automated

15   software tools" used by the "Insider Trading Desk" executed the trades.  *See* SACC ¶ 321.  And

16   Plaintiffs now, in their Opposition, focus on yet another theory, claiming that third parties

17   executed the supposedly manipulative trades with Defendants' improper assistance.  Opp., Ex.

18   A.[1]  The very inconstancy of these allegations—which Plaintiffs make no effort to reconcile—

19   renders them implausible.  And even setting those inconsistencies aside, Plaintiffs *still* offer no

20   plausible facts supporting their theory that any "defendant executed trades on other

21   cryptocurrency platforms as part of an intricate market manipulation conspiracy on the exact

22   dates that plaintiffs suffered their losses."  Order at 9; *see also* Mot. at 10-14.

23          In a tacit concession that Plaintiffs cannot plead factual support for the market

24   manipulation theory initially pleaded and evaluated by the Court, Plaintiffs pivot to a brand new

25   theory of fraudulent inducement in the SACC and devote their Opposition to defending that

26

27   [1] In addition, Exhibit A, which purports to introduce evidence of an "Evil Gang" and
     which traffics in outlandish insinuation about a third-party trader's death, should be rejected in
     any event.  This 13-page exhibit is a clear evasion of the Court's 30-page limit for the opposition,

28   consisting of Twitter speculation from unknown accounts.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

theory.  Plaintiffs now allege they were induced to trade on BitMEX, and subsequently sustained losses, due to representations (a) in the BitMEX Terms of Service that falsely characterized HDR's trading arm and (b) on the BitMEX website that misstated the "insufficient liquidity" on the BitMEX exchange.  *E.g.*, Opp. at 20.  At the threshold, the Court granted Plaintiffs leave to cure the defective allegations directed to their preexisting market manipulation claims—not to allege entirely new claims.  Order at 30.  But even putting that procedural defect aside, a review of Plaintiffs' new, inconsistent allegations confirms that Plaintiffs' fraud claims are implausible.

Plaintiffs' new theory about "insufficient liquidity" contradicts the theory that they had been pressing since initiating this litigation—that BitMEX manipulated the market by exploiting the very feature of the platform Plaintiffs claimed enabled the fraud:  its status as the "most liquid exchange."  CC ¶¶ 234–35 (alleging that BitMEX benefits from "market manipulation events" on other exchanges with "way lower liquidity").  Plaintiffs' new theory of fraud (premised on low liquidity on BitMEX) runs directly counter to the market manipulation theory (premised on high liquidity on BitMEX) that they originally pleaded.  This contradiction—for which Plaintiffs offer no explanation—renders their claims implausible.  *See Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, No. 15-cv-04391, 2016 WL 1718196, at *3 (N.D. Cal. Apr. 29, 2016) ("[A] court may look to prior pleadings in determining the plausibility of an amended complaint.").  It also amounts to a textbook violation of the sham pleading doctrine.  *See, e.g.*, *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding.").  And in any event, Plaintiffs' new contradictory fraudulent inducement theories also fail on their own terms, as Defendants showed in their opening brief and reiterate below.

> **2.     Plaintiffs' New, Contradictory Fraudulent Inducement Theories Are Inadequately Pleaded.**
>
> **(a)     Plaintiffs Fail to Plead Facts Supporting the Falsity of the Terms of Service.**

Plaintiffs' first fraudulent inducement theory assumes that HDR's trading arm engaged in market manipulation notwithstanding Plaintiffs' continued failure to adequately plead that any specific manipulative conduct caused their losses.  As such, this new theory is premised on the

1   same "high liquidity" allegations as Plaintiffs' original market manipulation theory of fraud,

2   while doing nothing to reconcile the fatal flaws of that initial theory.  According to Plaintiffs, the

3   Terms of Service stating that HDR's trading desk "receives access and trading privileges only on

4   the same terms as are available to any other user" were false, because the trading desk (unlike

5   Plaintiffs) possessed "God Access," whereby it could access "all customer, order flow, execution

6   and open position information of the BitMEX Trading Platform."  SACC ¶¶ 501, 505; Opp. at 14.

7   Plaintiffs also argue that the Terms were false because the trading desk (unlike Plaintiffs) was

8   "not subject to server overload freezes and lockouts," which were then deployed "offensively to

9   liquidate traders including Plaintiffs."  Opp. at 14.

10         This theory is based on improper, naked "information and belief" allegations and must be

11   dismissed.  Plaintiffs state that Defendants manipulated the market using automated tools

12   "developed by BitMEX and operated by its Insider Trading Desk," alleging—"on information

13   and belief"—supposed "manipulation times" in which the "Insider Trading Desk" was involved.

14   SACC ¶ 448.  But to rely on "information and belief" allegations, Plaintiffs "must state the

15   factual basis for the belief."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  And

16   Plaintiffs fail to provide any colorable facts to support their allegations. Mot. at 15–16.

17         Recognizing these flaws, Plaintiffs now deny that their allegations were ever made on

18   information and belief.  *See* Opp. at 7–9.  But that brazen denial defies reality.  In Plaintiffs' own

19   words:  "Plaintiffs *are informed and believe* and thereon allege that each of the Defendants HDR,

20   ABS, Hayes, Delo and Reed used automated market manipulation software tools developed by

21   BitMEX[.]"  SACC ¶ 414 (emphasis added).  Elsewhere in the SACC, Plaintiffs allege "*on

22   information and belief* … manipulation times" in which the "Insider Trading Desk" supposedly

23   "used highly sensitive and confidential information about traders" to "automatically manipulat[e]

24   cryptocurrency prices[.]"  *Id.* ¶ 448 (emphasis added).  In the face of these express "information

25   and belief" allegations (and others like them), Plaintiffs cannot credibly claim that their trading

26   desk allegations are "made *directly, positively* and not 'on information and belief.'"  Opp. at 29

27   (emphasis in original).  And because Plaintiffs have been on notice of the deficiencies in their

28   naked "information and belief" allegations since at least this Court's Order granting the motion to

1   dismiss the CC, *see* Order at 9–15, Plaintiffs' SACC should be dismissed with prejudice. *See*

2   *Ferris v. Santa Clara Cnty.*, 891 F.2d 715, 719 (9th Cir. 1989) (affirming dismissal with

3   prejudice due to plaintiff's "fail[ure] to cure the defect the court had told him about").

