Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

Sanjay Prasad, Esq. (SBN 191230)
APPLETON LUFF
221 Main Street, #496
Los Altos, CA 94023
United States of America
Telephone: (650) 918-7647
Email: prasad@appletonluff.com

Attorneys for Plaintiffs
BMA LLC, Yaroslav Kolchin,
Vitaly Dubinin, Dmitry Dolgov
And Păun Gabriel-Razvan

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BMA LLC, Yaroslav Kolchin, Vitaly Dubinin, Dmitry Dolgov and Păun Gabriel-Razvan,<br><br>Plaintiffs,<br><br>v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes, Ben Delo and Samuel Reed,<br><br>Defendants. | Case No. 3:20-cv-3345-WHO<br><br>**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' REPLY AND MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT**<br><br>**Hon. William H. Orrick**<br>**Date: August 25, 2021**<br>**Time: 2:00 PM**<br>**Crtrm.: 2, 17th Floor**<br><br>**Discovery Cutoff: None Set**<br>**Pretrial Conference Date: None Set**<br>**Trial Date: None Set** |

# ARGUMENT

Plaintiffs submit this Sur-Reply In Opposition To Defendants' Reply And Motion To Dismiss Plaintiffs' Second Amended Consolidated Complaint ("SACC").

## I. DEFENDANTS' ARGUMENT, MADE FOR THE FIRST TIME IN THEIR REPLY, THAT PLAINTIFFS' LOSSES WERE NOT DETRIMENTAL UNDER HOLDING OF *SERVICE BY MEDALLION, INC. V. CLOROX*, IS MERITLESS

Defendants argue, for the first time in their Reply Brief, pp. 18-19, that "any 'reliance' by Plaintiffs on Defendants' purported misrepresentations—by depositing bitcoin (that enabled them to open trading positions) and paying commissions (that enabled their trades to be executed)—could not constitute 'detriment proximately caused' by alleged misrepresentations in the Terms of Service or on the website," in view of California Court of Appeals decision in *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807 (*Clorox*). However, *Clorox* does not help Defendants. In *Clorox*, defendants' promise "to safeguard the nonunion status of its personnel" was merely *collateral* to the parties' agreement, which provided that either party could terminate the contract at any time.

Even *Clorox* Court itself distinguished a situation, wherein a fraudulent misrepresentation was "an integral part of the parties' contractual relationship" as opposed to a *collateral* one. Specifically, the *Clorox* Court clearly explained: "[i]n *Lazar v. Superior Court*, [(1996)] 12 Cal.4th 631, for example, the employer's *misrepresentations were an integral part of the parties' contractual relationship*; the plaintiff required assurances of job security and a profitable future as a condition of accepting the position, because it required uprooting his family and giving up a stable income. Had the employer performed its contractual obligations, these expenses would not have constituted fraud damages because no misrepresentation would have occurred." *Clorox,* supra*,* 44 Cal.App.4th at p. 1816. *Lazar v. Superior Court*, supra, 12 Cal.4th at pp. 638-639.

In the present case, there is no doubt that the false Warranty and Representation was also "*an integral part of the parties' contractual relationship.*" Warranties and Representations are always *integral and immensely important parts* of the agreements, on which parties expressly rely. The same goes for the false Liquidity Representation and the material omissions of fact that "went to the very center, very core and very essence of the functionality, integrity and profit

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

PLAINTIFFS' SUR-REPLY ON DEFENDANTS' MOTION TO DISMISS  - 2 -  BMA LLC ET AL. V. HDR ET AL.  CASE NO. 3:20-CV-3345-WHO

model of Defendants' cryptoderivative trading services that Defendants offered to each Plaintiff. TAC ¶ 494. They too were clearly "*integral part[s] of the parties' contractual relationship.*" Therefore, the present case is much like *Lazar v. Superior Court*, supra, which was expressly distinguished by the *Clorox* Court.

Moreover, *Clorox* is distinguishable for yet another important reason. In *Clorox*, both parties performed the agreement and Plaintiff *received* fair monetary compensation for its services. However, *Clorox* Court further stated that: "[i]f the contract had not been performed, we might agree that these expenditures constituted damages proximately caused by the misrepresentations." In the present case, as specifically alleged in the SACC ¶¶ 507, 509, 529, 534, 536, 814, 903, Plaintiffs received no benefit from Defendants whatsoever. As soon as Plaintiffs deposited their bitcoins with Defendants, they were wrongfully confiscated by automated manipulation systems run by the Insider Trading Desk. Thus, Plaintiffs never received the bona fide cryptoderivative trading services they bargained for, and, just like in Lazar and unlike in *Clorox*, the contact between the parties has never been performed. Therefore, because the contract between the parties has not been performed, the present case is governed by the holding of *Lazar* and not *Clorox*.

