Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

| | | |
|---|---|---|
| BMA LLC, Yaroslav Kolchin, | ) | |
| Vitaly Dubinin, Dmitry Dolgov, | ) | |
| and Paun Gabriel Razvan, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | **No. C 20-3345 WHO** |
| | ) | |
| HDR Global Trading Limited | ) | |
| (A.K.A.  BitMEX), ABS Global | ) | |
| Trading Limited, Arthur Hayes, | ) | |
| Ben Delo, and Samuel Reed, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | San Francisco, California |
| | | Wednesday, August 25, 2021 |

**TRANSCRIPT OF PROCEEDINGS VIA ZOOM WEBINAR**

**APPEARANCES**:  (via Zoom Webinar)

For Plaintiffs:

        CONSENSUS LAW
        5245 Ave Isla Verde, Suite 302
        Carolina, Puerto Rico 00979
    **BY:  PAVEL I. POGODIN, PH.D., ESQ.**

        APPLETON LUFF
        221 Main Street, #496
        Los Altos, California 94023
    **BY:  SANJAY PRASAD, ESQ.**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
           Official Reporter - U.S. District Court

**APPEARANCES:** (via Zoom Webinar; continued)

For Defendants HDR Global Trading Limited and ABS
Global Trading Limited:
                        JONES DAY
                        555 California Street, 26th Floor
                        San Francisco, California 94104
                BY:  **STEPHEN D. HIBBARD, ESQ.**

For Defendant Arthur Hayes:
                        AKIN GUMP STRAUSS HAUER & FELD LLP
                        1999 Avenue of the Stars, Suite 600
                        Los Angeles, California 90067-6022
                BY:  **PETER I. ALTMAN, ESQ.**

For Defendant Ben Delo:
                        BOIES SCHILLER FLEXNER LLP
                        725 S. Figueroa Street, 31st Floor
                        Los Angeles, California 90017
                BY:  **EDWARD H. TAKASHIMA, ESQ.**

For Defendant Samuel Reed:
                        LATHAM & WATKINS, LLP
                        140 Scott Drive
                        Menlo Park, California 94025
                BY:  **MATTHEW RAWLINSON, ESQ.**

                        LATHAM & WATKINS, LLP
                        1271 Avenue of the Americas
                        New York, New York 10020
                BY:  **DOUGLAS K. YATTER, ESQ.**

**<u>Wednesday - August 25, 2021</u>**                    **<u>2:46 p.m.</u>**

<u>P R O C E E D I N G S</u>

---oOo---

**THE CLERK:**  So we will go ahead, then, in case number 20-3445, BMA LLC versus HDR Global Trading Limited.

Counsel, if you would please state your appearance for the record.

**MR. POGODIN:**  Good afternoon, Your Honor.  This is Pavel Pogodin on behalf of plaintiffs.

**THE COURT:**  Good afternoon.

**MR. PRASAD:**  Good afternoon, Your Honor.  Sanjay Prasad on behalf of plaintiffs.

**MR. HIBBARD:**  Good afternoon, Your Honor.  Stephen Hibbard, of Jones Day, for defendants HDR Global Trading Limited and ABS Global Trading Limited.

**MR. ALTMAN:**  Good afternoon, Your Honor.  This is Peter Altman, from Akin Gump Strauss Hauer & Feld, on behalf of defendant Arthur Hayes.

**MR. TAKASHIMA:**  Good afternoon, Your Honor.  This is Ed Takashima, of Boies Schiller Flexner, for defendant Ben Delo.

**MR. RAWLSINSON:**  Your Honor, Matt Rawlinson, of Latham & Watkins, and with me is my partner, Doug Yatter, on behalf of defendant Sam Reed.

**THE COURT:**  Good afternoon to everybody.

1          And, Mr. Pogodin, I got the -- I saw your request for

2    leave to amend the complaint that you filed an hour ago.   I

3    have to say, this is the first time that I've gotten one of

4    these before one of my hearings, so that helps sharpen the

5    issues, I suppose, or at least one of the issues that I need to

6    address.

7          And I will tell you that I am inclined to grant the motion

8    to dismiss, and I'm inclined to do it with prejudice, but I

9    want to hear argument particularly with respect to the

10   amendment.   So let me explain why.