4          Even if the allegations were not made on information and belief, they remain too

5   conclusory to state a claim. Nowhere do Plaintiffs plead details—beyond "mere conclusory

6   statements"—showing that the operation of HDR's trading arm did not accord with the disclosed

7   Terms of Service. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Fatally, Plaintiffs fail to state

8   facts showing that those Terms were false at the time Plaintiffs say they deposited their bitcoin

9   and began using BitMEX in late 2018 and 2019. Plaintiffs' allegation that the trading desk

10  operated "continuously throughout the Relevant Period to manipulate BitMEX" (SACC ¶ 271) is

11  too "vague" to state a claim. *Klein v. King*, No. C-88-3141-FMS, 1989 WL 225027, at *3 (N.D.

12  Cal. Mar. 1, 1989); *Berkeley v. Wells Fargo Bank*, No. 15-cv-00749, 2016 WL 67221, at *8 (N.D.

13  Cal. Jan. 6, 2016). And Plaintiffs' other allegations—that an engagement to "possib[ly]" build a

14  "hidden" desk occurred "[b]etween 2015 and 2016" (SACC ¶ 270) and that "before 2018,

15  BitMEX reengineered BitMEX's foundational software to empower" the desk (*id.*)—similarly

16  fail to establish a temporal link to Plaintiffs' use of BitMEX in late 2018 and 2019. *See Iqbal*,

17  556 U.S. at 678 (requiring "more than a sheer possibility that a defendant has acted unlawfully");

18  *Klein*, 1989 WL 225027, at *3 (dismissing complaint that failed to allege "the specific time

19  periods" in which the fraud occurred); *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472

20  (2014) (affirming denial of leave to amend where plaintiff "fail[ed] to allege how the July 2005

21  appraisal was a misrepresentation of the current market value of the property [in 2010]").

22         Plaintiffs also fail to allege any factual specifics about the operation of the trading desk.

23  Plaintiffs speak in a conclusory way about the trading desk's so-called "automated software

24  tools" (e.g., SACC ¶ 448), but Plaintiffs nowhere explain with particularity what these tools are

25  or how these tools operated to cause liquidations of their positions. The credibility of these

26  allegations are severely undermined, too, given the fact that Plaintiffs had previously—and

27  inconsistently—alleged that the market manipulation was executed not by automated tools but by

28  a single HDR individual. *See* Order at 9 ("Plaintiffs concede that their entire lawsuit depends on

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

the viability of their allegations regarding the purported trading activity by individual defendant Reed.").  And even now Plaintiffs proffer the inconsistent allegation that a third party manipulated the markets with Defendants' assistance.  *See* Opp., Ex. A.  Inconsistent allegations between the various iterations of Plaintiffs' complaints confirm the implausibility of their claims—warranting dismissal with prejudice.  *Royal Primo Corp.*, 2016 WL 1718196, at *3.

Plaintiffs' citations—*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217 (2013) and *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011)—do nothing to overcome dismissal.  Opp. 28.  In *Chapman*, the court held that a representation of an "Unlimited" calling plan (at the time the plaintiff bought the plan) could be viewed as false where it was objectively contradicted by a written policy that imposed limits.  220 Cal. App. 4th at 228.  In *Kwikset*, the California Supreme Court held that the plaintiffs had standing under the UCL where they alleged they were deceived by a product's false "Made in the U.S.A." label into buying the product, which they otherwise would not have bought.  51 Cal. 4th at 317–18.  Here, by contrast, Plaintiffs allege no specific facts showing that the Terms of Service were false—let alone false at the time Plaintiffs used BitMEX.  Plaintiffs allege no contradiction in any written policy (as in *Chapman*), nor any facts demonstrating falsity (as in *Kwikset*), as Plaintiffs provide nothing beyond conclusory "information and belief" assertions to contend that the trading desk operated in a way that rendered the Terms of Service false when Plaintiffs opened BitMEX accounts.

Plaintiffs' attempt to repackage their misrepresentation claim as a fraudulent concealment claim also fails.  Opp. at 21, 33.  "[T]he requirement that fraud must be pleaded with specificity applies equally to a cause of action for fraud and deceit based on concealment."  *Cansino*, 224 Cal. App. 4th at 1472 (citation and quotation marks omitted).  As discussed, Plaintiffs have alleged no specific facts to suggest any fraud—let alone a fraud that Defendants "actively conceal[ed]" (Opp. at 33)—and so Plaintiffs' concealment claim must similarly be dismissed.

      **(b)**    **Plaintiffs Fail to Plead Facts Supporting the Falsity of the Liquidity Statements on the Website.**

Plaintiffs' second fraudulent inducement theory fares no better.  To start, it is premised on an allegation about "insufficient liquidity" on BitMEX (Opp. at 20) that contradicts both

1    Plaintiffs' original market manipulation theory and their first fraudulent inducement theory

2    (premised on high liquidity on BitMEX), and thus is implausible.  *See Royal Primo Corp.*, 2016

3    WL 1718196, at *3.  In any event, as Defendants' opening brief showed, Plaintiffs' newfound

4    claim that the BitMEX website misrepresented liquidity fails in multiple respects.  Claiming a

5    misrepresentation based on the statement, "1500% More Bitcoin/USD liquidity than any other

6    platform.  BitMEX's XBTUSD market is the most liquid in the world," conflicts with Plaintiffs'

7    own prior pleadings and judicially noticeable materials, finds no support in the very "spread data"

8    on which Plaintiffs purport to rely, and lacks specificity.  Mot. at 17–20.