Accordingly, the holding of *Clorox* does not apply and Plaintiffs' trading commission damages and loss of use damages were in fact incurred by Plaintiffs in reliance on Defendants' false Warranty and Representation, false Liquidity Representation and material omissions of fact. *Lazar v. Superior Court*, supra, 12 Cal.4th at pp. 638-639.

Finally, even if the holding of *Clorox* applied to this case, which it does not, it still does not help Defendants for yet another important reason. In *Clorox*, plaintiffs' reliance damages were caused by the termination of the agreement by defendant – a non-actionable conduct of defendant, in view of the fact that the agreement between plaintiff and defendant provided for termination at any time and for any reason. Specifically, the *Clorox* Court stated: "Thus, it was the termination [expressly permitted under the agreement], not the misrepresentation, that resulted in the alleged harm." *Clorox,* 44 Cal.App.4th at 1819. Therefore, the Court concluded that plaintiff's damages were caused by *non-actionable* conduct of defendant (termination of the agreement that was expressly permitted pursuant to the contract terms) and, therefore, are non-recoverable.

In the present case, on the other hand, even if the holding of *Clorox* applied, which it does not, the reliance damages were caused not by *permitted* termination of the agreement, as in *Clorox*, but by a *wrongful and malicious* liquidation of Plaintiffs' trading positions by Defendants, which had an effect similar to the termination of the agreement in *Clorox*, and which is clearly an *actionable*, *tortious* conduct of Defendants, not allowable under the Service Agreement. SACC ¶¶ 513, 540, 572. Thus, even under the holding of *Clorox,* Plaintiffs' damages in the present case were caused not by the permitted termination of the contract, as in *Clorox,* but by Defendants' *tortious* conduct in deliberately liquidating Plaintiffs' positions using market manipulation. *Clorox,* 44 Cal.App.4th at 1819. Therefore, these damages emanated from the wrongful manipulative conduct by Defendants and, therefore, are fully recoverable even under *Clorox*.

## II. DEFENDANTS' ARGUMENT, MADE FOR THE FIRST TIME IN THEIR REPLY, THAT PLAINTIFFS RELIED ON A MORE GENERAL LIQUIDITY REPRESENTATION, AS OPPOSED TO MORE SPECIFIC ONE, IS MERITLESS

In their Reply Brief, p. 22, Defendants argue, for the first time, that: "Plaintiffs stated that they were 'specifically looking for a reputable and honest exchange with the highest liquidity in the industry to trade on.' CACC ¶ 699 (emphasis added). Of course, that contradicts Plaintiffs' claim that they relied on representations about the magnitude of BitMEX's higher liquidity— 1500% or otherwise—as opposed to the representation that BitMEX was the "most liquid" exchange, which Plaintiffs no longer challenge as inaccurate."

This meritless argument fails for many reasons. At pp. 31-32 of their motion to dismiss as well as in their demurrer to the Second Amended Compliant in a related state court case *Kanyshev v. HDR*, Defendants themselves argued that the representation that BitMEX was the "most liquid" exchange was *non-actionable puffery*, which is *unlikely to be relied upon by a reasonable consumer*. "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions.' [Citation.] Thus, a statement that is *quantifiable*, that makes a claim as to the `specific or absolute characteristics of a product,' may be an actionable statement of fact while a *general*, subjective claim about a product is non-actionable puffery. [Citation.]" (*Newcal Industries, Inc. v. Ikon Office Solution* (9th Cir. 2008) 513 F.3d 1038, 1053.). "Generalized, vague, and unspecified

assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the CLRA. *Elias v. HP*, 903 F. Supp. 2d 843, 854–55 (N.D. Cal. 2012)

Applying this black letter law to the two representations made by Defendants, while the representation that BitMEX was the "most liquid" exchange is largely *general*, the representation promising 1500% more liquidity is clearly *quantifiable,* as it contains specific, quantifiable and exact numbers, which are likely to be *relied* by a reasonable consumer, who will justifiably assume that Defendants performed all required measurements and calculations, and, therefore, it is *not* a puffery. Therefore, Plaintiffs, like any reasonable consumer would clearly rely on the *quantifiable* representation promising 1500% more liquidity on BitMEX, as opposed to the more *general* "most liquid" representation, which is likely puffery. Accordingly, Defendants' argument is without merit. *Newcal, supra,* 513 F.3d at 1053; *Elias, supra,* 903 F. Supp. 2d at 854–55.

In other words, Defendants' argument defies any logic as well as applicable law, because they contend that Plaintiffs would rely on more *general* representation as opposed to more *quantifiable* one. This is nonsense. *Newcal, supra,* 513 F.3d at 1053; *Elias, supra,* 903 F. Supp. 2d at 854–55. This only illustrates how Defendants try to use *illogical, twisted and convoluted* arguments to confuse and mislead the Court into siding with their meritless position.