11         First of all, a 378-page, 1,035 paragraph, 33-count

12   complaint is beyond the pale and violates all pleading

13   requirements, particularly that a complaint be simple, concise,

14   and direct.   And, in addition, the plaintiffs attempt to evade

15   the page limitations in briefing by attaching Exhibit A, of 13

16   additional pages.   It's just a flagrant violation of the rules.

17         But, at the end of the day, I can't find a plausible cause

18   of action that's concealed in all of this.

19         The amendment that you made was -- did a few different

20   things.   It reviewed on information and belief from the prior

21   complaint without changing the substance of those allegations.

22         It cut and pasted 45 paragraphs from a complaint that you

23   didn't draft and aren't litigating, the *Messieh* amended

24   complaint, which is before a court in the Southern District of

25   New York.   It's brought by other lawyers.

1        It's improper to import those allegations here.  And Judge

2    Carter's the guy who's got to decide, with the lawyers who

3    allege them and the expert who supported them, what the

4    plausibility of those are.

5        The lead in *on information and belief* doesn't make

6    previously implausible allegations plausible.

7        The Ben Aabtc -- and I'm not sure I'm pronounced this

8    appropriately -- allegations occurred months before the

9    plaintiffs deposited Bitcoin with BitMEX, where they sustained

10   the alleged loss, so they don't help.

11       Then there are some inconsistencies with the prior

12   complaint and this complaint that hurt plausibility.  The new

13   fraudulent inducement theory isn't plausible because the price

14   manipulation theory hasn't changed and it's not plausible.

15       There are no facts to show the terms of service were

16   false.  The plaintiffs' claim of falsity with respect to

17   1500 percent more Bitcoin to U.S. dollar liquidity isn't

18   supported.

19       The bid-ask spread data time period isn't alleged.  The

20   data for dates on which the plaintiffs relied on the statement

21   weren't shown.  The time periods were also different from here

22   as opposed to the *Kanyshev* case, and yet the liquidity

23   averages, remarkably, were the same.  That's not plausible.

24   And putting charts in your opposition without a factual basis

25   doesn't help me.

1        With respect to standing, the market manipulation theory

2   now deletes third-party perpetrators, says the Quick Grove Mind

3   is a defendant instead of a third party.  And there's no

4   plausible explanation of why the plaintiffs are capable -- or

5   why the defendants are the only ones who are capable of making

6   large profits.

7        Fraudulent inducement claim fails because the

8   misrepresentations are -- with respect to the terms of service

9   and liquidity weren't sufficiently alleged.

10       BMA, the pleading of its standing remains unchanged, and

11  it was insufficient before.

12       RICO, the -- there are deficiencies with the enterprise.

13  And the *Juul* case, of which I am quite familiar, had very

14  detailed allegations of how the defendants sought to advance

15  their own interests, and not JLI, to support plausibility such

16  that it was a separate enterprise.

17       There's no racketeering activity alleged.  The theories

18  depend on the market manipulation and fraudulent concealment

19  causes of action, which are insufficiently alleged.

20       The CEA claims have the same problems that I've just gone

21  over, as do the state law claims.

22       So I am inclined to dismiss with prejudice, as I say.  And

23  so, Mr. Pogodin, I would urge you to pick out the two or three

24  strongest arguments that you've got to keep your case going.

25       **MR. POGODIN:**  Actually, I would yield to Mr. Prasad --

1          **THE COURT:**  Okay.

2          **MR. POGODIN:**  -- for oral argument.  Thank you.

3          **THE COURT:**  All right.  Mr. Prasad.

4          **MR. PRASAD:**  Good afternoon, Your Honor.  Let me just

5    address a few points.

6          The complaint is, indeed, long, but with respect to the

7    remark on the *allegations on information and belief*, the

8    amended complaint actually modified quite a bit of that.  And

9    so most of the allegations are direct factual allegations.

10         There are some allegations that are information and

11   belief, but those are fairly carefully pled to ensure that the

12   belief is pled based on factual information that makes the

13   inference of culpability plausible.  And, also, they're limited

14   to the facts that were particularly in possession and control

15   of the defendants.