9        Plaintiffs' Opposition does nothing to rebut these points and in many places just ignores

10    them.  For instance, Plaintiffs still point to no facts showing that the website statement was

11    false—i.e., that liquidity was actually higher on any other platform—at the times Plaintiffs say

12    they made deposits with BitMEX.  *See id.* at 18.  Merely alleging a higher "*average*" bid-ask

13    spread (a purported measure of liquidity) on another platform across a four-month period does

14    nothing to show higher liquidity on *specific* dates deposits were made; as even Plaintiffs admit,

15    liquidity is constantly changing.  *See, e.g.*, SACC ¶ 254 (alleging that BitMEX only profited from

16    liquidations "*as long as* there is sufficient liquidity in the market that the bid-ask spread is smaller

17    than the maintenance margin") (emphasis added); *id.* ¶ 540 (alleging "wild downward swings"

18    and "staggering price plunges" affecting liquidity).[2]  Moreover, as Defendants pointed out (Mot.

19    at 17) and Plaintiffs ignore in their opposition, even one of Plaintiffs' own exhibits acknowledges

20    that "[l]iquidity is a subjective term."  SACC Ex. 3.  Having themselves alleged that liquidity is

21    both highly variable and subjective, Plaintiffs are barred from pleading a misrepresentation claim

22    on the theory that the website statement claimed BitMEX unvaryingly had "1500% More

23

24        [2] These allegations also point to the fundamental inconsistency in Plaintiffs' theory of the
     case.  According to Plaintiffs, Defendants only benefit when there is "sufficient liquidity" on the
25    platform:  "For BitMEX to lose, the market has to be so illiquid that a position that is halfway to
     being unprofitable that it consumes the posted collateral declines further until it completely
26    consumes the collateral before BitMEX can sell."  SACC ¶ 246; *see also* CC ¶ 221 ("[T]he
     BitMEX desk helps create the liquidity that keeps the forced liquidations profitable.").  At the
27    same time, Plaintiffs now contend that the "*insufficient liquidity* available on the BitMEX
     platform … contributed to and exacerbated" Plaintiffs' losses, SACC ¶ 550 (emphasis added),
28    even though, under Plaintiffs' own theory, Defendants would not benefit from those liquidations.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1    Bitcoin/USD liquidity than any other platform." *See Edmundson v. Procter & Gamble Co.*, 537

2    F. App'x 708, 709 (9th Cir. 2013) (alleged false "claim must be sufficiently specific, either by

3    reference to particular product characteristics or criteria … such that the claim can be tested").

4         Nor do Plaintiffs rebut the point that the average figures they posit lack any credible basis.

5    Plaintiffs allege average figures that are *identical* to figures other plaintiffs (also represented by

6    Plaintiffs' counsel here) use in another case but for which the relevant period is *several years*

7    *shorter* than here.  Given the significant difference in time periods over which the average figures

8    are calculated, it is simply not credible for the averages to be *exactly* the same.  *See* Mot. at 19.

9         Relatedly, Plaintiffs cannot plausibly deny that they rely on an OKEx blogpost as the sole

10   basis for their claim—a blogpost that makes clear that the data on average bid-ask spreads for that

11   platform concerns a narrow time period that is entirely different from the relevant period in this

12   case, and thus cannot support a fraud claim here.  *See id.* at 19–20; SACC ¶ 527.  Perhaps

13   recognizing that the blogpost refutes their claim, Plaintiffs now assert that the blogpost "does *not*

14   form [the claim's] *basis*."  Opp. at 4 (emphasis in original).  But that denial is not credible:

15   Plaintiffs themselves concede that the bid-ask spread figures they rely on in the SACC were

16   "provided by OKEX cryptoderivative exchange" (SACC ¶ 527), and these figures are *precisely*

17   the same figures as in the OKEx blogpost.  *See* Mot. at 19–20.  Plaintiffs do not (and cannot) say

18   where they could have possibly obtained such information other than from the OKEx blogpost.

19   While Plaintiffs also object on procedural grounds to Defendants' calling out their reliance on the

20   blogpost, that objection fails too as discussed below.  *See infra* pp. 11-12.

21        Unable to defend their arguments, Plaintiffs resort to raising new ones.  For the first time

22   in their Opposition, Plaintiffs present two new charts—entirely unsourced—purporting to show

23   the falsity of the liquidity statement.  *See* Opp. at 30-32.  Procedurally, this is improper:  Plaintiffs

24   cannot raise new allegations by way of opposition.  *See Crumley v. U.S. Bank Nat'l Ass'n.*, No.

25   17-cv-7144, 2018 WL 3145641, at *5 (N.D. Cal. June 27, 2018) (holding that plaintiff's inclusion

26   of "additional facts and new claims" in "opposition papers" was "procedurally improper").

27        Even if considered, the new allegations fail on their own terms.  To start, nowhere do

28   Plaintiffs allege the factual basis of these charts—or even explain where they came from—and

1   these charts should be disregarded for that reason alone.  *See Neubronner*, 6 F.3d at 672

2   (requiring "factual basis" for allegations not within the plaintiff's personal knowledge).[3]  In any

3   event, both charts lack any relevance to Plaintiffs' liquidity claim.

4          Consider the first chart.  It purports to show the "comparative bitcoin derivatives trading

5   volume of BitMEX and competing exchanges" and supposedly demonstrates that competing

6   volumes were never below half of BitMEX's volume and "actually overtook" BitMEX by the

7   middle of 2019 (after Plaintiffs sustained their losses).  Opp. at 31.  But nothing in that chart

8   pertains to the website's liquidity statement about *specific* Bitcoin/USD derivatives (such as

9   XBTUSD); rather, the chart purports to pertain *generally to all bitcoin derivatives* trading.  The

10  chart thus could not serve to contradict the website's statement and lacks the "specificity"

11  required to demonstrate fraud even if it were properly sourced.  *In re Seagate Tech. LLC Litig.*,

12  233 F. Supp. 3d 776, 790 (N.D. Cal. 2017) (dismissing complaint where "plaintiffs identify no

13  other source of information as to the 'true'" facts); *Great Pac. Secs. v. Barclays PLC*, No. CV 14-

14  1210, 2016 WL 11502178, at *7 (C.D. Cal. Oct. 19, 2016) ("Based on Plaintiff's own allegations,

15  it is unclear *what* these different figures represent, and therefore, if they can be compared.").