Moreover, because Defendants themselves argued at pp. 31-32 of their motion to dismiss as well as in their demurrer to the Second Amended Compliant in a related state court case *Kanyshev v. HDR* et al. that the statement that BitMEX was the "most liquid" exchange was a non-actionable puffery, unlikely relied upon by a reasonable consumer, such as Plaintiffs, they are now judicially estopped from changing their position and arguing otherwise. In the present case, all conditions for application of judicial estoppel against Defendants are met. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F. 3d 778, 782-783 (9th Cir. 2001). Accordingly, Defendants' argument is without merit for this additional reason as well.

### III. DEFENDANTS' ARGUMENT, MADE FOR THE FIRST TIME IN THEIR REPLY, THAT PLAINTIFFS FORFEITED THEIR CLAIMS, IS MERITLESS

At p. 20 of their Reply Brief, Defendants argue, for the first time, that "Plaintiffs abandoned many of their causes of action, attempting to defend only their fraud claims under the CEA, RICO, common law, FAL, and UCL." This argument is meritless for multiple reasons.

First of all, in their motion to dismiss, Defendants themselves failed to properly challenge the remaining causes of action of the SACC by failing to make any coherent arguments and cite any authority in support of the proposition that these causes of action were inadequately alleged. Without the arguments and proper citations to applicable authority, Defendants' challenges were cursory and undeveloped and, as such, have been waived by Defendants. *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir.2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."). This is exactly what Defendants' argument were and they have all been waived by Defendants. MTD pp. 31, 35.

Second, "waiver is the `*intentional* relinquishment or abandonment of a known right.'" *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 432 n. 1 (3d Cir.2011) (Hardiman, J., concurring) (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). On the other hand, Defendants themselves acknowledge at p. 20 of their Reply that "Plaintiffs simply assert in a conclusory heading that 'The Remaining Causes of Action Are Also Viable.'" This statement clearly demonstrates that there was no "*intentional* relinquishment or abandonment of a known right" on part of Plaintiffs and that Plaintiffs *intended to defend all* their clauses of action.

Third, the fact that Defendants' arguments were "passing and not supported by citations to the record or to case authority" made Plaintiffs' response to those arguments more than adequate.

Fourth, concepts of abandonment, waiver and forfeiture of issues or claims do not apply in connection with purely legal issues that require no further development of facts. See, e.g., *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 n.5, (D.C. Cir. 1992); *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030 (5th Cir. 1982). See also *Martineau*, supra note 1, at 1035-37; *Miller*, supra note 1. On the other hand, in *In re JMC Telecom LLC*, 416 B.R. 738, 741 (C.D.Cal.2009) the Court clearly held that an order granting a motion to dismiss raises only questions of *law* because a "Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint". Accordingly, concepts of abandonment, waiver and forfeiture do not apply to purely legal arguments raised in a motion to dismiss for failure to state a claim.

Fifth, Defendants predicated their challenges to the remaining claims on the challenges to other causes of action and, as such, these challenges were fully addressed and defended elsewhere

in Plaintiffs' Opposition. For example, with respect to the CLRA claim, Defendants simply argued that: "Plaintiffs' CLRA claim here is predicated upon the *same* purported misrepresentations underlying their fraud claims… Plaintiffs fail to establish that Defendants made any such misrepresentation." On the other hand, Defendants' challenges to misrepresentation allegations in connection with fraud claims were fully addressed in Plaintiffs' Opp, pp. 27-34. Therefore, the CLRA claim predicated on the *same misrepresentations* as fraud claim was also fully defended.

Moreover, with respect to the conversion claim, SACC ¶¶ 1004, 1007-1011 alleges that: "automated software tools built by Defendants and operated by Defendants' Insider Trading Desk, using Plaintiffs' highly sensitive and confidential information, continuously manipulated cryptoderivative markets traded by Plaintiffs on BitMEX platform, as well as price-determining spot markets on reference exchanges, on a 24 hour a day, 7 days a week basis, including the specific dates and times when Plaintiffs suffered their respective bitcoin losses, and namely June 27, 2019, July 14, 2019, November 14, 2018 and November 25, 2018. Operation of these automated tools by Defendants' Insider Trading Desk deliberately caused automatic liquidations of Plaintiffs' respective Perpetual Swap positions on BitMEX platform and confiscation of Plaintiffs' respective collateral from their respective BitMEX accounts on June 27, 2019, July 14, 2019, November 14, 2018 and November 25, 2018, resulting in a cumulative loss of 249.9 bitcoins by Plaintiffs." These allegations are sufficient to state a claim for conversion under California law. Similarly, negligence claim is also sufficient due to the facts alleged and cases cited in SACC ¶¶ 971-985.