16         And so, for example, at paragraphs 477 to 479 of the

17   complaint, it's alleged that defendants made all their accounts

18   anonymous to hide manipulation, and, also, they used burner

19   accounts in order to be able to make the tracing of the

20   activity much more difficult.

21         Also, there is the allegation of the disruption of records

22   which we learned about from other cases.  And so there's any

23   number of reasons why the limited number of allegations on

24   information and belief, we believe, can be accepted.

25         Also, with respect to the allegation -- it really boils

1    down to the representations in terms of service and the

2    operation of the insider trading desk, which we allege violated

3    those terms of service.  So those allegations, those are not on

4    information and belief; those are affirmatively pled.  Those

5    are at paragraphs 483 and at paragraphs 271 to 285.

6        And then with respect to the liquidity representation,

7    that's at paragraphs 527 and 528 and 537.  And, specifically,

8    with respect to that liquidity representation, Your Honor,

9    that's -- that's unqualified.  It's during the entire time

10   period in question it said *1500% More Bitcoin/USD liquidity*

11   *than any other platform*.

12       And the complaint itself shows that with just a few simple

13   calculations -- I'm not relying on the tables in the briefing,

14   but there's a few simple calculations that shows it's nowhere

15   near 1500 percent more.  It's way off.  It sometimes is just

16   barely above other services, and many times it's below.  So

17   that's clearly a showing of falsity, Your Honor.

18       Also, with respect to the extent that the -- that the

19   pleadings need to be amended, we would ask that we be able to

20   do so, really, for two reasons.

21       First of all, the Second Amended Complaint has new

22   allegations in it, and so this is not an instance where we've

23   had repeated opportunity and failure to correct the pleadings.

24   The new allegations here are presented here for the first time.

25       And, also, we are expecting -- we have additional data and

1   are expecting additional data from a related case that we could

2   easily amend the pleadings if we need to; although, we do

3   believe that they're sufficient on their face.

4          **THE COURT:**  Okay.  Thank you, Mr. Prasad.

5      Mr. Hibbard, are you going to start off for the

6   defendants?

7          **MR.  HIBBARD:**  Yes, Your Honor.  Thank you very much.

8      First, I think I want to make a comment or two about this

9   request for leave to amend complaint that we also saw shortly

10  before the hearing began.  And, as a consequence, Your Honor

11  there was no opportunity for us to provide a safe harbor

12  letter, which we surely will.

13     Your Honor, the issue of whether or not leave to amend

14  should be granted will ultimately go to the discretion of the

15  Court, but this document submitted to the Court on the eve of

16  this hearing is an act of desperation that ends up with a

17  demonstrably, knowingly, and objectively false statement made

18  to this Court.  And this alone should lead the Court to reject

19  the request for leave to amend.

20     So let me just talk about this for a minute, Your Honor,

21  because this is something that I don't know I've seen happen

22  before.

23     First, there is no order.  Judge Massullo has not granted

24  any order.  She actually, on the record yesterday, corrected

25  Mr. Prasad when he referenced an order, and she took pains to

1    say:  I've issued tentative orders, but as everyone knows I

2    listen to argument, I make decisions, and I issue orders.

3         There is no order.  So we start with that.

4         Second, the enormous elephant in the room has been

5    omitted.  The first hearing yesterday was on the demurrer,

6    which is essentially a complaint in state court with the same

7    allegations as Your Honor has looked at.

8         And her tentative, Your Honor, which she's got to decide

9    will go forward, was to dismiss the complaint in its entirety,

10   including as to liquidity representation, all the other things

11   Your Honor has seen.  There's some different claims.  It's

12   state court claims, not federal court claims, but it's

13   essentially the same factual allegation.  And she found that

14   they were deficient.

15        So nothing was said during the hearing that, to my ears,

16   inclined me to believe that she is not going to enter the

17   tentative that she presented.  So we are expecting it to be

18   granted in full.

19        She did allow, because it's state court and the standards

20   are different, that she is going to give them what she

21   characterized as a last opportunity to amend.

22        And in connection with that, there has been a months-long

23   dialogue about whether or not there would be any discovery.

24   And she did grant what only could be characterized as limited,

25   targeted, specific discovery.

1      So let's take a look at what is said in this document.

2  First, it is that defendants were ordered -- there is no

3  order -- to produce substantial number of documents.  And it

4  goes on to say the documents are relevant to the operation of,

5  it says, the insider trading desk, which is actually a

6  market-making trading arm, then it says leader board, and it

7  says liquidity representation.