16         The second chart suffers from a similar shortcoming.  It purports to show "bitcoin spot

17  trading volume" that supposedly establishes BitMEX's lower liquidity.  Opp. at 32.  But, in

18  Plaintiffs' own words (SACC ¶¶ 1, 16–17), BitMEX is not a "spot exchange" that offers trading

19  in cryptocurrencies like Bitcoin or Ethereum directly; rather, it is a "cryptocurrency derivatives

20  exchange" that sells derivative products.[4]  Plaintiffs cannot, under their theory of the case, equate

21  liquidity in one market to liquidity in another market.  Indeed, although Plaintiffs now seek to

22  _____

23  [3] Plaintiffs' assertion that Defendants claimed the website statement is grounded in trading
    volume mischaracterizes the Motion, which explained only that Plaintiffs had no basis to allege

24  that the statement reflected *bid-ask spread*, particularly when the only metrics identified on the
    webpage containing the statement reflected the platform's trading volume.  *See* SACC, Ex. 20.

25  [4] Attempting to circumvent the fact that BitMEX does not offer "spot trading," Plaintiffs
    claim that Defendants' statement regarding liquidity "did not limit itself to just perpetual swaps,

26  but simply referred to 'Bitcoin/ USD liquidity,' which covers liquidity in futures as well as spot
    bitcoin markets, both of which were offered by all the industry players at the relevant time."

27  Opp. at 5.  That argument makes no sense, given that BitMEX is not, and never has been, a spot
    exchange (as Plaintiffs admit).  But even if BitMEX's statements could be construed as
    referencing spot products, it would not be reasonable for Plaintiffs to rely on a statement

28  regarding the liquidity of a market for a product that BitMEX has never offered.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1   equate the two markets, Plaintiffs' entire case once hinged on their *difference*:  Under their

2   previous market manipulation claim, Plaintiffs alleged that it was precisely the contrast between

3   the "illiquid" nature of "spot exchanges" (like BitStamp, Coinbase, and Kraken) and the highly

4   liquid nature of BitMEX that enabled Defendants to manipulate the market by placing "relatively

5   small market orders" on the illiquid exchanges to cause liquidations on BitMEX.  *See* CC ¶¶ 8,

6   159–61; CACC ¶¶ 16, 171–73; *see also* SACC ¶ 16.  A chart that is thus not only irrelevant but

7   also reveals contradictory pleadings cannot support a claim of fraud.

8        Plaintiffs' remaining procedural arguments lack merit.  Plaintiffs assert that this Court

9   must accept "Plaintiffs' version of facts, which must be taken as true on the MTD stage, no matter

10  how unlikely."  Opp. at 2.  That is not the law.  A court is not "'required to accept as true

11  conclusory allegations which are contradicted by documents referred to in the complaint' or

12  documents that are proper subjects of judicial notice."  Mot. at 9 & n.3 (quoting *Laws. Funding*

13  *Grp., LLC v. Harris*, No. CV 15-04059, 2015 WL 13298145, at *5 (C.D. Cal. Sept. 18, 2015)).

14  And as Defendants showed, judicially noticeable materials—including pleadings filed by

15  Plaintiffs' counsel in a parallel state court case and a blogpost from OKEx containing the very

16  "bid-ask spread data … provided by OKEX cryptoderivative exchange" upon which Plaintiffs

17  purport to rely—show that Plaintiffs have *no* basis for their conclusory allegation that BitMEX's

18  liquidity representations were false during the "Relevant Period."  Mot. at 19–20.

19       Plaintiffs respond by claiming that the OKEx blogpost is not subject to judicial notice

20  because "Defendants are seeking to use the improperly introduced blog post for its truth, relying

21  on the specific numbers stated therein."  Opp. at 4.  Not so.  Defendants take no position on the

22  accuracy of the figures contained in the OKEx blogpost.  Instead, Defendants highlight the

23  blogpost because it contains the "bid-ask spread data" that purportedly form the basis for

24  Plaintiffs' allegations, and those figures do *not* comport with Plaintiffs' characterization in the

25  SACC.[5]  As Defendants explained, that is the precise circumstance in which Plaintiffs'

26

27       [5] Plaintiffs' complaint about Defendants' request for judicial notice of blogposts showing
    the launch date of perpetual swap products on OXEx, Huobi, and Binance fails for similar
28  reasons.  Opp. at 4.  Here again, Defendants do not cite the blogposts for their truth, but rather to
    show that Plaintiffs have no basis to claim that "by no later than October of 2018, BitMEX was
    overtaken by other crypto exchanges including Binance, Huobi and/or OKEX in terms of Bitcoin

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1   inconsistent allegations should be disregarded.  *See* Mot. at 18–20.

2        Plaintiffs also argue that Defendants rely on "extrinsic" facts that cannot be considered on

3   a motion to dismiss, such as that users had access to real-time liquidity indicators on the BitMEX

4   website.  Opp. at 2-3.  But the SACC itself admits that the BitMEX website contained a "visible

5   order book" reflecting trading activity on the platform, which is essential to Plaintiffs' legally

6   insufficient fraud-on-the-market theory.  SACC ¶ 415; *see also* Order at 27–28.

7        The Opposition thus confirms that Plaintiffs cannot point to *any* "source of information

8   that would show" that the liquidity statements on BitMEX's website were false at the time

9   Plaintiffs made deposits on BitMEX.  *See In re Seagate*, 233 F. Supp. 3d at 792.  Plaintiffs'

10   claims based on that statement must be dismissed with prejudice.