Regarding RICO enterprises, Defendants are wrong about the law. It is well settled that:

> 1) individual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf; and 2) corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity.

*In re ClassicStar Mare Lease Litig.*, 727 F.3d at 492. Thus, with respect to the two entity-based RICO enterprises (Counts XI-XIV), no additional allegations of separateness are required. *In Re Juul Labs, Inc., Marketing, Sales Practices, And Products Liability Litigation*, Case No. 19-md-02913-WHO (N.D. Cal. Apr. 13, 2021) (J. Orrick). Moreover, the "association is fact enter-

prise" (Counts IX-X) is also properly alleged because Defendants HDR and ABS performed "different roles within the enterprise or use[d] their separate legal incorporation to facilitate racketeering activity." Both of these circumstances are present here. HDR and ABS are different corporate entities and performed different roles within the Enterprise, see SACC ¶¶ 37, 38, 58-60, 342. For example, as alleged in SACC ¶ 37:

> Defendant HDR was created by individual Defendants in order to perpetrate fraud and dodge regulation and taxes... Among other illegal purposes, such as perpetrating fraud and dodging regulators, Defendants Hayes, Delo and Reed formed and used Defendant HDR to hide and then siphon ill-gotten proceeds from various racketeering activities alleged in this Compliant, including fraudulent solicitations and market manipulation, to their personal bank accounts and bank accounts of their associates and relatives… Despite being incorporated in the Seychelles, Defendant HDR does not have, and never has had, any operations or employees in the Seychelles.

Moreover, as alleged in SACC ¶¶ 38, Defendants were using a shell company [Defendant HDR] incorporated in the Seychelles to defeat personal jurisdiction of the United States Courts in connection with a wire fraud perpetrated by Defendants on their own investors. On the other hand, SACC ¶¶ 58-60 allege with respect to Defendant ABS:

> Defendants Hayes, Delo and Reed have created Defendant ABS as a false "shell" company [under U.S. jurisdiction] as part of a broader United State federal and state law, regulation and tax dodge designed to tell regulators and tax authorities that BitMEX [(HDR) as opposed to Defendant ABS] has no California or United States operations or investors… Defendant ABS handles the majority of the development of the BitMEX Platform, and it is both the heart of the BitMEX enterprise and its nerve center.

Thus, Defendants HDR and ABS performed strikingly different functions within the RICO Enterprise with Defendant HDR being a profit center shielded by legal separateness from Defendant ABS from the reach of U.S. Courts and regulars, SACC ¶¶ 24, 37, 38 while Defendant ABS being the heart of the BitMEX enterprise and its nerve center, employing top Silicon Valley talent to generate profits for Defendants. SACC ¶¶ 58-60.

Furthermore, Defendants exploited legal separateness of Defendants HDR and ABS to shield the proceeds of the Enterprise's illegal affairs, such as wire fraud, from the reach of creditors, courts, tax authorities and regulators in the United States. SACC ¶¶ 37, 38, 58, 342. For Example, Defendants argued to Courts that because Defendants HDR and ABS were legally separate entities, Defendant HDR, which was Defendants' profit center, was not subject to personal jurisdiction in the U.S., SACC ¶¶ 24, 37, 38, while, at the same time, Defendants ABS openly

used world's best engineers and developers located in California to generate this very profit. SACC ¶¶ 58-60. In other words, the legal separateness of Defendants ABS and HDR was used as a shield for the illegal proceeds of racketeering activities perpetrated by Defendant HDR from the reach of U.S. Courts and authorities, while still allowing Defendants an unrestricted access to the top Silicon Valley talent to run their trading systems. As such, the legal separateness of Defendants HDR and ABS was used to "facilitate racketeering activity."

Accordingly, the association between Defendants HDR and ABS satisfies the fundamental requirements of a RICO enterprise because both (while only one is required): 1) Defendants HDR and ABS performed different roles within the Enterprise, SACC ¶¶ 37, 38, 58-60, 342; and 2) their separate legal incorporation status was used to facilitate racketeering activity by shielding Defendant HDR from U.S. personal jurisdiction in connection with the proceeds of the wire fraud, while allowing Defendant ABS to openly use top Silicon Valley talent to generate illegal profits for Defendants by operating the rigged BitMEX Platform. SACC ¶¶ 37, 38, 58-60, 342. On the other hand, if Defendants HDR and ABS were legally a single entity, they would not be able to accomplish the stated purposes. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013).

Dated: August 16, 2021                          Respectfully submitted,

By: /s/ Pavel I. Pogodin
       Pavel I. Pogodin, Esq.
       CONSENSUS LAW
       Attorneys for Plaintiffs