8      Your Honor, it is true that there will be some very

9  limited documents as to the policies the trading desk follows

10  and as to trading data on three specific days.  And that's

11  about it.

12      It is completely false, and plaintiffs know this because

13  they argued this point in an effort to overturn the tentative

14  she issued in writing, it is completely false to say that

15  defendants were ordered to produce any information relating to

16  the leader board.  There were 18 requests to that, and they

17  were all denied in the tentative.

18      Nothing was said that indicates that she's going to

19  reverse the tentative.  In fact, Your Honor, when that

20  transcript is available we're happy to make it available to the

21  Court, because the one thing that one could conclude from that

22  is the high level of frustration that Judge Massullo evidenced

23  towards plaintiffs in this case.  And she made pains to make

24  clear that there would be no further discovery and that

25  discovery is and will be stayed.

1    Judge, there's a statement in here that defendants were

2   ordered to produce documents relating to the so-called

3   liquidity representation.  This, again, is a false statement.

4   They argued it; they sought it; her tentative denied it.

5    There is, of course, no order, so we don't know where

6   we'll end up, but, again, absolutely nothing was said yesterday

7   that gives me any reason to believe that she's going to give

8   them more.  And, indeed, the conclusion we drew from the

9   hearing is that some of the items that she had tentatively

10   indicated she was inclined to grant plaintiffs, her oral

11   comments suggested that she's going the other way and that she

12   will give them less rather than more.

13    So it is really disturbing to us to see statements made to

14   this Court that are knowingly false, right before a hearing,

15   designed to induce this Court to act to grant leave to amend.

16    Beyond that, Your Honor, again, plaintiffs have offered up

17   some data and some charts.  We can't read them.  We don't know

18   what they are.  We don't understand them right now.  But what

19   we have seen is that when plaintiffs have offered data before,

20   as in the case of OKEX data, we've seen that when we get behind

21   it and test it, it isn't at all what it's presented to be; and,

22   in fact, the inferences that are sought from it are entirely

23   unwarranted.

24    More to the point, it was more than five months ago that

25   this Court gave plaintiffs instructions about what they needed

to do.  And the fact that they have waited to the proverbial

11th hour to walk in here and sort of pull the rug out from

under everything and say, now we have some data, now we have

something new, is really unconscionable.

    There have been nine iterations of this complaint.  If

there were nine more iterations of this complaint to come, I am

as confident as I am that the sun sets in the west that we

would hear a comment that there's something more that needs to

be added up for us to get a tenth, further iteration.  This is

never going to stop, Your Honor.

    But what matters here from defendants' perspective, I

think, is that the Court gave the plaintiffs the benefit of the

doubt in the theory.  Plaintiffs started with a house of cards.

It was always on insubstantial grounds, and it was always built

with deficient materials.

    Plaintiffs have made no effort in this complaint to

address those issues.  Instead, they pivoted.  They come up

with a new theory.  They've sort of tacked some more cards onto

the margin and something more there.  They didn't do anything

to address it.

    And, Judge, when the Court instructed the plaintiffs to

not take a kitchen sink approach, I don't believe anybody was

expecting that they would take a commissary sink approach.

    They have gone exactly the opposite direction.  And in

doing so, Mr. Prasad said, well, we've modified some things.

1    Yes, indeed, they have modified some things.  But they've

2    modified some things that actually make the allegations

3    implausible, incredible, and unbelievable.

4        Now, our papers go through at length, with a series of

5    different reasons and arguments, why the so-called liquidity

6    representation should not be given credence.  I think one of

7    the core issues around that is that it is not something as to

8    which reliance can be based on anyway.

9        And we know that, Your Honor, because anytime there is

10   something in this bloated thicket of a complaint that

11   plaintiffs realize later on creates some issue for them that is

12   inconvenient for the new direction they want to chart because

13   their last direction didn't work, they delete it.  They pretend

14   that that allegation did not exist and it was not there.