11        **3.**      **Plaintiffs' Reliance Allegations Are Also Insufficient.**

12        This Court rightly rejected Plaintiffs' "fraud on the market" theory of reliance.  Order at

13   27–28.  Pressed to concoct yet another theory, Plaintiffs now assert in conclusory fashion that

14   they would not have used BitMEX had they known that the Terms of Service's description of

15   HDR's trading arm or the website's liquidity statement were false.  SACC ¶¶ 504, 526.  As

16   discussed, neither the Terms nor the liquidity statement were false, and Plaintiffs fail to plead

17   plausible facts supporting those bald conclusions.  *See supra* Part II.A.2.  Plaintiffs also fail to

18   allege plausible facts establishing actual or reasonable reliance on the purported falsity of the

19   Terms of Service or the website's liquidity statement.  *See Great Pac. Secs.*, 2016 WL 11502178,

20   at *11–13 (dismissing complaint for its failure to allege facts supporting reliance on purported

21   misrepresentations pertaining to defendants' trading services).

22        According to their own pleadings, Plaintiffs were apparently aware of claims about the

23   trading desk's purported use of non-public customer information before Plaintiffs allegedly

24   opened accounts and deposited bitcoin with BitMEX.  *See* SACC, Ex. 1.  Indeed, in their CC,

25   Plaintiffs asserted that BitMEX's internal desk "trade[d] against BitMEX's own customers on

26

27   / USD liquidity," SACC ¶ 527, given that the only statistics they cite (from OKEx) concern
perpetual swap products, *see* RJN, Ex. C.  In any event, Plaintiffs' allegation that BitMEX's
liquidity was surpassed by one "and/or" another exchange does not allege falsity with

28   particularity.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1    their own exchange, using BitMEX's inside information about its customers' existing trading

2    positions, stop loss orders, liquidation prices and open orders and enjoys many other unfair

3    advantages not available to other users of the BitMEX platform."  CC ¶ 19.  Yet, nowhere in their

4    CC did Plaintiffs claim fraudulent inducement based on these purported false Terms of Service

5    concerning the trading desk.  It was only after this Court rejected their market manipulation

6    theory that Plaintiffs invented out of whole cloth their new theory of fraudulent inducement based

7    on the Terms of Service.  These changing positions refute Plaintiffs' claims of reliance.

8           The same is true for Plaintiffs' arguments about the liquidity statement.  Previously,

9    Plaintiffs stated that they were "specifically looking for a reputable and honest exchange *with the*

10   *highest liquidity* in the industry to trade on."  CACC ¶ 699 (emphasis added).  Of course, that

11   contradicts Plaintiffs' claim that they relied on representations about the *magnitude* of BitMEX's

12   higher liquidity—1500% or otherwise—as opposed to the representation that BitMEX was the

13   "most liquid" exchange, which Plaintiffs no longer challenge as inaccurate.  *See* Opp. at 10–11.

14   Perhaps realizing the problems their earlier allegations pose to their newfound claim, Plaintiffs

15   now appear to have removed the reference to their intent to "loo[k] for an exchange with the

16   highest liquidity."  But that deletion does not cure the absence of specific and plausible facts to

17   support reliance on any purported false statement about liquidity, and once again, reinforces the

18   implausibility of Plaintiffs' claims.  *See Royal Primo Corp.*, 2016 WL 1718196, at *3.

19          **B.      Plaintiffs Still Lack Article III Standing to Pursue Their Claims.**

20          Apart from Plaintiffs' failure to allege plausible facts with particularity establishing that

21   Defendants engaged in *any* fraudulent conduct, Defendants showed that the SACC independently

22   fails because it lacks plausible facts showing that Plaintiffs possess Article III standing to pursue

23   their claims.  As Defendants explained, the SACC, like the CC before it, lacks any plausible facts

24   tethering Plaintiffs' purported bitcoin losses on specific dates to any conduct by Defendants.

25   Mot. at 22–25.  That is true notwithstanding Plaintiffs' pivot to a previously unalleged fraudulent

26   inducement theory in the SACC and their addition of "loss of use" and "trading commission"

27   damages absent from their prior pleadings.  *Id.* at 23–25.  And while the lack of a connection

28   between Plaintiffs' purported losses and Defendants' conduct dooms all of Plaintiffs' claims,

1  Defendants also showed that Plaintiff BMA independently lacks standing because the SACC *still*
2  does not allege facts demonstrating that BMA is "seeking to vindicate its *own* rights, instead of
3  those of its members." *Id.* at 25 (quoting Order at 16).

4        To begin, all of BMA's claims must be dismissed with prejudice—Plaintiffs' Opposition,
5  once again, makes no effort to show that Plaintiff BMA is seeking to vindicate its own rights.

6        With respect to the remaining Plaintiffs, the Opposition largely ignores Defendants'
7  Article III arguments. The sole mention of Article III is found on page 27 of the Opposition,
8  which states that "Defendants' fraudulent solicitations and price manipulations both directly and
9  proximately resulted in Plaintiffs' out-of-pocket losses, as described in detail above in connection
10 with the CEA causes of action." Nothing in the CEA-related portions (or any other section) of
11 Plaintiffs' Opposition, however, explains why Plaintiffs' conclusory allegation that Defendants
12 caused their purported losses is plausible.