15       For example, Your Honor, if you look at Exhibit A of the

16   Hibbard Declaration to the Motion to Compel, which is a red

17   line of the complaint, the Court can see that in what was

18   previously paragraph 699, there was a statement that said:

19            "Prior to opening trading accounts with BitMEX, each

20        plaintiff was specifically looking for a reputable and

21        honest exchange with the highest liquidity in the industry

22        to trade on, and, therefore..."

23       That is now stricken from what is new paragraph 835.  So

24   having previously specifically alleged that these plaintiffs

25   were looking for the highest liquidity, they now realize the

1   problem is that there's no facts that they can come forward to

2   show that BitMEX did not have the highest liquidity at the

3   points in time that specifically mattered to these plaintiffs.

4   Instead, they try to pivot to this 1500 percent.

5        But if what matters is the highest liquidity, it doesn't

6   matter if it's 1500 percent more or 10 percent more or anything

7   more.  This is a made-up allegation in a, frankly,

8   inappropriate attempt to try to persuade the Court to allow

9   this to go forward.

10        The notion that plaintiffs, having alleged that they were

11  looking for the highest liquidity are, in fact, somehow damaged

12  because they made the choice to trade with BitMEX, which offers

13  highly leveraged trading at a hundred times margin, but would

14  instead not have done that had they only known that it was not

15  1500 precisely, because then they wouldn't have traded at all

16  on a margin account, but, instead, would have put their Bitcoin

17  in a place where they could have earned 5 percent interest, is

18  so ludicrous to imagine that it just defies imagination.  It's

19  not credible.  It's not plausible in any sense.  And, frankly,

20  as we suggest in our papers, this is an example of sham

21  pleading.

22        Enough, Your Honor, is enough.  In our view, it is time to

23  bring down the curtain on what has proven to be a horror movie

24  of a ground hog day because there we go again.  We've been

25  entrapped enough of this in Zoom for the last eighteen months

1   or so, and that's about the life of this case so far.

2        Your Honor, there's nothing that Mr. Prasad has said that

3   hasn't been addressed in our papers, at length, with detail,

4   with recitations, some of which I've touched on now.

5        And I'm happy to answer any questions the Court may have

6   about this, but I have to say, I'm flabbergasted that I am

7   staring at a document that is knowingly false, submitted by

8   counsel in an effort to persuade this Court to not dismiss this

9   complaint with prejudice.

10       It is time, Your Honor, respectfully, for the Court to

11  dismiss this action with prejudice.

12       **THE COURT:**  Anybody else from the defendants want to

13  address anything?  And I don't -- we don't need rhetoric, but

14  if there's something specific that you think -- some point,

15  some legal point that needs to be raised, please, go ahead and

16  do it.

17       Seeing nothing.

18       **MR. RAWLSINSON:**  Nothing from us, Your Honor.

19       **THE COURT:**  Go ahead, Mr. Rawlinson.

20       **MR. RAWLSINSON:**  Nothing from us, Your Honor.  Sorry.

21       **THE COURT:**  All right.  So I assume there's nothing

22  more.

23       Mr. Prasad, do you want to respond?

24       **MR. POGODIN:**  Can I respond, Your Honor, please, to

25  allegations against me?

1    So yesterday we had a hearing --

2         **THE COURT:**  Mr. Pogodin, before you go there, I am

3    confident that -- that you have a different perspective on how

4    the argument went yesterday.

5         And I don't -- and because Judge Massullo hasn't ruled one

6    way or the other, I'm much more interested in what she does

7    than what people's perspectives are.

8         And I know that from my own perspective, when I've

9    listened to judges deal with my cases, I often came away with

10   ideas that the Judge ultimately did not have that I really

11   wished that she had had.

12        So you don't -- I don't need you to go through the

13   discussion that you had with Judge Massullo yesterday.

14        **MR. POGODIN:**  Can I respond at least to allegations of

15   falsity?

16        **THE COURT:**  Yes.

17        **MR. POGODIN:**  So my understanding of the argument

18   yesterday, that we had with Judge Massullo, is that she

19   restricted the information that we sought to just three days

20   during which the trading occurred.  So she requested that

21   defendants provide information about trading efforts for those

22   three days.

23        Those records will be very, very important to liquidity

24   representation because, based on trading records, they will be

25   able to determine if defendants did provide liquidity or did

1   not provide liquidity.  So this is incorrect statement from

2   Mr. Hibbard that the Judge did not, at least tentatively, agree

3   to provide information related to liquidity representation.