13       Take, for example, Plaintiffs' market manipulation allegations. Despite Plaintiffs' effort
14 to whitewash from the SACC references to third parties asserted in prior iterations of the
15 complaint, Defendants showed that the SACC still fails to plead plausible facts demonstrating
16 that Plaintiffs' losses were caused by Defendants, and are not "the result of independent action of
17 some third party"—like Quick-Grove-Mind, Ben Aabtc, or other third parties identified in the
18 SACC—"not before the Court." Mot. at 23 (quoting Order at 15). Plaintiffs respond by claiming
19 that "Quick-Grove-Mind *is* Defendants" and therefore their complaint contains no inconsistency.
20 But, even setting aside the SACC's contradictory allegations as to the identity of Quick-Grove-
21 Mind (*see id.* at 13 n.6; Order 6 n.3), Plaintiffs' allegations are made solely on "information and
22 belief" with no explanation as to the basis for that belief. *Cf.* SACC ¶ 19. Plaintiffs also try to
23 equate Ben Aabtc with Defendants, Opp. at 5, but even Plaintiffs recognize that Ben Aabtc is a
24 distinct individual, as they claim only that Defendants "assisted, aided, abetted, and encouraged"
25 his actions. SACC ¶ 468. Plaintiffs, however, plead no facts explaining how Defendants assisted
26 Ben Aabtc, who is alleged only to have engaged in market manipulation months before any
27 Plaintiff claims to have suffered losses in any event. Plaintiffs also suggest that Ben Aabtc was
28 Defendants' "agent," Opp. at 5, but that charge is not levied in the SACC, and Plaintiffs allege no

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1   plausible facts supporting that conclusion.  And Plaintiffs simply ignore that the SACC also

2   alleges that other third parties executed legitimate trades that, according to Plaintiffs, could

3   impact the price of cryptocurrency derivatives traded on BitMEX.  *See* Mot. at 13.  Because the

4   SACC lacks "facts tending to exclude the possibility" that market forces or third party conduct

5   caused their losses, Plaintiffs lack Article III standing to pursue their claims.  *Id.* at 23.

6        Defendants further showed that Plaintiffs' inclusion of two new categories of purported

7   damages—so-called "loss of use" and "trading commission" damages—does not remedy

8   Plaintiffs' failure to establish constitutional standing.  *Id.* at 24-25.  As to Plaintiffs' purported

9   loss of use damages, Plaintiffs' contention that they would have deposited their bitcoin "in

10  interest-bearing accounts" but for Defendants' purported fraudulent conduct is entirely

11  implausible, given their allegations elsewhere that Plaintiffs were looking to "profit[] … from

12  cryptoderivative *trading*."  *Id.* at 24.  Plaintiffs ignore this point, claiming only, without citation,

13  that their loss of use damages "are 'out-of-pocket' damages" that "are recoverable by Plaintiffs

14  under the law."  Opp. at 15-16.  Even if Plaintiffs had support for that claim (and they do not), it

15  is no response to Defendants' plausibility point.  Plaintiffs cannot simultaneously allege that

16  (1) they were induced to trade on BitMEX due to it having the "highest liquidity in the industry to

17  trade on" and (2) that they would have foregone trading altogether and deposited their bitcoin in

18  an interest-bearing account had they known a different trading platform allegedly had higher

19  liquidity.  Plaintiffs' failure to plausibly allege that they suffered "loss of use" damages from any

20  purported conduct by Defendants thus deprives them of Article III standing.

21       Defendants further showed that Plaintiffs' claimed "trading commission" damages—i.e.,

22  the fees Plaintiffs incurred from executing trades on BitMEX, regardless of the success of those

23  trades—do not afford Plaintiffs with Article III standing because those fees are entirely divorced

24  from the purported conduct giving rise to Plaintiffs' claims.  Mot. at 24–25.  Plaintiffs respond by

25  claiming that their "justifiable reliance" suffices to allege causation.  Opp. at 17.  But Plaintiffs

26  allege no facts to show that any inducement *proximately caused* their claimed losses.  *See Maya*

27  *v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) ("To survive a motion to dismiss for lack of

28  constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action

1   and their alleged harm that is more than 'attenuated'").  It was only when Plaintiffs' positions

2   *were liquidated*—not when Plaintiffs were supposedly induced to use BitMEX—that they even

3   claimed to have suffered losses.  And it was only after this Court rejected Plaintiffs' claim of

4   market manipulation that Plaintiffs alleged a new theory of fraudulent inducement resulting in

5   types of losses never before raised ("loss of use" and "trading commissions").  Thus, aside from

6   being a self-serving sham, *see* Mot. at 9 & n.4, Plaintiffs' SACC fails because Plaintiffs cannot

7   show that the purported inducement (as opposed to the liquidations) caused their losses.

8              **C.      The SACC Otherwise Fails To Support Any Claim.**

9         Plaintiffs do not dispute that the SACC rests nearly entirely upon Plaintiffs' overarching

10   fraud allegations.  Because those allegations are deficient for the reasons detailed above, the

11   entire SACC necessarily falls.  But even setting aside those overarching pleading deficiencies,

12   Defendants showed that every one of Plaintiffs' 33 causes of action independently fails.

13   Plaintiffs, yet again, largely ignore these points, and the few responses they offer are unavailing.

14              **1.      The SACC Does Not Adequately Allege a RICO Claim.**

15         Defendants showed that in addition to the deficiencies discussed above, Plaintiffs' RICO

16   claims fail because Plaintiffs (1) lacked standing under Section 1964(c); (2) failed to plausibly

17   allege "the existence of a distinct enterprise, separate and apart from the general business of

18   BitMEX"; and (3) failed to allege plausible facts establishing that Defendants committed any

19   RICO predicate offense.  *See* Mot. at 25–26.  Plaintiffs do not rebut any of these points.

20         As to the existence of an enterprise, Plaintiffs cite *Cedric Kushner Promotions v. King*,

21   533 U.S. 158, 163 (2001), for the proposition that under RICO, "[t]he corporate owner/employee,

22   a natural person, is distinct from the corporation itself."  Opp. at 26.  That is irrelevant.  As the

23   Court already recognized, where, as here, a purported enterprise consists solely of a "corporation

24   carrying out its own activities (even fraudulent ones) only through its agents and employees," that

25   does not constitute a RICO "enterprise."  Order at 19 (internal quotation marks omitted).

26         Plaintiffs' other points are largely duplicative of those already discussed above.  Plaintiffs

27   claim that allegations made in support of their RICO allegations are made "*directly*, *positively*

28   (and not on 'information and belief'), and, therefore, these allegations must be taken as true."