4        That was my understanding, also, that she asked defendants

5   to provide information about leader board, but, again,

6   restricted to those three days.  And that's exactly what my

7   understanding is will happen.

8        And we did discuss 30 days after she issues order, and my

9   amended complaint in the state case will be due in another 30

10  days.  So we even discuss the timing of production of

11  documents.  Mr. Hibbard said that he wants to talk to his

12  clients and see if he can do it faster.  So if this happens

13  faster, I file my amended complaint faster.

14       So everything I said in the letter to you is correct

15  according to my understanding.  So in 30 days Mr. Hibbard will

16  have to produce documents.  And those documents were discussed

17  yesterday.  Even though she did not, indeed, enter the final

18  order, that was my understanding that this order will be

19  including those documents.

20       And to the extent I made any kind of, you know, vagueness

21  in my letter, I apologize for that.  And orders should be

22  issued shortly, and I will forward this order to Honorable

23  Court.  For any deficiencies, again, I apologize because that

24  was based on, again, oral statements in the court, and that's

25  my understanding of what happened.

1     Regarding the leave to amend, just one issue about this

2    liquidity representation.  It's false.  There is no question

3    about this.  So any data -- I am Ph.D. in physics.  Any data

4    you look at just screams that it's false.

5     So denying leave to amend just because Mr. Hibbard says

6    so, when you have this absolutely false, proven false

7    statement, just for the reason that my complaint did not have a

8    right number and a right date is against justice.

9     We need the opportunity to amend at least to include this

10   evidence that we have.  And, obviously, this is the first time

11   somebody identified deficiencies in those specific allegations

12   because those specific allegations were added in May of this

13   year.  They were not in there when you ruled previously on the

14   motion to dismiss.

15    Most complaints, they give at least two rulings from the

16   judge.

17        **THE COURT:**  Well, you know, Mr. Pogodin --

18        **MR. POGODIN:**  Yes.

19        **THE COURT:**  -- one of the arguments that I don't think

20   is very well-taken is usually people aren't adding a bunch of

21   new allegations the second, the third, the fourth time around,

22   unless there are specific facts that they wouldn't have known,

23   or that they knew in advance but they just didn't put it in

24   because they didn't realize the judge really cared about them.

25    It's not a notion that every time you amend you get to

```
 1   just throw in as many new things as you want.  So that would
 2   not be a reason --
 3           MR. POGODIN:  Can I explain?  The reason we amended is
 4   the employee came forward.
 5       And let me address this quoted paragraph allegations.  I
 6   worked with that law firm.  They took a lot from my complaint.
 7   I talk to them daily.  They give me permission to quote those
 8   allegations from the complaint.
 9       And I did talk to the witness.  I'm actually on chat with
10   this person, with this employee on a daily basis, Your Honor.
11   I talked to him yesterday, day before yesterday.
12       And it's not a good reason to fail to give full weight to
13   assume the truth of the allegations just because similar
14   allegations appear in another complaint in another court,
15   because we have information-sharing arrangement with the firm.
16   And I guarantee you -- I'm a member of the Bar and officer of
17   the Court -- I assure you, I have permission to copy those, and
18   I worked with the witness.
19       So those allegations are true and have been confirmed true
20   by two law firms.  So they should be given double weight as
21   opposed to no weight at all.
22           THE COURT:  All right.  Thank you, Mr. Pogodin.
23           MR. POGODIN:  Thank you, Your Honor.
24           THE COURT:  Mr. Prasad, did you have anything else you
25   wanted to add?
```

1       **MR. PRASAD:**  One more, Your Honor.  What I thought I

2    heard Mr. Hibbard say is, is that the 1500 percent allegation

3    is not true, but it doesn't matter because someone couldn't

4    rely on that.

5       And if that's his view, that's fine, but that strikes me

6    as being a triable issue of fact.  It strikes me as being --

7    admitting that we have actually shown falsity.  He shifted his

8    argument to one that it's merely implausible.  And that strikes

9    me as being something that people can differ of, and I think

10   this case should go forward on that alone.

11      **THE COURT:**  All right.