1    Opp. at 26–27.  But as Defendants explained above, that argument is belied by the SACC itself

2    (which continues to allege the factual predicates for Plaintiffs' RICO claims on "information and

3    belief," *see, e.g.*, SACC ¶¶ 414, 416, 425, 458–59), and otherwise ignores minimum pleading

4    standards.  *See supra* Part II.A.2(a).  Plaintiffs also claim that they have standing to pursue their

5    RICO claims because "Defendants' fraudulent solicitations and price manipulations both directly

6    and proximately resulted in Plaintiffs' out-of-pocket losses."  Opp. at 26–27.  That argument, too,

7    ignores minimum pleading requirements, as Defendants explained above.  *See supra* Part II.B.

8              **2.      The SACC Does Not Adequately Allege a CEA Claim.**

9              Defendants further showed that in addition to the SACC's overarching pleading failures

10   detailed above, *see supra* Parts II.A-B, Plaintiffs' CEA claims independently fail because the

11   SACC fails to adequately plead facts supporting an inference of scienter as to each Defendant.

12   Mot. at 28–29.  Plaintiffs' response—which simply copies and pastes various allegations from the

13   SACC that refer to "Defendants" generally, *see* Opp. at 14, 19, 21—proves Defendants' point.

14   As Defendants explained, Rule 9(b) prohibits plaintiffs from "merely lump[ing] defendants

15   together," requiring instead "concrete facts" that "support [the] contention that [the defendant]

16   intentionally and knowingly deceived the market."  Mot. at 28 (internal quotation marks omitted).

17   Because that is all that Plaintiffs offer with regards to scienter here, their CEA claims fail.

18             Plaintiffs raise two other points, each of which is meritless.  Plaintiffs first claim that

19   under *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., and Prods. Liab. Litig.*, 295 F.

20   Supp. 3d 927, 978 (N.D. Cal. 2018), they need not plead the scienter elements of their CEA

21   claims with specificity.  But that case did not involve a CEA claim.  Nor did the plaintiff in that

22   case "merely lump defendants together," like the SACC does here.  Plaintiffs also claim that they

23   have adequately pled scienter because they alleged facts "showing that the defendants had both

24   motive and opportunity to commit the fraud" and showing "conscious misbehavior or

25   recklessness."  Opp. at 24–25 (citation omitted).  But the "facts" Plaintiffs point to in support of

26   that claim are the same allegations that Defendants have already shown to be conclusory or made

27   on information and belief, and otherwise implausible.  *See supra* Part II.A; *see also* Order at 12-

28   15 (rejecting similar "means, motive, and opportunity" allegations in CC).

1    Finally, Defendants showed that Plaintiffs have not stated a viable aiding-and-abetting

2    claim stemming from purported market manipulation on March 13, 2020, both because Plaintiff

3    BMA—the only plaintiff alleging a loss on that date—lacks standing and because the SACC fails

4    to allege plausible facts supporting that claim.  Mot. at 29–30.  Plaintiffs, yet again, ignore those

5    points, stating only:  "Plaintiffs allege each Defendant's scienter and actions in furtherance of the

6    fraudulent and manipulative scheme integral to the BitMEX platform.  This states a claim for

7    aiding and abetting a CEA violation."  Opp. at 25.  Because Plaintiffs have not remedied the

8    pleading deficiencies regarding BMA's standing or market manipulation purportedly carried out

9    by Quick-Grove-Mind, as with the CC, Plaintiffs' aiding-and-abetting claim fails.

10                   **3.      The SACC Does Not Adequately Allege Common Law Fraud.**

11    Defendants have already explained that all of Plaintiffs' fraud claims—whether under the

12    CEA, RICO, or California law—fail for lack of plausible facts.  *See supra* Part II.A.

13    Plaintiffs' common law fraud claims also fail for lack of causation because allegations that

14    Defendants' purported trades on other platforms caused Plaintiffs' losses, or that Plaintiffs would

15    have deposited bitcoin in interest-bearing accounts had they not traded on BitMEX, are

16    implausible.  *See supra* Part II.B.  And Plaintiffs' claims that they suffered "trading commissions"

17    damages due to supposed misrepresentations on the BitMEX website is at odds with the reality

18    that they sued only after their positions *were liquidated*.  Indeed, California case law confirms

19    that where, as here, it is "the termination, not the misrepresentation, that resulted in the alleged

20    harm," a plaintiff's supposed "reliance" on that misrepresentation by entering into a relationship

21    with the defendant does "*not* constitute 'detriment proximately caused' by [the defendant's]

22    conduct."  *E.g.*, *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1819 (1996).[6]

23    Because any "reliance" by Plaintiffs on Defendants' purported misrepresentations—by depositing

24

---

25          [6] *See also RHUB Commc'ns, Inc. v. Karon*, No. 16-cv-06669-BLF, 2017 WL 3382339, at
      *12 (N.D. Cal. Aug. 7, 2017) (Plaintiff failed to allege that its "damages were proximately caused
26    by [the defendant's] statements or concealment, rather than the breakdown in the parties'
      contractual relationship."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods.*
27    *Liab. Litig.*, 467 F. Supp. 3d 849, 859 (N.D. Cal. 2020) ("[B]ecause it was the revelation of the
      fraudulent scheme, rather than the fraud itself, that caused Plaintiffs' alleged harm, their
28    'detriment [was not] proximately caused' by Volkswagen and Bosch's misrepresentations").

1    bitcoin (that enabled them to open trading positions) and paying commissions (that enabled their

2    trades to be executed)—could not constitute "detriment proximately caused" by alleged

3    misrepresentations in the Terms of Service or on the website, Plaintiffs' common law fraud

4    claims fail. *See Clorox,* 44 Cal. App. 4th at 1819 (quoting Cal. Civ. Code § 3333).