12      Mr. Hibbard, I'll give you the last word.  And I'd really

13   like you to focus on the complaint and on the law and not

14   the -- and not other rhetorical reactions that you have to

15   what's in front of you.

16      **MR.  HIBBARD:**  Thank you, Your Honor.

17      So, first, with respect to the notion that there may be

18   further information from a former employee, this is what the

19   Court was told last time, months ago.  Nothing was forthcoming.

20   And, in fact, the opposite.

21      When you look at the complaint that's before the Court,

22   the references that were in there to information from a former

23   employee have all been removed.  So rather than coming forward

24   and saying here's the employee, as the law requires, and here's

25   the position they held, and here's the responsibility they had,

1   and here's the period of time in which they were there and the

2   information they would have seen, to give credibility to

3   allegations, that was all excised from the complaint, and it's

4   not there now.

5       So since the Court had instructed the plaintiff to do

6   those kinds of things, which is what the law expects of a

7   former employee, and did not, then I don't see why we would go

8   back down that road again, at this point, at this stage.  It's

9   just essentially saying that this round didn't really matter.

10      If Mr. Prasad heard me to say that there was no truth --

11  that the 1500 percent representation was not true, that's not

12  what I meant to say.  What I meant to say is there are no facts

13  specifically pled that demonstrate the falsity of that.  And we

14  have walked through that analysis in our papers to show why --

15  why there are no well-pled facts to demonstrate falsity.

16      The point that I was trying to make beyond that is that

17  the elements of causation and elements of reliance are also not

18  present in relation to that.  And, again, I believe we have

19  cited the cases that support that.

20      And one of the themes, Your Honor, from the last order

21  that the Court issued, was the need to provide the connective

22  tissue of factual allegations to the actual losses allegedly

23  incurred by these plaintiffs on those particular dates.  And

24  it's that connective tissue, that connecting the dots, that

25  still is missing.

1     And so we've pointed out in our papers again, Your Honor,

2   that even if it were the case, which we don't find credible,

3   that someone relied upon the representation, the rest of the

4   elements that are essential have not been pled.

5     And I would go to one more point around this, Your Honor,

6   which is that this case began as a market manipulation case,

7   and that was the core and the heart of the case.

8     Now, obviously if someone felt fraudulently induced,

9   that's something that is within one's own control from the

10   get-go, and one would have expected the case to have begun as a

11   fraudulent inducement case.

12     We have pointed out that we think it goes to the

13   plausibility, which under the applicable law the Court is

14   allowed to take consideration of.  It goes to the plausibility

15   of the entire set of allegations relating to liquidity

16   representation that they only come in at the point where the

17   Court has determined that the market manipulations allegations

18   are deficient in what, at least to us, appears to be an effort

19   to find an alternate basis to sustain a case and to move

20   forward.  So I tie that back to the legal principle, Your

21   Honor, that goes to the question of fundamental plausibility.

22     So I -- I -- the last point I would make, Your Honor, is

23   we will be producing some very limited trading data for three

24   days.  Those days do not line up across the board with the

25   dates that plaintiffs have alleged losses here.

1        But, regardless, when that data is produced in that state

2   court proceeding, subject to the protective order in that case,

3   for the use by those plaintiffs, that data will not be subject

4   to and available for these plaintiffs in this case.  So I don't

5   see that the fact that there is some discovery that will go

6   forward has any bearing on the decision this Court faces today,

7   is that discovery is not part of this proceeding.

8        Thank you, Your Honor.

9            **THE COURT:**  Thank you.

10       All right.  So I'm deciding this case on the pleadings

11  that I have in front of me.  I appreciate the argument of

12  counsel.  I will look at this one more time, when I get off the

13  bench, and I'll get an order out as soon as I can.  Thank you.

14           **MR. HIBBARD:**  Thank you, Your Honor.

15           **MR. PRASAD:**  Thank you, Your Honor.

16           **MR. POGODIN:**  Thank you.

17       (At 3:21 p.m. the proceedings were adjourned.)

18                       - - - - -

19

20

21

22

23

24

25

1

2                    **<u>CERTIFICATE OF REPORTER</u>**

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5    DATE: Sunday, August 29, 2021

6

7

8

9    _____

10          Katherine Powell Sullivan, CSR #5812, RMR, CRR
                    U.S. Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25