5              **4.    The SACC Does Not Adequately Allege UCL or FAL Claims.**

6              Plaintiffs' Opposition fails to save their defective statutory claims.  Their UCL and FAL

7    claims are derivative of their deficient fraud claims and so necessarily fail.  Without well-pled

8    facts showing a misrepresentation, causation, or reliance (*see supra* Parts II.A–C), the statutory

9    claims fall with the fraud claims.  Moreover, Plaintiffs do not defend their UCL claim on the basis

10   that any conduct was "unfair" (one of the three UCL prongs), and so any claim premised on that

11   prong should be dismissed for that reason alone.  A claim premised on the "unfair" prong would

12   fall short in any event.  *See* Mot. at 33.  For the remaining prongs ("unlawful" and "fraudulent"),

13   Plaintiffs merely contend that actual reliance and causation must be inferred from their allegation

14   of a material misrepresentation and that, as a result, they have properly stated causes of action

15   under the UCL and FAL.  Opp. at 34.  That contention lacks merit.

16             As discussed, Plaintiffs have not properly alleged a misrepresentation.  *See supra* Part

17   II.A.2.  As with common law claims, UCL and FAL claims premised on a misrepresentation

18   require "specific facts pointing to actual falsehood," which Plaintiffs fail to offer.  *See Kwan v.*

19   *SanMedica Int'l*, 854 F.3d 1088, 1096-97 (9th Cir. 2017) (dismissing claims where allegations of

20   false "marketing claims of [a product's] health benefits" were "conclusory").  Nor have Plaintiffs

21   properly alleged a material misrepresentation, as it would not be "reasonable" for Plaintiffs to

22   claim to "have been influenced by" the purported misrepresentations about the trading arm and

23   BitMEX's liquidity when their pleadings demonstrate a clear lack of reliance.  *Chapman*, 220

24   Cal. App. 4th at 229-30; *see supra* Part II.A.3.  Plaintiffs were aware of public speculation about

25   the trading arm before they began using BitMEX and only concocted a new fraud claim based on

26   the Terms of Service after the Court rejected their market manipulation claim.  Plaintiffs likewise

27   raised their new fraud claim based on "insufficient liquidity" only after their market manipulation

28   theory, which depended on the contrary premise of high liquidity, failed.

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO

1    Plaintiffs' self-serving reversals—and the information available to Plaintiffs as made clear

2    by *their own pleadings*—defeat any claim that representations about the trading desk and the

3    magnitude of BitMEX's liquidity were material to them.  *See Princess Cruise Lines, Ltd. v.*

4    *Super. Ct.*, 179 Cal. App. 4th 36, 43-44 (2009) (finding defendant's allegedly false statements

5    about travel excursions "immaterial" in light of plaintiffs' "frank concessions" earlier in the case

6    establishing "*no reliance*" on the statements, which plaintiffs made before they subsequently tried

7    to alter their legal theory).  Consequently, no actual reliance or causation can be inferred from

8    these circumstances.  *See also Great Pac. Secs.*, 2016 WL 11502178, at *15–16 (requiring

9    plaintiffs to plead "actual reliance" without resort to "a presumption or inference of reliance").

10   *Chapman* and *Kwikset* are not to the contrary:  The pleadings there did not themselves refute

11   claims of materiality, reliance, and causation as they do here.

12                    **5.      Plaintiffs Have Forfeited Any Defense of Their Remaining Claims.**

13           Rather than heed this Court's instruction that Plaintiffs "cannot take a kitchen sink

14   approach to pleading their claims" (Order at 30), Plaintiffs' SACC added hundreds of paragraphs

15   and asserted a total of 33 counts against Defendants.  In doing so, Plaintiffs forced Defendants to

16   respond to a raft of new allegations and legal theories in the motion to dismiss.  Yet when it came

17   time to oppose, Plaintiffs abandoned many of their causes of action, attempting to defend only

18   their fraud claims under the CEA, RICO, common law, FAL, and UCL.  As for the rest of their

19   causes of action—for violation of the CLRA, negligence, restitution, constructive trust,

20   accounting, conversion, replevin, and Cal. Pen. Code § 496 (Counts XXII, XXVI-XXXIII),

21   Plaintiffs simply assert in a conclusory heading that "The Remaining Causes of Action Are Also

22   Viable," while failing to address any particular cause of action, either in name or substance, in the

23   body of the Opposition.  Opp. at 36.  Plaintiffs have therefore forfeited any defense of those

24   causes of action.  *See Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015);

25   *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal.

26   2011).  In any event, each fails for the reasons stated in Defendants' Opening Brief.

27   **III.    CONCLUSION**

28           For the foregoing reasons, this Court should dismiss the SACC with prejudice.

1    DATED:  August 13, 2021                    Respectfully submitted,

2                                                                JONES DAY

3

4                                                                By: /s/ Stephen D. Hibbard
                                                                      Stephen D. Hibbard
5

6                                                                Counsel for Defendants
                                                                 HDR GLOBAL TRADING LIMITED and
7                                                                ABS GLOBAL TRADING LIMITED

8                                                                AKIN GUMP STRAUSS HAUER & FELD
                                                                 LLP
9

10

11                                                               By: /s/ Peter I. Altman
                                                                      Peter I. Altman
12
                                                                 Counsel for Defendant
13                                                               ARTHUR HAYES

14                                                               BOIES SCHILLER FLEXNER LLP

15

16                                                               By: /s/ Edward H. Takashima
                                                                      Edward H. Takashima
17
                                                                 Counsel for Defendant
18                                                               BEN DELO

19

20                                                               LATHAM & WATKINS, LLP

21

22                                                               By: /s/ Douglas K. Yatter
                                                                      Douglas K. Yatter
23                                                                    Matthew Rawlinson

24                                                               Counsel for Defendant
                                                                 SAMUEL REED
25

26

27

28

1    I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file

2    this DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'

3    SECOND AMENDED CONSOLIDATED COMPLAINT.  In compliance with Civil L.R. 5-

4    1(i)(3), I hereby attest that all signatories concur in this filing.

5    DATED:  August 13, 2021

6

7                    */s/ Stephen D. Hibbard*
                     STEPHEN D. HIBBARD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOT. TO DISMISS
3:20-cv-03345-WHO